**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PERCY R. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 1856 |
| | ) | Consolidated with Case Nos. |
| v. | ) | 13 C 6512 & 15 C 5919 |
| | ) | |
| COOK COUNTY SHERIFF'S OFFICE, *et al.*, | ) | Judge Andrea R. Wood |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S COMBINED RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS
THIRD AMENDED COMPLAINT**

Plaintiff, Percy R. Taylor ("Taylor"), by his attorneys, submits the following combined response to the Rule 12(b)(6) motions to dismiss Taylor's Third Amended Complaint filed by Defendants, Cook County Sheriff's Office, Thomas Dart, Michael K. Smith, Joseph Ways and Zelda Whittler (collectively referred to as the "Dart Defendants' MTD") and Defendants, Gregory Ernst, Patrick Fitzgerald and the Estate of Patrick Murphy (collectively referred to as the "Ernst Defendants' MTD").

## I. BACKGROUND

Because of the overlap with Dart's and Ernst's motions to dismiss, Taylor is submitting a combined response to both motions. On September 6, 2016, Taylor filed his Third Amended Complaint ("TAC") against Defendants the Cook County Sheriff's Office ("Sheriff's Office"), Thomas Dart ("Dart"), Gregory Ernst ("Ernst"), The Estate of Patrick Murphy ("Murphy"), Michael Smith ("Smith"), Joseph Ways ("Ways") and Zelda Whittler ("Whittler"). Cook County is named for purposes of indemnification.

The TAC contains nine (9) counts. Count I alleges racial discrimination against the Sheriff's Office under Title VII. Count II is brought against all Defendants for civil rights violations under 42 U.S.C. § 1983. Count III consists of retaliation claims against all Defendants pursuant to § 1983. Count IV alleges Title VII retaliation claims against the Sheriff's Office. Count V asserts equal protection claims under § 1983 against all Defendants. Count VI alleges First Amendment claims against all Defendants. Count VII contains state malicious prosecution claims against all Defendants, while Count VIII alleges breach of contract claims against the Sheriff's Office and Dart. Count IX seeks indemnification against the County under 745 ILCS 10/9-102.

Taylor, an African American, began his employment in 1995 with the Sheriff's Office as a deputy sheriff (TAC, ¶¶ 4 & 18). In 2000, Taylor was promoted to Police Officer, which is the position he held throughout the relevant time periods of the TAC. *Id*.

**Taylor's Political Support and Campaigning Against Dart**

In 2010, after becoming discouraged with the apathy regarding criminal activity in the African American community within the ranks of the Sheriff's Department, Taylor decided to support a sheriff's candidate with law enforcement background and credentials who campaigned to focus on fighting crime in Cook County. *Id*. ¶ 25. When Taylor learned that Sylvester Baker ("Baker"), a former Cook County Police Sergeant, was running for Sheriff against Dart, Taylor decided to campaign for Baker. *Id*. ¶ 26.

Taylor alleges that Dart and the other Defendants were aware that he was supporting Baker. *Id*. ¶ 28. Baker lost the election and Dart was reelected in November 2010. *Id*. ¶ 29.

**Taylor Falsely Accused of firing a BB Gun at a Vehicle**

On or about March 8, 2011, Taylor was falsely accused by Howard Woolfork, a private

citizen, of firing a BB gun at a vehicle. *Id*. ¶ 30. Woolfork reported the incident to the Chicago Police Department ("CPD"), who investigated the incident. *Id*. ¶ 31. The CPD closed its investigation after interviewing Woolfork. *Id*. ¶ 33. The CPD did not arrest Taylor. *Id*. ¶ 34. Because Woolfork told the CPD that Taylor was an employee of the Sheriff's Office, the CPD reported the alleged incident to the Sheriff's Office. *Id*. ¶ 35. Taylor vehemently denied shooting a BB or pellet gun or committing any type of criminal act. *Id*. ¶ 36.

**Taylor's March 9, 2011 Arrest & Criminal Prosecution**

On March 9, 2011, Defendants Ernst, Fitzgerald and Murphy went to Taylor's home and arrested Taylor. *Id*. ¶ 37. Ernst was a senior investigator with the Sheriff's Office of Professional Review ("OPR") and Fitzgerald and Murphy[1] were OPR investigators. *Id*. ¶¶ 7-9 & 37). OPR conducts criminal and administrative investigations of Sheriff's Office employees. *Id*. ¶ 23.

