## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| PERCY R. TAYLOR, | |
| Plaintiff, | |
| | No. 13 C 1856 |
| v. | |
| | Magistrate Judge Jeffrey T. Gilbert |
| COOK COUNTY SHERIFF'S OFFICE, *et al.*, | |
| Defendants. | |

## MEMORANDUM ORDER

Plaintiff's Motion for Sanctions [237] is granted in part and denied in all other respects without prejudice as moot or premature. See Statement below for further details.

## STATEMENT

Before the Court is Plaintiff's Motion for Sanctions Against Defendants Thomas Dart and Cook County Sheriff's Office for their Failure to Produce Documents [ECF No. 237]. A hearing was held on August 7, 2018, and the Court took the Motion under advisement. [ECF No. 251]. Plaintiff's Motion for Sanctions also was the subject of discussion at a continued status and motion hearing held on August 17, 2018. [ECF No. 258.]

Plaintiff contends that Defendant Cook County Sheriff's Office ("the Sheriff's Office") and Defendant Thomas Dart (together "Defendants," as that term is used in this Order) improperly failed to produce two documents the parties refer to as the Offense Table and Comparative OPR Chart in response to Plaintiff's First Request for Production of Documents [ECF No. 237-1] served on April 13, 2015. Defendants dispute whether the documents were called for by the broad requests for production that Plaintiff served in 2015. Defendants also say that even if the documents were responsive to Plaintiff's requests for production, they did not know the documents existed until relatively recently.

The focus of this Order and of the parties' briefs submitted in connection with Plaintiff's Motion for Sanctions is on the Offense Table. Plaintiff also seeks sanctions for Defendants' failure to produce the Comparative OPR Chart earlier in this case. The Court is not yet sure whether it has seen that complete document or has enough information to assess whether it was responsive to any of Plaintiff's RFPs served in 2015. At a hearing on August 17, 2018, there was a dispute about whether the document Defendants produced to Plaintiff as the Comparative OPR Chart was, in fact, the complete document at issue. It appears that factual development is continuing in that respect. In the Court's view, there is not enough information in the record about the Comparative OPR Chart and the parties' arguments about that document are not as developed as they are with

respect to the Offense Table, so the Court denies without prejudice Plaintiff's Motion for Sanctions with respect to the Comparative OPR Chart. The Court notes, parenthetically, that in all likelihood Plaintiff would be entitled to no greater or additional relief at this time even if the Court were to grant Plaintiff's Motion for Sanctions with respect to the Comparative OPR Chart.

The Offense Table was saved on Defendant Ways' work computer at the Sheriff's Office. [ECF No. 237, ¶ 6; ECF No. 237-3, at 134, 278.] It is headed "Office of Professional Review (OPR)." [ECF No. 237-2.] Defendant Ways was Executive Director of the Office of Professional Review ("OPR") when he was with the Sheriff's Office. [ECF No. 237, ¶ 5.] He created the Offense Table on his Sheriff's Office computer and he says it is based on a similar document he used when he was with the Federal Bureau of Investigation. [*Id.*; ECF No. 237-3, at 132–34, 308; ECF No. 259, at 22.] Ways testified in another case involving the Sheriff's Office (*Michno v. Cook County Sheriff's Office, et al.*, No. 13 C 7163) that he used the document in connection with his official duties at OPR. [ECF No. 237, ¶ 5; ECF No. 237-3, at 132.] He used it to determine and to track the type of discipline he or others in the Sheriff's Office recommended in particular cases. [*Id.*] Plaintiff in this case complains he was subjected to unfair and unequal discipline when he was employed by the Sheriff's Office. Ways submitted his only hard copy of the Offense Table *in camera* to the Sheriff's Merit Board in connection with official proceedings in an unrelated matter. [ECF No. 237, at ¶ 6; ECF No. 237-3, at 272–74; ECF No. 259, at 36.] When Ways retired from OPR in 2013, Ways left his Sheriff's Office computer as it was and did not delete the Offense Table that was saved on that computer. [*Id.* at ¶ 6; ECF No. 237-3, at 132-34, 278.]

In the Court's view, the Offense Table is encompassed within the reach of Plaintiff's First Requests for Production ("RFPs") Nos. 9, 12, and 13 [ECF No. 237-1.] It is within the scope of these RFPs because it relates to the decision to suspend Plaintiff (RFP 9), it relates to the subject matter of Plaintiff's complaint which complained of unequal disciplinary treatment (RFP 12), and it may be a document that Defendants intend to rely upon in defense of Plaintiff's claims (RFP 13). The Offense Table also is encompassed by Plaintiff's RFP No. 8, which calls for documents that "relate" to the Sheriff's Office's "practices . . . or procedures related to discipline and the process of de-deputizing a police officer." (RFP 8).

