# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PERCY R. TAYLOR, | ) |
| Plaintiff, | ) |
| v. | ) No. 13-cv-01856 |
| | ) Judge Andrea R. Wood |
| COOK COUNTY SHERIFF'S OFFICE, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Percy Taylor has brought this lawsuit against Defendants Cook County Sheriff's Office ("CCSO"), Sheriff Thomas Dart, Gregory Ernst, Patrick Fitzgerald, the Estate of Patrick Murphy, Michael K. Smith, Joseph Ways, Zelda Whittler, and Cook County, alleging that they discriminated against him due to his race and his support for Dart's political opponent, retaliated against him for filing charges with the Equal Employment Opportunity Commission ("EEOC") and this lawsuit, maliciously prosecuted him, and breached their employment contract. Now before this Court are Defendants Ernst, Fitzgerald, and Murphy's ("OPR Defendants") motion to dismiss the Third Amended Complaint ("TAC") (Dkt. No. 123), Defendants CCSO, Dart, Smith, Ways, and Whittler's ("CCSO Defendants") motion to dismiss the TAC (Dkt. No. 127), and Taylor's motion for leave to file a Fourth Amended Complaint ("FAC") (Dkt. No. 212).

## BACKGROUND

For purposes of the present motions to dismiss, this Court accepts the facts alleged in the TAC as true and draws all inferences in Taylor's favor.[1] *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014).

---

[1] The present lawsuit consolidates claims originally brought in this Court in three separate actions: Nos. 1:13-cv-06512, 1:13-cv-01856, and 1:15-cv-05919.

Taylor, an African American, was employed as a police officer for the CCSO. (TAC ¶ 4, Dkt. No. 111.) In 2010, he supported and campaigned for Dart's political opponent in the Cook County Sheriff's election. (*Id.* ¶¶ 26, 27.) Defendants were aware of Taylor's support for Dart's opponent. (*Id.* ¶ 28.) On November 2010, Taylor's candidate lost the election to Dart. (*Id.* ¶ 29.)

Around March 8, 2011, an individual contacted the Chicago Police Department ("CPD") accusing Taylor of shooting a BB gun at the car occupied by the individual. (*Id.* ¶¶ 30, 31.) The accuser told the CPD that he had personal disputes with Taylor. (*Id.* ¶ 32.) CPD officers came to the scene and investigated the incident, but they made no arrests and closed the investigation after speaking with the accuser. (*Id.* ¶¶ 31, 33, 34.) The officers did, however, report the incident to the CCSO. (*Id.* ¶ 35.) The next day, investigators from the CCSO's Office of Professional Review ("OPR"), Ernst, Fitzgerald, and Murphy, came to Taylor's home and arrested him. (*Id.* ¶ 37.) They handcuffed Taylor and placed him in the backseat of a freezing car for more than an hour while his wife and children watched, then brought him to an OPR office and interrogated him for 30 hours. (*Id.* ¶¶ 38, 39, 42.) On March 10, 2011, Taylor was stripped of his police powers and de-deputized. (*Id.* ¶ 51.) Then, on March 18, 2011, Taylor learned that a criminal complaint had been initiated against him. Fitzgerald, along with another investigator, took Taylor for processing, and Ernst made false statements that caused Taylor's arrest and prosecution. (*Id.* ¶¶ 47, 48.) But the criminal proceeding against Taylor was subsequently dismissed. (*Id.* ¶ 50.) A pre-termination hearing was held on or about March 22, 2011, charges against Taylor were sustained, and he was suspended with pay. (*Id.* ¶¶ 52, 53.)

On October 21, 2011, another individual, a deputy sheriff, filed a misdemeanor complaint against Taylor. (*Id.* ¶ 55.) That individual, acting in concert with the CCSO and OPR, falsely

accused Taylor of grabbing and twisting his hand on September 16, 2011. (*Id.* ¶¶ 55, 56.) The lawsuit went to trial and Taylor was found not guilty on April 12, 2012. (*Id.* ¶ 57.)

On March 18, 2013,[2] after Taylor filed the present suit, the CCSO and Dart, through his undersheriff Whittler, filed a complaint with the CCSO's Merit Board alleging that on September 26, 2011, Taylor violated CCSO rules and regulations.[3] (*Id.* ¶ 61.) The complaint sought Taylor's termination. (*Id.* ¶ 62.)

