**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PERCY R. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 1856 |
| | ) | |
| v. | ) | The Honorable Andrea R. Wood |
| | ) | Judge Presiding |
| | ) | |
| COOK COUNTY SHERIFF'S OFFICE, *et al.,* | ) | Jeffrey T. Gilbert |
| | ) | Magistrate Judge |
| Defendants. | ) | |

***PLAINTIFF'S MOTION TO RECONSIDER THE COURT'S OCTOBER 24, 2017 RULING***
***AND FOR AN ORDER REQUIRING DEFENDANT THOMAS DART TO SIT FOR***
***DEPOSITION BASED ON NEWLY DISCOVERED EVIDENCE***

Plaintiff, Percy R. Taylor ("Taylor"), pursuant to Federal Rules of Civil Procedure 54(b) and 37, moves this Honorable Court to reconsider its October 24, 2017 ruling denying Plaintiff's request to depose Defendant Thomas Dart and for an order requiring Sheriff Dart to sit for deposition based on newly discovered evidence. In support of this Motion Plaintiff states:

## I.    *NATURE OF MOTION*

On October 24, 2017, the Court denied Taylor's request to depose Defendant Thomas Dart (Transcript of Proceedings from 10/24/17, pp. 29-30, attached hereto as Exhibit 1). The Court found that it did not have "enough now to compel the deposition." *Id*., p. 29. The Court stated that "if [Dart] was involved in decisions involving Mr. Taylor, then it would be appropriate to depose him, and it would distinguish this case from the thousands of other cases in which people have tried to sue Sheriff Dart, properly or improperly." *Id*.

The Court ruled: "I will leave the option open if he has personal knowledge of facts that are relevant to the case." *Id*. The Court stated: "The parties can raise this issue again as the record is developed here." *Id*., p. 30.

1

Newly discovered evidence establishes Sheriff Dart's personal knowledge of the facts and his personal involvement in Taylor's disciplinary proceedings. Plaintiff's counsel very recently learned from former Assistant General Counsel to the Sheriff's Police Department, John N. Maher, that Sheriff Dart has personal knowledge of facts that are relevant to the case. Attached hereto as Exhibit 2 is a Declaration from John Maher. Attorney Maher attended Taylor's March 22, 2011 Loudermill hearing on behalf of the Sheriff's Office. *Id.*, ¶ 4.

Under penalty of perjury, Attorney Maher declares:

Directly after the *Loudermill* Board determined that Percy Taylor would still be paid his regular salary pending any charges before the Cook County Sheriff's Merit Board, I was standing in the hallway at the Maywood "Square," as the Sheriff's Police Headquarters was known, and overhead a conversation between Chief Holbrook and Deputy Chief Smith. I was passing from my office into the hallway. I heard Chief Holbrook tell Deputy Chief Smith words to the effect of "the Sheriff and Zelda [Whittler] are not happy with the outcome of the Board." Chief Holbrook also stated words to the effect of "downtown sees it one way, and we on the ground doing the job each day see it the right way." "Downtown" was commonly referred to and understood as the Sheriff, the Undersheriff, and the Sheriff's Chief of Staff, Brian Towne.

(Maher Declaration, ¶ 7).

Attorney Maher's Declaration also shows that someone forged John Maher's name to an important piece of evidence, a "to--from" March 11, 2011 memo, showing that the charges against Taylor had been already been sustained three days after the alleged bb-gun incident, 11 days prior to the Loudermill hearing and well prior to the completion of the Sheriff's Office of Professional Review's ("OPR") investigation.[1] *Id.*, ¶ 9. A copy of the March 11, 2011 Memo is attached hereto as Exhibit 3. The Memo says that John Maher authored the document and is

---

[1] Joseph Ways, the Executive Director of the Sheriff's Office of Professional Review ("OPR"), sustained the disciplinary charges on April 18, 2018.

written on OPR letterhead. *Id*. However, Mr. Maher states that he never used OPR letterhead and states that he did not prepare the document (Maher Declaration, ¶ 9).

