IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PERCY R. TAYLOR,

    Plaintiff,

v.

COOK COUNTY SHERIFF'S OFFICE,
*et al.*,

    Defendants.

No. 13 C 1856

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM ORDER

This Memorandum Order memorializes the Court's rulings on multiple discovery motions pending in this case as follows:

(1) Defendants' Joint Motion to Bar Untimely Produced and/or Disclosed Documents [ECF No. 335] is granted in part, denied in part, and denied in part without prejudice;

(2) Plaintiff's Motion for Reconsideration of Court's October 24, 2017 Ruling and for Order Requiring Sheriff Dart to Sit for Deposition [ECF No. 344] is denied;

(3) Plaintiff's Motion for Protective Order to Prohibit Defendants and their Counsel from Threatening Witnesses [ECF No. 361] is denied;

(4) Plaintiff's Motion to Compel Production in Native Format [ECF No. 366] is denied;

(5) Plaintiff's Motion for Sanctions and an Adverse Inference That the Sheriff's Office Had No Basis Not to Return Plaintiff to the Payroll or in the Alternative to Compel Defendant Cook County Sheriff's Office to Re-Designate a Representative Deponent to Testify on Topic 22 of Plaintiff's Amended Rule 30(b)(6) Notice [ECF No. 377] is denied;

(6) Plaintiff's Motion for Sanctions for Canceling Deposition of George Avet ECF No. [384] is granted in part and denied in part;

(7) Plaintiff's Motion to Strike Defendants' Joint Reply [DOC. 383] in Support of "Their Motion to Exclude John Maher's Affidavit from Evidence" [ECF No. 386] is denied; and

(8) Movant George Avet's Motion for Sanctions and Protective Order [ECF No. 391] is granted in part and denied in part.

See Statement below for further details.

# STATEMENT

**(1) Defendants' Joint Motion to Bar Untimely Produced and/or Disclosed Documents [ECF No. 335]**

After nearly five years of litigation, discovery in this case closed on October 30, 2018. *See* October 30, 2018 Order, [ECF No. 297]. After the close of discovery, Plaintiff produced almost 2,000 pages of documents and/or records that previously had not been produced in discovery, including photographs of Plaintiff's residence and the surrounding area, documents related to Plaintiff's bankruptcy case, Plaintiff's prior EEOC and SRO complaints, various OPR files of former and current Sheriff's Office employees, Merit Board documents, and a complaint filed in unrelated case, *Barber v. Sheriff's Office, et al.*, 13-CV-7662.[1] Plaintiff produced the photographs on November 13, 2018, the bankruptcy documents and OPR files on December 5, 2018, the prior complaints on December 17, 2018, and the Merit Board documents as well as the *Barber* complaint on January 22, 2019.

Defendants seeks to bar Plaintiff from using the untimely produced documents and records for any purpose in this case as a discovery sanction pursuant to Federal Rule of Civil Procedure 37(c)(1). Plaintiff opposes the Motion and argues it is premature. Plaintiff contends that Defendants should raise these issues as motions *in limine* before the District Judge. The Court disagrees. On referral from the District Judge for discovery and discovery motions, Plaintiffs request to bar as a discovery sanction properly is before this Magistrate Judge pursuant to Federal Rule of Civil Procedure 37(c)(1). For the reasons discussed below, the Court holds that some of the late produced documents should be excluded as a discovery sanction, and others should not be excluded. Any ruling on the ultimate admissibility of these documents will be at the discretion of the District Judge.

It is not disputed that all of these records were produced weeks to months after the close of discovery. Federal Rule of Civil Procedure 37(c)(1) provides that, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e) . . . the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). Thus, this Court must determine whether Plaintiff's late production of the documents that are the subject of Defendants' Motion is substantially justified or harmless. *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998).

Plaintiff has the burden of proving substantial justification or harmlessness. *Id.* The Seventh Circuit applies a four-factor test to determine whether untimely produced material is substantially justified or harmless: (1) the prejudice or surprise to the party against whom the

---

[1] Some of the documents are docketed as follows: the photographs of Plaintiff's residence and the surrounding area ([ECF No. 335], Ex. A at Taylor 10038-10068); Plaintiff's bankruptcy documents ([ECF No. 335], Ex. B at Taylor 10069-10106); Plaintiff's prior EEOC and SRO complaints ([ECF No. 335], Ex. C at Taylor 21626-21635); various OPR files of unrelated former/current Sheriff's Office employees ([ECF No. 335], Ex. D at Taylor 21640-22168); Merit Board documents ([ECF No. 335], Ex. E at Taylor 23278-23285); and complaint filed in unrelated case Barber v. Sheriff's Office, et al., 13- CV-7662 ([ECF No. 335], Ex. F at Taylor 23286-23297).

evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (citing *Bronk v. Ineichen*, 54 F.3d 425, 428 (7th Cir. 1995)); *see also Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1245 (7th Cir. 1982).

As a threshold matter, the late production of these documents will not cause any disruption to the trial in this case as no trial date has even been set yet. The Court will address each category of documents in turn with reference to the other factors.

