**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PERCY TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 1856 |
| | ) | |
| COOK COUNTY SHERIFF'S OFFICE, | ) | The Honorable Judge Mary M. Rowland |
| THOMAS J. DART, GREGORY ERNST, | ) | Judge Presiding |
| PATRICK FITZGERALD, THE ESTATE OF | ) | |
| PATRICK MURPHY, JOSEPH WAYS AND | ) | The Honorable Jeffrey T. Gilbert |
| ZELDA WHITTLER, | ) | Magistrate Judge |
| | ) | |
| Defendants. | ) | |

**RESPONSE TO DART DEFENDANTS' JOINT LOCAL
RULE 56.1(b)(3)(C) STATEMENT OF FACTS IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**JURISDICTION AND VENUE**

1.      This Court has subject matter and supplemental jurisdiction pursuant to 28 U.S.C.

§ 1331 and 28 U.S.C. § 1367, respectively, and venue is proper as this action alleges acts

occurring within this judicial district. *See* Fourth Amended Complaint ("FAC"), Docket Number

("Dkt. No.") 294, at ¶¶ 1-3.

**RESPONSE:** Admit.

**PARTIES**

2.      Plaintiff is Percy Taylor, who began his employment with the Sheriff's Office on

or about April 3, 1995 as a Deputy Sheriff. *Id.* at ¶ 4. In January 2000, he was promoted to the

position of Police Officer which is the position he held at all relevant times herein. *Id.* at ¶ 18.

**RESPONSE:** Admit.

3.      Defendant Sheriff Dart is the Sheriff of Cook County, Illinois. *Id.* at ¶ 7.

**RESPONSE:** Admit.

4.     Defendant Joseph Ways ("Director Ways") was the Executive Director of the Sheriff's Office's Office of Professional Review ("OPR") at all times relevant herein. *Id.* at ¶ 11. Director Ways retired from the Sheriff's Office in February of 2013. *See* Director Ways' 10-23-18 Deposition ("Dep."), attached as Exhibit ("Ex.") A, at 6:10-15.

**RESPONSE:** Admit.

5.     Defendant Zelda Whittler was the Undersheriff of Cook County, Illinois at all times relevant herein. *See* FAC, Dkt. No. 294, at ¶ 12.

**RESPONSE:** Admit.

6.     Non-defendant DeWayne Holbrook ("Chief Holbrook") was the Chief of the Sheriff's Offices' Police Department at all times relevant herein. *See* Chief Holbrook's 5-3-18 Dep., attached as Ex. B, at 5:23-6:7. Chief Holbrook retired from the Sheriff's Office in November of 2011. *Id.* Non-defendant Michael Smith was the First Deputy Chief of the Sheriff's Offices' Police Department at all times relevant herein. *See* Smith's Dep., attached as Ex. C, at 10:12-18; 14:12-16. Non-defendant Edward Dyner was the Unit Director of OPR's Police Department unit at all times relevant herein. *See* Dyner's Dep., attached as Ex. D, at 17:21-18:6; 23:13-3.

**RESPONSE:** Objection to the designation given to these witnesses. Admit that the persons identified in this paragraph are witnesses.

### THREE SEPARATE INVESTIGATIONS CONDUCTED

7.     As described further by Defendants Ernst, Fitzgerald and Estate of Murphy ("Investigator Defendants") in their Statement of Undisputed Material Facts, Motion for Summary Judgment and accompanying Memorandum, OPR conducted three separate internal

investigations of Plaintiff in 2011 for: (1) firing a pellet rifle at his unarmed neighbor and failing to report a conviction for a DUI; (2) battering and assaulting two deputy sheriffs; and (3) threatening a superior officer. *See* Report of Investigation ("ROI") for Shooting/DUI Incident, attached as E; ROI for Battery Incident, attached as F; ROI for Threat Incident, attached as G. The assigned investigators handled the investigations but were not involved in recommending discipline. *Id.;* Director Ways' 10-23-18 dep., attached as Ex. A, at 16:5-8; Dyner's dep., attached as Ex. D, at 50:3-53:1.

 **RESPONSE:** Admit.

### INCIDENT FOR FIRING A PELLET RIFLE AT UNARMED NEIGHBOR AND FAILING TO REPORT DUI CONVICTION

*Loudermill Hearing*

 8. A *Loudermill* hearing was held on March 22, 2011. *See* Plaintiff's 1-22-16 Dep., attached as Ex. H-1, at 90:10-23. The *Loudermill* panel voted to suspend Plaintiff with pay pending Merit Board action. *Id.* at 91:2-4*; Loudermill* decision in Shooting/DUI incident, attached as Group Ex. I (1). Undersheriff Whittler separately reviewed and approved the *Loudermill* panel's decision. *See* Undersheriff Whittler's Dep., attached as Ex. J, at 37:21-39:10; 44:20-46:12; 79:25-81:14. Based on budgetary and fiscal reasons, rather than relief of duty at home, she ordered Plaintiff work in the Court Services Division in a de-deputized status while being paid. *Id.* Undersheriff Whittler could not recall a single instance in which an employee was ever suspended with pay and not required to work. *Id.* at 46:13-19.

 **RESPONSE:** Admit in part, deny in part. Whittler did not concur with the decision to suspend Plaintiff with pay. *See*, April 14, 2011 letter, Plaintiff' Statement of Additional Facts ("PS") ¶ 29. Chief of Police Holbrook, in a memorandum dated April 14, 2011, responded to Whittler's letter defending the *Loudermill* Board's decision by stating "In this particular instance,

debriefing the Board members revealed that they voted their conscious (sic) based on the weakness of the evidence, not for want of knowing what to do" (*Id.* 2).

*Report of Investigation*

9.      After assigned investigator Gregory Ernst completed the report of investigation ("Report"), Unit Director Edward Dyner reviewed the report and corresponding exhibits before it was submitted to Director Ways. *See* ROI for Shooting/DUI Incident, attached as Ex. E, at 1-9; Dyner's Dep., attached as Ex. D, at 39:11-41:6. Mr. Dyner approved the report based on the totality of the facts supporting the sustained finding. *Id.*

**RESPONSE:**  Admit in part. Deny that Dyner's approval was based on the totality of facts supporting the sustained finding. The facts demonstrate an unwarranted and overzealous persecution of Taylor and thus Dyner's approval of the report is suspect. Dyner is the same person that in 2011 instructed Hemphill to issue a report that Barber should be fired before the investigation even started. (*See,* PS ¶ 40). Dyner is the person that in 2011 assigned Ernst to the Taylor investigation. (*See,* PS ¶ 12). Further, see Dyner Dep. at 40-41, where Dyner could not recall what facts or what evidence supported the charges against Percy. Further, the report was the result of a shoddy and biased investigation. (*See,* PS ¶¶ 48-53).

10.      The Report consists of a synopsis, details of investigation, summary and various exhibits. *See* ROI for Shooting/DUI Incident, attached as E, at CCSO 1185 (Synopsis); CCSO 1186-1191 (Details); CCSO 1192 (Summary); CCSO 1193-1589 (Exhibits). The exhibits include*, inter alia*, memorandums of investigations, criminal complaints, 911 calls, offense incident report, Chicago Police Department ("CPD") case report, evidence technician reports and photographs, search warrants, criminal histories of Plaintiff and Harold Woolfolk ("Mr. Woolfolk"), and estimated repair costs from Mary Wolfe ("Ms. Wolfe") for vehicle damage. *Id.*

at CCSO 1221-1222 (Criminal complaints); CCSO 1229-1249 (FBI arrest history of Plaintiff); CCSO 1262 (Offense incident report); CCSO 1263-1279 (Memorandums of investigation); CCSO 1337-1339 (CPD original case repot); CCSO 1341-1350 (Evidence technician reports); CCSO 1359-1360 (Search warrant complaint); CCSO 1367-1370 (Search warrants); CCSO 1372-1379 (911 calls); CCSO 1383 (Jewel Osco video); CCSO 1385-1474 (Evidence technician photos); CCSO 1481-1487 (Criminal History of Woolfolk); CCSO 1500-1507 (Receipt for damage).