The OPR investigators handcuffed Taylor and placed him in the back of a freezing car for more than an hour while his wife and children watched in terror. *Id*. ¶ 38. The OPR investigators took Taylor to their offices and handcuffed him to a chair. *Id*. ¶ 39. Taylor was interrogated by OPR for 30 hours. *Id*. ¶ 42. Taylor fully cooperated with the investigation by answering questions and consenting to a search of his vehicle and residence. *Id*. ¶ 43.[2]

Taylor alleges that Defendants Ernst, Fitzgerald and Murphy had an unlawful motive which caused them to arrest, handcuff, restrain and imprison him. *Id*. ¶ 44. Taylor alleges that he was subjected to a frivolous OPR investigation, false arrest, false charges and malicious prosecution because of race; and because he asserted his freedom of speech rights by

---

[1] Murphy is deceased and The Estate of Patrick Murphy has been substituted as a defendant.
[2] The Sheriff's Office performed complete search of Taylor's residence and vehicle, and nothing was found to implicate Taylor in the BB gun incident. Taylor does not even own a BB or pellet gun.

3

campaigning for Dart's political rival. *Id*. ¶¶ 45-46.

On or about March 18, 2011, Taylor learned of a criminal complaint issued for his arrest for the BB gun incident. *Id*. ¶ 47. Fitzgerald, along with another officer, picked Taylor up at his home and transported him to the Sheriff's Office for processing. *Id*. Ernst made false statements causing Taylor to be arrested and subjected to malicious prosecution. *Id*. ¶ 48. The criminal proceedings against Taylor were dismissed. *Id*. ¶ 50.

**Taylor's De-Deputization & Suspension**

On or about March 10, 2011, Taylor was stripped of his police powers and de-deputized. *Id*. ¶ 51. On March 22, 2011, at the conclusion of a Loudermill pre-termination hearing, the Sheriff's Office sustained the charges and suspended Taylor, with pay. *Id*. ¶¶ 52-53.

**September 16, 2011 Incident**

On September 16, 2011, Taylor was detained at the Daley Center after being falsely accused of a criminal battery by Deputy Sheriff David Nowacki ("Nowacki"). *Id*. ¶ 54. On October 21, 2011, more than a month after the September 16th incident, Nowacki filed a misdemeanor complaint against Taylor falsely accusing him of twisting his arm. *Id*. ¶ 55. Nowacki's actions were in concert with the Sheriff's Office and OPR. *Id*. ¶ 56. The actions were intended to cause embarrassment, humiliation and emotional harm to Taylor because of his race and political association. *Id*.

Taylor was subjected to malicious prosecution. *Id*. ¶ 57. After a trial on April 12, 2012, Taylor was acquitted and found "Not Guilty." *Id*.

**Retaliation after Taylor Files the Instant Lawsuit**

On March 8, 2013, Taylor filed this action (Case No. 13 C 1856) against the Sheriff's Office, Dart, Ernst, Fitzgerald, Murphy and the County. *Id*. ¶ 58; Doc. #1. The Sheriff's Office

received notice or learned of the lawsuit on or before March 15, 2013. *Id*. ¶ 60. On March 15, 2013, the Sheriff's Office and Dart, through Undersheriff Whittler, instituted an adverse employment action against Taylor by filing a complaint with the Sheriff's Merit Board (Case # MB 1704). *Id*. ¶ 61. The Merit Board complaint alleged that Taylor had violated rules and regulations of the Sheriff's Department in an incident occurring 18 months earlier on September 26, 2011. *Id*.

In the Merit Board complaint, Defendants sought Taylor's removal from his employment with the Sheriff's Office. *Id*. ¶ 62. The Merit Board complaint was filed in retaliation for Taylor filing the instant lawsuit, and in retaliation for Taylor's association and affiliation with Dart's political opponent. *Id*. ¶¶ 63-64.

**Termination of Taylor's Employment**

The Sheriff's Merit Board held a hearing on the Merit Board complaint (Case # MB 1620) filed by the Sheriff's Office over the alleged BB gun incident. *Id*. ¶ 65. At the conclusion of the hearing, the Merit Board terminated Taylor's employment. *Id*. The Defendants violated Taylor's civil rights by terminating, or assisting in the unlawful termination of his employment on October 30, 2013. *Id*. ¶ 66. Taylor's employment was terminated in retaliation for filing EEOC charges and civil rights lawsuits. *Id*.