To the extent Defendants want to characterize the Offense Table as something unrelated to the workings of the Sheriff's Office and, instead, as Ways' personal document, the Court disagrees. First of all, the documents is headed "Office of Professional Review (OPR)." [ECF No. 237-2.] As Executive Director of OPR, Ways was directly involved in discipline of Sheriff's Office employees, including the decision to suspend Plaintiff in 2011. Ways testified under oath that he used the Offense Table in performing his official duties. [ECF No. 237, ¶ 5; ECF No. 237-3, at 132.] Ways created and saved the document on his work computer. [ECF No. 237-3, at 132–34.] When he retired from OPR in 2013, Ways left his Sheriff's Office computer as it was and did not delete the Offense Table. [ECF No. 237, ¶ 6; ECF No. 237-3, at 278.][1]

---

[1] In addition, Ways testified that he and others within the Sheriff's Office benefited from the information in the Offense Table. Ways testified that when he recommended disciplinary action concerning a Sheriff's Office employee, the director of the employee's unit, the assistant director, and/or the investigator would come to Ways' office "and discuss the case with me and ask[] where the conduct fell in the range for the recommended discipline." [ECF No. 237-3, at 146.] Although Ways did not specifically mention the Offense Table at this point in his testimony, he referred to that document elsewhere as the source for the

Defendants say while they were aware that Ways submitted the Offense Table under seal in an unrelated Merit Board proceeding that took place prior to the time Plaintiff served his RFPs, it was their understanding that no other copy of the document existed "based on conversations and sworn testimony by Ways." [ECF No. 250, at 4; ECF No. 259, at 30, 36.] Defendants say they "just learned last month" that a copy of the Offense Table still existed on Ways' computer. [ECF No. 250, at 4; ECF No. 259, at 30.] This argument at the very least misreads Ways' sworn testimony. Ways testified that he gave his only hard copy of the Offense Table to the Merit Board when he testified before that body. [ECF No. 237-3, at 276–78.] But he also acknowledged that the document was saved on his computer at the Sheriff's Office and that he did not delete the document when he retired. [ECF No. 237-3 at 132-34, 276–78.] In addition, Ways testified that the Merit Board proceeding involved four deputy sheriffs in the court services area, and that "someone" requested that he provide the Offense Table to the Merit Board. [ECF No. 237-3 at 272–76.] That "someone" obviously knew about the Offense Table and was familiar with the workings of the Sheriff's Office.

It is difficult to believe that Defendants truly thought no other copy of the Offense Table existed other than the hard copy that Ways gave to the Merit Board. In an era when documents are created on a computer and then printed out in hard copy, any thinking person would at least wonder, and ask, whether an electronic copy of a document that was printed from a computer continued to reside on the computer. That is, if anyone thought about it at the time Defendants were responding to Plaintiff's RFPs served in 2015. Defendants had an obligation to conduct a reasonable inquiry and investigation to locate documents responsive to Plaintiff's RFPs. Had they done so with ordinary care and diligence, the Court is confident they would have located the Offense Table. In fact, Defendant Sheriff's Office now admits it had possession and control of the Offense Table when it received Plaintiff's RFP's in 2015. [ECF No. 268-2 at 9.][2] The ease with which Ways was able to locate the Offense Table when Defendants provided him with a flash drive image of his Sheriff's Office computer suggests Defendants did not exercise ordinary care and diligence in responding to Plaintiff's RFPs. The Offense Table was easily available to Defendants when they responded to Plaintiff's RFPs served in 2015 and it should have been produced at that time.

In addition, since Defendants now say in their Response to Plaintiff's Motion for Sanctions [ECF No. 250] that the Offense Table "bolsters the Defense's arguments" in defense of Plaintiff's claims in this case [*Id.*, at 6], the Offense Table also was subject to disclosure and production under Rule 26(a)(1)(A)(ii) of the Federal Rules of Civil Procedure back in 2015. Even before the Federal Rules were amended effective December 1, 2015, Rule 26(a)(1)(A)(ii) required a party to produce

---

range of discipline that he would consider and ultimately recommend in specific cases. [*Id.*, at 132] ("There was a document that I created that was there for guidance to ensure that the recommended discipline was consistent throughout all of the departments as well as consistent based on what the sustained charges were.").