The Merit Board subsequently conducted a hearing concerning the March 8, 2011 incident. (*Id.* ¶ 65.) On October 30, 2013, at the end of the hearing, the Merit Board terminated Taylor. (*Id.* ¶ 66.) Taylor filed a complaint for administrative review of his termination in the Circuit Court of Cook County. (*Id.* ¶ 67.) The state court initially affirmed the decision to terminate Taylor, but then reversed and vacated it on a motion for reconsideration on August 19, 2014. (*Id.* ¶¶ 68, 69.) An appeal followed. (*Id.* ¶ 71.)

Other charges were instituted against Taylor on November 5, 2014, and a hearing was set for November 24, 2014. (*Id.* ¶ 72.) On December 31, 2014, a motion to reinstate prior complaints, including the one filed on March 18, 2013, was filed with the Merit Board. (*Id.* ¶ 73.) Taylor alleges that Defendants did so in retaliation for his filing of EEOC charges and lawsuits. Among other acts in furtherance of the alleged conspiracy against him, Taylor claims that Fitzgerald, Ernst, Murphy, and Ways conducted or approved a sham investigation that was used to initiate the termination proceedings in 2014; Dart, Whittler, Smith, and Ways ratified the sham investigation

---

[2] The TAC lists two different dates for the filing of the Merit Board complaint: March 18, 2013 and March 15, 2013. (TAC ¶¶ 61, 63, 64.) In the proposed FAC, Taylor lists the March 18, 2013 date. (FAC ¶ 75, Dkt. No. 212-1.)

[3] While the TAC does not provide any details regarding the September 26, 2011 incident, the proposed FAC alleges that Taylor was accused of verbally threatening Sheriff's Deputy Guerrero. (FAC ¶ 76.)

and recommended Taylor's termination; and Dart and Whittler filed the Merit Board complaints seeking termination, which was ultimately approved. (*Id*. ¶¶ 74–77.)

In the nine-count TAC, Taylor brings a race discrimination claim against the CCSO under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. (Count I); a claim against all Defendants for violation of his equal protection rights under the Fourteenth Amendment to the United States Constitution and rights to free speech and free association under the First Amendment, pursuant to 42 U.S.C. § 1983 (Count II); a retaliation claim against all Defendants pursuant to § 1983 due to Taylor's filing of the present suit (Count III); a retaliation claim against the CCSO under Title VII (Count IV); a claim against all Defendants for violation of his equal protection rights pursuant to § 1983 (Count V); a claim against all Defendants for violation of his First Amendment rights (Count VI); a state malicious prosecution claim against all Defendants (Count VII); a breach of contract claim against the CCSO and Dart (Count VIII); and an indemnification claim against Cook County (Count IX).

The CCSO Defendants and OPR Defendants now move to dismiss the TAC pursuant Federal Rule of Civil Procedure 12(b)(6). Taylor opposes the motions and asks for leave to amend the complaint again to include events that occurred after the TAC was filed and to update and clarify allegations based on information uncovered during discovery.

**DISCUSSION**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facts that are "merely consistent with" a defendant's liability and conclusory statements are, by themselves, insufficient. *Id*. at 678 (citing *Twombly*, 550 U.S. at 557). Instead, a claim can

4

be considered plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

## I. Defendants' Personal Involvement

Defendants first contend that all Taylor's § 1983 claims (found in Counts II, III, V, and VI) are inadequately pleaded because Taylor does not sufficiently allege each Defendant's personal involvement and instead impermissibly "lumps" together allegations against various Defendants.