Attorney Maher "perceived significant inadequacies in the internal OPR investigation into Percy Taylor in connection with an alleged BB-gun incident, his purported failure to report a 1999 DUI arrest in Missouri, and an alleged 2000 DUI conviction from a 1999 Missouri arrest." *Id*., ¶ 5. *Loudermill* Hearings are conducted, after an OPR investigation is completed, into allegations where management seeks to deprive an officer of his or her rights before appearing before the Cook County Sheriff's Merit Board. *Id*., ¶ 6. Mr. Maher declares that "[i]n Taylor's case, management insisted that the hearing be conducted before all reasonable investigative leads were pursued and finalized, which [he] believe[s] is unusual and not consistent with practice and procedure and accepted due process." *Id.*

## II. JOHN MAHER'S DECLARATION WARRANTS REOPENING FACT DISCOVERY TO ALLOW PLAINTIFF TO DEPOSE SHERIFF DART

John Maher's Declaration provides a compelling basis to compel Sheriff Dart to submit to a deposition. Chief of the Sheriff's Police Department, Dewayne Holbrook told Deputy Chief Smith that "the Sheriff and Zelda [Whittler] are not happy with the outcome of the Board." (Maher Declaration, ¶ 7). This shows that Sheriff Dart had personal involvement and knowledge of the case against Taylor. Further, Chief Holbrook's statement that "downtown sees it one way, and we on the ground doing the job each day see it the right way" with "downtown referring to the Sheriff, Undersheriff and the Sheriff's Chief of Staff also shows that Sheriff Dart was personally involved and interfered in Taylor's disciplinary proceedings.

The fact that management insisted that the *Loudermill* hearing be conducted before the completion of OPR's investigation strongly suggests that the Sheriff was personally involved in Taylor's case. The evidence set forth in Attorney Maher's Declaration is extremely important for

3

it substantiates Taylor's claim that OPR's investigation was a sham and the fix was in from the start. Taylor should be permitted to question Defendant Dart on these and other matters.

A party may not be deprived of discoverable information simply because of the official's status. *Shultz v. Dart*, 2015 WL 4934552, at *2 (N.D. Ill. Aug. 18, 2015); *see also, Clinton v. Jones,* 520 U.S. 681, 703–05 (1997) (citing cases in which a President of the United States was required to provide testimony). In *Shultz*, Judge Feinerman ordered Sheriff Dart to appear for deposition finding that that Sheriff Dart may have discoverable information. *Shultz*, 2015 WL 4934552, at *2; *Shultz*, Case No. 13 cv 3641, Docket #48, 4/15/14 Order, a copy of the April 15, 2014 order in *Shultz* is attached hereto as Exhibit 4).

Sheriff Dart has discoverable information related to Taylor's case and he should be required to sit for deposition. Sheriff Dart is not above the law and his position does not immunize him from being deposed when the facts show that he has relevant information to Taylor's underlying claims.

### III.   ADDITIONAL EVIDENCE OF SHERIFF DART'S INVOLVEMENT REQUIRES THE SHERIFF TO SIT FOR DEPOSITION

Much has occurred since October 24, 2017. The parties have taken more than twenty (20) depositions and Taylor has uncovered other evidence necessitating the deposition of Sheriff Dart. John Maher's declaration, by itself, demonstrates Dart's personal knowledge of facts relevant to the case requiring him to sit for deposition. There is other compelling evidence to require the Sheriff's deposition.

It is undisputed that the highest levels of the Sheriff's Office were personally involved in Taylor's case. Undersheriff Whittler in a letter dated April 14, 2011 to Chief Holbrook states:

Dear Chief Holbrook,

4

> ***Pursuant to our discussion regarding Officer Percy Taylor on April 12, 2011*** and the Loudermill Hearing Board's recommendation, I do not concur with the recommendation of suspension with pay.
> * * *

(Undersheriff Whittler's April 14, 2011 letter, Exhibit 5, emphasis added).