(a) Photographs of Plaintiff's residence and the surrounding area: The Motion is denied without prejudice as to the photographs.

These photographs were not taken at the time of the incident involved in this case. Rather, these photographs were taken of Plaintiff's residence and the surrounding area after the close of discovery and were produced to Defendants almost immediately after they were taken. The Court is not persuaded by Defendants' arguments of surprise, prejudice, or harm at this time. The Court also will not speculate as to if, how, or why Plaintiff intends to use these photographs at trial and what Defendants' objections may be at that time. That is not a decision for this Magistrate Judge. Therefore, Defendants' Motion is denied without prejudice as to the photographs. Any issue regarding the admissibility of the photographs should be raised before the District Judge.

(b) Plaintiff's bankruptcy documents: The Motion is denied as to Plaintiff's bankruptcy documents.

Plaintiff filed for bankruptcy on October 19, 2018, less than two weeks before the close of discovery. Plaintiff's counsel represents that he did not learn of Plaintiff's bankruptcy until after the close of discovery. The documents at issue were disclosed just over a month after the close of discovery. The Court is not persuaded by Defendants' arguments of surprise, prejudice, or harm and will not exclude these documents as a sanction based on their late disclosure. Therefore, Defendants' Motion is denied as to Plaintiff's bankruptcy documents. Again, the Court does not know how or whether Plaintiff intends to use these documents at trial. Any dispute regarding the admissibility of the documents at trial, however, should be raised before the District Judge.

(c) Plaintiff's prior EEOC, SRO, or similar complaints: The Motion is granted as to these 10 pages of documents, which include a Charge of Discrimination filed with the Illinois Department of Human Rights and EEOC on October 7, 2007, a letter from the *Shakman* Compliance Administrator about Plaintiff's hearing date, Plaintiff's Supplemental Relief Order ("SRO") Claim Form relating to Plaintiff's *Shakman* complaint which is dated February 25, 2009, and an undated letter sent by Plaintiff regarding a September 22, 2009 meeting.

During his second deposition on October 25, 2018, Plaintiff testified for the first time, after nearly five years of litigation, that he made one *Shakman* complaint of discrimination against the Sheriff's Office prior to the March 8, 2011 underlying incident in this lawsuit. Plaintiff, however, was unable to provide any specific information, including whether the complaint was based on racial or political discrimination. After the deposition, Defendants' counsel requested the

production of documents relating to any complaints of discrimination against the Sheriff's Office prior to March 8, 2011 about which Plaintiff testified at his deposition. Plaintiff produced the information after Defendants' requested it. Plaintiff now argues that "[i]t is disingenuous for counsel to demand the production of documents and then move to bar the same documents produced within a week of their demand." To a certain extent, the Court agrees with Plaintiff. Plaintiff, however, completely ignores or purposefully side steps Defendants' primary argument that Plaintiff has not provided any explanation, let alone substantial justification or good cause, for the untimely production of these documents.

Defendants specifically asked for these types of documents in Request No. 58 of their First Set of Document Requests: "[a]ny and all documents within Plaintiff's possession or control that concern or relate to any claim Plaintiff filed with the EEOC, the Secretary of Labor, any state or local discrimination agency, or any federal agency regarding any claim of harassment, discrimination, disparate treatment or retaliation whether they relate to any allegations in the complaint or not." *See* [ECF No. 335-8], at 7. Although Plaintiff objected to the request as irrelevant, he responded that he would produce any pertinent documents. *Id.* Therefore, it was reasonable for Defendants to assume that Plaintiff had produced all "pertinent documents."

It is not disputed that these complaints have been in Plaintiff's possession for a long time, and he failed to produce them until after the close of discovery. The Court agrees that Plaintiff has not offered any reasonable explanation for their late production. The Court also is not persuaded by Plaintiff's argument that Defendants likely would have previously received copies of these documents. The fact that Defendants (or more likely some unidentified person in the Sheriff's Office) may have been in possession of the documents Defendants requested Plaintiff produce from his own files is not an excuse or good cause for Plaintiff not to produce the documents himself in response to Defendants' discovery requests. Nor has Plaintiff addressed Defendants' arguments that the untimely production of these documents is harmful and prejudicial, as set forth in Defendants' Motion. By not addressing the argument, Plaintiff waived his right to do so.

For these reasons, the Motion is granted as to Plaintiff's prior EEOC and SRO documents.

(d) <u>OPR files of unrelated former/current Sheriff's Office employees</u>: The Motion is granted as to the OPR files of former and current Sheriff's Office employees.

On May 29, 2018 in their Fourth Set of Document Requests, Defendants specifically asked for "all documents or records that are related to any comparators that you plan to rely on in support of your case." *See* [ECF No. 335-9], at 4. On July 9, 2018, Plaintiff responded that he was "not in possession of any documents or records which have not already been produced during the course of in [sic] litigation." *Id.* That turned out not to be true.