**RESPONSE:** Object. Report speaks for itself. The above list adds nothing to the facts upon which this Court will determine whether summary judgment is warranted. Additionally, this report omitted salient and pertinent facts. *See,* PS ¶¶ 12; 14; 17-20; 21; 23-25; 28; 29; 30; 34-35; 36; 48-53. Further, the report was the result of a shoddy and biased investigation. (*See,* PS ¶¶ 48-53).

11. The Report confirms that investigators followed up with CPD, conducted interviews, conducted background checks of Mr. Woolfolk and Plaintiff, executed a search warrant of Plaintiff's home/car, conducted an on-scene investigation, requested an evidence technician to take photographs of the vehicle at issue and search the scene for evidence and followed up on Plaintiff's alleged alibi. *Id.* at CCSO 1263-1279 (Memorandums of investigation); CCSO 13411350 (Evidence technician reports); CCSO 1481-1487 (Criminal History of Woolfolk); CCSO 1359-1360 (Search warrant complaint); CCSO 1367-1370 (Search warrants); CCSO 1341-1350 (Evidence technician reports); CCSO 1385-1474 (Evidence technician photos).

**RESPONSE:** Object. Report speaks for itself. Whether the report confirms actions or whether it confirms that investigators covered their tracks is for the trier of fact to determine. Further, the report was the result of a shoddy and biased investigation. (*See,* PS ¶¶ 48-53).

12.     The Report notes that: the investigation began as a result of private citizen Ms. Wolfe who immediately called CPD noting that someone is shooting a weapon at the windshield of her vehicle; CPD came to the scene, did initial interviews, and completed an offense report describing observations and interviews; there was damage to windshield and front of vehicle (headlights) observed and documented by victims, CPD, evidence technician and investigators; (4) there was a positive identification of shooter (Plaintiff) by Mr. Woolfolk; Mr. Woolfolk has seen Plaintiff on multiple occasions prior to incident; the victims alleged that Plaintiff tried paying them off to drop criminal charges; the victims signed criminal complaints under oath; there was evidence that Plaintiff had an on-going dispute with Mr. Woolfolk over Plaintiff's broken garage door; Plaintiff's alleged alibi did not demonstrate innocence; and Plaintiff failed to report a prior arrest and conviction for Driving Under the Influence and the supervisor who Plaintiff claimed he reported the DUI incident denied that he did in fact report it. *Id.* at CCSO 1186-1191 (Details); CCSO 1263-1279 (Memorandums of investigation); CCSO 1337-1339 (CPD original case repot); CCSO 1341-1350 (Evidence technician reports); CCSO 1385-1474 (Evidence technician photos); CCSO 1500-1507 (Receipt for damage).

**RESPONSE:** Object. Report speaks for itself. Whether the report confirms actions or whether it confirms that investigators covered their tracks is for the trier of fact to determine. Additionally, this report omitted salient and pertinent facts. Further, the report was the result of a shoddy and biased investigation. (*See,* PS ¶¶ 48-53). *See,* Plaintiff's Answer to paragraph 10 above.

25

*Termination Recommendation*

13.      Upon a review of the Report for correctness, completeness and thoroughness, on April 18, 2011, Director Ways sustained the charges based on the evidence of misconduct and recommended termination. *See* Director Ways' 5-15-18 Dep., attached as Ex. K, at 99:20-101:1; 112:10-18; 136:1-3. Director Ways considered the severity of the offenses and the totality of the circumstances when he recommended termination. *See* Director Ways' 10-23-18 Dep., attached as Ex. A, at 131:11-132:13. The charges included violation of state law, unlawful use of a weapon, conduct unbecoming of a Police Officer, failure to report an arrest/conviction for a DUI and false report to the *Loudermill* panel about reporting an arrest/conviction for a DUI. *See* ROI for Shooting/DUI Incident, attached as E, at CCSO 1192.

**RESPONSE:** Deny. There is a question of fact as to Ways' competence based on his answers to questions at deposition. (*See,* Johnson report p. 22; PS ¶¶ 73-76). Further, the investigation did not follow all logical leads, it did not document exculpatory information. At a minimum, it should have been returned with instructions on the deficiencies to be corrected or followed up. Even after Chief Holbrook's 4-14-2011 memo to Whittler noted several deficiencies in the investigation, no follow-up was conducted. (Johnson Report p. 22; *see also,* PS ¶ 29). Also the investigation failed to corroborate Woolfolk's accusation. (Johnson Report at 21, PS ¶¶ 2, 51). Instead, OPR investigated Percy for such irrelevant matters as outstanding parking tickets and whether he was receiving Public Aid. (*Id.* at 22; *see also* PS ¶¶ 29, 52). Further, the report was the result of a shoddy and biased investigation. (*See,* PS ¶¶ 48-53).

14.      Director Ways considered the following offenses when deciding to recommend termination:

1. evidence of an intentional misuse of a weapon with documented damage to a Ford pickup truck and potential harm to Mr. Woolfolk;

25

2. evidence of an assault with a criminal complaint filed;
3. evidence of violations of operational guidelines and policies;
4. evidence of another misdemeanor – criminal damage to property – with documented damage to a Ford pickup truck and a criminal complaint filed;
5. evidence of failure to cooperate with the investigation;
6. evidence of an arrest and conviction for a DUI;
7. evidence of failure to report that arrest and conviction of a DUI;
8. evidence of providing false/misleading information or lying when he told *Loudermill* panel that he reported the arrest and conviction of a DUI; and
9. evidence of unprofessional off-duty conduct.

*See* Director Ways' 10-23-18 Deposition, attached as Ex. A, at 37:8-38:22; 44:17-45:3

(Misuse of a Weapon); 47:17-25 (Assault); 52:7-16; 56:1-10; 58:7-59:8 (DUI/Failure to Report);

59:23-10; 61:5-10 (False Information); 62:6-12; 63:3-6 (Lack of Candor); 64:1565:3; 66:11-18

(Failure to Cooperate); 132:18-135:5 (Other Misdemeanor); *see also* Director Ways'

Interrogatory Responses, attached as Group Ex. L (4), at ¶ 7.

**RESPONSE:** Deny. There is a question of fact as to Ways' competence based on his

answers to questions at deposition. (*See* Johnson report p. 22; PS ¶¶ 50; 55; 73-76).

15.     Director Ways also considered the following aggravating factors: injury/harm to

persons/property; violent/aggressive behavior; dishonesty; use of weapon; jeopardizes the safety

of others; intentional and significant issues; deliberate concealment; seriousness of incident;

impact on agency; uncooperative; and arrest/conviction. *See* Director Ways' Interrogatory

Responses, attached as Group Ex. L (4), at ¶ 8.

**RESPONSE:** Deny. There is a question of fact as to Ways' competence based on his

answers to questions at deposition. (*See,* Johnson report p. 22; PS ¶¶ 50; 55; 73-76).

16.     Plaintiff's own expert agrees that the discharge of a weapon unprovoked at a

citizen justifies termination. *See* Johnson's Dep., attached as Ex. M, at 198:20-24.

**RESPONSE:** Object. Taken out of context. (*See, e.g*., Johnson Report p. 9, where he

states that when OPR investigators drew guns on Crystal Taylor, her niece and her children,

including a baby, the investigators violated accepted law enforcement practices, as none of these persons posed a threat. None of the OPR investigators involved in that misconduct was investigated, charged or terminated.).

*Criminal Proceeding*

17.    Cook County State's Attorney's Office's Assistant State's Attorney ("ASA") Maria Burnett found probable cause to proceed with criminal misdemeanor charges. *See* Burnett Dep., attached as Ex. N, at 36:18-40:12; 42:1-10; 117:6-18:2. ASA Burnett based this on the "damage to the truck" and because "parties knew each other, they were very, very credible witnesses, the damage corroborated what Mr. Woolfolk said, their description in saying that he was a sheriff was also corroborated when -- and the -- we had a receipt for the -- or not a receipt, we had a -- I don't know if it was a bill or receipt for the damage." *Id.*

**RESPONSE:** Move to strike. The Prosecutor can only act on facts presented by the investigators. The Prosecutor did not conduct her own investigation. Her determination of probable cause was not independently substantiated. The Prosecutor was presented with a version of events that was the product of a shoddy and biased investigation. (*See,* PS ¶¶ 48-53). The issue of probable cause is for the jury to determine.  (*See*, Order on Motion to Dismiss, doc. 290, pp. 8-9).