**Taylor Prevails in the Circuit Court of Cook County**

On August 19, 2014, the Circuit Court of Cook County reversed and vacated the Sheriff's decision to terminate Taylor. *Id*. ¶ 69. After the decision, Taylor demanded backpay and other relief. *Id*. ¶ 70. On November 25, 2014, Judge Neil H. Cohen granted Taylor's motion for backpay.[3] On May 12, 2017, the Illinois Appellate Court upheld the circuit court's decision that

---

[3] The Court is permitted to take judicial notice of Judge Cohen's backpay order of November 25, 2014 ordering backpay in the case entitled *Taylor v. Dart, et al*., Case No. 13 CH 26319.

the October 30, 2013 decision of the Merit Board was void because of the Merit Board being illegally constituted. *Taylor v. Dart*, 2017 IL App (1st) 143684-B.

**Additional Acts of Retaliation**

On or about November 5, 2014, Defendants instituted and sustained other charges against Taylor (TAC, ¶ 72). Defendants notified Taylor that he was required to appear at a Loudermill Hearing on November 24, 2014 to address the charges. *Id*. On December 31, 2014, Defendants filed a motion to reinstate its complaint and Merit Board Docket Numbers 1626 and 1704 with the Merit Board. *Id*. ¶ 73.

Despite the Circuit Court's August 2014 ruling, Defendants subsequently filed additional disciplinary charges and reinstated complaints against Taylor in retaliation for Taylor asserting his constitutionally protected rights and to discriminate against Taylor. *Id*. ¶ 78.

## II. LAW

Under the federal rule of notice pleading, all the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Kyle v. Morton High School*, 144 F.3d 448, 454 (7th Cir. 1998). A plaintiff is not required to plead facts, but is permitted to plead conclusions as long as the defendant is provided with at least minimal notice of the claim. *Id*.

When evaluating a 12(b)(6) motion to dismiss, the court must accept as true all well-pleaded facts alleged in the complaint and construe all reasonable inferences in favor of the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.,* 507 F.3d 614, 618 (7th Cir. 2009); *Savory v. Lyons,* 469 F.3d 667, 670 (7th Cir. 2006). A plaintiff is not required to allege "detailed factual allegations," but rather must plead facts that, when accepted as true, state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v.*

*Twombly,* 550 U.S. 544, 555 (2007). Where the factual allegations are well-pleaded, the Court assumes them to be true and determines whether those facts give rise to a plausible entitlement to relief. *Ashcroft*, 556 U.S. at 679; *Bless v. Cook County Sheriff's Office*, 2015 WL 890370, at *3 (N.D. Ill. 2015). A claim is facially plausible when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the actions alleged. *Id.* Plausibility "does not imply that the district court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010).

### III. THE LAW OF THE CASE DOCTRINE REQUIRES THE DENIAL OF DEFENDANTS' MOTIONS TO DISMISS

Both motions to dismiss ignore the Court's prior rulings and violate the law of the case doctrine. On March 26, 2015, the Court issued a Memorandum Opinion in Case No. 13 C 1856 denying Defendants' Rule 12(b)(6) motion to dismiss Taylor's § 1983 claims contained in the First Amended Complaint ("FAC"), including sustaining Taylor's *Monell* and breach of contract claims (Doc. #51, pp. 187-94).

Similarly, on March 25, 2015, in consolidated Case No. 13 C 6512, the Court denied Defendants' Rule 12(b)(6) motion to dismiss Taylor's retaliation claims under VII and § 1983 contained in Taylor's FAC (Case No. 13 C 6512, Doc. # 30). The Court has already rejected the same arguments advanced by the Defendants in both motions to dismiss before the Court.

Except for additional acts of discrimination, retaliation and other wrongful acts, there are no substantive differences between Taylor's claims contained in his First Amended Complaints in Case Nos. 13 C 1856, 13 C 6512 and the TAC (*compare*, TAC, Doc. #111 with FACs in Case # 13 C 1856, Doc. #20 & Case # 13 C 6512, Doc. #13). In Case No. 13 C 1856, the Court held:

> . . . Taylor has named Sheriff Dart as a defendant in both his official and individual capacities. He alleges that all of the defendants discriminated against him because of his race and deprived him of his constitutional rights. He also alleges that Dart is a final

> policymaker for the Sheriff's Office. The allegations of Dart's personal involvement are sufficient to state a claim against him for relief under § 1983, and his position makes the same allegations sufficient to state a claim for relief against his office. Defendants Ernst, Fitzgerald, and Murphy are named in their individual capacities and each are alleged to have been personally involved in the § 1983 deprivations. Thus, in sum, the allegations of Taylor's complaint are sufficient to state claims for § 1983 relief against Dart, his office, Ernst, Fitzgerald, and Murphy. The defendants' motion to dismiss Count III is therefore denied

(Case No. 13 C 1856. Doc. #51, pp. 6-7) [citations to FAC omitted].