[2] After it filed its response to Plaintiff's Motion for Sanctions [ECF No. 250] that is the subject of this Order, Defendant Sheriff's Office responded to Plaintiff's Requests to Admit and "admit[ted] that it had possession and control of the Offense Table since at least March 8. 2013." [ECF No. 268-2, at 9.]

a copy or a description of "all documents . . . the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." FED. R. CIV. P 26(a)(1)(A)(ii). The parties were required to make their Rule 26(a)(1) disclosures in this case by August 31, 2015. [ECF No. 61.]

Failure to make a timely Rule 26(a)(1) disclosure is sanctionable under Rule 37(c) unless the non-disclosure was substantially justified or harmless. Under Rule 37(c)(1)(A), the Court may order the payment of reasonable expenses, including attorney's fees, caused by the failure to disclose. *See also* FED. R. CIV. P. 37(a)(3)(A) ("If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions.") The failure to disclose, unless substantially justified or harmless, also can lead to the imposition of sanctions available under Rule 37(b)(2)(A)(i-vi).

Rule 26(g) of the Federal Rules of Civil Procedure also states that the signature of a party or a party's attorney on a response to a discovery request or on a Rule 26(a)(1) disclosure "certifies that to the best of the person's knowledge, information, and belief *formed after reasonable inquiry*" a disclosure is "complete and correct as of the time it is made" and a discovery response is "consistent with these rules and warranted by existing law." FED. R. CIV. P. 26(g)(1) (emphasis added.) Rule 26(g)(3) provides for sanctions similar to those available under Rule 37 for improper certification of a Rule 26(a)(1) disclosure that violates that rule without substantial justification. *See* Fed R. Civ. P. 26(g)(3) ("If a certification violates this rule without substantial justification, the court . . . must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both."); 8A C. Wright & A. Miller, *Federal Practice and Procedure* § 2052, at 348 (2010) (The phrase "substantial justification" in Rule 26(g)(3) parallels the similar qualifications in Rule 37(c)(1)).

Whether a failure to comply with Rule 26(a) is substantially justified is left to the broad discretion of the district court. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 514 (7th Cir. 2011). "A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). However, in making this determination, the district court should consider and weigh the following factors: (1) the extent of prejudice or surprise to the aggrieved party; (2) the ability of that party to cure the prejudice; (3) the extent of disruption at trial; and (4) the presence (or lack thereof) of bad faith or willfulness in not disclosing the pertinent information at an earlier date. *Toyo Tire & Rubber Co., Ltd. v. Atturo Tire Corp.*, 2018 WL 3533315, at *5 (N.D. Ill. July 23, 2018). Under Rule 37, however, "a showing of willfulness, bad faith, or fault is necessary only when dismissal or default is imposed as a discovery sanction." *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011). Even negligence is a degree of fault sufficient for imposing sanctions short of dismissal or default. *Id.* at 642–43.

Here, the prejudice to Plaintiff of the late disclosure is significant because he structured his theory of the case and took depositions without knowledge of the existence of the Offense Table. While he can mitigate some of this prejudice, Plaintiff cannot completely cure the prejudice that flows from his not knowing about this document much earlier in discovery. Late disclosure of the Offense Table has deprived Plaintiff of a meaningful opportunity to explore the evidence through depositions, interrogatories, or supplemental document requests, and to discover his theory of the

4

case informed by that exploration, or at least significantly impaired his ability to do so. This is true whether the Offense Table is more helpful to Plaintiff (as he says it is) or to Defendants (as they now claim it is).

The failure to timely disclose the Offense Table also will delay the trial in this case because it is likely that discovery will need to be extended as a result of the non-disclosure. While discovery might have been extended anyway for the purpose of taking depositions the parties were not able to take before the fact discovery close date, the need to reconvene depositions already taken because of the late production of the Offense Table will result in an incrementally longer delay. It also will disrupt the trial to the extent that Plaintiff was unable to develop his theory of the case with knowledge of the document and may object to Defendants' arguments or evidence at trial as a result.

Defendants suggest that Plaintiff has not been prejudiced because no trial date has been set and discovery is ongoing. The Court is not persuaded. "Late disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen or extend discovery." *Hard Surface Solutions, Inc. v. Sherwin-Williams Co.*, 271 F.R.D. 612, 617 (N.D. Ill. 2010). Further, the fact that no trial date yet has been set is not an adequate justification for failure to comply with discovery obligations. *See id.* ("It is not the answer to say the trial date has not been set."). Defendants also caused Plaintiff and the Court to expend unnecessary time and resources on a matter that should have been produced earlier in response to Plaintiff's 2015 RFPs and disclosed pursuant to Rule 26(a)(1).