For personal liability claims pursuant to § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). But the requirement can be satisfied if the conduct causing the constitutional deprivation occurs at the defendant's direction or with the defendant's knowledge and consent. *See id.*; *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

Defendants argue that Taylor's § 1983 claims must be dismissed or his allegations stricken because in several paragraphs, Taylor uses the term "Defendants" without attributing specific conduct to any particular individual or group of individuals. But while failure to include any specific, individualized allegations regarding defendants may warrant dismissal of a complaint in some circumstances, *see, e.g., Montalvo v. Adreani*, No. 10 C 7044, 2011 WL 3704795, at *2 (N.D. Ill. Aug. 19, 2011), dismissal is not necessary here. The TAC does use the generalized term "Defendants" in certain parts, but when it does the surrounding allegations clarify which individuals are responsible for the alleged actions. For example, while paragraphs 62–64 state in a generalized manner that "Defendants" sought Taylor's removal and filed a complaint against him with the Merit Board, paragraph 61 clarifies who made the filing—"the Sheriff's Office and Sheriff Dart by and through his Undersheriff Defendant Whittler." Similarly, while paragraph 66

5

alleges in a generalized manner that "Defendants" terminated or assisted in terminating Taylor, paragraph 65 explains that the Merit Board complaint was related to the investigation of the March 8, 2011 incident and paragraphs 37–55 describe what certain individuals did during the investigation. Likewise, while paragraphs 72 and 78 allege that "Defendants" instituted and sustained other charges against Taylor, paragraphs 75–77 clarify that Dart and Whittled filed the complaint, Fitzgerald, Ernst, Murphy, and Ways conducted or approved the sham investigation, and Dart, Whittler, Smith, and Ways ratified it and recommended Taylor's termination.

As to paragraph 71, which alleges that "Defendants filed an appeal of the Chancery Court's decision," it appears that Taylor proposes to abandon that allegation with the filing of his FAC. The issue identified with respect to paragraph 73 is also resolved in the proposed FAC—Taylor specifies that it was Dart who filed a motion to reinstate the complaint with the Sheriff's Merit Board. (FAC ¶ 91.)

Regarding the use of the generalized term "Defendants" in the paragraphs summarizing Taylor's claims (*See* TAC ¶¶ 99–106, 108, 115–117, 124, 125, 127, 128, 130–133, 135, 137, 138 & 140), the TAC appears to use the term fluidly as a reference to the specific individuals and their actions described in the preceding paragraphs. (*See id.* ¶¶ 98, 112, 118, 123, 129, 136 (incorporating various preceding paragraphs by reference).) As a result, most of Taylor's allegations specify which individuals performed the actions and the other allegations are not pursued in the FAC. *Cf. Taylor v. Cook County Sheriff's Office*, 2015 WL 1428920, at *3 (N.D. Ill. Mar. 26, 2016) (stating that the allegations in Taylor's complaint are sufficient to state claims for § 1983 relief against Dart, Ernst, Fitzgerald, and Murphy).[4]

---

[4] Taylor argues that Defendants' motions to dismiss must be denied under the law of the case doctrine in view of this Court's prior rulings. But the doctrine is an expression of a preferred practice rather than a limit on courts' discretion to revisit their earlier decisions. *See Carlson v. Northrop Grumman Corp.*, 196 F. Supp. 3d 830, 834 (N.D. Ill. 2016) (citing *Monfils v. Taylor*, 165 F.3d 511, 520 (7th Cir. 1998)). And

6

Defendants also contend that the TAC is almost silent as to the OPR Defendants' involvement in the alleged violations in general and, specifically, with respect to their involvement in the events relating to the September 16, 2011 incident. But the TAC alleges the OPR Defendants' involvement in the investigation of the March 8, 2011 incident, including Ernst's false statements that caused Taylor to be arrested and prosecuted and the OPR Defendants' performance or approval of a sham investigation that was used to initiate the termination proceedings against him. As to the September 16, 2011 incident, the TAC alleges that the OPR acted "in concert" with the individual who accused Taylor of misconduct.[5] (TAC ¶ 56.) Hence, the TAC sufficiently describes the OPR Defendants' engagement in certain actions. *Cf. Taylor*, 2015 WL 1428920 at *3.

Defendants further argue that Dart, Smith, Ways, and Whittler cannot be held liable for the conduct of the OPR Defendants as there is no *respondeat superior* liability under § 1983. But when read in the light most favorable to Taylor, the TAC does not allege *respondeat superior* liability; instead, it alleges that Dart, Smith, Ways, and Whittler ratified the OPR Defendants' sham investigation and recommended Taylor's termination, and Whittler assisted with filing the Merit Board complaint against Taylor.