The letter shows that Undersheriff Whitter personally spoke to Chief Holbrook on April 12, 2012. Moreover, Sheriff Dart's Chief of Staff, Brian Towne, and Dart's Deputy Chief of Staff, Mary Kay Moore, are copied on Ms. Whittler's April 14, 2011, letter, as are First Assistant Chief Deputy Sheriff, Kevin Connelly, and Director of Personnel, Rosemarie Nolan. On this basis alone, it is reasonable to conclude that Sheriff Dart was involved in Taylor's case. Dart's personal involvement in Officer Taylor's case is even more certain, when we add the Chief Holbrook's statement that the Sheriff and Zelda Whittler are not happy with the outcome of the Board. Ms. Whittler's April 14, 2011, letter and the other evidence set forth in John Maher's declaration, and in this motion, are evidence that shows that Sheriff Dart wanted Taylor fired before Taylor was even investigated.

Additionally, on April 14, 2011, Chief Holbrook wrote a memorandum to Undersheriff Whittler about Ms. Whittler's letter where the Chief of Police explained numerous deficiencies in OPR's investigation, including the Sheriff's Police Department being "put off time and again in response to requests to view the investigatory file prior to the [Loudermill] hearing," The April 14th memorandum also states:

> [T]he original investigation left too many unanswered questions and appeared incomplete, *i.e.*, the alleged victim's criminal history as it bore on the ultimate question of 'he said, she said;'—as it turned out, Commander Anton, President of the Board, subsequently pulled the alleged victim's arrest/conviction record and it was lengthy."

(A copy of the 4/14/11 Memo is attached hereto as Exhibit 6).

5

Undersheriff Whittler was also copied on another April 14, 2011, Memorandum from John Maher to Percy Taylor (Exhibit 7). The Undersheriff's personal involvement in the Taylor case is puzzling, because at deposition, Ms. Whittler testified that her only role in the discipline of employees was "[o]nce an investigation is concluded, then the case would then go through command channel review, and I was the final signature on command channel review." (Deposition of Zelda Whittler, p. 23, Exhibit 8). The Undersheriff testified: "Like I said, I deal with thousand—thousands of cases." *Id*. pp. 52-53. The looming question is why did the Undersheriff take such a personal interest in the Taylor case involving alleged property damage to an old pickup truck? A plausible, and perhaps the only plausible, answer is that Sheriff Dart wanted Percy Taylor fired.

John Maher's Declaration also shows that an important piece of evidence is a forgery. Taylor has relied on a March 11, 2011 Memo purportedly from John Maher to Taylor stating that the charges "have been <u>SUSTAINED</u> against you by the Office of Professional Review. . ." (Exhibit 3, no emphasis added). As Taylor sets forth in his Fourth Amended Complaint, this memo demonstrates that the entire OPR investigation was a sham (4th Amended Complaint, ¶¶ 56-58, Doc. #294). The alleged bb-gun incident occurred on March 8, 2011 and the so-called OPR investigation was still in its infancy on March 11th when someone within OPR let it slip that the charges had already been "<u>SUSTAINED</u>."

John Maher did not author the March 11, 2011, memorandum (Maher Declaration, ¶ 9, Exhibit 2). Mr. Maher was legal counsel to the Sheriff's Police Department and did not use OPR letterhead, which is the letterhead used for the March 11, 2011 memo. *Id*.; *see also*, Exhibit 3.

Discovery occurring after the Court's October 24, 2017 ruling uncovered other evidence against Sheriff Dart. Current Sheriff's Office employee and former OPR investigator Henry

Hemphill ("Hemphill") provided damaging evidence against Sheriff Dart in a similar case involving Sheriff's Police Officer David Barber ("Barber") (Portions of H. Hemphill's June 27, 2018 deposition is attached hereto as Exhibit 9). In 2011, OPR's Executive Director, Edward Dyner ("Dyner"), assigned Hemphill to investigate allegations that Barber had been discovered sleeping and "they wanted him terminated." (Hemphill Dep., pp. 9-10). Dyner headed the same OPR unit that was in charge of investigating Taylor. *Id.*, p. 10.