On December 5, 2018, Plaintiff produced OPR files of four individuals as potential comparators that had not been produced previously in this case. The four individuals are former and current employees of the Sheriff's Office. These OPR files originally were produced in a different case against the Sheriff and were in the possession of Plaintiff's counsel Dana Kurtz who filed an appearance in this case on May 14, 2018, two weeks before Defendants served their Fourth

4

Set of Document Requests. *See* [ECF No. 203]. The question here is whether the late production of these documents is substantially justified or harmless.

In the Court's view, Plaintiff's late-production of these documents is neither substantially justified nor is it harmless. Ms. Kurtz entered her appearance in this case more than five months before the close of discovery and, as noted above, two weeks before Defendants served their Fourth Set of Document Requests seeking precisely this category of documents from Plaintiff. Arguably, documents in the possession of Ms. Kurtz from a different case might not be in Plaintiff's possession, custody, or control in the ordinary course. But Plaintiff cannot make that argument here because by producing to Defendants in this case, albeit late, the OPR files in Ms. Kurtz's possession, he effectively has conceded that these documents were in his possession, custody, or control at the time he responded to Defendants' Fourth Set of Document Requests. The documents should have been produced at that time, not six weeks after the close of discovery.

Plaintiff argues that the late production is justified and harmless because the OPR files produced by Plaintiff originally came from the Sheriff's Office and arguably should have been produced by Defendants in response to Plaintiff's discovery requests to them in this case. Plaintiff, however, did not attach to his brief the discovery requests he served on the Sheriff's Office that he says covered this category of documents. But even if his request for production is broad enough (or specific enough) to encompass the OPR files he produced to Defendants after discovery closed, that does not necessarily excuse Plaintiff from timely producing the same documents in response to Defendants' requests for production months earlier. It is not uncommon for a party in litigation to request that his opponent produce documents from his files that the requesting party also has in his possession, and the fact that a party opponent also possesses the documents in question is not a reason in and of itself for a party not to produce the same documents from his files. The Court acknowledges, of course, that there can be issues of burden and proportionality in particular cases, but those are not reasons raised here for not producing documents called for by a proper discovery request. It is Plaintiff's responsibility to build his case and to produce within the timeframe required by the Court the documents he intends to rely upon in support of his case if served with a proper request to do so within the parameters of the Federal Rules of Civil Procedure.[2]

Plaintiff also argues that any ruling regarding the use and/or admissibility of these documents is premature because they have not been identified as trial exhibits. That argument, however, ignores Defendants' argument that they are prejudiced by the very late disclosure of the documents in question. The Court agrees that the late disclosure creates prejudice for Defendants since they cannot conduct any of their own discovery about these potential comparators.

Plaintiff had his chance to produce these documents during discovery; he did not do so. At some point, discovery must come to an end. *See Robinson v. Stanley* 2010 WL 1005736, at *5 (N.D. Ill. Mar. 17, 2010) ("In all cases there comes a time when discovery must end."). Plaintiff had more than ample time to investigate and discover his case and to identify comparators, and the end came on October 30, 2018, with the close of discovery in this case, a close date that was

---

[2] It is not disputed that Plaintiff requested OPR files from the Sheriff's Office and inspected approximately 175 OPR files in November 2018, and Plaintiff then scanned and produced to Defendants documents from that inspection. Defendants state, and Plaintiff does not dispute, the OPR files and documents at issue in this Motion are separate from that inspection and production. Defendants' Reply [ECF No. 350], at 5.

5

extended multiple times over the course of years. Plaintiff has not offered any reasonable explanation as to why these documents which indisputably were in his attorney's files when they were requested by Defendants were produced late; nor has he addressed the prejudice Defendants would suffer in not being able to pursue their own discovery with respect to these additional comparators.

For all these reasons, the Court, therefore, finds that the late production of the OPR files of former and current Sheriff's Office employees was not substantially justified nor is it harmless, and Defendants' Motion is granted as to these documents.

(e) Merit Board documents: The Motion is denied as to the Merit Board documents.

Plaintiff produced in this case Sheriff Dart's answers to Plaintiff's requests to admit facts that were produced in Plaintiff's Merit Board case a day after Plaintiff received them. Defendants argue that Plaintiff could have solicited these facts during discovery in this case and therefore should not be permitted to "back-door" the discovery process by producing (after the close of discovery) Sheriff Dart's answers to Plaintiff's requests to admit facts that were produced in Plaintiff's Merit Board case. The Court disagrees.

As part of discovery in this case, Plaintiff attempted to depose Sheriff Dart, which Defendants opposed, and the Court concluded Plaintiff had not shown that Sheriff Dart had sufficient personal knowledge to be required to sit for a deposition. Therefore, Plaintiff, in fact, was not able to obtain this information from Sheriff Dart *in this case*. Plaintiff has shown substantial justification for the late production of these documents, and the Court is not persuaded by Defendants' arguments of surprise, prejudice, or harm. There certainly is no surprise or prejudice as these are Sheriff Dart's own answers served in the Merit Board case. Therefore, Defendants' Motion is denied as to the Merit Board documents.

(f) Complaint in *Barber v. Sheriff's Office, et al.*, 13-CV-7662: The Motion is denied as to the *Barber* complaint.