18.    On December 14, 2011, Plaintiff agreed to pay restitution to Ms. Wolfe in the amount of $1,400, which was the estimated amount of damage to the vehicle. *See* Judge Kuzas' Affidavit, attached as Ex. O; Burnett Dep., attached as Ex. N, at 66:16-70:25; 82:20-83:1. In exchange, ASA Burnett dismissed the charges against Plaintiff. *See* Burnett Dep., attached as Ex. N, at 66:16-70:25; 82:20-83:1.

**RESPONSE:** Deny. Restitution is a legal term, *see* 730 ILCS 5/5-5-6. Restitution is ordered by the Court. (*Id.*). In this case, there is no Court order requiring Percy to pay restitution. Percy denies paying Wolfe any money. But even if he did, because there is no Court Order such payment cannot be called restitution. Accordingly, any payment would have been in settlement of disputed claims and is inadmissible at the trial of this case pursuant to Rule 408 of the Federal Rules of Evidence.

*Search Warrant*

19. A search warrant to search Plaintiff's residence and car was approved by Cook County State's Attorney Ramon Moore and signed by Cook County Circuit Judge Kevin Sheehan. *See* ROI for Shooting/DUI Incident, attached as E, at CCSO 1359-1360 (Search warrant complaint); CCSO 1367-1370 (Search warrants).

**RESPONSE:** Move to strike. The Prosecutor can only act on facts presented by the investigators. The Prosecutor did not conduct his own investigation. The facts on which he based his approval of the search warrant were not independently substantiated. The Prosecutor was presented with a version of events that was the product of a shoddy and biased investigation. (*See,* PS ¶¶ 48-53).

**INCIDENT INVOLVING BATTERY AND ASSAULT TO TWO DEPUTY SHERIFFS**

20. Plaintiff was subsequently accused of battery and aggravated assault. *See* ROI for Battery Incident, attached as Ex. F. After assigned investigator Gregory Ernst completed the report of investigation ("Report"), Unit Director Edward Dyner reviewed the report and corresponding exhibits before it was submitted to Director Ways. *Id.*; Dyner's Dep., attached as Ex. D, at 39:1141:6. Mr. Dyner approved the report based on the totality of the facts supporting the sustained finding. *Id.*

**RESPONSE:** Admit, except for last sentence. The facts demonstrate an unwarranted and overzealous persecution of Taylor and thus Dyner's approval of the report is suspect. Dyner is the same person that in 2011 instructed Hemphill to issue a report that Barber should be fired before the investigation even started. (*See,* PS ¶¶ 40-41). Dyner is the person that in 2011 assigned Ernst to the Taylor investigation. (*See,* PS ¶ 12). Further, see Dyner Dep. at 40-41, where Dyner could not recall what facts or what evidence supported the charges against Percy.

21.     The Report consists of a synopsis, details of investigation, summary and various exhibits. *See* Report of Investigation for Battery Incident, attached as Ex. F, at CCS0 1721 (Synopsis); CCSO 1722-1724 (Details); CCSO 1725 (Summary); CCSO 1726-1779 (Exhibits). The exhibits include, *inter alia*, incident report, arrest report and criminal complaint for battery signed by Deputy Sheriff ("DS") Nowaki. *Id.* at CCSO 1733 (9-16-11 Incident report); CCSO 1734 (DeCook Supplemental Report); CCSO 1736-1738 (10-24-11 Incident report); CCSO 1757-1761 (Arrest report); CCSO 1741 (Nowacki criminal complaint); CCSO 1769-1772 (Plaintiff' Statement).

**RESPONSE:** Move to strike as irrelevant. Also, this version omits important salient facts. OPR drafted the criminal complaint (PS ¶¶ 60-62, 83). One of the two OPR investigators told Nowacki that "you will have to sign a complaint." (PS ¶ 60). And, both Nowacki and DeCook signed criminal complaints against Percy only after OPR showed up. (PS ¶¶ 60-62). DeCook's complaint is not sworn or dated and Nowacki is named as the complainant in DeCook's complaint. (PS ¶ 62). Defendants Ernst and Fitzgerald were the OPR investigators assigned to the Nowacki incident. Ernst signed the OPR summary. (PS ¶ 64). Ernst and Fitzgerald arrested Percy. (*Id*.).

25

22.    The Report confirms that investigators conducted interviews of victims DS Nowacki and DS DeCook as well as three witnesses—DS Gil, DS Glenn and DS Johnson—and reviewed a memorandum submitted by Plaintiff. *Id.* at CCSO 1722-1724 (Details); CCSO 1733 (9-16-11 Incident report); CCSO 1734 (DeCook Supplemental Report); CCSO 1736-1738 (10-24-11 Incident report); CCSO 1757-1761 (Arrest report); CCSO 1741 (Nowacki criminal complaint); CCSO 1769-1772 (Plaintiff' Statement).

**RESPONSE:** Deny that the report confirms anything. The report omits salient facts. (PS ¶¶ 29, 51-53). The report was the result of a shoddy and biased investigation. (PS ¶¶ 48-53, 60-62).

23.    The Report noted that:

1. a sheriff deputy reported that Plaintiff grabbed and twisted his hand while assigned at the Daley Center;
2. another sheriff deputy working the same post reported that he heard an argument between DS Nowacki and Plaintiff and stated that later in the day, Plaintiff threatened him that he would catch him on the street;
3. both deputies signed criminal complaints for battery and aggravated assault under oath; and
4. subsequent to the incident, three other deputy sheriff's reported that they observed Plaintiff stalk DS Nowacki in an attempt to intimidate him on at least three occasions after the incident.

*Id.* at CCS0 1721 (Synopsis); CCSO 1722-1724 (Details); CCSO 1734 (DeCook Supplemental Report); CCSO 1736-1738 (10-24-11 Incident report); CCSO 1757-1761 (Arrest report); CCSO 1741 (Nowacki criminal complaint)

**RESPONSE:** Move to strike as irrelevant. Also, this paragraph omits salient facts.  (*See,* PS ¶¶ 56-62, 64). Further, the report was the result of a shoddy and biased investigation. (*See,* PS ¶¶ 48-53, 60-62).

*Termination Recommendation*

24.    Upon a review of the Report for correctness, completeness and thoroughness, on October 25, 2011, Director Ways sustained the charges based on the evidence of misconduct and

recommended termination. *See* Director Ways' 5-15-18 Dep., attached as Ex. K, at 99:20-101:1; 112:10-18; 120:24-121:3. The charges include violation of a state law and conduct unbecoming of a Police Officer. *See* ROI for Battery Incident, attached as Ex. F. When he recommended termination, Director Ways considered the severity of the offenses, the totality of the circumstances and the prior disciplinary history of Plaintiff including that that there was a sustained OPR investigation against Plaintiff and a pending Merit Board hearing for Weapon/DUI Incident. *See,* Director Ways' 10-23-18 Dep., attached as Ex. A, at 130:23-132:13; 135:13-136:3.

**RESPONSE:** Deny. There is a question of fact as to Ways' competence based on his answers to questions at deposition. (*See,* Johnson report p. 22; *see, also,* PS ¶¶ 50, 55, 73-76).

25.     Director Ways considered the following offenses when deciding to recommend termination:

1. evidence of a battery with a criminal complaint filed;
2. evidence of an assault based on DS DeCook's statements;
3. evidence of violations of operational guidelines and policies; and
4. evidence of unprofessional off-duty conduct.

*Id.* at 73:12-20 (Battery); 78:19-79:19; 80:22-81:5 (Unprofessional Conduct); *see also* Director Ways' Interrogatory Responses, attached as Group Ex. L (4), at ¶ 11.

**RESPONSE:** Deny. There is a question of fact as to Ways' competence based on his answers to questions at deposition. (*See* Johnson report p. 22; *see, also,* PS ¶¶ 50, 55, 73-76).