Moreover, the Court in denying Defendants' motion to dismiss in consolidated Case No. 13 C 6512, noted:

> Taylor's complaint alleges that on March 8, 2013, he filed a lawsuit against the Sheriff's Office, alleging that the office subjected him to racial discrimination, retaliation for his political activities, false arrest, malicious prosecution, intentional infliction of emotional distress, and breach of contract. The complaint further asserts that on March 18, 2013, the Sheriff's Office instituted proceedings against Taylor to terminate his employment, that Defendants were aware of Taylor's lawsuit at the time, and the Defendants' goal in attempting to terminate him was to retaliate against him for the lawsuit. Taylor's complaint alleges that the retaliation against him violated 42 U.S.C. § 1983 and Title VII. . .

(Case No. 13 C 6512, Doc. # 30, p. 1).

The TAC contains the same essential allegations as the First Amended Complaints in Case Nos. 13 C 1856 & 13 C 612. For instance, Count III of the FAC in Case No. 13 C 1856 alleged civil rights violations based on race; Taylor's right to free speech and association as guaranteed by the First Amendment; equal protection, and retaliation (Case No. 13 C 1856. FAC, ¶¶ 73-77, Doc. # 20, Page ID #87). Taylor's FAC in Case No. 13 C 6512 contained the same retaliation claims the Defendants are moving to dismiss (Case No. 13 C 6512, FAC, Doc. # 13).

Defendants ignore and disregard this Court's March 25, 2015 and March 26, 2015 opinions. In both motions to dismiss, Defendants argue that the TAC impermissibly lumps together allegations against "defendants" and that Taylor fails to sufficiently allege their personal involvement (Doc. #128, Page ID #554-63; Doc. #123, Page ID #505-06 & 510-11). These

8

arguments have already been rejected. For instance, in Case No. 13 C 1856, in denying Defendants' motion to dismiss, the Court stated:

> Taylor's complaint does not specify the roles that individual officers played in the events that followed [after Chicago police offers came to the scene and investigated but made no arrests]. However, he does allege that he was made to sit in the back of an unheated car for more than an hour while his wife and children watched and then was taken to an OPR office where he was interrogated for 30 hours. . .
> * * *
> With his present lawsuit, Taylor alleges that the Sheriff's Office investigations and charges that followed the two incidents describe above were motivated by his race and by the fact that he had supported Sylvester Baker, who opposed Dart in the November 2010 election for Sheriff. He has brought claims for race-based discrimination under Title VII and 42 U.S.C. § 1981, § 1983. He further asserts that, to the extent the adverse actions were taken against him because of his political associations, those actions deprived him of his First Amendment rights and thus the responsible parties should be held accountable under § 1983.

(Case No. 13 C 1856. Doc. #51, pp. 2-3).

Both motions to dismiss also argue that the TAC fails to allege sufficient facts showing why the Defendants knew that Plaintiff was supporting Baker or a nexus between Taylor's support of Baker and the adverse employment actions and other wrongful actions taken against Taylor. However, these arguments were rejected by the Court in Case No. 13 C 6512. "The allegations in the complaint raise a plausible inference the Defendants took an action sufficient to deter lawsuits such as Taylor's, even in the absence of termination." (Case No. 13 C 6512, March 25, 2015 Order & Statement, p. 2, Doc. # 30). The Court also addressed Defendants' assertion that Taylor cannot establish a link between the filing of his prior lawsuit and the initiation of proceedings to terminate his employment holding: "Whether Defendants knew about Taylor's suit in time to have decided to retaliate against him by filing the termination charge is a purely factual question that cannot be resolved at the pleading stage." *Id*. p. 3.

The Court also previously noted that a "complaint for retaliation under Title VII must give the defendant sufficient notice of the allegedly protected activity and the adverse action the

defendant took against the plaintiff as a result [*citing Tamayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. 2008)." (Case No. 13 C 6512, March 25, 2015 Order & Statement, p. 2, Doc. # 30). This Court found that "Taylor's complaint clears these hurdles: it identifies the filing of his prior lawsuit as the protected activity and Defendants' subsequent commencement of termination proceedings as the retaliatory act." *Id*.