In the Court's view, Defendants' failure to disclose the Offense Table earlier in the litigation was not substantially justified. Defendants argue that they made no effort to conceal the Offense Table. But this begs the question of whether Ways or someone else in the Sheriff's Office should have alerted counsel to the existence of the document earlier in discovery and whether Defendants and/or their counsel conducted a reasonable inquiry to discover the existence of the Offense Table when responding to Plaintiff's discovery requests served back in 2015 or when making their Rule 26(a)(1) disclosures. Whether or not defense counsel knew about the document years ago is not dispositive. If counsel did not learn of the document in meeting with their clients when responding to Plaintiff's RFPs or making Defendants' Rule 26(a)(1) disclosures, they should have done so in the exercise of ordinary care and diligence for the reasons discussed earlier in this Order.[3] This is true regardless of whether Ways was yet a named Defendant in this case and whether he still was employed by the Sheriff's Office given his central involvement in the matters that form the basis for Plaintiff's claims.[4]

---

[3] The standard for determining whether a reasonable inquiry has been made is an objective one similar to that imposed by Rule 11. *See* FED. R. CIV. P. 26(g) Advisory Committee Notes.

[4] Ways was named as a defendant in Case No. 15 CV 5919 in a complaint that was filed on October 2, 2015. [ECF No. 10.] Case No. 15 CV 5919 was consolidated with this case on September 21, 2016. [ECF No. 114.] Ways was added as a named Defendant in Plaintiff's Third Amended Complaint in this case [ECF No. 111], which was filed on September 16, 2016. But he always has been a percipient witness to the facts and events alleged by Plaintiff in this case.

Therefore, sanctions are warranted for the late production of and failure to timely disclose the Offense Table. The sanction at this time, however, will be limited to a requirement that Defendant Cook County Sheriff's Office pay the cost of reconvening any already concluded depositions that need to be reconvened because of the late production of that document and the attorney's fees for one of Plaintiff's attorneys to attend those depositions. This is a measured sanction calibrated to address the situation now before the Court. Plaintiff also will be permitted to inquire at those depositions about the Comparative OPR Chart. Based upon what the Court knows about that document at this juncture, it is possible that document also should have been produced in response to Plaintiff's RFPs served in 2015 and Plaintiff at least should be allowed to develop the record in that regard as well as with respect to whether or how that document was used by Defendant Ways or others in the Sheriff's Office to determine or track discipline imposed on Sheriff's Office employees. The Court recognizes that the parties may dispute which depositions need to be reconvened consistent with this Order, and the Court can address those disputes if and when they arise.

The Court's limited sanction as of now is not based upon a finding that Defendants acted willfully by not producing or identifying earlier the Offense Table, or that they acted in bad faith. But, as discussed above, the Court need not find the conduct was willful or in bad faith to require that Defendant Sheriff's Office pay the cost of reconvening depositions that need to be reconvened to allow Plaintiff's counsel an opportunity to inquire about the documents at issue and Plaintiff's associated attorney's fees in that regard. *See Toyo Tire & Rubber*, 2018 WL 3533315, at *5 ("Under Rule 37, 'a showing of willfulness, bad faith, or fault is necessary only when dismissal or default is imposed as a discovery sanction.'") (quoting *e360 Insight*, 658 F.3d at 342).

However, the vast majority of the relief Plaintiff seeks in his Motion for Sanctions [ECF No. 237] is no longer appropriate or is premature pending further development of the facts relating to the Offense Table and the Comparative OPR Chart. This is obvious from a review of the 11 requests for relief Plaintiff includes in his Motion as discussed below.

In paragraph (a) of Plaintiff's request for relief in his Motion, Plaintiff asks the Court to "require the Sheriff's Office to expedite its answers to written discovery on the issue of the withheld documents." This issue is now moot as more than 30 days have passed since Plaintiff served his discovery requests. The Court ordered Defendants to respond to Plaintiff's requests to admit, requests for production of documents, and interrogatories served on July 12 and 17, 2018, by August 20, 2018. [ECF No. 251.] That, presumably, has been done.

In paragraph (b) of Plaintiff's request for relief, Plaintiff asks the Court to "require the Sheriff's Office to designate and produce an individual(s) in accordance with Plaintiff's Rule 30(b)(6) notice of deposition served on July 17, 2018." Plaintiff did not attach his Rule 30(b)(6) notice of deposition, so the Court does not know what topics are covered in the notice. The Court cannot award this relief or even consider doing so without more information.