---

that discretion permits a court to reconsider a prior ruling if a compelling reason exists. *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 572 (7th Cir. 2006). Furthermore, the doctrine does not apply if the precise issue before a court has not been previously decided. *See Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 903 (7th Cir. 2010). The majority of the issues raised in the Defendants' motions were not previously considered by the Court. The Court cites its prior opinions in the few instances where the issues were arguably considered by the Court in its prior decisions.

[5] The FAC further explains that OPR investigators, including Ernst, talked to the accuser, urged him to file a complaint against Taylor containing false accusations, and even drafted the complaint. (FAC ¶¶ 69, 71.)

## II. Political Association Claims

The Court next examines Taylor's claims related to his political activities (Counts II and VI).

An individual's political affiliations enjoy First Amendment protection. *See Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). To state a claim for violation of the First Amendment, a plaintiff must show that: (1) his speech was constitutionally protected; (2) he suffered a deprivation likely to deter free speech; and (3) his speech caused the adverse action. *See id.* at 900. To demonstrate causation, a plaintiff must show that the defendant knew of his political affiliation. *See id.*

Defendants argue that Taylor fails to plead causation adequately as he fails to allege that they knew about his political activities and the OPR Defendants' actions took place months after those activities. But Taylor does allege that he campaigned for Dart's political opponent, Defendants knew about Taylor's campaign activities, and Taylor's troubles began only four months after Dart won the election. (TAC ¶¶ 26, 28, 30.) At the pleading stage, this is enough. Furthermore, if he is permitted to amend his complaint again, the proposed FAC suggests that Taylor will be able to strengthen the alleged causal link between his activities and adverse actions against him by alleging that he attended events with Dart's opponent where Dart and other CCSO senior officials were present, his name and voice appeared in a radio commercial for Dart's opponent, Fitzgerald was told of his support for Dart's opponent, OPR investigators searched the Internet for his political affiliations as part of their investigation, and Ernst stated that they "got to get" him when Ernst heard about his support for Dart's opponent. (FAC ¶¶ 28–32, 60, 61.)

The OPR Defendants also argue that they acted consistently with their official duties and had probable cause to arrest Taylor, so Taylor fails to allege causation. But even if the OPR Defendants had probable cause to arrest Taylor, that would not necessarily preclude the

8

conclusion that they acted in a retaliatory manner, considering the manner in which the arrest was executed. Furthermore, "[p]robable cause is a determination made from assessing whether, based on the facts and circumstances at the time of the arrest, a reasonable officer would conclude that the suspect has committed or is committing a crime." *See Matthews v. City of E. St. Louis*, 675 F.3d 703, 706 (7th Cir. 2012). When there is room for differences of opinion on facts or reasonable inferences, the probable cause question should be determined by a jury. *See Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1057 (7th Cir. 2011). Here, the TAC alleges that before the OPR Defendants got involved, the CPD investigated the March 8, 2011 incident, closed the investigation, and made no arrests. The police officers knew that Taylor's accuser had personal disputes with Taylor in the past. And it was the CPD who informed the CCSO about the incident. Thus, the TAC raises questions about the credibility of Taylor's accuser and his claims and does not foreclose the existence of a causal nexus between the OPR Defendants' actions and Taylor's political activity. It would be premature for this Court to determine that the OPR Defendants did not act in retaliatory manner, but simply acted pursuant to their official duties and had probable cause to arrest Taylor.[6] With respect to the September 16, 2011 incident, the TAC alleges that the OPR Defendants acted "in concert" with Taylor's accuser, who filed a complaint containing false allegations over a month after the incident. Thus again, Taylor's allegations do not foreclose the existence of a casual nexus between his political activities and the OPR Defendants' actions.

### III. Retaliation Claims Concerning the EEOC Charges and the Present Lawsuit

The Court next examines Taylor's retaliation claims relating to Taylor's filing of the EEOC charges and the present lawsuit (Counts III, IV, and VI).

---

[6] For the same reasons, the Court rejects the OPR Defendants' argument that they are entitled to qualified immunity because they had probable cause and were simply acting pursuant to their official duties.