When asked who wanted Barber fired, Hemphill answered: "[Dyner] alleged that he had had a telephone conversation with the sheriff, the undersheriff, and the chief of staff, who was Brian Towne at the time." *Id.,* pp. 11-12. The statement that the Sheriff wanted Barber fired occurred before the investigation even started. *Id.* p. 29. Hemphill felt pressured that he had to come up with the recommendation that Barber be terminated and feared for his job if he did not come to that conclusion. *Id.* p. 14.

When asked why the Sheriff, the Chief of Staff and Dyner wanted Barber terminated, Hemphill answered:

> I'm not armed with any facts to that, however, I had a conversation with Edward Dyner afterwards, after probing him that, 'Hey, this doesn't make sense—it doesn't make sense. What's going—is there something else going on here?' And he made a reference or implied that David Barber had some type of racial discrimination complaint pending.

(Hemphill Dep., p. 35).

Hemphill's testimony that Sheriff Dart and Undersheriff Whittler wanted David Barber fired before the OPR investigation began, lends additional support for deposing Sheriff Dart in this case. The facts and circumstances of David Barber's case are strikingly similar to Percy Taylor. Like Barber, Dart and Whittler wanted Officer Taylor fired before OPR's completion of its investigation.

Also, like Taylor, Barber was a Sylvester Baker ("Baker") supporter who ran in elections for Cook County Sheriff against Dart in 2006, 2010 and 2014. (Plaintiff's Supp. Rule 26(a)(1) Disclosure for David Barber, Exhibit 10). Taylor alleges that he was discriminated and retaliated against for supporting Baker (Taylor's Fourth Amended Complaint, ¶¶ 25-31, ¶¶ 143-56 Doc. #294). Both Taylor and Barber are alleging racial discrimination and retaliation claims (a copy of Barber's Third Amended Complaint is attached hereto as Exhibit 11). Dyner was in charge of the same OPR unit that investigated Taylor. Both OPR investigations occurred in 2011.

The evidence surrounding David Barber is admissible in this case under Federal Rule of Evidence 404(b). *See*, *Hill v. City of Chicago*, 2011 WL 3840336 (N.Dist.Ill. 8/30/11). The evidence is directed toward establishing matters at issue other than Defendants' propensity to commit the conduct in question; the evidence shows that the other acts are similar and close enough in time to be relevant to matters at issue in this case; the evidence is sufficient to support a jury finding that the Defendants committed similar acts; and the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice under Rule 403. Taylor should be able to ask Sheriff Dart questions regarding David Barber.

Such evidence of other bad or wrongful acts is also admissible for other purposes including motive, intent, plan, or opportunity under Rule 404(b). *Okai v. Verfuth*, 275 F.3d 606, 610 (7th Cir. 2001). The evidence is also admissible to show preparation, knowledge, identity, or absence of mistake or accident. *See*, *Lanigan v. Babusch*, 2011 WL 5118301, at *2 (N.D.Ill. Oct. 27, 2011).

Furthermore, Taylor's support of Baker was common knowledge within the Sheriff's Office. (Taylor Deposition, 1/22/16, pp. 57-72, Exhibit 12). Taylor was a driver for Baker and attended campaign events. *Id*., pp. 59-60; David Evans Deposition, 4/30/18, pp. 25-27, Exhibit

8

13). Sheriff Dart was at several events. (Evans Dep., pp. 27-28). David Evans, another Sheriff's Office employee who supported Baker, personally attended slatings in 2010 where Sheriff Dart was present in company of Taylor and Evans. *Id.*, p. 29. Taylor and Evans appeared in Baker radio commercials in 2010 where Taylor was named in the commercials. (Evans Dep., pp. 31-33). Taylor's name was out all over the radio in support of Baker. *Id.*