This document is a third amended complaint in an unrelated case. It is unclear to the Court how Plaintiff intends to use this complaint, why Plaintiff produced it in this case, and if the complaint should have been and/or was even required to be produced during discovery, and the Court will not speculate. On this sparse record, the Court is not persuaded by Defendants' arguments of surprise, prejudice, or harm. Therefore, Defendants' Motion is denied as to the *Barber* complaint.

(g) Defendants' Supplemental Statement: On September 10, 2019, Defendants filed a Supplemental Statement to their Joint Motion to Exclude Untimely Produced and/or Disclosed Documents [ECF No. 451] relating to additional documents that Plaintiff produced late, including (1) a check book ledger, which Plaintiff produced on July 16, 2019, identifying a $1000 check to Baker purportedly dated February 12, 2009, and (2) additional photographs of Plaintiff's residence and surrounding area, which were produced on May 1, 2019.

For the same reasons discussed above, Defendants' Motion is denied without prejudice as to the photographs. Any issue regarding the admissibility of the photographs, and Defendants' objections to them, should be raised before the District Judge.

As to the check book ledger, the Motion is denied without prejudice. The Court does not have enough information from either Plaintiff or Defendants to determine whether or not to exclude the check book ledger from evidence as a sanction for its late production. The Court has the following questions: whether Defendants asked for the check book ledger in discovery; if it was encompassed in a previous discovery request, when was the request made; how and when did Plaintiff respond to the discovery request; whether Plaintiff testified he made a financial contribution to Baker's campaign; how long had Plaintiff been looking for the check book ledger; when did Plaintiff find the ledger; and whether Plaintiff has additional information/documents to substantiate to whom the $1000 check was given and if, in fact, the check actually was cashed and by whom?

For all of the reasons articulated above, Defendants' Joint Motion to Bar Untimely Produced and/or Disclosed Documents is granted in part, denied in part, and denied without prejudice in part.

**(2) Plaintiff's Motion for Reconsideration of Court's October 24, 2017 Ruling and for Order Requiring Sheriff Dart to Sit for Deposition [ECF No. 344] and (3) Plaintiff's Motion to Strike Defendants' Joint Reply [DOC. 383] in Support of "Their Motion to Exclude John Maher's Affidavit from Evidence" [ECF No. 386]**

On October 24, 2017, the Court denied Plaintiff's request to depose Sheriff Dart. *See* Transcript of Proceedings from October 24, 2017, [ECF No. 34-1], at 29-30. The Court found that it did not have "enough now to compel the deposition." *Id.* at 29. The Court stated that "if [Dart] was involved in decisions involving Mr. Taylor, then it would be appropriate to depose him, and it would distinguish this case from the thousands of other cases in which people have tried to sue Sheriff Dart, properly or improperly." *Id.* The Court ruled: "I will leave the option open if he has personal knowledge of facts that are relevant to the case." *Id.* The Court stated: "The parties can raise this issue again as the record is developed here." *Id.* at 30.

Almost twenty months later, on February 1, 2019, Plaintiff raised the issue of Sheriff Dart's deposition again since the Court had not foreclosed that possibility albeit more than a year and a half earlier. Plaintiff now asks the Court to reconsider its decision and order that Sheriff Dart be required to sit for a deposition. Plaintiff bases his argument on an affidavit from John Maher, a former Assistant General Counsel to the Sheriff's Police Department which was produced after the close of discovery. Plaintiff argues this newly discovered evidence establishes that Sheriff Dart had personal knowledge of and/or involvement in Plaintiff's disciplinary proceedings. Thus, Plaintiff argues that he should be permitted to depose Sheriff Dart based on this new evidence.

In response to Plaintiff's Motion for Reconsideration, Defendants filed an "emergency motion" to stay briefing on Plaintiff's Motion for Reconsideration. In that motion, Defendants stated they were drafting a motion to bar the Maher affidavit pursuant to Federal Rule of Civil Procedure 37(c)(1). *See* [ECF No. 351]. That same day, the Court denied Defendants' Emergency

7

Motion to Stay Briefing and ordered Defendants to file their motion to bar and their response to Plaintiff's Motion for Reconsideration by February 20, 2019, Plaintiff to respond to Defendants' forthcoming motion to bar and to reply in support of his Motion to Reconsider by March 4, 2019, and Defendants to reply in support of their forthcoming motion to bar by March 14, 2019. *See* February 11, 2019 Order [ECF No. 356].

On February 20, 2019, Defendants filed a single document captioned Defendant Sheriff Dart's Response to Plaintiff's Motion to Reconsider the Court's October 24, 2017 Ruling [ECF No. 360], in which Defendant Dart opposed Plaintiff's Motion to Reconsider and specifically requested the Court to "enter an order excluding Mr. Maher's affidavit." [ECF No. 360], at 1. Plaintiff had the opportunity to respond to that Motion and the arguments herein in the reply he filed on March 4, 2019. [ECF No. 370].