26.     Director Ways also considered the following aggravating factors: prior sustained OPR case; pending Merit Board matter; seriousness of incident; injury/harm to persons/property; violent/aggressive behavior; intentional; dishonesty; and arrest/conviction.. *See* Director Ways' Interrogatory Responses, attached as Group Ex. L (4), at ¶ 12.

**RESPONSE:** Deny. There is a question of fact as to Ways' competence based on his answers to questions at deposition. (*See* Johnson report p. 22; *see, also,* PS ¶¶ 50, 55, 73-76).

27.     ASA Maria Burnett found probable cause to prosecute the case. *See* Burnett Dep., attached as Ex. N, at 117:6-18:2.

**RESPONSE:** Move to strike. The Prosecutor can only act on facts presented by the investigators. The Prosecutor did not conduct her own investigation. Her determination of probable cause was not independently substantiated. The Prosecutor was presented with a version of events that was the product of a shoddy and biased investigation. The issue of probable cause is for the jury to determine.  (*See*, Order on Motion to Dismiss, doc. 290, pp. 8-9).

28.     A *Loudermill* hearing occurred on November 9, 2011—the *Loudermill* board voted for Plaintiff to reman (sic) on payroll in a de-deputized status pending Merit Board actions. *See Loudermill* Decisions, Group Ex. I (2).

**RESPONSE:** Admit.

### INCIDENT INVOLVING THREATS TO SUPERIOR OFFICER

29.     Plaintiff was subsequently accused of threating a Deputy Sergeant. *See* ROI for Threat Incident attached as Ex. G. After assigned investigator Gregory Ernst completed the report of investigation ("Report"), Unit Director Edward Dyner reviewed the report and corresponding exhibits before it was submitted to Director Ways. *Id.*; Dyner's Dep., attached as Ex. D, at 39:1141:6. Mr. Dyner approved the report based on the totality of the facts supporting the sustained finding. *Id.*

**RESPONSE:** Admit, except for last sentence. The facts demonstrate an unwarranted and overzealous persecution of Taylor and thus Dyner's approval of the report is suspect. Dyner is

the same person that in 2011 instructed Hemphill to issue a report that Barber should be fired before the investigation even started. (*See,* PS ¶¶ 40-41). Dyner is the person that in 2011 assigned Ernst to the Taylor investigation. (*See,* PS ¶ 12). Further, see Dyner Dep. at 40-41, where Dyner could not recall what facts or what evidence supported the charges against Percy.

30.     The Report consists of a synopsis, details of investigation, summary and various exhibits. *See* ROI for Threat Incident, attached as Ex. G, at CCSO 1669 (Synopsis); CCSO 1670 (Details); CCSO 1672 (Summary); CCSO 1681-1698 (Exhibits). The exhibits include*, inter alia*, statements by Sergeant Guerrero and memorandums of witness. *See* ROI for Threat Incident, attached as Ex. __, at___. CCSO 1686—1689 (Guerrero statements); CCSO 1694-1695 (Witness statements).

**RESPONSE:** Move to strike as irrelevant.

31.     The Report confirms that investigators conducted interviews of two witnesses and reviewed a memorandum submitted by Sergeant Guerrero. *Id.* The Report noted that:

1. Plaintiff threatened a deputy sergeant by telling him that he could not wait to get his stuff back and he better hope that he did not catch him on the street because he would lock him up and give him (and other people) tickets; and
2. two deputy sheriffs provided statements that they overhead the threat and repeated identical stories.

*Id.* at CCSO 1669 (Synopsis); CCSO 1670 (Details); CCSO 1686—1689 (Guerrero statements); CCSO 1694-1695 (Witness statements).

**RESPONSE:** Deny that the report confirms anything. The report was based on a biased investigation. (*See,* Plaintiff's Answer to Paragraph 10, above).

*Termination Recommendation*

32.     Upon a review of the Report for correctness, completeness and thoroughness, on December 1, 2011, Director Ways sustained the charges based on the evidence of misconduct

and recommended termination. *See* Director Ways' 5-15-18 Dep., attached as Ex. K, at 99:20-101:1; 112:10-18; 126:23-127:5. The charges include conduct unbecoming of a Police Officer and insubordination. *See* ROI for Threat Incident, attached as Ex. G, at 1-7. When he recommended termination, Director Ways considered the severity of the offenses, the totality of the circumstances and the prior disciplinary history of Plaintiff including that that there was a sustained OPR investigation against Plaintiff and a pending Merit Board hearing for firing a pellet rifle at an unarmed neighbor. *See* Director Ways' 10-23-18 Dep, attached as Ex. A, at 130:23132:13; 135:13-136:3.

**RESPONSE:** Deny. There is a question of fact as to Ways' competence based on his answers to questions at deposition. (*See* Johnson report p. 22; *see, also,* PS ¶¶ 50, 55, 73-76).

33.     Director Ways considered the following offenses when deciding to recommend termination:

1. evidence of an assault based on Sergeant Guerrero's statements;  (2) evidence of violations of operational guidelines and policies; and
2. evidence of unprofessional off-duty conduct.

*Id.* at 91:5-10 (Assault); 93:12-16 (Unprofessional Conduct); *see also* Director Ways' Interrogatory Responses, attached as Group Ex. L (4), at ¶ 15.

**RESPONSE:** Deny. There is a question of fact as to Ways' competence based on his answers to questions at deposition. (*See* Johnson report p. 22; *see, also,* PS ¶¶ 50, 55, 73-76).

34.     Director Ways also considered the following aggravating factors: prior sustained OPR case; pending Merit Board matter; seriousness of incident; injury/harm to persons/property; violent/aggressive behavior; intentional; dishonesty; and arrest/conviction. *See* Director Ways' Interrogatory Responses, attached as Group Ex. L (4), at ¶ 16.

**RESPONSE:** Deny. There is a question of fact as to Ways' competence based on his answers to questions at deposition. (*See* Johnson report p. 22; *see, also,* PS ¶¶ 50, 55, 73-77).

35.     A *Loudermill* hearing occurred on December 5, 2014—the *Loudermill* board voted for Plaintiff to remain on payroll in a de-deputized status pending Merit Board actions. *See Loudermill* decisions, Group Ex. I (3).

**RESPONSE:** Admit.

### COMMAND CHANNEL REVIEW

36.     In a process called Command Channel Review ("CCR"), Plaintiff's department head, then Director Ways and finally Undersheriff Whittler reviewed each Report and corresponding recommended discipline. *See* Director Ways' 10-23-18 Dep., attached as Ex. A, at 35:23-36:2; 77:5-20; Director Ways' 5-15-18 Dep., attached as Ex. K, at 99:20-101:117; 112:10-113:8; Undersheriff Whittler's Dep., attached as Ex. J, at 32:9-33:4; Chief Holbrook's 5-3-18 Dep., attached as Ex. B, at 30:16-21:2; CCR forms for Investigations, attached as Group Ex. P.

**RESPONSE:** Admit the procedure exists. Deny that it was fairly or accurately applied in Taylor's case. (*See*, PS ¶¶ 20; 28; 29-30; 50; 73-76).

37.     Based on his review of Reports, Chief Holbrook concurred with the sustained charges and the termination recommendation for Shooting/DUI Incident and Battery Incident, respectively, on April 20, 2011 and October 25, 2011. *See* Chief Holbrook's 5-3-18 Dep., attached as Ex. B, at 17:25-18:14; 19:9-21:2; 24:25-25:12; Chief Holbrook's 10-1-18 Dep., attached as Ex. Q, at 20:18-23; 25:4-25; CCR forms for Investigations, attached as Group Ex. P.

**RESPONSE:** Admit that Holbrook signed off on the channel review. Deny his motivation is as stated by the defendants. This is a disputed issue to be resolved by the trier of fact. *See*, PS ¶¶ 73-76 where Johnson, an expert in police practices and disciplinary procedures,

determined, giving concrete examples, that OPR's recommendations for disciplinary action against Percy were "extraordinarily severe in comparison to other sustained disciplinary violations of other CCSO personnel.

38.     On December 5, 2011, based on his review of Report, Deputy Chief Smith concurred with the sustained charges and the termination recommendation for Threat Incident. *See* Deputy Chief Smith's Deposition, attached as Ex. C, at 27:5-28:8; CCR forms for Investigations, attached as Group Ex. P (2).