The law of the case doctrine, among other things, embodies the notion that a court ought not re-visit an earlier ruling in a case absent a compelling reason, such as manifest error or a change in the law, that warrants re-examination. *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007). The presumption against reopening matters already decided also reflects interests in consistency, finality, and the conservation of judicial resources. *Id*. Defendants offer no justification, let alone a compelling reason, for the Court to revisit its prior rulings. The Court's rulings are sound and consistent with well-established precedent.

In the interests of consistency, predictability and uniformity, the law of the case doctrine applies to Taylor's other claims contained in the TAC, including Taylor's claims against Smith, Ways and Whittler. Taylor relied upon the Court's prior rulings in drafting the TAC. Based on the prior rulings, the TAC states cognizable discrimination and retaliation claims requiring the denial of the motions to dismiss.

## IV. THE THIRD AMENDED COMPLAINT SUFFICENTLY ALLEGES COGNIZABLE CLAIMS AGAINST EACH DEFENDANT

**Even ignoring the fact that the Motions to Dismiss should be denied based on law of the case,** Defendants offer no legal basis to dismiss Taylor's TAC. Taylor's 148 paragraph TAC sets forth a convincing case against the Sheriff's Office and each of the individual Defendants for racial discrimination and discrimination based on Taylor's exercise of his First Amendment rights for supporting Dart's political opponent in the November 2010 election. There are

compelling facts showing that the Defendants retaliated against Taylor for: (1) campaigning for Baker; (2) filing the instant lawsuit; and, (3) prevailing in the Circuit Court of Cook County on administrative review.

Defendants' actions are egregious and the facts alleged give rise to more than a "plausible entitlement to relief." *Bless*, 2015 WL 890370, at *3. Taylor, a twenty-year veteran of the Sheriff's Department, alleges how he was discriminated and retaliated against; and treated differently from other similarly situated employees (TAC, ¶¶ 18, 82-94). There is no merit to Defendants' contention that Taylor is required to allege how the Defendants knew that he was supporting Baker.

Taylor alleges that Dart and the other Defendants were aware that he was supporting Baker in the election against Dart. *Id*. ¶ 28. Defendants fail to cite any authority requiring Taylor to plead how the Defendants' acquired such knowledge. Even under the heightened pleading requirements for fraud, which do not apply here, a defendant's intent, knowledge or other condition of the mind "may be alleged generally." Fed.R.Civ.P. 9(b); *Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 815 (N.D. Ill. 2013).

Taylor campaigned for Baker and it is certainly plausible that Dart and the other Defendants were aware that Taylor supported Baker's candidacy for Sheriff. *See*, *Zimny v. Cook County Sheriff's Office*, 2014 WL 4555302, at *4 (finding the court could infer knowledge of political expression from allegations that employee engaged in political campaigning); *Bless*, 2015 WL 890370, at *7 (Dart and other defendants' knowledge of plaintiff's Republican Party affiliation not appropriate on a motion to dismiss).

The totality of the circumstances gives rise to a reasonable inference that the Defendants knew that Taylor was supporting Baker and that the actions taken against Taylor were motivated,

at least in part, on Taylor's support of Baker and Taylor's race. Defendants' knowledge can be properly inferred based on circumstantial evidence. Given Defendants' actions and conduct against Taylor, it is more than plausible that Taylor's race and campaigning for Baker were motivating factors for the adverse actions taken against Taylor.

After the Chicago Police Department investigated the alleged BB gun incident and chose not to arrest or charge Taylor, OPR Investigators Ernst, Fitzgerald and Murphy went to Taylor's home and placed him under arrest. These Defendant investigators treated Taylor like a violent criminal handcuffing him and placing him in a freezing car for more than an hour while his wife and children watched in terror. Taylor was then taken to OPR offices, handcuffed to a chair and interrogated 30 hours by the Defendant OPR investigators. Nine days later, Taylor was picked up at his home by Fitzgerald and taken to the Sheriff's Office to process his arrest. Taylor fully cooperated with the OPR investigation by answering questions, consenting to a search of his vehicle and home.

After Taylor's arrest, he was subjected to malicious prosecution for the alleged BB gun incident on charges that were dismissed by the State's attorney. Two days after the incident, Taylor was stripped of his police powers and de-deputized based solely upon unsubstantiated allegations. Defendants' wrongful conduct continued.

In October 2011, Taylor was falsely accused by a Sheriff's Deputy of grabbing and twisting his hand at the Daley Center, an incident that allegedly occurred more than a month earlier. The deputy's actions were in concert with the Sheriff's Office and OPR (TAC, ¶ 56). Taylor was acquitted of the charges.