In paragraph (c) of Plaintiff's request for relief, Plaintiff asks the Court to "require the Sheriff's Office to produce the Offense Table including all drafts and variations of same." This issue is now moot as the Court effectively ordered production of the Offense Table on August 7, 2018, by deeming that document as having been produced in this case since Plaintiff already had

a copy of it from the *Michno* case. [ECF No. 251]. The Court hereby amends that order, however, for clarification and orders the Sheriff's Office to produce all drafts or other versions of the Offense Table that exist on the flash drive image of Defendant Ways' computer.

In paragraph (d) of Plaintiff's request for relief, Plaintiff asks the Court to "require the Sheriff's Office to produce the Comparative OPR Chart including all drafts and variation of the same." This issue is now moot as the Court ordered production of the Comparative OPR Chart on August 7, 2018 [ECF No. 251]. The Court, however, hereby amends that order for clarification and orders the Sheriff's Office to produce all drafts or other versions of the Comparative OPR Chart.

In paragraph (e) of Plaintiff's request for relief, Plaintiff asks the Court to "require the Sheriff's Office to produce Joseph Ways for further deposition about all matters relating to the Offense Table, the Comparative OPR Chart and any documents subsequently produced by the Defendants after Defendant Ways' May 15, 2018 deposition." This issue is now moot as Defendants have agreed to produce Ways for further deposition. [ECF No. 250, at 5.] And, as discussed above, Plaintiff's counsel will be permitted to inquire of him and other witnesses about both the Offense Table and the Comparative OPR Chart.

In paragraphs (f) through (i) of Plaintiff's request for relief, Plaintiff asks the Court to "inform the jury of the Sheriff's Office's failure to produce the Offense Table and the Comparative OPR Chart in a timely manner," "instruct the jury that the Sheriff's Office's failure to produce the Offense Table in a timely manner allows the jury to infer that this evidence is adverse to the Sheriff's Office," "instruct the jury that the Sheriff's Office's failure to produce the Comparative OPR Chart in a timely manner allows the jury to infer that other similarly situated Caucasian employees were given lesser discipline than African Americans for the same or similar offenses," and "bar the Sheriff's Office from arguing, maintaining, suggesting or offering any evidence or testimony that separation was appropriate for the disciplinary infractions that Taylor was alleged to have committed." In the Court's view, imposition of these sanctions at this time would be premature because the full story concerning why or how these documents were not produced is still developing and will continue to develop through depositions. The Court is willing to revisit the issue at a more appropriate time. Having said that, however, these also may be more appropriate topics to raise with the District Judge who will be trying the case and instructing the jury.

In paragraph (j) of Plaintiff's request for relief, Plaintiff asks the Court for "an award of attorneys' fees and costs." That request presumably relates to the attorneys' fees and costs incurred in filing the Motion for Sanctions. The Court declines to award Plaintiff these fees and expenses. First, as discussed in this Order, the Court is largely denying Plaintiff's request for the laundry list of sanctions he sought in his Motion. Second, the sanction that the Court is imposing, that Defendant Sheriff's Office pay Plaintiff's attorney's fees and costs incurred in reconvening certain depositions, is not actually one of the sanctions Plaintiff requested in his Motion other than in the catchall request for any other appropriate sanctions discussed immediately below. Third, the Motion for Sanctions [ECF No. 237] was filed about a week before Plaintiff filed a motion to compel Defendants to produce the Offense Table [ECF No. 244] which to some extent put the sanctions cart before the horse. Fifth, there appears to be a dispute about what occurred during the

7

Local Rule 37.2 conference that preceded the filing of the Motion for Sanctions and, specifically, whether Defendants refused to produce the Offense Table in this case or only refused to do so before a confidentiality order was entered.[5] For these reasons, in its discretion, the Court declines to award Plaintiff the attorneys' fees and costs incurred in filing his Motion for Sanctions.

Finally, in paragraph (k) of Plaintiff's request for relief, Plaintiff asks the Court to "impose other appropriate sanctions including any of the orders listed." As discussed above, in the exercise of its discretion, the Court is ordering Defendant Cook County Sheriff's Office to pay the costs of reconvening depositions necessitated by the non-disclosure of the Offense Table as well as Plaintiff's attorney's fees (for one attorney) to attend those depositions, including but not limited to the deposition of Defendant Ways. This applies to depositions that Defendants agree should be reconvened and others that the Court may order be reconvened. The Court does not at this time believe it is appropriate to impose other sanctions or that the issue of other sanctions is ripe at this point in time for the reasons discussed above.

Accordingly, for all these reasons, Plaintiff's Motion for Sanctions [237] is granted in part and denied in part.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: August 28, 2018

---

[5] The Court recognizes Plaintiff opposes Defendants' request that the Offense Table be treated as a confidential document. [ECF No. 268.]