9

For a public employee to plead a First Amendment retaliation claim against his employer, the plaintiff must allege that his speech was constitutionally protected, he suffered a deprivation likely to deter free speech, and his speech was at least a motivating factor in the employer's actions.[7] *See Peele v. Burch*, 722 F.3d 956, 959 (7th Cir. 2013); *see also Spalding v. City of Chi.*, 24 F. Supp. 3d 765, 775 (N.D. Ill. 2014). For the public employee's speech to be constitutionally protected, it must involve a matter of public concern. *Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 984 (7th Cir. 2013) ("*Kristofek I*"). Whether a plaintiff's speech rises to the level of public concern is a question of law that is determined based on the statement's content, form, and context. *See id.* at 984. The content of the speech is the most important factor. *Id.* Speech rises to the level of public concern when it can be fairly considered as relating to matters of political, social, or other concern to the community or when it is a subject of legitimate news interest. *See Kristofek v. Vill. of Orland Hills*, 832 F.3d 785, 794 (7th Cir. 2016) ("*Kristofek II*").

Defendants argue that Taylor's First Amendment retaliation claims relating to his filing of the EEOC charges should be dismissed because the charges are simply an expression of Taylor's personal grievances and do not involve matters of public concern. But at this stage, the Court cannot conclude that the content, form, and context of Taylor's EEOC charges did not amount to political or social concerns to the community. The TAC plausibly alleges that Taylor's charges related to such matters of public concern such as retaliation and systemic racial discrimination within the CCSO. Thus, his claims survive at this stage. *Cf. Brown v. Ill. Dep't of Pub. Aid*, 318 F. Supp. 2d 696, 699 (N.D. Ill. 2004) (granting motion to dismiss where the EEOC charges alleged discrimination specific to plaintiff and not systematic discrimination against a class of

---

[7] Likewise, to plead a Title VII retaliation claim, a plaintiff must allege that he engaged in a protected activity and was subjected to an adverse employment action as a result of that activity. *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833 (7th Cir. 2015). In the retaliation context, adverse employment action means an action that would deter a reasonable employee from participating in the protected activity. *Id.*

10

employees); *Wilhelm v. City of Calumet City, Ill.*, 409 F. Supp. 2d 991, 998 (N.D. Ill. 2006) (granting summary judgment in defendants' favor where the EEOC charges addressed discrimination in purely personal terms).

Next, Defendants assert that Taylor's retaliation claims relating to his filing of the present lawsuit should be dismissed because the TAC does not sufficiently allege that the CCSO Defendants knew of the lawsuit when they engaged in the allegedly retaliatory conduct of filing the Merit Board complaint against Taylor. But Taylor does allege that the CCSO learned of the lawsuit before the Merit Board complaint was filed and that the complaint, although related to Taylor's conduct from 18 months earlier, was filed only 10 days after the present lawsuit was filed. Hence, the TAC raises a reasonable inference that the CCSO Defendants knew about the lawsuit when they filed the Merit Board complaint. (*Cf.* Mar. 25, 2015 Order at 3, *Taylor v. Cook County Sheriff's Office*, No. 1:13-cv-06512, Dkt. No. 30 (holding, in the context of Taylor's Title VII claim, that "[w]hether Defendants knew about Taylor's suit in time to have decided to retaliate against him by filing the termination charge is a purely factual question that cannot be resolved at the pleading stage").)

Defendants also contend that Taylor's claims relating to his filing of the EEOC charges and the present suit should be dismissed because he alleges that Defendants retaliated against him by instituting and sustaining charges on November 5, 2014 and filing a motion to reinstate a complaint before the Merit Board on December 31, 2014—actions that occurred more than a year after Taylor filed the present suit. But while a substantial time lapse between the protected activity and the adverse employment action can serve as counter-evidence of any causal connection, *see Filipovic v. K & R Exp. Sys., Inc.*, 176 F.3d 390, 399 (7th Cir. 1999), the TAC alleges that Defendants were far from idle during the intervening time. For example, shortly after the present

case was filed, there was a complaint filed against Taylor in front of the Merit Board, Taylor was then terminated, and his termination was subject to state court review. Therefore, the time lapse between some of the allegedly retaliatory actions and the filing of the present suit does not warrant dismissal of Taylor's claims.

Defendants also point out that the alleged misconduct by the OPR Defendants occurred years before the present suit was filed. But the TAC alleges that the Merit Board hearing concerning the March 8, 2011 incident—that the OPR Defendants investigated—concluded only on October 30, 2013, when Taylor was terminated. Thus, a reasonable inference may be drawn that the OPR Defendants' involvement continued well after the present suit was filed.