Taylor personally spoke to Sheriff Dart at a campaign event in 2006. (Taylor Dep., p. 94, Exhibit 12). Taylor said "my name is Percy Taylor. I work at the Cook County Sheriff's Police Department." *Id.*, p. 95. Dart responded: "that the people in the police department are going to be so fucked." *Id.*

Taylor should be permitted to depose Sheriff Dart. This Court unequivocally stated, "if [Dart] was involved in decisions involving Mr. Taylor, then it would be appropriate to depose him, and it would distinguish this case from the thousands of other cases in which people have tried to sue Sheriff Dart, properly or improperly." (Exhibit 1, p. 29). Percy Taylor has presented evidence that the Sheriff was involved in the decision involving Taylor. In addition, this Motion offers evidence of Dart's personal knowledge of relevant facts.

### IV. TAYLOR'S PRODUCTION OF JOHN MAHER'S DECLARATION AND TAYLOR'S SUPPLEMENTAL RULE 26(a)(1) DISCLOSURE OF JOHN MAHER WERE TIMELY UNDER THE CIRCUMSTANCES

Plaintiff expects that the Defendants will argue that the Court should not consider John Maher's Declaration because it was produced after the close of fact discovery.[2] Such an objection would be disingenuous under the circumstances. On February 1, 2019, the same day Plaintiff received John Maher's declaration, Plaintiff supplemented his Rule 26(a)(1) disclosure to include Mr. Maher. (Exhibit 14). Plaintiff previously listed John Maher on in his initial Rule

---

[2] Fact discovery is still open with respect to Plaintiff's Rule 30(b)(6) deposition(s) and for the conclusion of George Avet's deposition.

26(a)(1) disclosures dated August 31, 2015. (Exhibit 15). At the request of defense counsel, and in an effort to limit the number of witnesses, Plaintiff did not include Mr. Maher as part of his supplemental disclosures because the March 11, 2011, memorandum is admissible as a business record and at the time Plaintiff had no reason to believe that Mr. Maher would add anything more.

Defendants did not disclose John Maher as a person with knowledge in answers to interrogatories or as part of their Rule 26(a)(1) disclosures. Attached hereto as Exhibit 16 are Sheriff's Dart's January 8, 2016 Answers to Interrogatories. In Interrogatory #5, Sheriff Dart was asked to: "Identify all persons with knowledge about the facts surrounding the March 8, 2011 incident described in Plaintiff's Second Amended." (Exhibit 16). Defendant Dart identified 24 individuals with knowledge (Answer to Interrogatory #5, pp. 5-7, Exhibit 16). Sheriff Dart did not list John Maher in his answers (Exhibit 16).

Interrogatory #15 asked Dart to "[l]ist the names and contact information of all persons who have knowledge of the facts surrounding the decision to suspend Plaintiff from his employment." (Exhibit 16, p. 10). In response, Dart identified 25 individuals (Exhibit 16, pp. 10-12). Sheriff Dart did not list John Maher in his answers (Exhibit 16).

Defendants also did not list John Maher as part of their Rule 26(a)(1) Disclosures. Defendants listed seventy-five (75) individuals with knowledge in their Third Supplemental Rule 26(a)(1) Disclosures dated November 21, 2017. (Exhibit 17). Defendants' listed everyone in attendance at Taylor's March 22, 2011 Loudermill hearing with two notable exceptions—John Maher and Mr. Maher's administrative assistant Diane Hennessy. Attached hereto as Exhibit 18 is the Recommendation of the Loudermill Hearing Board listing everyone in attendance: Commander Michael Anton (Witness #46, Exhibit 17), Lt. T. Stajura (Witness #41), P.O. Brian

Hartsfield (Witness #55), Attorney and Union Representative John DiNicola (Witness #51), Percy Taylor (Witness #4), Gregory Ernst (Witness #19), John Maher (***Not Listed***) and John Maher's Administrative Assistant Diane Hennessy. (***Not Listed***). (*Compare* Loudermill Recommendation, Exhibit 18 with Defendants' Rule 26(a)(1) Disclosures, Exhibit 17).