In his reply, Plaintiff argues, among other things, that he should not be barred from using the Maher affidavit because Defendants waived the argument since they did not file a motion to bar as ordered by the Court. The Court disagrees that Defendants waived any argument to exclude the Maher affidavit based on their failure to file a "motion to bar." Although Defendants did not file a motion to bar as they suggested they intended to do, Defendant Dart instead incorporated a request to exclude, or said another way to bar, the Maher affidavit within his opposition to Plaintiff's Motion to Reconsider. Arguably, it would have been preferable for Defendants to file a motion to bar the affidavit, but their failure to do so is not fatal. It is not credible for Plaintiff to argue that he did not have an opportunity to respond to a motion to bar. As Plaintiff acknowledges in his reply, two-thirds of Sheriff Dart's opposition brief is devoted to Defendants' argument that the Maher affidavit should be excluded, and Plaintiff had an opportunity to address those arguments in his reply.

Two more pleadings followed: Defendants' Joint Reply in Support of their Motion to Exclude Motion to Exclude John Maher's Affidavit from Evidence [ECF No. 383] and then Plaintiff's Motion to Strike Defendants' Joint Reply [DOC. 383] in Support of "Their Motion to Exclude John Maher's Affidavit from Evidence" [ECF No. 386]. Looking comprehensively at the briefing and requested relief relating to Plaintiff's Motion to Reconsider and the Court's February 11, 2019 Order [ECF No. 356], Defendants clearly treated Defendant Dart's opposition to Plaintiff's Motion to Reconsider and the request to exclude the Maher affidavit as a dual-purpose filing responding in one part to the Motion to Reconsider and seeking affirmative relief from the Court to exclude the Maher affidavit in another part. Defendants followed the briefing structure suggested by the Court and simply combined Dart's opposition to the Motion to Reconsider and their request for affirmative relief to bar the Maher affidavit in one document. This is not uncommon (though it is not preferable from a procedural point of view) and would be a non-issue if Defendant Dart had captioned his pleading differently. The failure to do so is not dispositive. For these reasons, Plaintiff's Motion to Strike Defendants' Joint Reply [DOC. 383] in Support of "Their Motion to Exclude John Maher's Affidavit from Evidence" is denied.

In support of his Motion for Reconsideration of Court's October 24, 2017 Ruling and for Order Requiring Sheriff Dart to Sit for Deposition [ECF No. 344], Plaintiff substantially relies on the Maher affidavit, which was produced three months after the close of discovery. *See* [ECF No. 344-2]. The Court now must decide whether the Maher affidavit was produced untimely so that

the Court should exclude it as Defendants request and not consider the affidavit when deciding Plaintiff's Motion to Reconsider.

As identified above, Maher is a former Assistant General Counsel to the Sheriff's Police Department. He was listed in Plaintiff's initial Rule 26(a)(1) disclosures. *See* [ECF No. 344-15], at 4. In his affidavit, Maher states that he attended Plaintiff's March 22, 2011 *Loudermill* hearing on behalf of the Sheriff's Office. *See* [ECF No. 344-2], at ¶ 4. A March 11, 2011 Memorandum sent to Plaintiff purportedly from Maher was produced in discovery and states that the charges against Plaintiff already had been sustained three days after the alleged bb-gun incident, 11 days prior to the *Loudermill* hearing, and prior to the completion of the Sheriff's Office OPR investigation.[3] *See* [ECF No. 344-3]. In his affidavit, however, Maher declares that he did not send that March 11, 2011 Memorandum. *See* [ECF No. 344-2], at ¶ 9. Also produced in discovery is a March 21, 2011 Memorandum from Maher to Plaintiff's union representative, John DiNicola, which advised DiNicola: "As a point of clarification, the notification which Officer Taylor signed on 12 March 2011, erroneously contained verbiage about matters already having been sustained. This is an administrative error. No Loudermill determinations have been made in this matter." *See* [ECF No. 344-19]. In his affidavit, Maher acknowledged that he did send the March 21, 2011 Memorandum. *See* [ECF No. 344-2], at ¶ 9. Defendants cite to the March 21, 2011 Memorandum in their answer to Paragraph 56 of Plaintiff's Fourth Amended Complaint which was filed on December 7, 2018. *See* [ECF No. 319], at ¶ 56.

Plaintiff did not seek to depose Maher during discovery. Plaintiff's counsel admits in his affidavit attached in support of the instant Motion to Reconsider that Plaintiff made a strategic decision not to depose Maher during discovery. *See* [ECF No. 370-1], at ¶¶ 17-18. After the close of discovery, Plaintiff learned that Maher no longer was employed by the Sheriff's Office, and Plaintiff's counsel reached out to Maher to speak with him. At that time, Plaintiff learned that Maher had not authored the March 11, 2011 Memorandum. No doubt, Plaintiff now may regret his decision not to depose Maher based on this newly-discovered information he and his counsel learned after speaking with Maher after the close of discovery. That information, however, is not, in fact, new, and it could have been obtained had Plaintiff pursued Maher's deposition during discovery. Nothing prevented Plaintiff from discovering these facts earlier other than his strategic decision not to seek Maher's deposition. Plaintiff admits that he produced the March 21, 2011 Memorandum to Defendants, so Plaintiff clearly was aware that Maher had corrected the statement made in the March 11, 2011 Memorandum that the charges had been sustained against Plaintiff. *See* [ECF No. 344], at 12.