**RESPONSE:** Admit that Smith signed off on the channel review. Deny his motivation is as stated by the Defendants. This is a disputed issue to be resolved by the trier of fact. *See*, PS ¶¶ 73-76 where Johnson, an expert in police practices and disciplinary procedures, determined, giving concrete examples, that OPR's recommendations for disciplinary action against Percy were "extraordinarily severe in comparison to other sustained disciplinary violations of other CCSO personnel.

39.     Director Ways re-reviewed Reports and concurred with the sustained charges and the termination recommendation for Shooting/DUI Incident, Battery Incident and Threat Incident, respectively, on April 27, 2011, October 25, 2011 and December 6, 2011. *See* Director Ways' 515-18 Deposition, attached as Ex. B, at 112:10-21; Director Ways' 10-23-18 Dep., attached as Ex. A, at 142:5-144:16; CCR forms for Investigations, attached as Group Ex. P.

**RESPONSE:** Admit that Ways signed off on the channel review. Deny his motivation is as stated by the Defendants. This is a disputed issue to be resolved by the trier of fact. *See*, PS ¶¶ 50, 73-76, where Johnson, an expert in police practices and disciplinary procedures, determined, giving concrete examples, that OPR's recommendations for disciplinary action against Percy

were "extraordinarily severe in comparison to other sustained disciplinary violations of other CCSO personnel.

40.     Based on her review of Reports, Undersheriff Whittler concurred with the sustained charges and the recommendation for termination for Shooting/DUI Incident, Battery Incident and Threat Incident, respectively, on April 28, 2011, October 26, 2011 and December 6, 2011. *See* Undersheriff Whittler's Deposition, attached as Ex. J, at 32:9-33:4; 52:14-53:3; 57:2-6; 69:23-17; 75:17-78:25; CCR forms for Investigations, attached as Group Ex. P. Undersheriff Whittler reviews reports to determine if there is sufficient evidence to support the allegation and the recommendation of sustained and then determines whether or not to concur with the recommended discipline. *See* Undersheriff Whittler's Deposition, attached as Ex. J, at 32:9-33:4; 52:14-53:3; 57:2-6; 69:23-17; 75:17-78:25.

**RESPONSE:** Admit that Whittler signed off on the channel review. Deny that her procedure for review is relevant. Also, deny that her motivation is as stated by the Defendants. This is a disputed issue to be resolved by the trier of fact. *See*, PS ¶¶ 75-76 where Johnson, an expert in police practices and disciplinary procedures, determined, giving concrete examples, that OPR's recommendations for disciplinary action against Percy were "extraordinarily severe in comparison to other sustained disciplinary violations of other CCSO personnel.

## MERIT BOARD COMPLAINTS

41.     The Reports were then submitted to the Sheriff's Office's Legal Department ("Legal") for another review. *See* Director Ways' 5-15-18 Dep., attached as Ex. K, at 115:10:19; Undersheriff Whittler's Dep., attached as Ex. J, at 60:7-62:7; Scouffas' 7-30-18 Dep., attached as Ex. R, at 145:12-147:23. Legal approved the recommendations and drafted Merit Board ("MB") complaints. *Id.*

25

**RESPONSE:** Deny. The reports are submitted to legal for drafting and filing a complaint. At deposition Scouffas testified: **Q.** Okay.·Does somebody within the legal department have to approve the allegations of the complaint before it gets filed? **A.** No, the -- no, the process does that. (146:24-147:2).

42.     Based on another review of the Reports, Undersheriff Whittler evaluated and signed the MB complaints for Shooting/DUI Incident, Battery Incident and Threat Incident, respectively, on October 19, 2011, November 14, 2011 and March 15, 2013. *See* Undersheriff Whittler's Dep., attached as Ex. J, at 60:14-61:5; MB Complaints, attached as Group Ex. S. After the signing of the MB complaints Undersheriff Whittler had no further involvement of any kind. *See* Undersheriff Whittler's Dep., attached as Ex. J, at 61:16-22.

**RESPONSE:** Deny. It is a disputed question of fact as to whether Whittler re-evaluated the case. The jury will determine Whittler's credibility. *See*, PS ¶ 29, where Whittler's veracity is called into question.

43.     The complaints for Shooting/DUI Incident, Battery Incident and Threat Incident were filed with the Cook County Sheriff's Merit Board ("Merit Board") by Legal, respectively, on October 20, 2011, November 14, 2011 and March 18, 2013. *Id.; see also* MB Complaints, attached as Group Ex. S; Scouffas' 7-30-18 Deposition, attached as R, at 145:12-147:23. The Sheriff's Office has 18 months to file a MB complaint. *See* Scouffas' 7-30-30 Deposition, attached as R, at 226:1-227:9.

**RESPONSE:** Admit.

44.     Legal filed a motion to voluntarily dismiss complaints for the two subsequent investigations because the relief sought (termination) in the complaints was moot since Plaintiff

was terminated on October 30, 2013 for shooting a pellet rifle at his unarmed neighbor. *See* Motions Withdraw/Reinstating Complaints, Group Ex. T.

**RESPONSE:** Admit.

45.     On December 31, 2014, Legal sought to reinstate the two MB complaints in an effort to protect and maintain Plaintiff's termination status since, as described below, the Circuit Court overturned the Board's decision in Shooting/DUI Incident. *See* Scouffas' 7-30-18 Dep., attached as Ex. R, at 229:17-230:5; 231:1-25; 245:12-246:10; *see also* Defendant Sheriff's Office's Answers to Plaintiff's Third Set of Interrogatories, attached as Group Ex. L (3); Motions Withdraw/Reinstating Complaints, Group Ex. T (1), (3). Legal made the decision as a pure legal matter, to protect and maintain Plaintiff's termination status, due to the numerous terminable offenses committed by Plaintiff. *Id.*

**RESPONSE:** Deny. These actions cannot possibly "protect and maintain" a termination status. Deny that charges in the MB complaints, even if proved, merited termination. Deny that the decision was a pure legal matter, rather it was a pattern and practice of continuing retaliation against Taylor. (*See*, PS ¶¶ 68-72).

46.     On February 25, 2015, Legal filed a motion to withdraw the two MB complaints for jurisdictional reasons since Plaintiff remained terminated and Plaintiff filed multiple motions asking that the Circuit Court reconsider its remand order.  *See* Scouffas' 7-30-18 Dep., attached as Ex. R, at 237:13-238:16; 240:1-4; 241:10-12; 246:22-247:16; *see also* Defendant Sheriff's Office's Answers to Plaintiff's Third Set of Interrogatories, attached as Group Ex. L (3); Motions Withdraw/Reinstating Complaints, Group Ex. T (2), (5). Legal made the decision following a hearing before the Merit Board, and was made as a pure legal matter as to the jurisdiction of the Merit Board. *Id.*

**RESPONSE:** Deny that Plaintiff "remained terminated" and deny the Defendants' excuses for withdrawing the two MB complaints. Deny that the decision was a pure legal matter, rather it was a pattern and practice of continuing retaliation against Taylor. (*See*, PS ¶¶ 68-72).

47.     On July 2, 2018, Legal sought to reinstate the two MB complaints when the Merit Board obtained jurisdiction on April 6, 2018 when the Circuit Court denied Plaintiff's requests to reconsider its remand order. *See* Scouffas' 7-30-18 Dep., attached as Ex. R, at 240:5-21; 241:18243:25; 246:5-10; 247:17-248:6; *See* Motions Withdraw/Reinstating Complaints, Group Ex. T (3), (6).

**RESPONSE:** Admit Defendants sought to reinstate the two MB complaints. This shows a pattern and practice of continuing retaliation against Taylor. (*See*, PS ¶¶ 68-72).