Defendants' harassment, retaliation and discrimination continued. On March 15, 2013, after Taylor filed the instant lawsuit on March 8, 2013, the Sheriff's Office and Dart, through

Undersheriff Whittler, filed a complaint with the Merit Board over an alleged incident that occurred 18 months earlier. The Merit Board conducted a hearing before an improperly constituted board and terminated Taylor's employment. This decision was subsequently reversed on administrative review. *See*, *Taylor v. Dart*, 2017 IL App (1st) 143684-B. On November 5, 2014, after Taylor prevailed on administrative review, Defendants filed other charges against Taylor. On December 31, 2014, Defendants filed a motion to reinstate two merit board complaints against Taylor.

Taylor submits that he was either the worst employee in the history of the Sheriff's Department (which he clearly was not) or that he was subjected to repeated acts of discrimination and retaliation for exercising his constitutional rights. Defendants' arguments ring hollow and their motions to dismiss should be summarily denied.

## V. DEFENDANTS' ARGUMENTS LACK MERIT

### A. The TAC does not impermissibly lump together allegations against the Defendants and Taylor's Claims are Not Implausible

There is no merit to the Dart Defendants' argument that the TAC should be dismissed or stricken for impermissibly lumping together allegations against "Defendants" or that various claims are implausible (Dart Defendants' MTD, pp. 2-11, Doc. # 128). The Ernst Defendants make a similar argument (Ernst Defendants' MTD, pp. 6-8, Doc. # 123). As discussed *supra*, the Court has already rejected these arguments and the law of the case doctrine precludes such arguments.

Moreover, the Court correctly rejected these arguments. On March 26, 2015, the Court sustained Taylor's claims against Defendants Sheriff's Office, Dart, Ernst, Fitzgerald and Murphy and ruled that Cook County was a proper party for indemnification purposes (Doc. #151). As discussed *supra*, the Court sustained Taylor's claims against Dart and the Sheriff's

Office in Case No. 13 C 6512. Consistent with the Court's prior rulings, the TAC contains sufficient facts as to each Defendant.

For example, Ernst, Fitzgerald and Murphy were each OPR investigators and are the ones who placed Taylor under arrest, placed him in the back of a freezing car for more than an hour, took Taylor to their offices and handcuffed him to a chair, and interrogated Taylor for 30 hours (TAC, ¶¶ 7-9, 37-47). Ernst is also alleged to have made false statements against Taylor that caused him to be arrested and subjected to malicious prosecution.

Dart and the Sheriff's Office are central to Taylor's claims. On March 26, 2015, the Court ruled that Taylor's "allegations of Dart's personal involvement are sufficient to state a claim against him for relief under § 1983, and his position makes the same allegations sufficient to state a claim for relief against his office." (Case No. 13 C 1856, Doc. # 51, p. 6). The Court also found that "Ernst, Fitzgerald, and Murphy are named in their individual capacities and each are alleged to have been personally involved in the § 1983 deprivations. *Id*.

Defendants Smith, Ways and Whittler are also named in their individual capacities and are alleged to have been personally involved in the wrongful conduct (*see e.g*., TAC, ¶¶ 9-12, 74-77). Defendants' arguments that the TAC fails to sufficiently allege the Defendants' personal involvement in the retaliatory acts and other acts of discrimination and wrongful conduct are without merit and have already been rejected by the Court.

### B. Taylor Sufficiently alleges that he engaged in Speech & Activity Protected <u>by the First Amendment</u>

The Ernst Defendants make the unfounded claim that Taylor's First Amendment claims fail because the First Amendment only protects a public employee's right to speak on matters of public concern (Ernst Defendants' MTD, p. 13). They maintain that Taylor's charges with the EEOC do not involve a matter of public concern. Defendants neglect to mention that Taylor's

claims are premised, *inter alia*, upon Taylor's political association and his right to support Dart's political opponent without fear of discrimination, retribution and retaliation, which clearly are protected under the First Amendment. *See*, *Bless v. Cook County Sheriff's Office*, 2015 WL 890370 (N.D. Ill. 2015); *Zimny v. Cook County Sheriff's Office*, 2014 WL 4555302 (N.D. Ill. 2014).