Defendants next contend that under 55 ILCS § 5/3-7012, only Dart, in his official capacity, could bring the Merit Board action and only the Merit Board can terminate Taylor. As a result, according to Defendants, the retaliation claims based on the Merit Board proceedings against Taylor should be dismissed as to the other Defendants. But First Amendment retaliation claims are not limited to deprivations in the form of the plaintiff's termination or initiation of an action that may lead to termination. As discussed above, any deprivation likely to deter future protected activities suffices to sustain a retaliation claim. (*See* Mar. 25, 2015 Order at 3, *Taylor v. Cook County Sheriff's Office*, No. 1:13-cv-06512, Dkt. No. 30 ("as in the § 1983 context discussed above, the level of employer response necessary to support a Title VII retaliation claim is not termination; instead, it is action that would have deterred a reasonable employee from engaging in the protected conduct").)

Finally, while no Count in the TAC expressly purports to bring a conspiracy claim, the TAC does allege that Defendants "acted willfully and jointly with one another in furtherance of their unlawful conspiracy to terminate [Taylor's] employment in retaliation for his filing EEOC

charges and lawsuits in federal court against the Sheriff's Office." (TAC ¶ 74.) Defendants appear to read these allegations as an assertion of a civil rights conspiracy claim and argue that the allegations are insufficient to meet the pleading standards for such a claim.

"To establish conspiracy liability in a § 1983 claim, the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). To the extent Taylor brings a conspiracy claim relating to the alleged retaliatory conduct, it survives. To conclude otherwise, this Court would have to ignore the rest of the allegations in the TAC concerning Defendants' coordinated actions—for example, the allegations that the OPR Defendants conducted a sham investigation, the CCSO Defendants ratified it and recommended Taylor's termination, and then Dart, with Whittler's help, filed a complaint against Taylor.

### IV.     Retaliation Claims under the Equal Protection Clause

Defendants read Count II of the TAC as asserting a retaliation claim under the Equal Protection Clause and argue that it should be dismissed because retaliation claims can only be brought under the First Amendment and Title VII. "[T]he right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause." *Boyd v. Illinois State Police*, 384 F.3d 888, 898 (7th Cir. 2004). To the extent Taylor's retaliation claims are brought under the Equal Protection Clause, they are dismissed.

### V.     Race Discrimination Claims

The Court next considers Taylor's race discrimination claims under the Equal Protection Clause (Counts II and V).

A plaintiff asserting an equal protection violation may simply allege, at the pleading stage, that he is a member of a protected class, he is similarly situated to individuals who are not

13

members of his protected class, and he was treated differently from those individuals. *See Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005).

Defendants argue that Taylor's race discrimination claims must be dismissed because he fails to allege that Defendants acted with discriminatory purpose and because the OPR Defendants had legitimate non-discriminatory reasons and probable cause for his arrest. As discussed above, however, the determination of whether Defendants had probable cause to arrest Taylor and acted only pursuant to their official duties cannot be made at this stage. Furthermore, the TAC alleges multiple instances where Taylor's Caucasian co-workers were treated more favorably than Taylor, even though they allegedly committed similar offenses. If filed, the FAC would appear further to strengthen Taylor's position on racial animus by alleging that the OPR Defendants used racial slurs during their investigation of Taylor and one of the OPR Defendants had racially-charged posts on social media. Hence, Defendants' argument fails.

## VI. Statute of Limitations

The Court next evaluates the statute of limitations issue for Taylor's § 1983 claims against Defendants Smith, Ways, and Whittler (Counts II, III, V, and VI).

The limitations period for § 1983 claims is based on state law—in Illinois, it is two years. *O'Gorman v. City of Chi.*, 777 F.3d 885, 889 (7th Cir. 2015). But the date on which the claim accrues (and thus the limitations period starts) is a matter of federal law and generally occurs when a plaintiff knows the fact and the cause of an injury. *Id.* The accrual determination is a two-step process: the court first identifies the injury and then determines when the plaintiff could have sued for that injury. *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011). The running of the statute of limitations is an affirmative defense and dismissal of a complaint on such grounds is typically improper. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004).

But dismissal may be proper if a plaintiff alleges facts sufficient to establish the defense. *O'Gorman*, 777 F.3d at 889.