 Recently, on December 7, 2018, Defendants answered Plaintiff's Fourth Amended Complaint. The Dart Defendants' answer to paragraph 56 states:

> Upon information and belief, Defendants admit that John Maher wrote a letter to Plaintiff advising him that 'charges of violations of the following Sheriff's Office Directives and Orders have been SUSTAINED against you by the Office of Professional Review relative to OPR case File #2011-0305.' ***Upon information and belief, Defendants further aver that on March 21, 2011, John Maher wrote to John DiNicola, Plaintiff's union representative, advising him that his March 11, 2011 letter erroneously contained verbiage about matters already having been sustained and that is [sic] was an administrative error.*** Upon information and belief, Defendants deny any remaining allegations contained in Paragraph 56.

 (Defendants' Answer, ¶ 56, Document #319, emphasis added).

Defendants' Answer prompted Plaintiff's counsel to investigate the Maher letters/memos. As discussed *supra*, the March 11, 2011 memorandum is important evidence against the Defendants for it shows that the results of Taylor's OPR investigation were predetermined. A copy of the March 21, 2011 memo from John Maher to Union Representative, John DiNicola referenced in Defendants' answer is attached hereto as Exhibit 19. At various depositions taken in 2018, Plaintiff's counsel questioned Sheriff's Office employees about the March 11, 2011 memo and the charges having been "sustained." Defendants never disputed the contents of the March 11, 2011 memo or suggested that the memo had been corrected, until their December 7, 2018 answer.

It appears that it was Plaintiff's prior counsel who produced the March 21, 2011 memo to the Defendants. The parties have produced thousands of pages of documents and Plaintiff's counsel could not locate the March 21, 2011 memo as part of Defendants' production.

After Plaintiff's counsel, Richard Linden and Peter Bustamante, learned that John Maher was no longer employed with the Sheriff's Office, they contacted Mr. Maher and learned the facts set forth in John Maher's Declaration (Exhibit 2).[3]

It apparent that the Defendants intentionally omitted John Maher from their answers to interrogatories and their Rule 26(a)(1) disclosures because they knew or at least strongly suspected that his testimony would be adverse. Attached hereto as Exhibit 20 is John Maher's Second Amended Complaint filed in the case entitled *Maher v. The Cook County Sheriff's Office, et al.*, No. 12 CV 3889. Mr. Maher was a Lieutenant Colonel in the United States Army Reserve. *Id*. ¶ 8. John Maher alleged, *inter alia*, that the Defendants unlawfully discriminated against him upon his return from mobilization through a series of actions designed to ostracize him. *Id*. ¶ 5. According to the complaint, in July 2011, Sheriff Dart and John Maher met where Sheriff Dart indicated that Mr. Maher's orders to active duty were "a kick in the teeth" and noted that Mr. Maher's active duty obligation was a disruption to the Sheriff's Office. *Id*. ¶¶ 30-33.

Plaintiff's production of John Maher's Declaration and Taylor's supplemental Rule 26(a)(1) disclosure of John Maher is timely under the circumstances. The Court should reconsider its October 24, 2017 ruling and permit Plaintiff to depose Sheriff Dart based on newly discovered evidence.

**WHEREFORE**, Plaintiff, Percy R. Taylor, requests that this Honorable Court reconsider its October 24, 2017 ruling to permit Plaintiff to depose Defendant, Thomas Dart and to require

---

[3] Defense counsel has stated to Plaintiff's counsel that they should not contact current employees of the Sheriff's Office and that any communications should go through them.

Defendant Dart to sit for deposition and any other relief the Court deems just.

**PERCY R. TAYLOR**


By:     */s/Richard F. Linden*
        One of Plaintiff's attorneys


Richard F. Linden (ARDC #6200387)
Peter V. Bustamante
Linden & Bustamante
17 North State Street, Suite 1550
Chicago, Illinois 60602
312/590-0211
lindenlaw@gmail.com