In the Court's view, Plaintiff's production of the Maher affidavit was untimely, and it should be excluded. Plaintiff has not established good cause or substantial justification for his failure to discover this information during discovery, especially in light of the fact that this case has been pending for five years and Plaintiff has known about Maher's involvement in his disciplinary proceedings since the earliest stages of litigation. Moreover, it is not disputed that Plaintiff produced the March 21, 2011 Memorandum from Maher to DiNicola which refuted the March 11, 2011 Memorandum.

---

[3] It is not disputed that Joseph Ways, the Executive Director of OPR, sustained the disciplinary charges against Plaintiff on April 18, 2011.

Even if the Court were to consider the Maher affidavit in support of Plaintiff's Motion to Reconsider, the Court still is not persuaded that it provides enough evidence to support a finding that Sheriff Dart had personal knowledge or involvement in Plaintiff's disciplinary proceedings. On October 24, 2017, Judge Wood denied Plaintiff's motion to compel the deposition of Sheriff Dart because "the only basis ... plaintiff is offering for believing Sheriff Dart has any personal knowledge is just Mr. Taylor's speculation . . . . [and] I'm still not hearing actual evidence of personal knowledge." See October 24, 2017 Court Transcript, [ECF No. 178], at 25:2-26:5. The Court also found that Plaintiff did not show an "evidentiary basis to believe that Sheriff Dart has personal knowledge of facts that are necessary to decide this case." Id. at 24:20- 25. Judge Wood explained that this would entail witnesses to say "yes, I discussed with this Sheriff Dart and he knows Mr. Taylor, or whatever it might be" [and] evidence that he "personally was involved in decisions involving Mr. Taylor." Id. at 24:25-25:1-2; 29:16-22.

Plaintiff argues that Sheriff Dart had personal knowledge of him based on the statement in Maher's affidavit that when Maher was "passing in the hall" he overheard "Chief Holbrook tell Deputy Chief Smith words to the effect of 'the Sheriff and Zelda [Whittler] are not happy with the outcome of the Board.'" See Affidavit, [ECF No. 344], at 2. Plaintiff urges this Court to find that this statement is sufficient to show that Sheriff Dart had personal knowledge of Plaintiff and/or the disciplinary decision regarding Plaintiff. The Court disagrees. That statement in the Maher affidavit does not provide any evidentiary basis to believe that Sheriff Dart has personal knowledge of facts relevant to a claim or defense in this case. Maher does not claim in his affidavit that Sheriff Dart personally was involved in any decision involving Plaintiff or that he personally knew Plaintiff. Maher simply overheard Chief Holbrook say that the Sheriff was not happy with the Board outcome; that does not imply personal involvement or personal knowledge of facts relevant to a claim or defense in this case. As discussed above, Judge Wood insisted she would need to hear a witness say he discussed Plaintiff directly with the Sheriff and that the Sheriff personally knows Plaintiff. Plaintiff still has not produced any such evidence.

For all of these reasons, Plaintiff's Motion for Reconsideration of Court's October 24, 2017 Ruling and for Order Requiring Sheriff Dart to Sit for Deposition, and Plaintiff's Motion to Strike Defendants' Joint Reply in Support of "Their Motion to Exclude John Maher's Affidavit from Evidence" are denied.

**(4) Plaintiff's Motion for Protective Order to Prohibit Defendants and their Counsel from Threatening Witnesses [ECF No. 361]**

Plaintiff seeks the entry of a protective order to enjoin Defendants and their counsel from obstructing justice, threatening, coercing or intimidating witnesses or any potential witness, including but not limited to John Maher, and from abusive communication with any witnesses.

Federal Rule of Civil Procedure 26 provides that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1); see also Bond v. Utreras, 585 F.3d 1061, 1067 (7th Cir. 2009). The rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Gordon v. Countryside Nursing & Rehab. Ctr., LLC, 2012 WL 2905607, at *2 (N.D. Ill. July 16, 2012). The moving party bears the burden

of showing good cause for a protective order. *Cent. States, Se. & Sw. Areas Pension Fund v. Nat'l Lumber Co.*, 2012 WL 2863478, at *2 (N.D. Ill. July 11, 2012) (citing *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994)). The Court finds that Plaintiff has failed to meet his burden of showing good cause for a protective order.

Plaintiff filed the instant Motion for a Protective Order based on what Plaintiff characterizes as defense counsel's alleged violations of the rules governing attorney conduct. After Plaintiff produced the Maher affidavit, counsel for Defendants sent a letter to Maher on February 19, 2019, demanding that he immediately cease and desist from further disclosure of privileged and confidential information, and to the extent possible, remedy his prior disclosures. *See* Plaintiff's Motion, [ECF No. 361-1]. In the letter, Defendants specifically acknowledged and recognized Maher's right to engage in communications with Plaintiff's counsel as long as he does not divulge privileged and confidential information. *Id.* at 2-3. Two days later, Plaintiff filed the instant Motion, characterizing Defendants' counsel's letter as an action that threatened, coerced, or intimidated a witness.