48.     Legal's decisions to withdraw, move to reinstate, withdraw, and again move to reinstate the two MB complaints for the two subsequent investigations were made by the legal counsel for the Sheriff's Office, including its current General Counsel, Nicholas Scouffas, in consultation and with advice from outside counsel at the Cook County State's Attorney's Office. Sheriff Dart, Undersheriff Whittler, and Director Ways were not involved in any way and Legal did not communicate with them about the decisions. *See* Scouffas' 7-30-18 Dep., attached as Ex. R, at 231:19-25; 240:1-4; 241:23-24; 247:10-248:6; Motions Withdraw/Reinstating Complaints, Group Ex. T

**RESPONSE:** Deny. The credibility of a witness is for the jury to determine. (*See also*, PS ¶¶ 30, 41, 45-47).

### ADMINISTRATIVE REVIEW OF SHOOTING/DUI INCIDENT

49.     On February 27, 2013, the Merit Board conducted an evidentiary hearing for Shooting/DUI Incident. *See* Merit Board Hearing Transcript, attached as Ex. V. On October 30,

2013, the Merit Board, a separate entity created by statute, agreed with the CCSO, issued a decision ordering that Plaintiff be separated from his employment with the Sheriff's Office, effective October 30, 2013. *See* Merit Board Decision, attached as Ex. W. Based on the evidence presented and after assessing the credibility of witnesses and the weight (sic) given to the evidence in the record, the Merit Board found that the Sheriff proved by a preponderance of the evidence that Plaintiff violated each and every general order, Sheriff's order and rule and regulation as set forth in complaint. *Id.*

**RESPONSE:** Move to strike as the entire Merit Board proceeding was decreed to be null and void because the MB was not comprised of legally appointed members. *Taylor v. Dart*, 2016 IL App. (1st) 143684. (*See*, PS ¶¶ 42-46).

50. Plaintiff appealed the Merit Board's decision in the Circuit Court of Cook County and on May 7, 2014, the Circuit Court found no due process violation, that the Merit Board's findings were not against the manifest weight of the evidence, and that Plaintiff's termination was not arbitrary, unreasonable, or unrelated to the requirements of his service. *See* Circuit Court's 5-7-14 Order, attached as Group Ex. Y (1). On August 19, 2014, overturned the Board's decision based on the fact that a Board member was not properly appointed. *See* Circuit Court's 8-19-14 Order, attached as Group Ex. Y (2). As a result, Judge Cohen remanded the case to the Merit Board for a new hearing ("Remand Order"). *Id.* On November 25, 2014, the Circuit Court ordered backpay but stayed payment pending appeal, which was later reversed on April 6, 2018, as noted below. *See* 11-25-14 Order, attached as Group Ex. Y (3).

**RESPONSE:** Move to strike as the entire Merit Board proceeding was decreed to be null and void because the MB was not comprised of legally appointed members. *Taylor v. Dart*, 2016 IL App. (1st) 143684. *See*, PS ¶¶ 42-43).

51.     On September 23, 2016, the First District Court of Appeals affirmed and ruled that the illegal composition fatally compromised the Board's authority to act, rendering its final decision against Plaintiff void. *Taylor v. Dart*, 2016 IL App (1st) 143684, vacated in part, 412 Ill. Dec. 918, 77 N.E.3d 86 (Ill. 2017). On January 25, 2017, the Illinois Supreme Court denied review but, in a supervisory order, directed the Court of Appeals to vacate its judgment and decide an issue it had declined to consider regarding Cook County's home-rule authority. *Taylor v. Dart*, 77 N.E.3d 86, 412 Ill. Dec. 918 (Ill. 2017) (supervisory order). On May 12, 2017, the Illinois Appellate Court again affirmed the ruling and directed that the 2013 Merit Board decision against Plaintiff "be vacated and remanded for a hearing before a legally constituted Merit Board." *Taylor v. Dart*, 2017 IL App (1st) 143684-B, 414 Ill. Dec. 735, 81 N.E.3d 1.

**RESPONSE:** Move to strike as the entire Merit Board proceeding was decreed to be null and void. (*See,* PS ¶¶ 42-43).

52.     Plaintiff thereafter filed numerous motions asking the court reconsider the portion of the Circuit Court's order of August 19, 2014 remanding the case to the Merit Board for a new hearing and for relief for immediate reinstatement and an award of backpay. *See* Plaintiff's Motions, attached as Group Ex. Y.

**RESPONSE:** Move to strike as irrelevant.

53.     On April 6, 2018, Judge Cohen rejected Plaintiff's requests for relief to reinstatement and award of back pay and denied Plaintiff's motion to reconsider his remand order. *See* Circuit Court's April 6, 2018 Order, attached as Group Ex. Y (4) (sic); April 6, 2018 Transcript, attached as Group Ex. Y (5) (sic). Judge Cohen found that he did not have jurisdiction under the Administrative Review Law to determine if Plaintiff is entitled to back pay or reinstatement, and remanded the case to the Merit Board for a new hearing to adjudicate the

underlying complaint and to determine Plaintiff's rights, if any, to back pay or reinstatement. *Id.*; April 6, 2018 Transcript, attached as Group Ex. Y (5) (sic), at 31:17-24.

**RESPONSE:** Move to strike as irrelevant. Judge Cohen granted Percy's motion for backpay. On October 23, 2019, Judge Cohen stayed all proceedings in Taylor pending the disposition of *Goral v. Dart*, No. 125085, on appeal before the Illinois Supreme Court. Judge Cohen indicated that given his ruling that Percy is entitled to back pay, his ruling on reinstatement would probably follow the same logic. (*See,* PS ¶ 43).

54.     Beyond Circuit Court filings, on April 18, 2018, Plaintiff filed an emergency motion for back pay and reinstatement with the Merit Board. *See* Plaintiff's Motions, attached as Group Ex. Y (5). The Merit Board denied it, ruling that it will decide the issue of back pay and reinstatement as part of its final decision, and at that time, it will address back pay, reinstatement, and those issues as part of a final disposition. *See* August 22, 2018 Merit Board Transcript, attached as Group Ex. X (6), at 8:20-9:2. The Merit Board also stated that "[w]e believe that we are in compliance with the Court's order in the course of action that we're taking here today." *Id.* at 9.

**RESPONSE:** Move to strike as irrelevant. Further, no such transcript is found in Group Ex. X.

55.     On August 31, 2018, Plaintiff then asked the Circuit Court to overturn the Merit Board's August 22, 2018 decision, and require the Merit Board to decide back pay before a full hearing. *See* Plaintiff's Motions, attached as Group Ex. Y (6), at ¶¶ 8, 15, 17. On September 17, 2018, the Circuit Court rejected Plaintiff's arguments and denied Plaintiff's motion on all counts. *See* Circuit Court's September 17, 2018 Order, attached as Group Ex. X (7); Circuit Court's September 17, 2018 Transcript, attached as Group Ex. X (7).  The Circuit Court confirmed that it

did not have jurisdiction to decide Plaintiff's rights, if any, to back pay or reinstatement, and that the proper remedy was a remand. *Id.* Further, the Circuit Court ruled that it did not have jurisdiction to direct the Merit Board to hear back pay or reinstatement before a full hearing and that "the limits of backpay or the scope of the backpay is going to be actually defined by what happens on the substantive aspects before the Merit Board, when is he separated in fact from it or not." *Id.* at 23:6-10.

**RESPONSE:** Move to strike as irrelevant. Further no such order or transcript is found in Group Ex. X.

56. Based on the Circuit Court and Merit Board rulings denying Plaintiff's requests for back pay and reinstatement, Sheriff's Office's attorneys did not pay Plaintiff back pay or reinstate him. *See* Scouffas' 7-30-19 Deposition, attached as R, at 299:8-14; Scouffas' 2-25-19 Deposition, attached as Z, at 21:8-22:6; 27:4-28:24; 36:21-37:5; 46:16-52:2. Legal made the decision because Plaintiff's ordered remedy was a remanded hearing. *Id.*

**RESPONSE:** Admit that the Defendants denied Percy's requests for back pay and reinstatement. Deny that the motivation for these denials as stated by Defendants is correct. On August 15, 2019, Judge Cohen granted Percy's motion for back pay. Despite having that Court ruling, the Defendants continued to deny back pay. (*See,* PS ¶¶ 46, 47).