### C. Taylor's Claims against Defendants Ways, Smith and Whittler are Not Barred by Statute of Limitations

Defendants argue that because Taylor did not sue Ways, Smith and Whittler until July 6, 2015, he cannot assert any claims that were raised on the 2013 lawsuits based on a two-year statute of limitations (Dart Defendants' MTD, p. 11, Doc. # 128). In fact, Smith, Ways and Whittler are named in Taylor's First Amended Complaint filed on October 2, 2015 in Case No. 15 C 5919 (Case No. 15 C 5919, Doc. # 10). In addition, Defendants Ways, Smith and Whittler were named for their actions and roles as part of the retaliatory and discriminatory acts which occurred in 2014, well within the applicable two year statute of limitations (TAC, ¶¶ 67-79). Accordingly, these arguments should be rejected.

### D. The TAC Does Not Establish Probable Cause for Taylor's Arrest and Detention

The Ernst Defendants' contention that the TAC establishes probable cause for Taylor's arrest thereby justifying their actions is meritless (Ernest Defendants' MTD, pp. 8-9). Only by ignoring the factual allegations of the TAC can the Defendants argue they had probable cause to arrest and interrogate Taylor for 30 hours. Taylor alleges that he was falsely accused by Woolfolk of firing a BB gun at a vehicle in the City of Chicago (TAC, ¶ 30). The CPD, having jurisdiction in the City of Chicago, investigated the incident and interviewed Woolfolk, and did

15

not arrest Taylor. *Id*. ¶¶ 31-34. The fact that the CPD did not arrest Taylor necessarily means that they did not have probable cause.

Moreover, Taylor alleges that "Defendants Ernst, Fitzgerald, and Murphy had an unlawful motive which caused them to arrest, handcuff, restrain, and imprison Plaintiff." *Id*. ¶ 44. It is alleged that Taylor was subjected to a frivolous OPR investigation, false arrest, false charges, and malicious prosecution because of his race, and because he asserted his freedom of speech by campaigning for Dart's political rival. *Id*. ¶¶ 45-46. It is specifically alleged that Ernst made false statements against Taylor which caused him to be arrested and subjected to malicious prosecution. *Id*. ¶ 48. There is nothing in the TAC demonstrating probable cause to arrest Taylor.

Additionally, the Court, for purposes of a motion to dismiss, must assume that the Defendants arrested Taylor for exercising his First Amendment Rights and because of Taylor's race. Defendants cite *Matthews v. City of East St. Louis*, 675 F.3d 703 (7th Cir. 2016) for the proposition that "as long as a **reasonably credible witness or victim** informs the police that someone has committed a crime, the officers have probable cause to make the arrest." (Ernst, MTD, p. 8). Here, there is no basis to conclude that Woolfolk was a "reasonably credible witness or victim." There is no information that the Defendants were presented with a credible report of criminal behavior. A reasonable inference is that the CPD, by not making an arrest, did not find Woolfolk credible.

Finally, probable cause is typically a question of fact for the jury. *Moore v. Marketplace Rest., Inc.*, 754 F.2d 1336, 1348 (7th Cir. 1985). There is simply no basis to conclude that Ernst, Fitzgerald and Murphy had probable cause to arrest Taylor or that their unlawful conduct was

16

otherwise justified. Taylor has the right to present evidence that Defendants' assertion of probable cause is pretextual to their retaliatory and racial motives.

### E. The TAC Sufficiently Alleges a Causal Connection between Defendants' Retaliatory Animus and the Exercise of Taylor's First Amendment Rights

There is also no merit to the Ernst Defendants' contention that Taylor's retaliatory claims should be dismissed because of the time from Taylor's protected speech, i.e., support of Dart's political opponent in the November 2010 election, and Taylor's March 9, 2011 arrest (Ernst MTD, pp. 10-11). For starters, Defendants' math is wrong in claiming that this represents a six month gap between their false arrest of Taylor (March 9, 2011) and Taylor's protected speech (November 2010) (Ernst MTD, p. 10). Regardless, a purported four-month interval does not bar Taylor's retaliatory claims against Ernst, Fitzgerald and Murphy.

To establish a causal link between the protected expression and subsequent retaliatory action, the plaintiff must show that the protected conduct was a substantial or motivating factor in retaliatory action or conduct. *See*, *Mt. Healthy City Sch. Dist. Bd. Educ. v. Doyle,* 429 U.S. 274, 287 (1977). "A motivating factor does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the defendant's actions." *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006). Further, as in other contexts where motivation is at issue, the plaintiff is not required to come forward with direct evidence. *Id*. Circumstantial proof, such as the timing of events or the disparate treatment of similar individuals, may be sufficient to establish the defendant's retaliatory motive. *Id*.