Defendants argue that Taylor's § 1983 claims against Smith, Ways, and Whittler based on actions predating July 6, 2013 must be dismissed because Taylor did not sue those Defendants until July 6, 2015.[8] Specifically, Defendants argue that any claims associated with the incident on March 8, 2011, Taylor's arrest on March 9, 2011, his de-deputation and suspension, the incident on September 16, 2011, and Whittler's filing the complaint against Taylor with the Merit Board in March 2013 must be dismissed as time-barred. At this stage, it is not clear (and the parties have not identified in their briefs) when Taylor's claims accrued. For example, for the filing of the March 2013 Merit Board complaint, it is unclear when Taylor knew the fact and the cause of his injury. The same is true for the claims related to the other events. Further, the TAC alleges that some of Smith, Ways, and Whittler's actions, such as their ratification of the sham investigation and recommendation of Taylor's dismissal, happened in 2014. (TAC ¶ 76.) Hence, the Court cannot conclude that Taylor's § 1983 claims are time-barred based on the allegations in the TAC.

Defendants also contend that Taylor's claims for malicious prosecution must be dismissed as to Smith, Ways, and Whittler because Taylor was acquitted in April 2012—so any claims for malicious prosecution expired in April 2013, as the Illinois Tort Immunity Act, 745 ILCS 10/8-101(a), imposes a one-year statute of limitations on civil actions brought against local entities or their employees. But these arguments were only raised in the CCSO Defendants' reply to the motion to dismiss, not their initial motion. (*Compare* Defs.' Reply at 5–6, Dkt. No. 159, *with*

---

[8] In their motion to dismiss, Defendants identify July 6, 2015, which is when Taylor initiated his third lawsuit, as the date when Smith, Ways, and Whittler were sued. But Taylor named Smith, Ways, and Whittler as Defendants only in his amended complaint filed on October 2, 2015. (*See* First Am. Compl., *Taylor v. Cook County Sheriff's Office*, No. 1:15-cv-05919, Dkt. No. 10.) This discrepancy makes no difference for purposes of considering the present motions, however, because it is not clear when Taylor's claims accrued and the TAC alleges that some actions took place in 2014.

Defs.' Memorandum at 11, Dkt. No. 128.) Therefore, this Court will not consider the arguments as they are improperly raised.

## VII. Malicious Prosecution Claims

Taylor also brings a malicious prosecution claim against all Defendants (Count VII). For a malicious prosecution claim, a plaintiff must allege commencement or continuance of a criminal or civil proceeding by a defendant, the termination of the proceeding in the plaintiff's favor, absence of probable cause for the proceeding, malice, and damages to the plaintiff. *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996). The absence of any one of those elements bars a plaintiff from pursuing a malicious prosecution claim. *Id.* Defendants argue that the TAC alleges that probable cause existed for Taylor's prosecution arising out of the September 16, 2011 incident, and thus his malicious prosecution claim must be dismissed. As explained above, such a conclusion cannot be reached at this stage.

Defendants further argue that the TAC does not allege their involvement in the events surrounding Taylor's prosecution. But again, as explained above, the TAC alleges that the OPR Defendants acted in concert with Taylor's accuser. And the proposed FAC would further expand upon those allegations to add that the OPR investigators talked to the accuser, urged him to file a complaint containing false accusations, and even drafted the complaint. However, while the TAC generally alleges that Taylor's accuser acted in concert with the CCSO, there are no allegations that Dart, Smith, Ways, or Whittler participated in Taylor's prosecution. Therefore, the malicious prosecution claims related to September 16, 2011 incident are dismissed as to Dart, Smith, Ways, and Whittler. The FAC does not cure the situation. (*See* FAC ¶ 70.) However, Taylor will be granted one last attempt to amend his complaint to correct the deficiency if he is able to do so.