The Court disagrees with Plaintiff's characterization of the letter. Maher is an attorney, and the Court assumes he knows and understands the attorney-client privilege and what he can and cannot discuss with third parties. The Court is not persuaded that Maher would have felt threatened or intimidated by this letter. Plaintiff has cited to no other instances of alleged coercion or intimidation and has not established good cause for the entry of a protective order at this time.

Therefore, Plaintiff's Motion for Protective Order to Prohibit Defendants and their Counsel from Threatening Witnesses is denied.

### (5) Plaintiff's Motion to Compel Production in Native Format [ECF No. 366]

In this Motion, Plaintiff seeks the production of the March 11, 2011 Memorandum in native format. Specifically, Plaintiff wants the metadata to determine if that will identify who at the Sheriff's Office sent the March 11, 2011 Memorandum to Plaintiff since Plaintiff just recently learned that Maher did not author the Memorandum. In the Court's view, however, the fact that Plaintiff recently discovered that the March 11, 2011 Memorandum was not, in fact, authored by Maher is not enough to order Defendant Sheriff's Office to produce the Memorandum, if it still exists, in native form after the close of discovery. Plaintiff's request is not timely.

As discussed above, the Court finds that the Maher affidavit was produced untimely after the close of discovery. Plaintiff was well-aware of the March 11, 2011 Memorandum purportedly authored by Maher as it was produced timely during discovery. At that time, Plaintiff made the calculated decision not to depose Maher during discovery. Also, Plaintiff does not dispute that the March 21, 2011 correspondence authored by Maher which purported to correct the March 11, 2011 Memorandum was produced during discovery, and Plaintiff is not on solid ground in arguing that Defendants' Answer to the Fourth Amended Complaint "prompted Plaintiff's counsel to investigate" Maher's involvement. *See* [ECF No. 344], at 11. The Court understands why Plaintiff wants this information now, but discovery is closed. Plaintiff could have discovered these facts prior to the close of discovery if Plaintiff had made a different decision and deposed Maher when

discovery was open. In its discretion, the Court will not give Plaintiff additional time to investigate the electronic origin of the March 11, 2011 Memorandum.[4]

Plaintiff further argues that Defendant Sheriff's Office is guilty of spoliation because it cannot locate an electronic copy of the March 11, 2011 Memorandum, and therefore, the Sheriff's Office should be ordered to provide the Court and Plaintiff's counsel with a report detailing what efforts Defendants took to preserve the March 11, 2011 Memorandum, and what efforts Defendants made to locate the Memorandum. The Court disagrees. Discovery is closed, and the time for Plaintiff to request an investigation of this information has expired. Defendant Sheriff's Office states that the March 11, 2011 Memorandum was produced in a usable form on July 5, 2016. [ECF No. 373], at 5. If Plaintiff wanted additional information about the Memorandum after it was produced in July 2016, over three years ago, Plaintiff should have pursued that additional information and filed a motion to compel while discovery still was open.

For these reasons, Plaintiff's Motion to Compel Production in Native Format is denied.

**(6) Plaintiff's Motion for Sanctions and an Adverse Inference that the Sheriff's Office Had No Basis Not to Return Plaintiff to the Payroll or in the Alternative to Compel Defendant Cook County Sheriff's Office to Re-Designate a Representative Deponent to Testify on Topic 22 of Plaintiff's Amended Rule 30(b)(6) Notice [ECF No. 377]**

On January 31, 2019, the Court granted Plaintiff's Motion to Compel the Sheriff's Office to produce a representative deponent to address Topic 22 of Plaintiff's Amended 30(b)(6) Notice served on December 4, 2018 [ECF No. 343]. Topic 22 reads:

> The decision by the Sheriff's Office's to refuse to return Percy Taylor to the payroll given that the October 30, 2013 Merit Board decision was held to be null and void by the Illinois Appellate Court and the Circuit Court (*see Taylor v. Dart*, 2017 IL App (1st) 143684-B), and after the Illinois Supreme Court denied the Sheriff's Office petition for leave to appeal, including the basis for that decision and the individuals involved in the decision.

On February 25, 2019, the Sheriff's Office produced Nicholas Scouffas to testify on Topic 22. Mr. Scouffas is the general counsel to the Sheriff's Office.

---

[4] Again, as other courts have said in somewhat more colorful language: "In all cases there comes a time when discovery must end." *Robinson v. Stanley* 2010 WL 1005736, at *5 (N.D. Ill. Mar. 17, 2010); *see also Sommerfield v. City of Chicago*, 613 F.Supp.2d 1004, 1020 (N.D. Ill. 2009). "[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). "The discovery rules are not an excursion ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest." *Robinson*, 2010 WL 1005736, at *5. "Parties are entitled to a reasonable opportunity to investigate the facts-and no more." *Vakharia v. Swedish Covenant Hosp.*, 1994 WL 75055, at *2 (N.D. Ill. 1994).