57. In an unrelated case, on June 19, 2019, the First District Court of Appeals ruled that, in certain circumstances, a circuit court has jurisdiction to award back pay when the back pay claim is based on an administrative agency's lack of statutory authority and when the claim is based on question of law and does not require the taking of additional evidence. *Goral v. Dart*, 2019 IL App (1st) 181646, ¶ 9. Based on *Goral*, on August 15, 2019, for the first time, Judge Cohen reconsidered his prior decision denying back pay. *See* Circuit Court's 8-15-19 Order,

attached as Group Ex. X (9). On September 25, 2019, the Supreme Court of Illinois allowed

Sheriff Dart's Petition for Leave to Appeal. *Goral v. Dart*, No. 125085, 2019 Ill. LEXIS 722

(Sep. 25, 2019). Based on this appeal, upon Plaintiff's disputed motion, on October 11, 2019,

Judge Cohen stayed the case, including his decision as to back pay, and all pending motions

pending appeal. *See* 10-11-19 Stay Order, attached as Group Ex. X (10)

 **RESPONSE:** *See,* PS ¶ 46.

58. The Merit Board hearing was finally set for November of 2019 but, upon

Plaintiff's disputed motion, Judge Cohen stayed the Merit Board hearing pending the *Goral*

appeal. *See* Plaintiff's 10-16-19 Motion to Stay Merit Board Case, attached as Group Ex. Y (7);

10-11-19 Stay Order, attached as Group Ex. X (10)

 **RESPONSE:** *See,* PS ¶ 46.

## SHERIFF DART

59. Sheriff Dart was not involved in or responsible for any decisions as to the three

investigations or resulting decisions regarding Plaintiff's employment and has no personal

knowledge as to any decisions. *See* Dart's Answers to Plaintiff's First Set of Interrogatories,

attached as Group Ex. L (1) at ¶¶ 1-6. Plaintiff testified that Sheriff Dart was involved in the

underlying investigations and decisions because "this arrest was so arbitrary and egregious that I

don't believe that a correctional officer had that authority," "when I would have conversations

with Gregory Ernst, I would ask him about why things are happening; and he would leave out the

room and come back shortly and answer," and "he is the Boss." *See* Plaintiff's 1-26-16 Dep.,

attached as H, at 93:15-21; 98:4-99:11; 112:22-113:12.

 **RESPONSE:** Deny. (*See,* PS ¶¶ 22; 37-39; 40; 41).

## DIRECTOR WAYS' ROLE AND INVOLVEMENT

60.     When the recommended discipline is more than thirty days, Director Ways does

not impose or decide discipline – he only *recommends* termination – the Merit Board imposes

and decides the ultimate discipline. *See* Director Ways' 10-23-18 Dep. attached as Ex. A, at

129:4-8; 141:14-142:11. The Merit Board has final policymaking authority with respect to

terminating police officers at the Sheriff's Office. *Id.* Nobody other than Director Ways had any

role or influence in recommending discipline. *Id.* at 16:5-8*;* Dyner's Dep., attached as Ex. D, at

50:353:3.

**RESPONSE:** Deny. These are disputed questions of fact. There is enough evidence to

sustain an inference that Ways did what he was told to do by Dart and others. The shoddy

investigation, the bias of the investigators, the communications with Dart at the *Loudermill* stage,

Whittler's involvement early on in the investigation, the overzealous persecution of Taylor,

Ways' apparent incompetence as Executive Director, are all facts that must be weighed to

determine if the statements made above are true. (*See,* PS ¶¶ 20; 50; 55; 65; 73-74).

## DEFENDANTS DID NOT DISCUSS DECISIONS WITH SHERIFF DART OF AMONGST THEMSELVES

61.     Director Ways did not communicate with Sheriff Dart or Undersheriff Whittler

about his recommendations related to Plaintiff or about Plaintiff in any other way. *See* Director

Ways' 5-15-18 Deposition, attached as Ex. K, 92:25-93:17.

**RESPONSE:** Deny. These are disputed questions of fact. There is enough evidence to

sustain an inference that Ways did what he was told to do by Dart and others. The shoddy

investigation, the bias of the investigators, the communications with Dart at the *Loudermill* stage,

Whittler's involvement early on in the investigation, the overzealous persecution of Taylor, and

Ways' apparent incompetence as Executive Director, are all facts that must be weighed to determine if the statements made above are true. (*See,* PS ¶¶ 30, 41).

62.     Undersheriff Whittler did not communicate with Sheriff Dart or Director Ways about her decisions to concur in CCR, to sign MB complaints or about Plaintiff in any other way. *See* Undersheriff Whittler's Dep., attached as Ex. J, at 28:20-29:5; 53:21-54:14.

**RESPONSE:** Deny. These are disputed questions of fact. There is enough evidence to sustain an inference that Whittler did communicate with Dart. Whittler's involvement early on in the investigation, her communications regarding the *Loudermill* hearing, copying her correspondence to Dart's Chief of Staff, are all facts that must be weighed to determine if the statements made above are true. (*See,* PS ¶¶ 29, 31, 65).

63.     Chief Holbrook did not communicate with Sheriff Dart, Undersheriff Whittler or Director Ways about his decisions to concur in CCR or about Plaintiff in any other way except with Undersheriff Whittler regarding the *Loudermill* panel's decision. *See* Chief Holbrook's 10-1-18 Dep., attached as Ex. Q, at 57:4-18.

**RESPONSE:** Deny. These are disputed questions of fact. There is enough evidence to sustain an inference that Holbrook did communicate with Dart. Holbrook would attend regular meetings with Dart. Given Whittler's involvement with the *Loudermill* hearing, her communications with Holbrook, copying her correspondence to Dart's Chief of Staff, are all facts that must be weighed to determine if the statements made above are true. (*See* PS ¶ 29).

64.     Smith did not communicate with Sheriff Dart, Undersheriff Whittler or Director Ways about his decision to concur in CCR or about Plaintiff in any other way. *See* Smith's Dep., attached as C, at 12:24-13:9; 20:11-23; 21:17-24; 45:8-10; 46:8-14.

**RESPONSE:** Move to strike as irrelevant as Smith is no longer a defendant. If not stricken, deny as these are disputed questions of fact. There is enough evidence to sustain an inference that Smith did communicate with Dart because this matter would have been brought to Dart's attention through Whittler's involvement early on in the investigation, her communications regarding the *Loudermill* hearing, copying her correspondence to Dart's Chief of Staff, are all facts that must be weighed to determine if the statements made above are true. (*See* PS ¶ 29).

## NO KNOWLEDGE OF PLAINTIFF'S POLITICAL SUPPORT

65.     Plaintiff testified that the Sheriff's Office, with no specific names identified, was allegedly aware of his support of Sylvester Baker ("Baker"), a political opponent of Sheriff Dart, since 2003. *See* Plaintiff's 10-25-18 Dep., attached as Ex. H-2, at 26:13-25.

**RESPONSE:** Deny. *See,* PS ¶¶ 5, 37, 41. At his deposition, Percy identified approximately 75 Sheriff employees who he remembered having talked to about his support for Baker (Taylor Dep. pp. 61-70). (PS ¶ 37).

66.     Sheriff Dart, Undersheriff Whittler and Director Ways did not have knowledge of Plaintiff's political support of Baker. *Id.* at 26:13-25; 53:24-54:6; Plaintiff's 1-22-16 Dep., attached as H-1, at 37:24-38:23; 39:10-24; 40:20-41:11; 42:10-22; 60:11-70:24; 73:14-22; 78:1979:14; 93:15-23; 97:20-98:3; *See* Sheriff Dart's Answers to Plaintiff's First Set of Interrogatories, attached as Group Ex. L (2), at ¶ 11.

**RESPONSE:** Deny. Sheriff Dart was at political events Percy attended (Evans Dep., pp. 27-29). Percy made a radio commercial with his name in the commercial along with his voice saying that he was supporting Baker (Evans Dep., pp. 31-32). The commercials ran during the

25

2010 campaign (*Id.*, p. 32). The commercials ran on the African American stations (*Id.*, p. 33). (*See*, PS ¶ 37).

67.     Plaintiff's only basis to claim Defendants Dart had knowledge of his support for Baker is "it was common – common knowledge within the police department, the Cook County Sheriff's Police Department, that I was supporting Sylvester Baker" or "it was widely know that I supported Sylvester Baker for Cook County Sheriff." *See* Plaintiff's 1-22-16 Dep., attached as H1, at 97:20-98:3; Plaintiff's Interrogatory Responses, attached as Ex. H-3, at ¶5, 11.