If the plaintiffs make this threshold showing, the burden then shifts to the defendants to produce evidence that they would have acted the same regardless of the exercise of the protected expression or activity. *Id*. In other words, the defendants may show that retaliation was *not* the but-for cause for the firing. *Id*. Finally, assuming the defendants carry that burden, the plaintiff

17

may still persuade a fact-finder that the defendants' proffered reasons were pretextual and that retaliatory animus was the real reason that the defendants acted the way they did. *Id*.

In this case, the allegations of the TAC satisfies Plaintiff's threshold showing and Taylor should be entitled to conduct discovery and present evidence on this issue. Even if the Defendants are somehow able to show that Taylor's political speech and/or race was not the but-for cause for the arrest, Taylor has the right to present evidence showing that the proffered reasons were pretextual and that retaliatory animus was the real reason behind Defendants' actions.

Taylor specifically avers that he was subjected to a frivolous OPR investigation, false arrest, false charges, and malicious prosecution because he asserted his freedom of speech by campaigning for Dart's political rival and because of race (TAC, ¶¶ 45-46). It is certainly plausible and reasonable to infer that retaliatory animus existed and the Defendants were opportunistic when Woolfolk falsely claimed on March 8, 2011 that Taylor fired a BB gun at his vehicle.

Defendants will have to answer to the jury why the CPD, who investigated Woolfolk's claims and interviewed Woolfolk, did not find probable cause to make an arrest, and why the Sheriff's Office took it upon itself to arrest and humiliate Taylor in front of his wife and children based on unfounded and unsubstantiated allegations. The fact that the retaliation against Taylor continued and persisted after the March 2011 trumped-up charges as evidenced by the false accusations against Taylor stemming from an alleged September 16, 2011 incident at the Daley Center (TAC, ¶¶ 54-56).

Why did the deputy sheriff wait more than a month after the incident to lodge a complaint? A plausible explanation is that the deputy sheriff's actions were in concert with the

Sheriff's Office and OPR's efforts to cause embarrassment, humiliation and emotional harm to Taylor because of political association and race (TAC, ¶ 56). Taylor's retaliation claims cannot be viewed in a vacuum. The Ernst Defendants' false arrest of Taylor in March 2011 was part of a pattern and practice of retaliation and discrimination against Taylor as shown by the retaliatory acts that followed Taylor's March 2011 arrest.

The cases cited by the Defendants simply do not support dismissal. *Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012), reiterates the well-established precedent that the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for speaking out. *Thayer* was decided on a motion for summary judgment where once a defendant produces evidence that the same decision would have made in the absence of protected speech, the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and that the real reason was retaliatory animus. *Id*. p. 252.

In this case, for purposes of a motion to dismiss, Taylor is not required to present evidence. It is clearly plausible, based on the allegations contained in the TAC, that Taylor's political speech was a least a motivating factor for the actions taken against him. Taylor is entitled to conduct discovery and present evidence that the Defendants' assertion of probable cause for the arrest was pretextual and that the real reasons for his arrest, criminal prosecution (which charges were dismissed) and his termination were retaliatory and motivated by racial animus.

Defendants cite no authority to support the claim that the interval between Taylor's protected speech and his arrest, as a matter of law, bars his First Amendment retaliation claims. For instance, *Bianchi v. McQueen*, 818 F.3d 309 (7th Cir. 2016) is inapposite to this case. *Bianchi* involved prosecutorial immunity for a court-appointed special prosecutor for alleged

false statements to a grand jury and qualified immunity issues. The case lends no support to Defendants' dismissal arguments. As the Court previously held, Taylor has stated viable First Amendment retaliation claims. *See* discussion *supra*.

WHEREFORE, Plaintiff, Percy R. Taylor, requests that this Honorable Court deny in their entirety the motions to dismiss filed by Defendants, Cook County Sheriff's Office, Thomas Dart, Michael K. Smith, Joseph Ways, Zelda Whittler, Gregory Ernst, Patrick Fitzgerald and the Estate of Patrick Murphy. In the event the Court grants any part of the motions to dismiss, Plaintiff requests leave to file a fourth amended complaint, and any other relief the Court deems just.

PERCY R. TAYLOR

By: s/Richard F. Linden
One of Plaintiff's attorneys

Richard F. Linden (ARDC #6200387)
Peter V. Bustamante
Linden & Bustamante
17 North Wabash, Suite 400
Chicago, Illinois 60602
312/590-0211