## VIII. Breach of Contract Claims

Moving to Taylor's breach of contract claim against CCSO and Dart (Count VIII), to prove breach of contract under Illinois law, a plaintiff must establish an offer, acceptance, consideration, the terms of the contract, plaintiff's performance, defendant's breach of the terms of the contract, and damage resulting from that breach. *Valenti v. Qualex, Inc.*, 970 F.2d 363, 366 (7th Cir. 1992) (citing *Penzell v. Taylor*, 579 N.E.2d 956, 961 (Ill. 1991)). Defendants argue that Taylor's breach of contract claim should be dismissed because it fails to identify a single contract or collective bargaining agreement provision that was allegedly breached. As this Court already explained in its prior opinion, however, "Taylor's complaint identifies the document he claims to be the basis for his breach of contract claim and as well as the substance of the claimed breach." *Taylor*, 2015 WL 1428920, at *4. Such allegations satisfy the notice pleading standard to state a claim for breach of contract under Illinois law. *Id.* Furthermore, the TAC identifies at least one provision breached—the provision encompassing the topic that "non-exempt employees will not be subjected to any unlawful political discrimination." (TAC ¶ 21.)

Defendants also argue that Taylor's breach of contract claim is preempted by § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. Preemption under § 301 operates in the following way: if the resolution of a state law claim depends upon the meaning of a collective bargaining agreement, the application of state law is preempted and federal labor law principles govern resolution of the dispute. *See Smith v. Colgate-Palmolive Co.*, 943 F.2d 764, 768 (7th Cir. 1991). But even if the plaintiff's cause of action lies under § 301, the state claim is not automatically dismissed—rather, a court considers whether plaintiff can maintain an action under that provision. *See id.* at 771. In the present case, Taylor alleges that Cook County and Dart breached the Employment Plan implemented by the CCSO, which sets forth the general principles, policies, and procedures of applicants and employees of the CCSO. (TAC ¶¶ 20, 21,

17

142, 144, 145.) At the pleading stage, it is unclear whether Taylor's claim depends upon the meaning of a collective bargaining agreement or even whether the Employment Plan constitutes a collective bargaining agreement. Therefore, preemption cannot be decided at this stage.

## IX. Duplicative Counts

The Court next considers whether the TAC contains duplicative claims in Counts II, V, and VI. Under Federal Rule of Civil Procedure 12(f), a district court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." District courts have considerable discretion in deciding motions to strike. *See Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). Motions to strike are generally disfavored, however, as they may serve only to delay the proceedings. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). But where a motion to strike removes unnecessary clutter from the case, it may be warranted as it could expedite, not delay, the case. *Id*.

Defendants argue that Counts V and VI should be stricken as duplicative of Count II. Taylor does not respond to this argument. Count II of the TAC purports to assert a § 1983 claim against all Defendants for "civil rights violations," and includes allegations related to race discrimination and Taylor's political association. Count V purports to be § 1983 claim for "violation of equal protection," which is based on race discrimination. Both counts reference the same paragraphs describing Defendants' conduct. So portions of Count II related to race-based discrimination are duplicative of Count V (the same is true for the FAC). Therefore, the portion of Count II related to race-based discrimination that is duplicative of Count V is stricken.

Count VI is a claim for "violation of First Amendment," which appears to encompass allegations related to Taylor's political association.[9] Thus, again, there is overlap with Count II to

---

[9] The TAC also contains Count III that concerns defendants' retaliation for filing the present suit.

the extent Count VI concerns Taylor's political association (the same can be said for the FAC). Therefore, Count VI is stricken to the extent it relates to Taylor's political association claims.

## CONCLUSION

For the reasons stated above, the OPR Defendants' and CCSO Defendants' motions to dismiss the TAC are granted in part and denied in part. The motions are granted with regard to the following: (1) to the extent Taylor's retaliation claims in Count II are brought under the Equal Protection Clause, they are dismissed; (2) the malicious prosecution claims in Count VII related to the September 16, 2011 incident are dismissed as to Defendants Dart, Smith, Ways, and Whittler; (3) the portion of Count II concerning race-based discrimination that is duplicative of Count V is stricken; and (4) Count VI is stricken to the extent it relates to Taylor's political association claims. Taylor's motion for leave to file a further amended complaint is granted. Taylor will be given one final opportunity to amend his complaint. Rather than filing his proposed FAC, however, Taylor should consider preparing and filing a new fourth amended complaint that not only adds the allegations contained in his proposed FAC but also addresses the deficiencies discussed in this opinion. The Court does not expect to entertain further any requests for amendment.

ENTERED:

Dated: September 30, 2018

_____
Andrea R. Wood
United States District Judge