The Court has reviewed the Scouffas deposition transcript and finds that he adequately answered Plaintiff's questions and provided the basis for the Sheriff's Office's decision not to return Plaintiff to the pay roll and identified the individuals involved in that decision. Clearly, Plaintiff is not satisfied with the answers given and reasons provided by Scouffas, and the Court agrees with Plaintiff, in part, that at times the answers given by Scouffas were not as clear or straightforward as they could, and maybe should, have been. The Court, however, is not persuaded that Plaintiff could obtain any different or more satisfactory answers from another deponent, and the Court finds that nothing more is required of Defendants at this time.

Plaintiff certainly can argue that Defendants' decision not to return Plaintiff to the pay roll was erroneous and flawed, but the fact that Plaintiff does not agree with the reasons provided is not a reason to impose sanctions, require an adverse inference or order the re-opening of another deposition. Furthermore, it is not for this Court to make the ultimate determination whether the Sheriff's Office had no basis to refuse to return Plaintiff to the payroll.

For these reasons, Plaintiff's Motion for Sanctions and an Adverse Inference that the Sheriff's Office Had No Basis Not to Return Plaintiff to the Payroll or in the Alternative to Compel Defendant Cook County Sheriff's Office to Re-Designate a Representative Deponent to Testify on Topic 22 of Plaintiff's Amended Rule 30(b)(6) Notice is denied.

**(7) Plaintiff's Motion for Sanctions for Canceling Deposition of George Avet [ECF No. 384] and (8) Movant George Avet's Motion for Sanctions and Protective Order [ECF No. 391]**

Mr. Avet is a non-party witness who first was deposed on October 29, 2018. That deposition was adjourned and continued by agreement of the parties to allow Mr. Avet to file a motion for protective order based on his objection that defense counsel's questions were harassing. After the protective order issue was resolved, Mr. Avet agreed to continue the deposition on March 14, 2019.

The day before the deposition on March 13, 2019, attorney Heidi Sleper from the Kurtz Law Offices filed an appearance on behalf of Mr. Avet. Another attorney in the Kurtz law firm represents Plaintiff in this case. Defense counsel objected to Ms. Sleper's representation of Mr. Avet and unilaterally decided to postpone Mr. Avet's deposition based on Defendants' purported legal and ethical concerns relating to Ms. Sleper's representative of Mr. Avet.

Plaintiff's counsel appeared and was prepared to proceed with the deposition as noticed on March 14, 2019. Mr. Avet and his counsel also appeared for the deposition. Defense counsel appeared as well and objected to Plaintiff proceeding with the deposition. After an unsuccessful attempt to resolve the dispute, Plaintiff opted not to proceed with his portion of Mr. Avet's deposition pending resolution of the outstanding issues concerning the deposition raised by Defendants.

As a result of defense counsel's actions, Plaintiff filed a Motion for Sanctions for Canceling Deposition of George Avet [ECF No. 384], seeking his attorneys' fees and costs relating to the cancelation of the deposition and a protective order preventing Defendants from interfering with Plaintiff's deposition of Mr. Avet. Mr. Avet also filed a Motion for Sanctions and Protective Order

[ECF No. 391], seeking his attorneys' fees and costs and a protective order that Mr. Avet not be required to sit for another deposition by Defendants in this case.

In the Court's view, the Sheriff Office Defendants' counsel's concerns about Ms. Sleper's representation of Mr. Avet were unfounded, and counsel's unilateral decision to postpone Mr. Avet's deposition was not justified. The Sheriff Office Defendants' argument that Ms. Sleper caused the postponement is not persuasive because, as a non-party, Mr. Avet was not required to give Defendants advance notice of his attorney representation. Defendants have not articulated an actual conflict that would prevent Ms. Sleper from representing Mr. Avet.

The Sheriff Office Defendants' conduct in canceling the Court-ordered continued deposition of Mr. Avet based on a non-existent conflict caused undue delay, burden, and expense to Mr. Avet as well as Plaintiff and was not justified. Therefore, sanctions are warranted. The Court holds that Defendants are not permitted to complete Mr. Avet's deposition. The Sheriff Office Defendants took a chance in postponing the deposition and lost their opportunity based on their unfounded concern about a purported conflict of interest. No such conflict exists, and the Court grants Plaintiff's and Mr. Avet's request for a protective order preventing Defendants from re-scheduling the deposition.

The Court declines Plaintiff's request to enter any monetary sanctions at this time. Plaintiff's counsel, Mr. Avet, and his counsel appeared for the deposition on March 14, 2019 as Plaintiff's counsel had intended to proceed with his deposition of Mr. Avet. After participating in a Local Rule 37.2 conference with Defendants' counsel and Mr. Avet's counsel, and unsuccessfully attempting to obtain guidance from the Court as to how to proceed, Plaintiff decided not to proceed with the deposition. This ends the issue. There has been far too much back and forth about the deposition of Mr. Avet, a non-party. Whether or not Mr. Avet ultimately will testify at any trial in this case, his deposition is closed and the parties need to move on.

For these reasons, Plaintiff's Motion for Sanctions for Canceling Deposition of George Avet and Movant George Avet's Motion for Sanctions and Protective Order are granted in part and denied in part.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: September 16, 2019