**RESPONSE:** Deny. See, responses to paragraphs 65 and 66 above.

68.     Plaintiff testified that no other Sheriff's Office employee that he knew supported Baker was terminated for supporting Baker. *See* Plaintiff's 10-25-18 Dep., attached as Ex. H-2, at 53:2454:6.

**RESPONSE:** Move to strike as irrelevant. If not stricken, see PS ¶¶ 40-41 regarding the CCSO's attempt to terminate Barber.

69.     No documents revealed Plaintiff's support for Baker. *See* Plaintiff's 1-22-16 Dep., attached as H-1, at 37:24-38:23. Plaintiff had no social media accounts and Plaintiff did not make any social media posts or other online posts revealing his support for Baker. *Id.* at 40:20-42:22. Plaintiff never sent any emails revealing his support for Baker. *Id.* at 39:10-24; 73:14-22.

**RESPONSE:** Deny. *See,* PS ¶¶ 5; 37-39; 40-41.

70.     Plaintiff cannot recall which Sheriff's Office's employees were at any fundraising events that he attended for Baker. *Id.* at 60:11-23.  Plaintiff never spoke to Sheriff Dart, Undersheriff Whitter (sic) or Director Ways about his support for Baker. *Id.* at 60:24-70:24; 78:19-79:14. Plaintiff did not know Sheriff Dart. *Id.* at 75:14-16. He allegedly only spoke to

Sheriff Dart once and during that conversation, Plaintiff did not state he supported Baker. *Id*. at 93:15-23.

**RESPONSE:** Deny in part. Sheriff Dart was at political events Percy attended (Evans Dep., pp. 27-29). Percy made a radio commercial with his name in the commercial along with his voice saying that he was supporting Baker (Evans Dep., pp. 31-32). The commercials ran during the 2010 campaign (*Id*., p. 32). The commercials ran on the African American stations (*Id*., p. 33). (*See*, PS ¶¶ 5, 37-39).

### NO KNOWLEDGE OF ANY IMPARTIALITY OF INVESTIGATORS

71.     Sheriff Dart, Whittler and Ways did not have knowledge of any alleged impartiality of Investigators. *See* Undersheriff Whittler's Dep., attached as Ex. J, at 32:9-33:4; Chief Holbrook's 5-3-18 Dep., attached as Ex. B, at 30:16-21:2; 60:14-61:5; *See* Director Ways' 5-15-18 Deposition, attached as Ex. K, at 103:9-12; 148:13-149:13; 151:4-8; Dart's Answers to Plaintiff's First Set of Interrogatories, attached as Group Ex. L (1), at ¶ 13.

**RESPONSE:** Deny. (*See* Johnson's Report at 8-9, PS ¶¶ 29; 37-38; 41; 50).

72.     Sheriff Dart does not condone the use of disparaging or abusive epithets by Sheriff's Office employees and the Sheriff's Office prohibits employees from engaging in harassment including the use of disparaging or abusive epithets. *Id.* at ¶ 11. To the extent he was to receive information alleging that an employee of the Sheriff's Office used such epithets, Sheriff Dart would have the employee referred to OPR for investigation pursuant to the policy of the Sheriff's Office. *Id.* at ¶ 11. Sheriff Dart has always had policies forbidding the use of ethnic and racial slurs and policies requiring employees to accurately report and charge crimes. *Id.* at ¶ 12.

**RESPONSE:** Deny. This type of self-serving statement is accepted or rejected based on the credibility of the witness. Murphy, Ernst and Fitzgerald were never investigated or charged with misconduct for their acts during the Taylor investigation. The statement is also irrelevant as to the other Defendants. Also, the CCSO is required by law to have anti-discrimination policies. Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq.*; Cook County Human Rights Ordinance, Cook County Code Sec. 42-30, Title VII, 42 U.S.C. Sec. 2000(e), and the U.S. Constitution, 14th Amendment. Merely because these policies are officially in place, without more, does not establish that Dart or the other Defendants actually enforced anti-discrimination policies.

73.     Director Ways believed the Reports demonstrated complete and unbiased investigations. *See* Director Ways' 5-15-18 Deposition, attached as Ex. K, at 103:9-12.

**RESPONSE:** Deny. There is a question of Ways' competence. Deny his belief is as stated by the Defendants. This is a disputed issue to be resolved by the trier of fact. *See*, PS ¶¶ 73-76, where Johnson, an expert in police practices and disciplinary procedures, determined, giving concrete examples, that OPR's recommendations for disciplinary action against Percy were "extraordinarily severe in comparison to other sustained disciplinary violations of other CCSO personnel.

74.     No complaints or others forms of notice made to Defendants Dart, Whittler and Ways of any alleged impartiality of Investigators. *Id.* at 148:13-21; 151:4-8; Dart's Answers to Plaintiff's First Set of Interrogatories, attached as Group Ex. L (1), at 9.

**RESPONSE:** Deny. *See,* reports of investigations. They should have alerted the Defendants to questions regarding the partiality of the investigators.

75.     Director Ways would have removed an investigator from an investigation and possibly removed him or her from OPR and possibly initiated an OPR investigation against him

or her if he personally knew that one of his OPR investigators was biased or espoused racial animus towards the subject of an investigation. *Id.* Director Ways believes there is no place for investigators in OPR that are racist. *Id.* at 148:22-149:13. If Director Ways disagreed with any of the above OPR Reports or had any criticism of the assigned investigators, including Ernst, Murphy and Fitzgerald, he would have "sent [the investigation] back for further – further investigation and my concerns with the investigation would have been resolved to my satisfaction." *Id.* at 150:14-23.

**RESPONSE:** Deny. (*See*, Ways' deposition page 90 and PS ¶¶ 50; 55; 73-74).

76.   To make sure he was informed of bias in any investigation, Director Ways would thoroughly review the investigation, make sure everything was done in a "logical and nonprejudicial way" [and] "[h]e also made himself available to everyone in OPR," [and] and "everyone in OPR knew that [he] had a – an open door policy, so if those situations existed, [he] -- would hope that everybody felt that they would be able to approach me and voice their concerns." *Id.* at 151:9-19.

**RESPONSE:** Admit Ways made those statements. Deny that they reflect how he acted in Taylor's case. (*See*, PS ¶¶ 50; 55; 73-74. As noted by Johnson, "Only at the end of the deposition after Ways took breaks and conferred with his attorneys did he come back and generally give answers that I would expect to his attorneys' leading and suggestive questions. The questions as noted above were questions that should have been easily answered the first time they were asked." Johnson Report, p. 11.

## PLAINTIFF'S LAWSUIT

77.   Plaintiff issued a summons on June 7, 2013 and served the summons on the Cook County Sheriff's Office on June 10, 2013. *See* 6-7-13 Docket Entry (no docket number); *see also*

Defendant's Appearance, Dkt. No. 3; Motion to Extend Time to Respond, Dkt. No. 4 (noting Plaintiff served the Cook County Sheriff's Office on June 10, 2013).

**RESPONSE:** Admit.

78.     Plaintiff agreed on October 7, 2019 that Count III is a First Amendment retaliation claim for filing the present federal lawsuit and Count VI is a First Amendment retaliation claim for his support of a political opponent of Dart *See* 10-10-19 Correspondence, attached as Ex. U-2. Plaintiff withdraw any alleged *Monell* claim. See 9-23-19 Transcript, attached as Ex. U-1, at 7:138:9. Plaintiff agrees that Count II is duplicative of Counts III, V, and VI. *See* 10-10-19 Correspondence, attached as Ex. U-2.

**RESPONSE:** Admit.

**WHEREFORE,** Plaintiff, Percy Taylor, requests that this Honorable Court deny Defendants' Motions for Summary Judgment in their entirety and grant him any other relief the Court deems appropriate.

**PERCY R. TAYLOR**


*s/ Peter V. Bustamante*
One of Plaintiff's attorneys


Richard F. Linden
312/590-0211
lindenlaw@gmail.com
Peter V. Bustamante
312/346-2072
pvbust@bustamantelaw.com
Linden & Bustamante
17 North State Street, Suite 1550
Chicago, Illinois 60602