# IN THE UNITED STATES DISTRICT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | | |
|---|---|---|---|
| PERCY TAYLOR, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. | 13 C 1856 |
| | ) | | |
| COOK COUNTY SHERIFF'S OFFICE, | ) | Honorable Andrea R. Wood | |
| THOMAS J. DART, GREGORY ERNST, | ) | | |
| PATRICK FITZGERALD, THE ESTATE OF | ) | | |
| PATRICK MURPHY, JOSEPH WAYS | ) | | |
| ZELDA WHITTLER, AND | ) | | |
| THE COUNTY OF COOK, | ) | | |
| | ) | | |
| Defendants. | ) | | |

## DEFENDANTS' JOINT RESPONSE TO PLAINTIFF'S RULE 56.1(b)(3)(C) STATEMENT OF ADDITIONAL FACTS

NOW COME Defendants Sheriff Thomas J. Dart, Zelda Whittler, Joseph Ways, and Cook County Sheriff's Office, by and through their undersigned attorneys, and Defendants Gregory Ernst, Patrick Fitzgerald, and the Estate of Patrick Murphy, by and through their undersigned attorneys, and as for their Response to Plaintiff's Rule 56.1(b)(3)(C) Statement of Additional Facts, state as follows:

### *Direct Evidence of Racial Animus and Political Retaliation*

1. George Avet ("Avet"), an investigator for the Sheriff's Office of Professional Review ("OPR"), who along with the entire OPR staff and two OPR directors, was one of the investigators who participated in the execution of the search warrant at Percy's residence in March 2011 (Avet State Dep., pp. 22-23, Ex. 1). He testified about racial animus and racial slurs directed at Taylor and his wife Crystal Taylor ("Crystal") (*Id*., pp. 25-30). Avet testified that during the search, Defendants Gregory Ernst and Patrick Fitzgerald, Investigator Bob Miller and others, who were all white, "stated that Mr. Taylor lived like a nigger" and "called him a porch monkey." (*Id*., p. 25-26). There were jokes and references made to Percy's race and the use of the word "nigger." (*Id*.). Fitzgerald "called him, Mr. Taylor, a nigger…" (*Id*., p. 26). Both Ernst and Fitzgerald referred to Taylor as a "porch monkey." (*Id*. pp. 27-28). The entire OPR Office in 5-8 cars showed up at Taylor's residence (Avet Federal Dep., pp. 73, 77, Exhibit 2). It was not a big enough incident to warrant almost everyone on the floor being involved (Hemphill Dep., p. 147, Exhibit 3). OPR's search found no weapons or projectiles (Dep. of Evidence Tech. Amy Lilliebridge, pp. 74-77,

Exhibit 4; Avet State Dep., pp. 25, 28, Ex. 1). All OPR found was a gas bill (Ernst State Dep., pp. 76, 78, 86, Ex. 5).

**RESPONSE:** Defendants ask this Court to disregard this statement because it contains improper argument in violation of N.D. Ill. Loc. R. 56.1(B)(3)(C). *See Boyd v. City of Chicago*, 225 F. Supp. 3d 708, 716 (N.D. Ill. 2016) ("The nonmovant's response to the movant's statement of facts and statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations"). This statement is also misleading and mischaracterizes the testimony of Mr. Hemphill. *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

Defendants deny that the "entire" OPR staff participated in the execution of the search warrant. Only six investigators entered the house: OPR investigators Ernst, Fitzgerald, Avet, Pon, Parker and Collins. *See* Pon Deposition, attached as Exhibit ("Ex.") 55, at 59:20-60:5. Undisputed[1] that OPR investigator Hemphill believed there were more investigators than necessary, but this opinion is taken out of context. Hemphill believed the reason additional investigators were assigned was because certain investigators at the time were inexperienced. *See* Hemphill 6-20-18 Dep., attached as Ex. 56, at 147:4-20. Further, undisputed that Avet provided the cited testimony, but deny that Ernst and Fitzgerald used any racially derogatory language. *See* Ernst Dep., attached as Ex. 57, at 164:12-166:23;

---

[1] For purposes of this motion only, Defendants do not dispute certain of Plaintiff's allegations. Any instance in which the Defendants do not dispute an allegation is not an admission that the allegation is true. Defendants reserve the right to challenge each and every allegation at trial.

2

**Fitzgerald Dep., attached as Ex. 58, 44:6-48:20. Denying further, other investigators who entered the Taylor residence denied hearing Defendant OPR investigators, or anyone else, use any of the offensive language in this statement.** *See* **Collins 8-27-18 Dep., attached as Ex. 59, at 21:17-25; Pon Dep., attached as Ex. 55, at 63:15-64:11.**

2. Avet testified that during the course of OPR's investigation, Ernst used the N-word at Taylor's residence and at OPR headquarters (Avet Federal Dep., p. 104, Ex.2). Both Ernst and Fitzgerald used the N-word (*Id*. p. 105-07). Ernst used the N-word 2-5 times at Taylor's residence. *Id*. pp. 106-07. At OPR headquarters, Ernst, upset that they could not find a weapon "made the statement that we're [going] to get this nigger." (Avet State Dep., p. 28, Ex. 1). Avet asked Ernst and Fitzgerald to knock it off and Ernst and Fitzgerald both replied: "go fuck [yourself]." (*Id*. p. 27).

**RESPONSE: Undisputed that Avet provided the cited testimony but deny that Ernst and Fitzgerald used any racially derogatory language.** *See* **Ernst Dep., attached as Ex. 57, at 164:12-166:23; Fitzgerald Dep., attached as Ex. 58, at 44:6-20. Denying further, other investigators who entered the Taylor residence denied hearing Defendant OPR investigators, or anyone else, use any of the offensive language in this statement.** *See* **Collins 8-27-18 Dep., attached as Ex. 59, at 21:17-25; Pon Dep., attached as Ex. 55, at 63:15-64:11. Other investigators assigned to the investigation also denied hearing Defendant OPR investigators use such language.** *See* **Singletary Dep., attached as Ex. 60, at 92:10-22; Hemphill 6-20-18 Dep., attached as Ex. 56, at 119:19-120:3.**

3. Senior Investigator Mike Magliano called Taylor a "shine" and "porch monkey." (Avet State Dep, p. 28, Ex. 1). At the Merit Board's office on February 27, 2013, Ernst told Percy: "You better quit, nigger." (Taylor Federal Dep., p. 158, Ex. 6). There were no investigations about Ernst using the N-word (Ernst Federal Dep., p. 156, Ex. 7). When OPR Executive Director Joseph Ways was asked at deposition if he would have removed Ernst or Fitzgerald from the investigation if it was determined that during the course of the investigation, they referred to Percy as a "nigger" Ways answered, "I don't know." (Joseph Ways Dep., 5/15/18, p. 90, Ex. 8).

**RESPONSE: Defendants ask this Court to disregard this statement as it misleading and mischaracterizes the testimony of Defendant Ways.** *See* **De v. City of Chicago, 912 F.**

Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp*., 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

Defendant deny that there were no investigations of Ernst using the n-word, as Ernst lacks the personal knowledge to establish the foundation to support that contention. Further a complaint register *was* initiated regarding Avet's allegations. *See* Rule 30(b)(6) Scouffas Dep., attached as Ex. 61, at 271:22-273:8. Deny that Defendant Ways "did not know" if he would remove an OPR investigator for using racist language. Defendant Ways would have removed an investigator from an investigation, possibly removed him or her from OPR and possibly initiated an OPR investigation against him or her if he personally knew that one of his OPR investigators was biased or espoused racial animus towards the subject of an investigation. (Executive Defendants and Sheriff's Office's SOF ["EDSOF"], ¶ 75). Defendant Ways believes there is no place for investigators in OPR that are racist. *Id.* Undisputed that Avet and Plaintiff provided the cited testimony, but deny that Ernst and Fitzgerald used any racially derogatory language. *See* Ernst Dep., attached as Ex. 57, at 164:12-166:23; Fitzgerald Dep., attached as Ex. 58, at 44:6-20. Denying further, other investigators who entered the Taylor residence denied hearing Defendant OPR investigators, or anyone else, used any of the offensive language in this statement. *See* Collins 8-27-18 Dep., attached as Ex. 59, at 21:17-25; Pon Dep., attached as Ex. 55, at 63:15-64:11. Other investigators assigned to the investigation also denied hearing Defendant OPR investigators use such language. *See* Singletary Dep., attached as Ex. 60, at 92:10-22; Hemphill 6-20-18 Dep., attached as Ex. 56, at 119:19-120:3.

4.   David Evans, an African-American correctional officer since 2005, testified about racist photographs he viewed on Fitzgerald's Facebook page in 2011/12 (Evans Dep., pp. 23, 38-46, 56 Ex. 9). "[Fitzgerald] had a picture of an African American black doll with big, red lips hanging from a noose, from a damn roof, and he had a police baton with the motion that he was hitting— hitting—attacking the doll." (*Id.*, pp. 38-39). Evans had no doubt as to what he saw and found the photograph racist and "very offensive." (*Id.*, pp. 40-41). When asked if what was depicted in the photograph was a piñata, Evans answered: "I know Fitzgerald personally, I worked with Mr. Fitzgerald quite some time, to back him up, it was him, that was a racial character that was imitating a black woman hanging from a rope with big lips, with a rope around her neck, hanging from a roof." (*Id.*, pp. 43-44, 46). Evans also described an incident occurring around 2010 at Cook County Jail involving 48 African American detainees (*Id.*, pp. 54-56). During mealtime, Fitzgerald set a crate of milk down with 48-cartons of milk and proceeded to open and pour every carton into mop buckets in front of the African-American detainees (*Id.*). After he finished, Fitzgerald stated: "Black mother fuckers ain't getting shit." (*Id.*, p. 55).

**RESPONSE: Defendants ask this Court to disregard this statement because it presents multiple facts in a single paragraph (in excess of 8 facts) and contains improper argument in violation of N.D. Ill. Loc. R. 56.1(B)(3)(C). *See Boyd v. City of Chicago*, 225 F. Supp. 3d 708, 716 (N.D. Ill. 2016) ("The nonmovant's response to the movant's statement of facts and statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations").**

**Defendants deny that Evans' testimony regarding the photo he viewed, as it is not supported by admissible evidence.  Plaintiff does not cite to the photo Evans allegedly viewed in this statement.  *See* FRE 1002 (an original photograph is required to prove its content); *Cent. States, Se. & Sw. Areas Pension Fund v. Sara Lee Bakery Group, Inc.,* 660 F. Supp. 2d 900, 909 (N.D. Ill. 2009) (the Court will not consider facts that do not contain proper support from the parties' citation to the record).   Further, as he was not present when the photo was taken, Evans lacks personal knowledge to establish that the photo he allegedly saw is what he purports it to be.  *See* Evans 8-13-18 Dep., attached as Ex. 62, at 235:19-237:19; FRE 901; *Moran v. Stratton*, 07-1250, 2010 WL 2682399, at \*2 (C.D. Ill. July 6, 2010) (finding photos inadmissible where proponent could not establish any information at all about when the**

photos were taken, whether the witness was there, and if not, how the witness knows that they accurately depict anything pertinent). Finally, the photo on Defendant Fitzgerald's Facebook page identified by Evans was taken at a birthday party hosted by Adrian and Pablo Cazares and their family, who are Latino-Americans.  (OPR SOF ¶ 67; OPR SOF Ex. 53 Cazeres Affidavit).  And the original photo is of Defendant Fitzgerald hitting a pinata in the shape of the cartoon character "Dora the Explorer."  *Id.; compare* Evans' Facebook Post, attached as Ex. 63, at Taylor 5077-80 with OPR SOF Ex. 53, Cazares Birthday Photos. Undisputed as to Evans' testimony regarding Fitzgerald pouring out cartons of milk, but deny that Fitzgerald used any racially derogatory language, (Fitzgerald Dep., attached as Ex. 58, at 44:6-20), and these facts are not material and do not support denial of Defendant' summary judgment motions, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).

*Racial Animus/Statements Regarding Percy's Political Affiliation and Support of Baker*

5.   During the execution of the search warrant at the Taylor residence, one of the officers on the back porch stated: "I got this fucking nigger; he worked for Baker."1 (Crystal Taylor State Dep., pp. 75-76, Ex. 10) ("Crystal Dep."). At that time, OPR investigators referred to Crystal as a "g-o-rilla and porch monkey" 2-3 times. (Avet Fed. Dep., p. 102-03, Ex. 2). When asked about comments made regarding Taylor's political affiliations, Avet answered: "At some point somebody in OPR, I can't say who this was, said oh, this is a Sylvester Baker guy. I recall Ernst saying at the time, we got to get this mother fucker." (Avet State Dep., pp. 32-34, Ex. 1). Ernst made this statement at OPR headquarters (*Id*., p. 34-35). Prior to Ernst making this statement, OPR investigators learned through social media or from the Illinois Board of Elections that Percy was affiliated with Baker (*Id*., pp. 33-34).

   **RESPONSE:  Deny that any of the OPR investigators learned Plaintiff supported Sylvester Baker from social media or from the Illinois Board of Elections, as Plaintiff does not have a social media account, and the Illinois Board of Elections does not have a record**

of Plaintiff making any contributions to Baker. (OPR SOF Ex. 8, Plaintiff 1-22-16 Dep., at 41:20-42:14; OPR SOF Ex. 54, Illinois Board of Elections Affidavit. Deny that the OPR Defendant Investigators knew Plaintiff supported Baker. *See* OPR Defendants' Answer and Affirmative Defenses to Plaintiff's Fourth Amended Complaint, Dkt. 319, at ¶¶ 28, 30; Ernst Dep., attached as Ex. 57, at 32:11-33:2. Deny that Defendant OPR investigators used any racially derogatory language. *See* Ernst Dep., attached as Ex. 57, at 164:12-166:23; Fitzgerald Dep., attached as Ex. 58, at 44:6-20. Denying further, other investigators who entered the Taylor residence denied hearing Defendant OPR investigators, or anyone else, use any of the offensive language in this statement. *See* Collins 8-27-18 Dep., attached as Ex. 59, at 21:17-25; Pon Dep., attached as Ex. 55, at 63:15-64:11. Other investigators assigned to the investigation also denied hearing Defendant OPR investigators use such language. *See* Singletary Dep., attached as Ex. 60, at 92:10-22; Hemphill 6-20-18 Dep., attached as Ex. 56, at 119:19-120:3. Undisputed that Avet and Plaintiff's wife provided the cited testimony, but these facts are not material and do not support denial of Defendants' summary judgment motions, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).

6. Prior to OPR's 2011 investigation that began on March 9, 2011, Taylor had made complaints of racial and political discrimination (Johnson Report, p. 3, Ex. 11). Percy complained about racial and political discrimination prior to March 9, 2011 (Taylor Federal Dep., 10/25/18, pp. 9-10, Ex. 12). On or about October 2, 2007, Percy filed Charge of Discrimination against the CCSO for racial discrimination alleging that he was harassed by Lt. Ronald Zychowski (Ex. 13)2. Percy had also had a *Shakman* complaint as evidenced by an August 27, 2009 letter to Percy from the *Shakman* Compliance Administrator for the Sheriff (Ex. 14).3 On November 18, 2011, Percy filed a Charge of Discrimination with the EEOC against the CCSO alleging racial discrimination in violation of Title VII (Ex. 15).

**RESPONSE:** Undisputed that Plaintiff provided the cited testimony, and undisputed

that Plaintiff filed the cited EEOC charge and received the cited letter from the *Shakman* Compliance Administrator. But these facts are not material and do not support denial of Defendants' summary judgment motions, as the cited materials provide no evidence of a finding of discrimination. L.R. 56.1(b)(3)(C). Additionally, the facts in this statement are immaterial, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).

*OPR Investigators Terrorized Taylor's Wife*

7. OPR investigators terrorized Percy's wife Crystal and their children (Crystal Dep., pp. 24-25, 39-52, Ex. 10). On March 9, 2011, at approximately 10:30 p.m., Crystal arrived home and parked in front of the Taylor residence with her children, Crystal's niece Ameenah, and Ameenah's baby (*Id*., pp. 24-25, 39). Ameenah went inside and returned with a bag of cornmeal while Crystal waited in the car (*Id*., pp. 39-40). Two white male officers jumped out of their car with guns drawn and pointed the guns at Crystal and Ameenah (*Id*., pp. 40, 44, 47). The other officer screamed: "[p]ut your fucking hands up," with Crystal in the front seat, and the four kids in the back screaming and crying (*Id*., pp. 40-41, 52). Fitzgerald and Investigator Miller are two of the investigators who blocked Crystal's vehicle (Fitzgerald State Court Dep., pp. 50-54, Ex. 16).

**RESPONSE:** Defendants ask this Court to disregard this statement contains improper legal argument in violation of Local Rule 56.1(b)(3)(C). *See Boyd*, 225 F. Supp. at 716 ("The nonmovant's statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations"). Defendants deny that Fitzgerald committed the conduct alleged in this statement. *See* OPR Defendants' Answer and Affirmative Defenses to Plaintiff's Fourth Amended Complaint, Dkt. 319, at ¶¶ 70-72. While Defendant Fitzgerald was assigned to sit outside the Taylor residence with OPR investigator Robert Miller overnight while other OPR investigators obtained the search warrants for Plaintiff's residence and vehicle, Plaintiff's wife came out of the house with some other people and attempted to leave in the Taylor vehicle. OPR investigator Miller

**explained to them that they could not take the car, and they went into the house.** *See* **Fitzgerald Dep., attached as Ex. 58, at 42:2-43:31. Undisputed that Plaintiff's wife provided the cited testimony, but these facts are not material and do not support the denial of Defendants' summary judgement motions, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants.** *Cady v. Sheahan***, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).**

8. Fitzgerald pointed his gun at Crystal and another officer had his gun on Ameenah's back (Crystal Dep., p. 47, Ex. 10). Crystal was scared for her life (*Id.*, p. 48). The guns were drawn, hands on the trigger and pointed at Crystal and the children (*Id.*, pp. 108-109). One of the officers opened the car door, pointed the gun at the kids with Crystal begging the officer not to shoot (*Id.*, p. 49). After Ameenah was allowed to leave with her daughter, the officers went back to their vehicle and proceeded to block Crystal's vehicle with their vehicle (Id., p. 51, 53-54). Crystal and her children were forced to stay in their car with no heat for three (3) hours until about 1:00 a.m. (*Id.* pp. 56-57, 106). At least ten-times, Crystal, to no avail, asked the officers if she could get out of the car and if she could let the kids go to the bathroom (*Id.*, pp. 57-58).

**RESPONSE: Defendants ask this Court to disregard this statement as it contains improper argument in violation of Local Rule 56.1(b)(3)(C).** *See* **Boyd, 225 F. Supp. at 716 ("The nonmovant's statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations"). Defendants deny that Fitzgerald committed the conduct alleged in this statement.** *See* **OPR Defendants' Answer and Affirmative Defenses to Plaintiff's Fourth Amended Complaint, Dkt. 319, at ¶¶ 70-72. While Defendant Fitzgerald was assigned to sit outside with OPR investigator Robert Miller overnight while other OPR investigators obtained the search warrants for Plaintiff's residence and vehicle, Plaintiff's wife came out of the house with some other people and attempted to leave in the Taylor vehicle. OPR investigator Miller explained to them that they could not take the car, and they went into the house.** *See* **Fitzgerald Dep., attached as**

**Ex. 58, at 42:2-43:31. Undisputed that Plaintiff's wife provided the cited testimony, but these facts are not material and do not support the denial of Defendants' summary judgement motions, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).**

9. Investigators are not to un-holster their weapon unless the investigator has reason to fear for their safety or someone else's safety (OPR Investigator Carl Singletary Dep., p. 56, Ex. 17). It is against OPR policy to draw a weapon unless the investigator has reasonable apprehension for the fear of his/her safety or the safety of others (*Id.*, p. 57). OPR Investigator Henry Hemphill was asked when it would be proper to take out your gun and draw it, Hemphill answered: "When I'm presented with deadly force or the threat of deadly force." (Hemphill Dep., 6/20/18, p. 152, Ex. 3). Hemphill did not know of any reason why guns would be taken out on Crystal or any reason why her car would have been surrounded and blocked (*Id.*, pp. 152-53). Sheriff's Police Department Rules and Regulations provide that firearms will never be displayed or drawn unnecessarily by an officer on or off-duty (Police Expert Robert Johnson's Rule 26(a)(2) Report, p. 9, Ex. 11).

**<u>RESPONSE:</u> Defendants ask this Court to disregard this statement as it includes improper legal argument in violation of 56.1(b)(3)(C). *See 1 Tel-Lock, Inc. v. Thomson Consumer Electronics,* 2005 WL 741930, (N.D. Ill 2005) (Failure to comply with Local Rule 56.1 by stating legal conclusions rather than material facts.) Undisputed that Singletary and Hemphill provided the cited testimony and Plaintiff's expert provided the cited opinion, but these facts are not material and do not support the denial of Defendants' summary judgement motions, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).**

10. Crystal informed the officers that one child was sick and asked the officers, multiple times, if the children could exit the vehicle (Crystal Dep., p. 59, Ex. 10). The children defecated on themselves (*Id.*, p. 109). Crystal was told to turn the car off and when Crystal told the officer it was cold, he responded: "Turn the fucking car off." (*Id.*, p. 59). One of Crystal's relatives came down with a blanket and the officers refused to let them use the blanket (*Id.*, pp. 106-07). At about

1 a.m., Crystal was permitted to exit the car and go inside with the children (Id., pp. 59-61). About a half hour later, Crystal was taken to the police station and questioned for at least 3-hours (*Id.*, pp. 63-64). She arrived home at about 4 a.m. and when she went outside that morning, Crystal saw the officers who had pulled guns on her outside (*Id.*, p. 66). Her car's battery was dead from not being able to run the heat; Crystal asked the officers for a jump, pleading to them that she had to get the kids to school (*Id.*, pp. 66-67). One of the officers threw the cables on the ground and told her to take a "fucking cab" or walk." (*Id*)

**RESPONSE:** **Defendants ask this Court to disregard this statement as it contains improper argument in violation of Local Rule 56.1(b)(3)(C).** *See Boyd v. City of Chicago***, 225 F. Supp. at 716 ("The nonmovant's statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations"). Defendants deny that Fitzgerald committed the conduct alleged in this statement.** *See* **OPR Defendants' Answer and Affirmative Defenses to Plaintiff's Fourth Amended Complaint, Dkt. 319, at ¶¶ 70-72. While Defendant Fitzgerald was assigned to sit outside with OPR investigator Robert Miller overnight while other OPR investigators obtained the search warrants for Plaintiff's residence and vehicle, Plaintiff's wife came out of the house with some other people and attempted to leave in the Taylor vehicle. OPR investigator Miller explained to them that they could not take the car, and they went into the house.** *See* **Fitzgerald Dep., attached as Ex. 58, at 42:2-43:31. Undisputed that Plaintiff's wife provided the cited testimony, but these facts are not material and do not support the denial of Defendants' summary judgement motions, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants.** *Cady v. Sheahan***, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).**

11.    The officers remained parked all day at the residence until a search warrant was obtained (Crystal Dep., p. 68, Ex.10). At around 6 p.m., officers arrived and executed the search warrant searching the house and vehicle (*Id.*, pp. 69-70, 113). They broke the top of the Taylors' TV and a cupholder in the vehicle (*Id.*, p. 115). They broke the children's $2,000 bunkbed set in the kids'

room and threw everything in Crystal's bedroom (*Id.*, p. 117). The officer(s) went through Crystal's personal diary, told Crystal that she should divorce Percy, and that she should get a job at McDonald's (*Id.*, pp. 74-75, 122-23). A week or two later, one of the officers who pulled a gun on Crystal followed her, blocked her vehicle and said he wasn't leaving until she talked to him (*Id.*, pp. 80-81).

**RESPONSE:** **Defendants ask this Court to disregard this statement as it contains improper argument in violation of Local Rule 56.1(b)(3)(C). Defendants deny the contention that OPR investigators blocked Plaintiff's car or told her they could not leave. Sometime after Woolfolk and Wolfe signed criminal complaints against Plaintiff, OPR investigator Magliano had a brief conversation with Plaintiff's wife, where he asked her to have her husband get in contact with the Sheriff's Department. *See* Fitzgerald Dep., attached as Ex. 58, at 51:4-52:5. Further, deny that any OPR investigator told Plaintiff's wife she should divorce him or get a job at McDonalds. OPR investigator Sheryl Collins and Rochelle Parker, who are both African American, took the role of sitting with Plaintiff's wife while the other OPR investigators conducted the search, and denied reading her diary or telling her she should divorce her husband and work at McDonald's. *See* Pon Dep., attached as Ex. 55, at 63:11-14; Parker Dep., attached as Ex. 64, at 15:15-16:11; Collins 8-27-18 Dep., attached as Ex. 59, at 40:20-41:18. Undisputed that Plaintiff's wife provided the cited testimony, but these facts are not material and do not support the denial of Defendants' summary judgement motions, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).**

*Assignment of the Investigation*

12. On March 8, 2011, OPR Director Edward Dyner assigned Ernst to the Taylor case. (CCSO 000521, Ex. 18). On March 9, 2011, OPR Assistant Director Murphy assigned Ernst to investigate

the alleged BB-gun incident (MB Hearing Transcript, pp. 117-18, Ex. 19). Ernst and Fitzgerald were assigned to investigate Taylor (Ernst State Dep., p. 30, Ex. 5). Ernst was the senior and lead investigator assigned to the case under the direction of Dyner and Patrick Murphy (Ernst Fed. Dep., pp. 19-20, Ex. 7). The day after the incident, Ernst interviewed Woolfolk and Wolfe (MB Transcript, pp. 118-19, Ex. 19); On March 9, 2011, before the arrest, Ernst asked Percy questions about whether he had committed the acts and Percy "denied committing those acts." (Ernst Fed. Dep. pp. 112-13, Ex. 7). After Percy denied the allegations, he was arrested on the spot, without any investigation, aside from Ernst and Fitzgerald speaking to Woolfolk and Wolfe (Wolfe did not witness the incident) (*Id*.). Murphy asked Ernst and Fitzgerald to detain Percy (*Id*., p. 113). Percy was placed in the vehicle, handcuffed and was not free to leave (*Id*.).

**RESPONSE:** **Defendants ask this Court to disregard this statement because it includes improper argument in violation of N.D. Ill. Loc. R. 56.1(B)(3)(C). *See Boyd*, 225 F. Supp. at 716 ("The nonmovant's statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations"). The statement is also misleading and mischaracterizes the record. *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp*., 2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).**

**Defendants deny that the record cited establishes that Defendants arrested Plaintiff without conducting any investigation. In addition to interviewing the two victims, Defendants obtained the CPD police report describing the offense, viewed and observed the damage to the vehicle, and obtained an in--person identification from Woolfolk of Plaintiff as the offender. (Plf's Resp. OPR SOF ¶ 18; OPR SOF Ex. 1, Ernst Dep., at 118:20-119:9; OPR SOF Ex. 14, Ernst 3-25-11 Report, at 3; OPR SOF Ex. 2, Fitzgerald (insert date) Dep., at 55:24-56:3; OPR SOF Ex. 17, Fitzgerald 10-22-15 Dep., at 20:3-5; 20:14-17; 21:6-9; 22:1-10; 24:19-25; OPR SOF Ex. 18, Fitzgerald 3-9-11 Report). Further, the cited testimony does not establish that Wolfe "did not witness the incident." Wolfe was inside when she heard a**

13

**loud bang outside the window. When she went outside, she saw Woolfolk shaking and**

**Woolfolk exclaimed that he was shot at by the neighbor. (OPR SOF Ex. 21, Ernst 3/25/11**

**Report, at 3; OPR SOF Ex. 17, Fitzgerald 10-22-15 Dep., at 21:6-9). Further, OPR**

**investigators interviewed Plaintiff about his whereabouts at the OPR office after OPR**

**investigators transported Plaintiff to the OPR office.** *See* **Ernst Dep., attached as Ex. 57, at**

**112:10-114:4. Undisputed as to the remaining, but these facts are duplicative of the OPR**

**Defendants' 56.1 statement, and, therefore, do not support the denial of Defendants'**

**summary judgment motions.**

13. Ernst and Fitzgerald took Taylor into custody on March 9, 2011 and interrogated him for 30 hours at OPR (Ernst State Dep., p. 35, Ex. 5; Taylor Dep. 1/22/16. p. 86, Ex. 6). Ernst obtained the search warrant (MB Transcript, pp. 128-29, Ex. 19); Ernst was the complainant in the complaint for the search warrant, drafted the search warrants and attested under oath to the statements contained in the complaint (Complaint for Search Warrant, Ex. 20; Ernst State Dep., p. 61, Ex. 5); Ernst drafted a prosecution memorandum dated March 18, 2011 for the State's Attorney (Ex. 21); he ran a criminal background check of Percy showing that Percy had been arrested in 1999 for DUI in Missouri (MB Transcript, p. 135, Ex. 19); he investigated whether Percy reported the 1999 DUI arrest to the Sheriff's Office including contacting Sgt. Mpistolarides (*Id.*, 136); conducted multiple interviews and prepared multiple Memoranda of Investigation (*see,* Group Ex. 22). Ernst personally executed the search warrant (MB Hearing, p. 129, Ex. 19); arrested Percy on March 18, 2011 (Ex. 23); testified on behalf of the Sheriff at the MB hearing (MB Transcript, pp. 116-81, Ex. 19); provided opinions at the MB hearing that Percy violated general orders, rules and regulations of the Sheriff's Office at the MB hearing (*Id.*, p. 143); attended court on the misdemeanor complaints signed by Wolfe and Woolfolk (*Id.*, p. 138); testified on behalf of the Sheriff at Percy's *Loudermill* hearing (Ernst Fed. Dep., pp. 168-75, Ex. 7; *Loudermill* Hearing minutes, Ex. 24); authored the OPR Report of Investigation (Ex. 25); and he made the determination that the charges be sustained (MB Transcript, p. 165, Ex. 19). At deposition, Ernst was asked: "Now before you started questioning [Percy] did you feel he was guilty of the offense?" (Ernst Fed. Dep., p. 142, Ex. 7). Answer: "No." (*Id.*). Later Ernst was asked, after interviewing Percy, did you feel that Percy was guilty? Answer: "No." (*Id.*, pp. 143-44).

**RESPONSE: Defendants ask this Court to disregard this statement because it is**

**misleading and mischaracterizes the record.** *See De v. City of Chicago***, 912 F. Supp. 2d 709,**

**713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited**

**record."); *Brown v. Advocate South Suburban Hosp***., 2011 WL 6753995, at \*4 (N.D. Ill. 2011)**

(striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

Defendants deny the facts stated in this paragraph that are not supported by record. N.D. Ill. Loc. R. 56.1(B)(3)(C); *Cent. States, Se. & Sw. Areas Pension Fund v. Sara Lee Bakery Group, Inc.,* 660 F. Supp. 2d 900, 909 (N.D. Ill. 2009) (Rule 56.1 requires facts to contain proper support from the party's citations). The record cited does not establish that Plaintiff was interrogated for 30 hours. Plaintiff's testimony was that he held at the OPR office for 30 hours. Plf's Ex. 6, (Plaintiff Dep.), at 86:10-11. Further, the record cited does not establish that Ernst testified on "behalf of the Sheriff" at the Merit Board hearing or the *Loudermill* hearing. Deny that Ernst arrested Plaintiff on March 18, 2011. OPR investigator Cameron Pon and Defendant Fitzgerald arrested Plaintiff. *See* Pon Dep., attached as Ex. 55, at 97:25-99:4. Undisputed as to the remaining, but these facts are not material and do not support the denial of Defendants' summary judgment motions, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).

14. Ernst's sworn complaint for the search warrant contains false statements, and it fails to note exculpatory facts, such as Woolfolk's claim that the truck was shot with a pellet rifle and that nine shots struck the truck including the windshield and headlamps, yet the headlamps were struck with a higher caliber round (Ex. 20). It also has irrelevant and prejudicial comments such as "Ms. Taylor states she receives [sic] a telephone call from Percy Taylor advising her to hide the pictures that were underneath the bed and on top of the refrigerator and take them to her fathers [sic] house residence." (*Id*.). There is evidence that Ernst falsified the complaint for a search warrant. The complaint for a search warrant sworn to by Investigator Ernst states that Taylor throughout the interview changed the versions of his whereabouts on March 08, 2011 (Ex. 20; Johnson Rep., p. 17, Ex. 11). The report of Taylor's interview makes no mention of him changing his version of his whereabouts nor does it list the alleged changed versions (Memo of Invest., Ex. 26; Johnson Rep., p. 17, Ex. 11). "Documenting such changes, in essence breaking an alibi or alibis, is a basic interview technique and documenting such differences in versions is a basic investigative practice and standard. Failing to document the changed versions in a report was either very poor reporting,

or if that did not occur, then knowingly listing it in the complaint for search warrant would be contrary to ethical police practices and standards and would compromise the integrity of the investigation." (Johnson Rep., p. 17).

**RESPONSE:** **Defendants ask this Court to disregard this statement as it is misleading and mischaracterizes the record.** *See De v. City of Chicago*, **912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.");** *Brown v. Advocate South Suburban Hosp.*, **2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). Further, Defendants object to Plaintiff's assertion that the complaint for search warrant contained "false statements" and omitted "exculpatory facts" and "irrelevant and prejudicial comments," as those assertions are improper legal argument in violation of Local Rule 56.1(b)(3)(C).** *See 1 Tel-Lock, Inc. v. Thomson Consumer Electronics*, **2005 WL 741930, (N.D. Ill 2005) (Failure to comply with Local Rule 56.1 by stating legal conclusions rather than material facts.)**

**Defendants deny the facts stated in this paragraph that are not supported by record. N.D. Ill. Loc. R. 56.1(B)(3)(C);** *Cent. States, Se. & Sw. Areas Pension Fund v. Sara Lee Bakery Group, Inc.*, **660 F. Supp. 2d 900, 909 (N.D. Ill. 2009) (Rule 56.1 requires facts to contain proper support from the party's citations). Plaintiff's expert's report does not establish that the complaint for search warrant contains false information. An expert is not permitted to offer opinions about the credibility of evidence. FRE 702;** *Sanders v. City of Chicago Heights*, **13 C 0221, 2016 WL 1730608, at \*6 (N.D. Ill. May 2, 2016) ("It is well-settled that determining the weight and credibility of witness testimony is the exclusive province of the jury and that experts are not permitted to offer opinions as to the believability or truthfulness of witness testimony). Further, the record cited does not establish that that the complaint for search**

warrant fails to include "exculpatory facts." Plaintiff merely cites to the complaint for search warrant itself, which does not establish that OPR investigators had reason to believe the headlights were not damaged as a result of Plaintiff shooting at vehicle. Denying further, Woolfolk told Defendant OPR Investigators that nine pellets struck the vehicle and caused damage to the windshield and the headlights. (OPR SOF Ex. 14, Ernst 3-25-11 Report, at 3). Defendant OPR investigators observed the damage. (OPR SOF Ex. 18, Fitzgerald 3-9-11 Report). The record cited also does not establish the complaint for search warrant includes irrelevant and prejudicial comments. Again, Plaintiff merely cites to the complaint for search warrant itself, which does not establish the contention stated. Further denying, the complaint properly includes statements that Plaintiff and his wife were coordinating to hide things from the investigators knowing that OPR investigators were seeking to search their residence Additionally, Plaintiff's expert's conclusion that the failure to include the information that Plaintiff changed his whereabouts during Plaintiff's interviews with OPR in other reports was either "poor reporting" or "contrary to ethical police practices" and would "compromise the investigation" lacks the foundation required by FRE 702, and does not undermine the conclusion that Plaintiff *did* change his whereabouts during his interviews with OPR.

Undisputed that there is no other report indicating Plaintiff changed his whereabouts other than the complaint for search warrant and undisputed that Plaintiff's expert offered the opinions stated, but these facts are not material and do not support the denial of Defendants' summary judgment motions, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture"

may be stricken).

<u>Percy's Arrest and Interrogation</u>

15. On March 9, 2011, at approximately 3:15 p.m., Percy was handcuffed and placed under arrest (Taylor 1/22/16 Dep., pp., 207, 217-19, Ex. 6). He was in the back of his residence with a Streets and Sanitation employee when Ernst, Fitzgerald and Patrick Murphy arrived at Percy's residence (*Id*., pp. 213-15). Ernst told Percy he was under arrest and Fitzgerald handcuffed him (*Id*., p. 217). They came onto Percy's property, without badges, without nametags, grabbed Percy and said that he was under arrest (Taylor State Court Dep., p. 56, Ex. 27). He was kept outside in the cold and rain for 30-45 minutes before he was placed in a car (*Id*., p. 57).

**RESPONSE: Deny that Defendant OPR Investigators did not identify themselves when they approached Plaintiff. They identified themselves and were wearing badges. *See* Ernst Dep., attached as Ex. 57, at 119:2-120:114. Further, deny that Defendant OPR investigators "grabbed" Plaintiff and kept him outside in the cold and rain for 30 to 45 minutes. After Woolfolk's in-person identification, Murphy directed Defendants Ernst and Fitzgerald to detain Plaintiff and place him in the vehicle, and that is what they did. *Id.* Undisputed as to the remaining, but these facts are not material and do not support the denial of Defendants' summary judgment motions, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).**

16. Percy was taken to OPR handcuffed and paraded in front of his peers (Taylor 1/22/16 Dep., pp. 218-222, Ex. 6). He was taken into an office and Ernst handcuffed him to a table (Taylor State Court Dep., p. 60, Ex. 27). Percy was held for thirty (30) hours. (Taylor 1/22/16 Dep., p. 89, Ex. 6). Percy was not given anything to drink (*Id*., p. 226). He was moved to a conference room where he was told to sleep on the conference table (Taylor State Court Dep., p. 66, Ex. 27). He arrived home at 9 p.m. on March 10th after he was released by OPR (Taylor 1/22/16 Dep., p. 226, Ex. 6).

**RESPONSE: Defendants object to Plaintiff's assertion that he was "paraded in front of his peers," as that assertion improper argument in violation of Local Rule 56.1(b)(3)(C). *See Boyd*, 225 F. Supp. at 716 ("The nonmovant's statement of additional facts must**

18

represent only material facts and are not the proper province of argumentative or conclusory allegations").

Defendants deny that Ernst handcuffed Plaintiff at the OPR office. *See* **Ernst Dep., attached as Ex. 57, at 38:5-16. Undisputed that Plaintiff testified he was held for 30 hours at the OPR office, that he was not offered anything to drink, and that he arrived home on March 10 at 9:00 p.m., but these facts are not material and do not require denial of Defendants summary judgment motions, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants.** *Cady v. Sheahan*, **467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).**

*OPR's Investigation of the Alleged BB-Gun Incident*

17. The Chicago Police Department ("CPD") initially investigated the incident on March 8, 2011 (OPR Investigator Henry Hemphill Dep., 6/20/18, pp. 15-16, Exhibit 3); CPD Police Report, Ex. 28). According to Mary Wolfe, the two CPD officers who initially responded to her call did not seem too interested in doing anything about what she said happened (Wolfe Fed. Dep., p. 36, Ex. 29). "[Woolfolk] was telling them that he's over there now. They refused to go." (*Id*.). Wolfe testified that maybe 30 minutes later, she made another call to CPD "and got someone else out there." (Wolfe Dep., pp. 36-37). The CPD did not make any arrests (Police Report, Ex. 28). The CPD advised Wolfe and Woolfolk of "warrant and order of protection procedures." (Police Report, Doc. CCSO 1338, Ex. 28).

**RESPONSE: Defendants object to this statement of fact as it is not supported by admissible evidence in violation of L.R. 56.1(b)(3)(C). Specifically, Mary Wolfe's testimony regarding the CPD officers' interest in the case and what the officers did in effort to investigate Plaintiff is without a proper foundation because Mary Wolfe does not have personal knowledge of the officers' state of mind, nor does the testimony establish Wolfe has personal knowledge of what the officers did with respect to investigating or attempting to locate Plaintiff.** *See Smith v. AllState Insurance Corporation,* **2001 WL 1104713 * 7 (N.D. Ill.**

2001) (Court will not consider evidence regarding facts clearly not within the a witness' personal knowledge).

Defendants deny in part. The only evidence of an "investigation" conducted by CPD was by officer McGowan and her partner, when they interviewed Wolfe and Woolfolk and observed the damaged vehicle. (OPR SOF Ex. 13, CPD Original Case Incident Report, at 1; OPR SOF Ex. 13, McGowan Dep., at 30:10-32:23, 75:18-23, 32:9-23, 28:13-24). Based on the information Wolfe and Woolfolk provided and Officer McGowan's observation of the damaged vehicle, Officer McGowan would have arrested Plaintiff if he had been on scene. (OPR SOF Ex. 13, McGowan Dep., at 31:9-15, 33:8-23; 42:1-8; 44:8-15; 132:15-133:8). Because of that, Officer McGowan drafted her report documenting her preliminary investigation and expected the detectives to investigate from there. *See* McGowan Dep., attached as Ex. 65, at 25: 10-14; 143:12-21. Undisputed as to the remaining, but these facts are not material and do not support the denial of Defendants' summary judgment motions, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).

18. Amy Lilliebridge was the evidence technician from the Sheriff's Office assigned to the investigation (Lilliebridge Dep., pp. 22-23, Ex. 4; Lilliebridge Evidence Report, Exhibit 30). Lilliebridge arrived at the scene on March 9, 2011, at 4:30 p.m. (*Id*.). The investigation was "confidential" meaning "they didn't tell [Lilliebridge] what it was." (Lilliebridge Dep., p. 23, Ex. 4). Lilliebridge did not know any of the facts underlying the investigation (*Id*.). The extent of Lilliebridge's assignment was to take photographs (*Id*.). Lilliebridge was told to "document the vehicle"— "photograph it, make sure you look around and see that there's no other evidence." (*Id*., p. 16).

**RESPONSE:** Defendants deny that evidence technician Lillibridge did not know any of the facts underlying the investigation as it is not supported by the record. To the contrary, while Lillibridge did not know the name of the alleged offender or details of the investigation,

she documented facts pertaining to the investigation in her report, and was given direction when she arrived. **OPR SOF Ex. 19, Lillibridge report.** Additionally, the fact that the OPR investigators did not tell her Plaintiff's name provided him with a level of anonymity for his benefit. *See* **Dirden's Report., attached as Ex. 66, at 12.** Undisputed as to the remaining, but these facts are not material and do not support the denial of Defendants' summary judgment motions, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, **467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).**

19. The scene was not closed off with yellow tape because "[n]o one died." (Lillibridge Dep., p. 13, Ex. 4). OPR's Executive Director, Joseph Ways acknowledged that the scene of a shooting needs to be blocked off (Ways Dep., 5/15/18, p. 48, Exhibit 8). Lilliebridge was not asked to determine the direction of the projectiles that struck the headlights of the truck (Lilliebridge Dep., p. 14, Ex. 4). Numerous times in the past Lillibridge had been able to determine the direction from where projectiles were fired (*Id.*, p. 15). In Taylor's case, she made no such efforts because "I wasn't requested to do it, so I did not do that." (*Id.*, p. 14). She did not know if she was asked to search for bullet fragments (*Id.*, p. 75). Lilliebridge testified that she searched for fragments by looking "for any evidence around the vehicle… Anything that did not belong." (*Id.*, p. 76). Seasoned retired Chicago Police Officers, who were part of the Sheriff's Office's Office of Professional Accountability ("OPA"), took issue with the way Taylor's investigation was handled (Avet State Dep., pp. 35-37, Ex. 1). "They were shaking their head[s] and laughing". (*Id.* p. 36). OPA Director, Mike Brady, called it a "bad" and "shoddy" investigation." (*Id.* pp. 37, 61).

**RESPONSE:** Defendants object to this statement as not supported by admissible evidence in violation of L.R. 56.1(b)(3)(C). Specifically, Defendant Ways' testimony regarding whether the scene of a shooting should be "blocked off" lacks foundation. The cited testimony provides no context for the basis for his opinion, nor does it specify a particular type of shooting or explain under what circumstances and in what matter the scene should be "blocked of." Additionally, Mr. Avet's testimony of what he heard Mr. Brady say is hearsay and inadmissible for the truth of the matter asserted, *see Bombard v. Fort Wayne Newspapers, Inc.*, **92 F.3d 560, 562 (7th Cir. 1996) (a party cannot rely upon**

inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment), and, in any event, purports to be an undisclosed expert opinion in violation Rule 26(a)(2).

Denying further, there was no need to block of the scene as it was the day after the shooting, and there is no indication there was evidence available for marking or that there were bystanders that could have caused contamination. *See* Dirden Report, attached as Ex. 66, at 12. Undisputed as to the remaining, but these facts are not material and do not support the denial of Defendants' summary judgment motions, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).

*Taylor's Guilt was Pre-Determined*

21.     A March 11, 2011 Sheriff's Office's memorandum, purportedly from John Maher, Assistant General Counsel of the Sheriff's Police Department, to Percy, states:

> Please be advised that the charges of violations of the following Sheriff's Office Directives and Orders have been **SUSTAINED** against you by the Office of Professional Review relative to OPR Case File #2011-0305.

(March 11, 2011 Memorandum Exhibit 31) (Emphasis in the original). On March 11, 2011, three days after the incident, the OPR investigation was in its early stages (OPR Command Channel Review and Report of Investigation, Exhibit 25). OPR's Command Channel Review was not completed until April 28, 2011 when Undersheriff Zelda Whittler signed off on the document (*Id*.). It is improper and against OPR policy to sustain allegations or to reach a conclusion before the entire investigation is completed (OPR Investigator Carl Singletary Dep., p. 37, Ex. 17). "The memorandum demonstrates whoever prepared it had already reached a pre-conceived or purposely erroneous conclusion (disposition) before the investigation had been completed." (Police Expert Robert Johnson Rule 26(a)(2) Report, p. 21, Ex. 11). "OPR's Memorandum of Investigation," authored by Ernst, under the subject "Prosecution Memorandum" dated March 18, 2011 shows that Ernst and others at OPR had prejudged the case (Memo of Investigation, Ex. 21). The March 18, 2011 Memorandum of Investigation concludes: "This case closed and cleared by Arrest." (*Id*., p. 6, Doc. CCSO 1268).

**RESPONSE:** Defendants ask this Court to disregard Plaintiff's statements that the March 11, 2011 memorandum "demonstrates whoever prepared it had already reached a pre-conceived or purposefully erroneous conclusions" and that "OPR's Memorandum of Investigation . . . shows that Ernst and others at OPR had prejudged the case" as it contains improper argument in violation of N.D. Ill. Local Rule 56.1(b)(3)(C). *See Boyd v. City of Chicago*, 225 F. Supp. at 716 ("The nonmovant's statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations"); *1 Tel-Lock, Inc. v. Thomson Consumer Electronics,* 2005 WL 741930, (N.D. Ill 2005) (Failure to comply with Local Rule 56.1 by stating legal conclusions rather than material facts.). Plaintiff's statements are also misleading and mischaracterizes both the March 11, 2011 Memorandum and OPR's Memorandum of Investigation and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp*., 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). The statements in Paragraph twenty-one (#21) also are immaterial to any of Plaintiff's claims as Plaintiff fails to connect the March 11, 2011 Memorandum to any one with racial animus (it was written by Mr. Maher who is Plaintiff's own witness). This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants.

Defendants do not dispute that Mr. Maher wrote the March 11, 2011 memorandum but denies that it demonstrates "any pre-conceived or purposely erroneous conclusion" since

the memorandum was an "administrative error." A March 21, 2011 correspondence, authored by Mr. Maher, makes clear that the March 11, 2011 memo erroneously contained verbiage about matters "already having been sustained," something Mr. Maher's March 21, 2011 correspondence noted was an administrative error. *See* March 21, 2011 Memorandum, attached as Ex. 67. Mr. Maher admittedly rectified the language contained in the March 11, 2011 memorandum in his March 21, 2011 memorandum. The investigation summary report itself is dated April 11, 2011. *See* Summary Report of Investigation File for Shooting Incident, attached as Ex. 68, at 1-2, 9. Defendants dispute that the "OPR's Memorandum of Investigation," shows that Investigator Ernst and others at OPR had "prejudged the case." Plaintiff was arrested on March 18, 2011, which is consistent with the date of the memorandum. (Plaintiff's Additional Facts ("Plf's Add. Facts"), at ¶ 13). Likewise, upon a review of the entire OPR investigation file for correctness, completeness and thoroughness, Director Ways sustained the charges and recommended termination on April 18, 2011 based on evidence of misconduct. (EDSOF ¶ 13). Based on their own independent reviews of the entire investigation file, Chief Holbrook and Undersheriff Whittler concurred with the recommendation, respectively, on April 20, 2011 and April 28, 2011. (EDSOF ¶¶ 37, 40).

22. OPR Investigator Hemphill, who is African-American and who interviewed Harold Woolfolk, was pulled off the case (Hemphill Dep., 101-02, Ex. 3). At the time Hemphill was pulled of the case, the identification process of Taylor by Woolfolk had not been satisfied (*Id.*, p. 101). Hemphill does not know why he was pulled off the investigation and no reasons were given (*Id.*, pp. 102, 117-18). Sheryl Collins, who is African-American, a "very competent" certified forensic interviewer, was also taken off the case (*Id.*, pp. 149-50). According to Hemphill: "I can't give you the reason I was taken off, I can't give you the reason Sheryl was taken off, but I can give you the reason why everybody else wants to be involved, and it's they want the glory, they want to shine, they want to be involved. 'Oh, I worked on that case, look it's on the news.' That's what they're after." (*Id.*, p. 150).

**RESPONSE:** Plaintiff's statement is misleading and mischaracterizes the testimony of Mr. Hemphill related to being "pulled off the case" and should be stricken as improper

under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.). Furthermore, Mr. Hemphill's statement that "it's they want the glory, they want to shine, they want to be involved. Oh, I worked on that case, look it's on the news" is inadmissible—lacks foundation, Mr. Hemphill lacks personal knowledge and it is pure speculation.

Defendants do not dispute that Mr. Hemphill is African-American and do not dispute that he interviewed Harold Woolfolk. Defendants do not dispute Investigator Collins is African-American and is a "very competent" certified forensic interviewer. Defendants dispute that Mr. Hemphill and Investigator Collins were taken off the case—neither were ever assigned to the case. Mr. Hemphill testified that he was never assigned to the investigation and that "there will be one investigator assigned, and that investigator can have other people assist." *See* Hemphill's 6-27-18 Dep., attached as Ex. 69, at 76:18-78:5. Mr. Hemphill also testified that he was only "assigned to interview the alleged victim . . . . to look into Taylor's alibi about being at a grocery store . . . .[and]  I believe -- oh, I was also sent in to talk to him while he was in custody" *Id.* Investigator Collins also testified that she only assisted with the execution of the search warrant and an interview of Mr. Woolfolk. *See* Collin's 8-27-18 Dep., attached as Ex. 59, at 16:11-15; 18:9-14; 25:22-25; 50:3-14. Mr.

25

Hemphill also testified that "you know -- taken off, not like, 'Hey, that's it, you're done, leave it alone,' but when I say, 'Taken off,' if all these people come in here and they want to get involved, and I know there's too many people involved, it's too many people to try to give direction to, and no one's taking charge here, then you know what, 'You guys can have it. Go ahead. Do it.'" *See* Hemphill's 6-20-18 Dep., attached as Ex. 56, at 76:18-78:5. 150:13-21. He also testified that the Sheriff's Office would not take him off because of his race and "if anything, they would involve me because of that [my race]." *See* Hemphill's 6-27-18 Dep., attached as Ex. 69, at 118:3-21. Defendants dispute that "the identification process of Taylor by Woolfolk had not been satisfied." Plaintiff cites to Mr. Hemphill's testimony but Mr. Hemphill testified that "[t]here's enough information here to indicate that he [Mr. Woolfolk] was describing Percy Taylor," including that Mr. Woolfolk identified the shooter as a Cook County Sheriff's Officer and that there is no evidence that any other Cook County Sheriff's Office lives at the residence that Mr. Woolfolk identified as the residence of the shooter. *Id.* at 84:12-24. Mr. Hemphill testified that he could not even say whether Mr. Woolfolk knew Plaintiff's name and that he could have said his name. *Id.* at 88:21-24; 92:4-24. Mr. Hemphill also would not be aware of any subsequent or prior positive identification of Plaintiff by Mr. Woolfolk since he was not assigned to the investigation and only assigned very limited tasks. *Id.* Mr. Woolfolk positively identified Plaintiff as the shooter. (OPR SOF ¶¶ 8, 12, 16, 20, 21, 23).

*The Pickup Truck was Parked in the Opposite Direction, Making it Impossible for Percy to have Shot the Front Windshield and Headlights as Claimed*

23. Woolfolk claimed that he was working on the pickup truck at 1915 South Avers when the shooter aimed a BB/pellet rifle from the rear third-floor window of 1916 South Hamlin at the vehicle that he was sitting in (OPR Report of Investigation, p. 3, Ex. 25). Woolfolk said that "he heard a 'poof' sound and then saw a 'splat' on the windshield of the vehicle." (*Id.*, p. 4). He said he exited the vehicle and looked around but noticed nothing (*Id.*). Woolfolk stated that he got back

into the vehicle and observed his neighbor at the third-floor window of the residence in the back of 1915 South Avers with what appeared to be a rifle pointing out the window (*Id*.). He said that he heard numerous "poofs" and saw numerous "splats" on the windshield (*Id*.). It makes no sense for Woolfolk to have heard a "puff." (Hemphill 6/27/18 Dep., pp. 114-15, Ex. 32). Wolfe, in her sworn misdemeanor complaint against Percy dated March 16, 2011 attested that her pickup truck "was damaged by pellets that struck the *headlights and windshield* …, said damage being not in excess of $300.00 (Wolfe's Misdemeanor Complaint, Ex. 33). According to Ernst, Wolfe showed OPR "where the bullet holes were on the windshield and on the headlights." (Ernst State Dep., pp. 120-21, Ex. 5).

**RESPONSE:** Deny that "it makes no sense for Woolfolk to have heard a 'puff,'" as

that is improper argument and not supported by the record and lacks foundation.  N.D. Ill.

Loc. R. 56.1(B)(3)(C).  *See Boyd*, 225 F. Supp. at 716 ("The nonmovant's statement of

additional facts must represent only material facts and are not the proper province of

argumentative or conclusory allegations").  Hemphill testified that most people describe

hearing shots from a *gun* as a boom or a bang (Plf's Ex. 32, Hemphill 6-27-18 Dep., at 115:6-

12, but Hemphill has no personal knowledge of what Woolfolk heard.  *Id*. at 114:10-115:5.

Further, Mary Wolfe described hearing a loud "bang" at her window.  (OPR SOF Ex. 14,

Ernst 3-25-11 Report, at 3).  Undisputed as to the remaining, but these facts are not material

and do not support the denial of Defendants' summary judgment motions and they are

duplicative of facts contained OPR SOF statement and do not dispute the evidence of

misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060

(7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments,

and conjecture" may be stricken).

24. At her deposition, Wolfe testified that the truck was parked in her yard with the front of the truck facing towards Avers (Wolfe Dep., p. 89, Ex. 29). According to Wolfe, the back of the truck was to the alley (*Id*., pp. 89-90). Hamlin (and the 3rd Floor window of Taylor's residence) is east of Avers. Below is a photo from Google Earth showing the two houses and the alley. According to Wolfe, the front of the truck was facing away from the location from where Percy allegedly fired the pellets (*Id*., 89-90).

**RESPONSE:**  Defendants ask this Court to disregard this statement this statement

as immaterial in violation of L.R. 56.1(b)(3)(C). Defendant do not dispute that Wolfe testified at her deposition (6 years after the incident) that the truck was facing towards Avers, but deny the intended inference that Defendant OPR investigators had any reason to believe the truck was facing toward Avers during their investigation. Mary Wolfe called 911 twice to say that someone had shot at the windshield of her truck on March 8, 2011. (Plf's Resp. OPR SOF, Dkt. 474, at ¶¶ 9-10). On that day, CPD Officer McGowan and her partner arrived at 1915 S. Avers and spoke to Woolfolk and Wolfe, and Officer McGowan observed the damage to the vehicle. *Id.* at ¶¶ 12-15. Officer McGowan drafted an incident report explaining that she responded to the 911 call and what she learned during her preliminary investigation, including that the truck was facing towards Hamlin. *Id.* OPR Defendant investigators obtained Officer McGowan's report. *Id.* at ¶ 18. On March 9, 2011, OPR Defendant Investigators went to 1915 S. Avers to speak with the victims and take photos of the damaged vehicle. *Id.* at ¶ 19. Woolfolk told the investigators that he saw his neighbor shooting at the vehicle windshield and at him. *Id.* at 20; OPR SOF Ex. 14, Ernst 3-25-11 Report, at 3; OPR SOF Ex. 1, Ernst Dep., at 118:20-119:9; OPR SOF Ex. 2, Fitzgerald Dep., at 55:24-56:3; OPR SOF Ex. 17, Fitzgerald 10-22-15 Dep., at 20:3-5; 20:14-17; 24:19-25. Wolfe told the investigators that she heard a bang at the window and, when she went outside, Woolfolk shouted to her that he had been shot at by the neighbor, and Wolfe showed OPR Defendant Investigators the damage to her windshield and headlights *Id.*; OPR SOF Ex. 17, Fitzgerald 10-22-15 Dep., at 21:6-9. Defendant Investigators observed the damaged vehicle. *Id.* at 22:1-10. Also, on March 9, 2011, Evidence Technician Amy Lillibridge took photos of the damaged vehicle that show it facing towards Hamlin in line with the rear third floor window of Plaintiff's residence at 1916 S. Hamlin. (Plf's Resp. OPR SOF, ¶ 27; OPR SOF Ex. 21,

**Dkt. 461-21, at 5, 18. Additionally, the facts in this statement are immaterial, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants.** *Cady v. Sheahan*, **467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).**

25. The Sheriff's Office produced damage estimates from Parkview Automotive and Collision Centers of America for purported damage to the windshield and front headlights (Ex. 34). Evidence Technician Amy Lilliebridge documented the purported damage noting: "possibly caused by pellets, on the vehicle's windshield." (Sheriff's Police Department Evidence Report, p. 1, Ex. 35). The Cook County Sheriff's Police Department Criminalistic Section Evidence Report dated March 9, 2011, notes:

> On the above date and time, R/CIs were requested to respond to CCSPD headquarters in order to process the above listed vehicle. R/CIs were requested to photograph and recover any projectiles located in the headlamps of the above listed vehicle. **There are four (4) strike marks, possibly created by pellets**, on the vehicle's windshield. These marks do not penetrate into the cab of the truck. The first is located 2'9" in from the A pillar and 1'6" up from the hood. The second is located 1'1" in from the A pillar and 11" up from the hood. The third is located 1'5" in from the A pillar and 8" up from the hood. The fourth is located 1' in from the A pillar and 5" up from the hood. **In the passenger side of the hood there is another possible gun shot related hole**. This hole is located 3" in from the passenger side of the hood and 1' forward from the passenger side edge of the hood. **In the front passenger side head lamp there is a possible gun shot related hole**. This hole is located 10" up from the bumper and 6" in from the passenger side quarter panel. This is a puncture hole in the exterior plastic of the head lamp. The projectile did not penetrate into the head lamp. **In the front driver's side turn signal there are three gun shot related holes**. The first is located 5" up from the bumper and 9" in from the driver's side quarter panel. The second is located 5" up from the bumper and 10" in from the driver's side quarter panel. The third is located 8" up from the bumper and 10" in from the driver's side quarter panel. **These projectile's penetrated the turn signal and entered the engine compartment of the vehicle.** There is a strike mark on the interior wheel well on the driver's side of the vehicle. It is located 10" in from the driver's side quarter panel and 9" back from the radiator.
>
> R/CIs searched the engine compartment of the above listed vehicle for projectiles with negative results.

(Cook County Sheriff's Police Department Criminalistic Section Evidence Report dated March 9, 2011, Ex. 35) Emphasis added).

The CCSO's own criminalistics investigators note that there are four possible pellet strikes

and five possible gun-shot related holes (Ex. 35). Woolfolk claimed that nine pellets struck the truck. (Search Warrant Complaint, Ex. 20). According to Police expert Robert Johnson: "it is very difficult to explain how it was possible that no projectiles were recovered if the incident occurred per Woolfolk's account." (Johnson Rule 26(a)(2) Report, p. 20, Ex. 11). Robert Johnson opines that the damage to the headlights and windshield could not have occurred with someone firing from the 3rd floor window of Percy's residence, as the rear end of Wolfe's vehicle was facing the window and hence any shots fired from the window would have impacted on the rear of Wolfe's vehicle (*Id.*, p. 20. "As guns/rifles shoot in a straight path, it would have been impossible for any shots fired from the window to have struck the front of Wolfe's vehicle." (*Id.*). According to OPR Investigator Singletary, if the physical evidence shows that the story given to an investigator by a complaining witness could not have happened, the allegations should not be sustained (Singletary Dep., p. 90, Ex. 17).

**RESPONSE: Defendants ask the Court to disregard this statement because this statement violates N.D. Ill. Loc. R. 56.1(B)(3)(C) for presenting multiple facts in a single paragraph (in excess of 9 facts, plus additional facts copied from P. Ex. 35) and contains improper argument and inferences.**

**Defendants deny Plaintiff's contention that it is difficult to explain why no projectiles were found, as it is not supported by admissible evidence. Plaintiff's expert's opinion on this issue lacks the necessary foundation required by FRE 702. Plaintiff's expert admitted that he could not recall an instance where he ever had to search for a BB during an investigation. *See* Johnson Dep., attached as Ex. 70, at 339:12-17. Further, he admitted that he has never shot a BB gun before, and admitted the fact that there was damage to the vehicle corroborated the fact that a shooting occurred, and admitted that Defendant OPR Investigators did not arrive on scene until over 24 hours after the shooting. *Id.* at 278:16-20; 304:10-16; 313:18-314:7. Deny the remaining expert opinions in this paragraph because they lack the foundation required by FRE 702. The opinions assume, without evidence, that Defendant Officers knew the vehicle was facing towards Avers, when the only evidence of the OPR Defendants' knowledge as to which direction the vehicle was facing are to the contrary. *See* Def. Resp. to PSOAF ¶ 24. Further, Defendants deny Investigator Singletary's**

30

opinion, as it lacks foundation as applied in this statement. Further denying, Singletary testified he was not involved in deciding whether allegations should be sustained and was only speculating to questions posed by Plaintiff's counsel at his deposition. *See* Singletary's Dep., attached as Ex. 60, at 100:4-14.

Undisputed that Woolfolk stated that nine shots struck the vehicle, but this fact is not material because it is duplicative of the OPR Defendant Investigators' 56.1 statement and does not support the denial of Defendants' summary judgment motions. L.R. 56.1(b)(3)(C). Undisputed as to what the evidence report (P. Ex. 35) says, but these facts, also, are immaterial, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).

*Criminal Complaint BB Gun Incident*

26. Wolfe and Woolfolk signed criminal complaints at OPR headquarters. (Ernst Dep. 9-13-2015, p. 57, Ex. 5). Percy did not agree to pay restitution to Mary Wolfe and has no knowledge of restitution being ordered, much less paid (Taylor Federal Dep., pp., 269-70, 283, Ex. 6).

**RESPONSE:** Undisputed that Plaintiff testified he did not pay, or agree to pay, restitution. But deny the intended contention that restitution was not paid. Plaintiff's criminal defense lawyer informed Cook County ASA Maria Burnett that Plaintiff wanted to pay restitution to the victims. (OPR SOF Ex. 33, Kuzas Affidavit). After waiting in Court for Plaintiff to get the money, Plaintiff's criminal defense attorney provided money to ASA Burnett. (OPR SOF Ex. 34, Burnett Dep., at 70:9-71:18, 73:21-25). Mary Wolfe received the money from ASA Burnett. *See* Wolfe Dep., attached as 94:13-95:7; OPR SOF Ex. 35, Restitution Receipt. Because restitution was paid to the victims, ASA Burnett moved to dismiss the case. *Id*. p. 82:1-83:7.

*Loudermill Hearing*

27. On or about March 12, 2011, Percy was notified that a *Loudermill* hearing would be held on March 22, 2011 (Memo from John Maher to Percy dated 3/14/11, Exhibit 36).5 On March 22, 2011, a *Loudermill* hearing was conducted with the *Loudermill* Board recommending that Percy be *suspended with pay* (3/22/11 Memo from Commander Anton to Chief of Police DeWayne Holbrook, Ex. 37). A *Loudermill* hearing is to determine whether the suspension is with pay or without pay (Michael Anton Dep., p. 88, Ex. 38). *Loudermill* Hearings are conducted after an OPR investigation is completed (Declaration of John Maher, ¶ 6, Doc. 344-2 filed: 2/01/19).

**RESPONSE: Defendants ask this Court to strike Plaintiff's statement regarding the timing of *Loudermill* hearings as Plaintiff is barred from using the declaration of John Maher, pursuant to Judge Gilbert's September 16, 2019 order. *See* 9-16-19 Order, Docket Number 454, at 9-10. Plaintiff preemptively argues that "Magistrate Judge Gilbert ruled that the affidavit was untimely produced and should not be considered when deciding the motion to reconsider." *See* Plaintiff's Response to MSJ, Docket Number 476, at 17. This is knowingly inaccurate. Defendants filed a motion to bar Plaintiff from using Mr. Maher's affidavit "for purposes of Plaintiff's Motion [to reconsider], motion for summary judgment and at trial." *See* Defendants Motion to Bar Affidavit, Docket Number 360. Judge Gilbert excluded it under Rule 37(c)(1)—which states that "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial." *See* 9-16-19 Order, Docket Number 454, at 9-10. Even more, as explained further in Defendants' motion to disqualify, Mr. Maher's affidavit clearly contains confidential and privileged information that, even if untrue, reaches into legal processes directly at issue in this litigation and the attorney-client privilege. *See* Defendants' Motion to Disqualify, Docket Number 416. Privileged information is inadmissible. *Aspgren v. Montgomery Ward & Co.*, No. 82 C 7277, 1984 U.S. Dist. LEXIS 20927 at \*5-6 (N.D. Ill. Dec. 27, 1984) (former employees are "incapable" of waiving attorney-client privilege, and "[i]f they reveal privileged information,**

it is inadmissible."). Plaintiff's failure to refrain from using the confidential information contained in Mr. Maher's affidavit is in blatant disregard for Defendants' pending motion, for the court's order, and further supports their ethical violations under ABA rule 4.2 and 4.4(a) raised in Defendants' motion to disqualify. Plaintiff's statement regarding when *Loudermill* hearings are generally conducted is also misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp*., 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).

Defendants dispute that "*Loudermill* Hearings are conducted after an OPR investigation is completed." The evidence supports that the timing of the *Loudermill* was appropriate given the public safety concern and was not injurious to plaintiff. *See* Dirden's Report, attached as Ex. 66, at 19. The timing of the *Loudermill* hearing was also appropriate given that there is no consistent national guidance that addresses the timing of hearing. *Id.* Plaintiff's own expert Mr. Johnson testified that he did not know if the *Loudermill* court decision "specifically addresses that [whether a hearing is required to take place before the investigation is complete]" and eventually conceded that there are public safety concerns with having an employee who conducted a crime continue working as a police officer,

**requiring the *Loudermill* to occur immediately. *See* Johnson's Dep., attached as Ex. 70, at**

**188:191:4. Defendants do not dispute the rest of the facts contained in paragraph twenty-**

**seven (#27).**

28. In Percy's case, management insisted that the hearing be conducted before all reasonable investigative leads were pursued and finalized (Declaration of John Maher, ¶ 6, Doc. 344-2). This is unusual and not consistent with practice and procedure and accepted due process (*Id*.). There was insufficient evidence to proceed to a *Loudermill* hearing on the date management convened the Board (*Id*. ¶ 8). The scheduling of the *Loudermill* hearing before the investigation had been completed, documented and approved, is contrary to accepted law enforcement practices and standards (Robert Johnson Report, p. 24-25, Ex. 11). "The scheduling of a *Loudermill* hearing before the investigation was completed and the failure to follow-up on the deficiencies demonstrate that the investigation was not only seriously flawed but strongly suggests that the outcome had be pre-determined before the investigation was completed." (*Id*. p. 25).

**<u>RESPONSE:</u> Defendants ask this Court to strike Plaintiff's statements based on Mr.**

**Maher's affidavit as Plaintiff is barred from using the declaration of John Maher, pursuant**

**to Judge Gilbert's September 16, 2019 order. *See* 9-16-19 Order, Docket Number 454, at 9-**

**10. Defendants refer this Court to their objections to paragraph twenty-seven (#27) for**

**further explanation. Even more, as explained further in Defendants' motion to disqualify,**

**Mr. Maher's affidavit clearly contains confidential and privileged information that, even if**

**untrue, reaches into legal processes directly at issue in this litigation and the attorney-client**

**privilege. *See* Defendants' Motion to Disqualify, Docket Number 416. Privileged information**

**is inadmissible. *Aspgren v. Montgomery Ward & Co*., No. 82 C 7277, 1984 U.S. Dist. LEXIS**

**20927 at \*5-6 (N.D. Ill. Dec. 27, 1984) (former employees are "incapable" of waiving**

**attorney-client privilege, and "[i]f they reveal privileged information, it is inadmissible.").**

**Plaintiff's failure to refrain from using the confidential information contained in Mr.**

**Maher's affidavit is in blatant disregard for Defendants' pending motion, for the court's**

**order, and further supports their ethical violations under ABA rule 4.2 and 4.4(a) raised in**

**Defendants' motion to disqualify. This paragraph also contains improper argument in**

violation of N.D. Ill. Local Rule 56.1(b)(3)(C). *See Boyd v. City of Chicago*, 225 F. Supp. at 716 ("The nonmovant's statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations"); *1 Tel-Lock, Inc. v. Thomson Consumer Electronics,* 2005 WL 741930, (N.D. Ill 2005) (Failure to comply with Local Rule 56.1 by stating legal conclusions rather than material facts.). Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp*., 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).

Furthermore, Plaintiff's Mr. Maher's statement that "management insisted that the hearing be conducted before all reasonable investigative leads were pursued and finalized" is inadmissible—lacks foundation, Mr. Maher lacks personal knowledge and it is pure speculation. Lastly, Mr. Johnson's opinions should be barred under Fed. R. Civ. P. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* as he did not use a reliable reasoning or methodology and he is not offering testimony that will assist the trier of fact in understanding the evidence or determining a factual issue. Mr. Johnson even testified that he did not know if the *Loudermill* court decision "specifically addresses that [whether a hearing is required to take place before the investigation is complete]" and eventually conceded that there are

public safety concerns with having an employee who conducted a crime continue working as a police officer, requiring the *Loudermill* to occur immediately. *See* Johnson's Dep., attached as Ex. 70, at 188:191:4.

Defendants dispute all facts in this paragraph including that "management insisted that the hearing be conducted before all reasonable investigative leads were pursued and finalized" and that "[t]here was insufficient evidence to proceed to a *Loudermill* hearing on the date management convened the Board." Defendants refer this Court to its response to paragraph twenty seven (#27), disputing that "*Loudermill* Hearings are conducted after an OPR investigation is completed." Due process does not require a full adversarial hearing prior to the government action. *See* Dirden's Report, attached as Ex. 66, at 19. To require more would intrude on government action quickly remove an unsafe or unsatisfactory employee. *Id.* The evidence supports that the timing of the *Loudermill* was appropriate given the public safety concern and was not injurious to plaintiff. *Id.* Additionally, at the time of Plaintiff's *Loudermill* hearing on March 22, 2011, OPR had already:

(1) conducted an interview of Plaintiff (OPR SOF ¶ 32);
(2) conducted an on-scene investigation that included interviews of the victims (OPR SOF ¶¶ 19-23);
(3) received a report from CPD about CPD's investigation of the incident (OPR SOF ¶ 18);
(4) received a positive identification of Plaintiff as the shooter (OPR SOF ¶ 23);
(5) had evidence technician Amy Lilliebridge photograph the pickup truck and the surrounding vicinity and search the vicinity of pickup truck for pellet fragments (OPR SOF ¶¶ 26-27);
(6) executed a search warrant of Plaintiff's residence (OPR SOF ¶¶ 28-30);
(7) received signed criminal complaints by victims (OPR SOF ¶ 36);
(8) conducted time-study and concluded that, if the time stamp of video is accurate, Plaintiff still could have committed the shooting and still have arrived at the Jewel store when he did (OPR SOF ¶¶ 33-34);
(9) were told that victims alleged that Plaintiff tried paying them off to drop charges (OPR SOF ¶ 35); and

**(10) observed and documented damage to the front of the truck observed and documented by CPD, evidence technician Lilliebridge and OPR investigators (OPR SOF ¶¶ 14, 16, 22, 27).**

**Chief Holbrook, who is African-American, as Chief of Police, was responsible for scheduling Plaintiff's *Loudermill* hearing—not any of the individual Defendants. *See* Holbrook's 8-1-2018 Dep., attached as Ex. 71 at 57:19-58:17. Undersheriff Whittler and Sheriff Dart did not schedule Plaintiff's *Loudermill* hearing. *Id.***

29. On or about April 13, 2011, Undersheriff Zelda Whittler wrote a letter to Chief of Police Dewayne Holbrook stating: "Pursuant to our discussion regarding Officer Percy Taylor on April 12, 2011 and the *Loudermill* Hearing Board's recommendation, I do not concur with the recommendation of suspension with pay. Therefore, you are to notify Officer Taylor that he will be assigned to the Court Services Division pending the Merit Board case…" (April 14, 2011 letter, Ex. 39).6 Undersheriff Whittler copied the Sheriff's Chief of Staff, Brian Towne, the Deputy Chief of Staff, the First Assistant Chief Deputy Sheriff and the Director of Personnel on her letter (*Id.*). Chief of Police Holbrook, in a memorandum dated April 14, 2011 to Undersheriff Whittler, responded to Whittler's April 13, 2011 letter (Ex. 40). Chief Holbrook defended the *Loudermill* Board's decision stating: "In this particular instance, debriefing the Board members revealed that they voted their conscious [sic] based on the weaknesses of the evidence, not for want of knowing what to do." (*Id.*, p. 2). Chief Holbrook informed Undersheriff Whittler about the numerous problems with OPR's investigation including *inter alia*: "the original investigation left too many unanswered questions and appeared incomplete, *i.e.*, the alleged victim's criminal history as it bore on the ultimate questions of 'he said, she said;'—as it turned out, Commander Anton, President of the Board, subsequently pulled the alleged victim's arrest/conviction record and it was lengthy;" the investigators, all but ended their investigation, when the States Attorneys office declined to pursue felony charges; and "this Department was put off time and again in response to requests to view the investigatory file prior to the hearing…" (*Id.*, p. 1).

**RESPONSE: Plaintiff's statement is misleading and mischaracterizes the April 14, 2011 Memorandum from Chief Holbrook and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp*., 2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims as it does**

not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).

Defendants dispute that Chief Holbrook "defended" the *Loudermill* Board's decision. Chief Holbrook testified that the memorandum dated April 14, 2011 to Undersheriff Whittler "is not my opinion." *See* Holbrook's 5-3-18 Dep, attached as Ex. 81, at 59:19-62:3. He testified that "I'm not trying to convey anything because I wasn't involved in the investigation, nor was I involved in the Loudermill hearing . . . . this is coming from the board members, period." *Id.* After even further questioning, he testified that "I didn't input my – anything from myself into it at all . . . . I was not part of any investigation . . . . I was not part of the Loudermill hearing . . . . [s]o I really can have no opinion whatsoever on this." *Id.* He provided it to the Undersheriff because "they had the Loudermill hearing, and then this is the -- the reasoning behind the decision from the Loudermill hearing." *Id.* Defendants do not dispute the rest of the facts contained in paragraph twenty-nine (#29).

30. John Maher, an attorney and former employee of the Sheriff's Office who attended Percy's *Loudermill* hearing on March 22, 2011, under penalties of perjury stated:

> Directly after the *Loudermill* Board determined that Percy Taylor would still be paid his regular salary pending any charges before the Cook County Sheriff's Merit Board, I was standing in the hallway at the Maywood "Square," as the Sheriff's Police Headquarters was known, and overhead a conversation between Chief Holbrook and Deputy Chief Smith. I was passing from my office into the hallway. I heard Chief Holbrook tell Deputy Chief Smith words to the effect of "the Sheriff and Zelda [Whittler] are not happy with the outcome of the Board." Chief Holbrook also stated words to the effect of "downtown sees it one way, and we on the ground doing the job each day see it the right way." "Downtown" was commonly referred to and understood as the Sheriff, the Undersheriff, and the Sheriff's Chief of Staff, Brian Towne.

(Maher Declaration, ¶¶ 1-2, 4 and 7, Doc. 344-2). On August 31, 2015, Plaintiff listed John Maher in "Plaintiff's Rule 26(a)(1) Initial Disclosures." (Ex. 42). On February 1, 2019, Plaintiff provided a "Supplemental Witness Disclosure" for John Maher "out of an abundance of caution." (Ex. 43).

On April 26, 2018, Plaintiff provided Defendants with "Plaintiff's *Supplemental* Rule 26(A)(1) Disclosures." (Ex. 44). Maher is not listed in the April 26, 2018 Supplemental Disclosures (*Id*).

**RESPONSE: Defendants ask this Court to strike Plaintiff's statements relying on Mr. Maher's affidavit as Plaintiff is barred from using the declaration of John Maher, pursuant to Judge Gilbert's September 16, 2019 order. *See* 9-16-19 Order, Docket Number 454, at 9-10. Defendants refer this court to its objections to paragraph twenty-seven (#27) for further explanation. As explained further in Defendants' motion to disqualify, Mr. Maher's affidavit also clearly contains confidential and privileged information that, even if untrue, reaches into legal processes directly at issue in this litigation and the attorney-client privilege. Privileged information is inadmissible. *Aspgren v. Montgomery Ward & Co*., No. 82 C 7277, 1984 U.S. Dist. LEXIS 20927 at \*5-6 (N.D. Ill. Dec. 27, 1984) (former employees are "incapable" of waiving attorney-client privilege, and "[i]f they reveal privileged information, it is inadmissible."). Defendants refer this court to its objections to paragraph twenty-eight (#28) for further explanation on this objection. This paragraph also contains improper argument in violation of N.D. Ill. Local Rule 56.1(b)(3)(C). *See Boyd v. City of Chicago*, 225 F. Supp. at 716 ("The nonmovant's statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations"); *1 Tel-Lock, Inc. v. Thomson Consumer Electronics*, 2005 WL 741930, (N.D. Ill 2005) (Failure to comply with Local Rule 56.1 by stating legal conclusions rather than material facts.). Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp*., 2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the**

evidence on which they purport to rely). **This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants.** *Cady v. Sheahan*, **467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.). Furthermore, Mr. Maher's statement of what he "overhead" between Chief Holbrook and Deputy Chief Smith is inadmissible hearsay.**

**Defendants do not dispute that Mr. Maher wrote the declaration, but dispute its veracity including disputing that Chief Holbrook and Deputy Chief Smith made such a statement or that the Sheriff Dart or Undersheriff Whittler made any such statements. Chief Holbrook, Deputy Chief Smith and Undersheriff Whitter all testified that they never spoke with Sheriff Dart about Plaintiff or any decisions affecting him.** *See* **Holbrook 8-1-2018 Dep., attached as Ex. 71, at 57:8-11; Smith Dep., attached as Ex. 72, at 13; 1-2; Undersheriff Dep. attached as 73, at 29:3-5; 53:21-54:14. Defendants do not dispute that Plaintiff's initial Rule 26(a)(1) disclosures, issued on August 21, 2015, included Mr. Maher. However, on October of 2017, Plaintiff removed Mr. Maher from his Rule 26(a)(1) disclosures when he issued his first amended Rule 26(a)(1) disclosures.** *See* **Plaintiff's Amended Disclosures, attached as Ex. 74. Defendants do not dispute that on February 1, 2019, Plaintiff, after discovery closed, untimely issued a supplemental witness disclosure, disclosing Mr. Maher.[2]**

*OPR's Summary Report, Command Channel Review and Merit Board Complaint*

31. OPR issued its Report of Investigation sustaining the charges and recommending that Percy be terminated (OPR Report of Investigation, Doc. CCSO 1192, Ex. 25). Defendants Ways and Ernst, along with OPR Director Dyner, signed the Report (*Id.*). Ways signed the Report on April 19, 2011 (*Id.*). Ernst and Dyner's signatures are not dated (*Id.*). OPR also found that Percy failed

---

[2] This disclosure is untimely for the same reasons argued in Defendants' Motion to Bar Mr. Maher's affidavit, which was granted by Judge Gilbert, and if this case is not resolved on summary judgment, Plaintiff should be barred from calling Mr. Maher at trial.

to report a 1999 DUI arrest and conviction in Missouri (OPR Report of Investigation, Docs. CCSO 1189, CCSO 1192, Ex. 25). Percy claims that he reported the arrest and conviction to CCSO (*Id*., CCSO 1188). The Command Channel Review is signed by Defendants Whittler (April 28, 2011), Ways (April 27, 2011) and Chief of Police Holbrook (April 20, 2011), all concurring that Taylor should be separated from his employment (Ex. 25, CCSO 1182). OPR's Standard Operation Procedures provide that the Undersheriff or Sheriff, or his/her designee, will make the final decision regarding the completeness of the investigation, the finding and any disciplinary action (Johnson Report, p. 23, Ex. 11).

**RESPONSE:** **This statement is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants.** ***Cady v. Sheahan***, **467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).**

**Undisputed.**

32. Undersheriff Whittler testified that her only role in the discipline of employees was "[o]nce an investigation is concluded, then the case would then go through command channel review and I was the final signature on command channel review." (Whittler, Dep., p. 23, Ex. 41). Whittler further testified: "Like I said, I deal with thousand—thousands of cases." (*Id*., pp. 52-53). Whittler testified that she reviewed thousands of internal investigations as part of the Command Channel Review process and that she didn't know if she ever disagreed with an OPR recommendation for discipline answering: "I believe I have." (*Id*., pp. 25-26, 33). Whittler sometimes would get 25-30 investigations in a week (*Id*., p. 28). Whittler was copied on an April 14, 2011, Memorandum from Attorney Maher to Percy Taylor (Ex. 45). In his report, Johnson states:

> I find Whittler's testimony to be mind boggling. I served as a command level officer for approximately the same amount of years that Whittler reviewed cases as the Undersheriff. I reviewed over a thousand investigations (Criminal and Internal) as well as reviewed probably 10,000 to 15,000 investigative activity reports. I would estimate that I returned somewhere near 10% of those to have additional details added or clarified and/or for further investigation in order to have a thorough and complete investigation. Surely, if Whittler performed an informed, competent, knowledgeable review she would have returned numerous investigations out of thousands she testified she reviewed and should have no difficulty remembering that. Her answer suggests that she didn't perform an informed, competent, knowledgeable and independent review and served as merely a rubber stamp for OPR's findings and recommendations. (Johnson Report, pp. 26-27, Ex. 11).

**RESPONSE:** **Defendants ask this Court to disregard Plaintiff's statements as to his expert's opinions as it contains improper argument in violation of N.D. Ill. Local Rule**

56.1(b)(3)(C). *See Boyd v. City of Chicago*, 225 F. Supp. at 716 ("The nonmovant's statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations"); *1 Tel-Lock, Inc. v. Thomson Consumer Electronics,* 2005 WL 741930, (N.D. Ill 2005) (Failure to comply with Local Rule 56.1 by stating legal conclusions rather than material facts.). Plaintiff's statement is misleading and mischaracterizes Undersheriff Whittler's testimony and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.). Lastly, Mr. Johnson's opinions should be barred under Fed. R. Civ. P. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* as he did not use a reliable reasoning or methodology and he is not offering testimony that will assist the trier of fact in understanding the evidence or determining a factual issue.

Defendants dispute that Undersheriff Whittler's only role in the discipline of employees was command channel review. Undersheriff Whittler testified that she separately reviewed and approved the *Loudermill* panel's decision. *See* Undersheriff Whittler's Dep., attached as Ex. 73, at 37:21-39:10; 44:20-46:12; 79:25-81:14. Defendants also dispute that she testified that she didn't know if she ever disagreed with an OPR recommendation for

**discipline answering. Undersheriff Whittler testified that "I believe I have" when asked if she ever disagreed with an OPR recommendation from discipline.** *Id.* **at 33:5-7. Defendants dispute Mr. Johnson's entire opinion including that Undersheriff Whittler's testimony is "mind boggling." Her answer does not suggest that "she didn't perform an informed, competent, knowledgeable and independent review and served as merely a rubber stamp for OPR's findings and recommendations." She testified that she believed she did disagree with an OPR recommendation.** *Id.* **at 33:5-7. And, Undersheriff Whittler concurred with the recommendations based on her own independent reviews of the entire investigation file. (EDSOF ¶¶ 37, 40). Undersheriff Whittler reviews reports to determine if there is sufficient evidence to support the allegation and the recommendation of sustained and then determines whether or not to concur with the recommended discipline. (EDSOF ¶¶ 37, 40). Defendants do not dispute the rest of the facts contained in paragraph thirty-two (#32)**

33. On October 20, 2011, Defendant Dart filed a complaint with the Merit Board seeking Percy's termination, Docket No. 1620 (Merit Board Complaint, Ex. 46). Defendant Whittler signed Dart's name to the complaint (*Id.*, p. 6).

**RESPONSE: Plaintiff's statement is misleading and mischaracterizes the evidence as to Sheriff Dart personally filing the complaint and should be stricken as improper under Local Rule 56.1(b)(3)(C).** *See De v. City of Chicago***, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.");** *Brown v. Advocate South Suburban Hosp.***, 2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants.** *Cady v. Sheahan***, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant**

information, legal arguments, and conjecture" may be stricken.).

Defendants dispute that Sheriff Dart personally filed the Merit Board complaint related to the shooting/DUI incident (or any of the Merit Board complaints). Undersheriff Whittler signed the complaint and the Sheriff's Office's legal department filed the complaint on October 20, 2011. (EDSOF ¶ 42-43). Defendants do not dispute the rest of the facts contained in paragraph thirty-three (#33).

*Photographs Prove that it Would have been Difficult, if not Impossible, for Woolfolk to have Identified Percy*

34. According to Woolfolk, he saw a man crouching on the window, and he identified that person as Percy Taylor (Ex. 49). On March 21, 2019, Plaintiff's Police Practices Expert, retired Illinois State Police Lieutenant Colonel, Robert Johnson, visited the scene of the alleged March 8, 2011 incident and photographs were taken of the third-floor window from where, according to Woolfolk, Percy allegedly fired the rifle with Percy looking out the window holding a rifle and without a rifle (Johnson Report with attached photographs, p. 20, the photographs are Bates Numbered Taylor 23743-23750, Ex. 11).

**RESPONSE:** Undisputed that Woolfolk told OPR investigators Hemphill and Collins that when he saw Plaintiff shooting at him, Plaintiff was crouched in the rear third-floor window of 1916 S. Hamlin with a weapon, and undisputed that Plaintiff's expert took the photos of 1916 S. Hamlin cited in this statement, but these photos lack foundation. Further, Plaintiff's expert opinion does not account for the fact that Woolfolk knew Plaintiff and had prior interactions with him, and Plaintiff was the only man home at that house that day. *See* Dirden Report, attached as Ex. 66, at 13. Additionally, these facts are not material and do not support the denial of Defendants' summary judgment motions, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).

35. It is difficult, if not impossible, to identify Percy in the photographs (Taylor Documents Bates Numbered 23743-23750, Ex. 11). Robert Johnson stood from where Woolfolk claims the truck was parked (Johnson Report, pp. 20-21, Ex. 11). From that position, with Percy in the window, both with the inside lights turned on, and the lights turned off, Percy was not identifiable by Johnson's eyesight, which does not require eyeglasses for near or far sighted (*Id.*, p. 21).

**RESPONSE: Defendants ask this Court to disregard this statement, as it contains improper legal argument in violation of Local Rule 56.1(b)(3)(C). *See Boyd*, 225 F. Supp. at 716 ("The nonmovant's statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations"). Defendants deny that the record cited establishes the foundation for what Woolfolk could or could not see. An expert is not permitted to offer opinions about the credibility of evidence. FRE 702; *Sanders*, 13 C 0221, 2016 WL 1730608, at \*6 ("It is well-settled that determining the weight and credibility of witness testimony is the exclusive province of the jury and that experts are not permitted to offer opinions as to the believability or truthfulness of witness testimony). Further, this statement lacks the foundation required by FRE 702 to establish that Johnson has expertise to opine on what Woolfolk saw. Further denying, OPR investigator Pon examined the window and concluded that there was a line of sight from the third-floor window to where the truck was parked in the alley. *See* Pon Dep., attached as Ex. 55, at 69:21-70:13; 45:13-24; OPR SOF Ex., 21, Lillibridge Photos, Dkt. 461-21, at 5, 18. Further, Plaintiff's expert opinion does not account for the fact that Woolfolk knew Plaintiff and had prior interactions with him, and Plaintiff was the only man home at that house that day. Ex. 66, Dirden Report, p. 13. Additionally, the facts in this statement are not material, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).**

45

*Woolfolk's Criminal Record and Percy's Prior Disputes with Woolfolk*

36. Woolfolk had an extensive criminal record prior to the alleged incident (Woolfolk Rap Sheet, Exhibit 47). His Rap Sheet shows fourteen arrests from 1983-2008 ranging from multiple arrests for possession of a controlled substances, multiple battery arrests, and solicitation arrests (*Id.*). Woolfolk was a drug addict (Taylor Federal Dep., 1/22/16, pp. 192-93, Ex. 6). Percy had prior disputes with Woolfolk, including reporting Woolfolk to the Chicago Police for stealing Percy's cable-TV and reporting him to the Chicago Police Department for stealing a drain cleaning cable (Percy Taylor State Court Dep., pp. 41-43, Ex. 27). On March 9, 2011, when Percy was arrested, he was outside, talking to an employee from the City's Department of Streets and Sanitation because Percy had complained that Woolfolk was throwing trash in his garbage cans (Taylor 1/22/16 Dep., pp., 213-15, Ex. 6; Percy Taylor State Court Dep., pp. 47-48, Ex. 27; T-Mobile Call Logs for March 9, 2011 showing calls to and from Street's and Sanitation from Percy's cellphone, Exhibit 48).

**RESPONSE: Defendants ask this Court to disregard this statement as it contains improper argument in violation of Local Rule 56.1(b)(3)(C). *See Boyd*, 225 F. Supp. at 716 ("The nonmovant's statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations"). Defendants also object to Plaintiff's reliance on his deposition taken in connection with his state court lawsuit, as that deposition transcript was not produced in this case and is, therefore, not part of the record. Defendants deny that Woolfolk was a drug addict; Plaintiff's testimony lacks foundation to establish that contention. *See Smith v. AllState Insurance Corporation*, 2001 WL 1104713 * 7 (N.D. Ill. 2001) (Court will not consider evidence regarding facts clearly not within the a witness' personal knowledge). Further, undisputed that the OPR Defendants obtained Woolfolk's criminal history and that it says what it says, undisputed that Plaintiff had prior disputes with Woolfolk, but these facts are not material and do not support the denial of Defendants' summary judgment motions, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).**

46

*Percy's Support for Baker*

37. Sylvester Baker ("Baker") was an African-American candidate for Sheriff who ran against Sheriff Dart in 2006, 2010 and 2014 (Avet State Dep., p. 34, Ex. 1; Deposition of David Evans taken 4/30/18, pp., 24-25, 35, Ex.9). Percy's support for Baker was well-known and common knowledge (Evans Dep., pp., 25-36; Taylor Dep. 1/22/16, pp., 97-98, Ex. 6). At his deposition, Percy identified approximately 75 Sheriff employees who he remembered having talked to about his support for Baker (Taylor Dep., 1/22/16, pp. 61-70, Ex. 6). Percy was a driver for Baker, taking him to meetings, slatings and "tons of political events." (Evans Dep., p. 26, Ex. 9).

**RESPONSE: Plaintiff's statement is misleading and mischaracterizes the evidence as to Plaintiff's support of Baker and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp*., 2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). The statements in Paragraph thirty-seven (#37) also are immaterial to any of Plaintiff's claims as they fail to provide evidence that Executive Defendants had knowledge of Plaintiff's support for Baker at time of termination recommendation, and do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.). Further, Plaintiff's statements that his support for Baker was "well-known" and "common knowledge" is inadmissible—lacking foundation, pure speculation and Plaintiff does not have personal knowledge.**

**Defendants do not dispute that Sylvester Baker ("Baker") was an African-American candidate for Sheriff who ran against Sheriff Dart in 2006, 2010 and 2014. Defendants dispute that "Percy's support for Baker was well-known and common knowledge." His unfounded testimony that he spoke to people employed at the Sheriff's office about his**

**support for Sylvester Baker is not sufficient to claim his support for Baker was well-known and common knowledge. Nonetheless, Sheriff Dart, Undersheriff Whittler and Director Ways did not have knowledge of Plaintiff's political support of Baker. (EDSOF ¶ 66). Plaintiff never spoke to Sheriff Dart, Undersheriff Whittler or Director Ways about his support for Baker. (EDSOF ¶ 77). Defendants do not dispute the rest of the facts contained in paragraph thirty-seven (#37)**

38. Sheriff Dart was at political events that Percy attended (Evans Dep., pp. 27-29, Ex. 9). Percy made a radio commercial with his name in the commercial along with his voice saying that he was supporting Baker (*Id*., pp. 31-32). The commercials ran during the 2010 campaign (*Id*., p. 32). The commercials ran on the African American stations (*Id*., p. 33). In 2006, Percy spoke to Sheriff Dart at a campaign event in Downtown Chicago (Taylor 1/22/16 Dep., pp., 94-97, Ex. 6). Taylor told Dart that his name is Percy Taylor and he worked at the Cook County Sheriff's Police Department (*Id*., p. 95). Dart responded: "people in the police department are going to be so fucked." (*Id*.).

**RESPONSE: Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C).** *See De v. City of Chicago*, **912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.");** *Brown v. Advocate South Suburban Hosp*., **2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims as it fails to provide evidence that Executive Defendants had knowledge of Plaintiff's support for Baker at time of termination recommendation, and does not dispute the evidence of misconduct against Plaintiff known to Defendants.** *Cady v. Sheahan*, **467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).**

**Defendants dispute Plaintiff's unfounded testimony about a conversation he had with Sheriff Dart. Plaintiff is the only person to claim that such a conversation occurred. Plaintiff**

never spoke to Sheriff Dart, Undersheriff Whittler or Director Ways about his support for

Baker. (EDSOF ¶ 70). Plaintiff did not know Sheriff Dart. (EDSOF ¶ 70). Defendants

dispute that Sheriff Dart was at political events that Plaintiff attended as Plaintiff testified

that he could not recall which Sheriff's Office's employees, including Sheriff Dart, were at

any fundraising events that he attended for Baker. (EDSOF ¶ 70).

39. Defendant Fitzgerald was "definitely" aware of Taylor's support for Baker (Evans Dep., pp., 33, Ex. 9). Fitzgerald was with the Teamsters Union; Evans and Percy wanted to set up a meeting with Baker and the Teamsters to obtain the Teamsters' endorsement (*Id.*, pp., 33-34). Having no success in scheduling a meeting, Percy, Baker and Evans went to Cook County Jail with Baker's truck parked on California Boulevard (with Baker signage on the truck) passing out literature in the presence of Fitzgerald (*Id.*, pp. 33-36). Percy was with Evans when Fitzgerald was told that Evans supported Baker (*Id.*, p. 36). The conversations occurred prior to March 2011 (*Id.* p. 38).

**RESPONSE:** Defendants ask this Court to disregard this statement as it contains

improper argument in violation of Local Rule 56.1(b)(3)(C). *See Boyd*, 225 F. Supp. at 716

("The nonmovant's statement of additional facts must represent only material facts and are

not the proper province of argumentative or conclusory allegations"). Further, Evan's

testimony that Fitzgerald "definitely" knew of Plaintiff's support for Baker lacks foundation

as Evans is not competent to testify as to what Fitzgerald knew. *See Smith v. AllState*

*Insurance Corporation,* 2001 WL 1104713 * 7 (N.D. Ill. 2001) (Court will not consider

evidence regarding facts clearly not within the a witness' personal knowledge).

Defendants deny that Fitzgerald ever met plaintiff before he was assigned to

investigate Woolfolk and Wolfe's complaint regarding the March 8, 2011 shooting incident

or knew that he supported Baker. *See* Fitzgerald Dep., attached as Ex. 58, at 40:14-16; OPR

Defendants' Answer and Affirmative Defenses to Plaintiff's Fourth Amended Complaint,

Dkt. 319, at ¶¶ 28-30. Undisputed that Fitzgerald was a member of the Teamsters Union

before he accepted a position with OPR, but this fact is immaterial and does not support the

49

denial of Defendants' summary judgment motions, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (**Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).**

*David Barber's Investigation*

40. David Barber was a Sheriff's Department Police Officer (Barber's Third Amended Complaint, ¶ 10, Case No. 13 cv 7662 (Ex. 50). In 2011, OPR's Executive Director, Edward Dyner, assigned OPR Investigator Hemphill to investigate Barber. Dyner told Hemphill that "they" wanted Barber "terminated." (Hemphill 7/27/18 Dep., pp. 9-11, Ex. 32). Dyner headed the same OPR unit that was in charge of investigating Taylor (*Id.*, p. 10). Dyner assigned Ernst to the Taylor case (Ex. 21).

**RESPONSE: Defendants ask this Court to strike this statement as any evidence relating to Defendants' acts outside of the three relevant OPR investigations is barred under Federal Rule of Evidence 404(b). Judge Wood discussed this exact issue, finding that "complaints against others and the merits of others' EEOC complaints are not particularly relevant to this case" and "[a]nother act that's trying to establish that the defendants acted similarly against your client . . . . [a]nd there are only very narrow ways that you could do that and why it wouldn't be unduly prejudicial." *See* June 25, 2018 Court Transcript, attached as Ex. 75, at 23:18-21; 24:14-17. This is exactly what Plaintiff is trying to do—trying to establish that Defendants acted similarly against Plaintiff. Therefore, information related to the OPR investigation of David Barber is excludable under Federal Rule of Evidence 404(b). Plaintiff's statement is misleading and mischaracterizes the evidence given Mr. Dyner denied the conversation occurred and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions**

of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims as events surrounding the termination of David Barber have nothing to do with this case and cannot and does not show there was political or race discrimination in *this* case. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.). This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. Furthermore, Mr. Hemphill's testimony about an alleged conversation he had with Mr. Dyner about an alleged conversation between Mr. Dyner and Sheriff Dart is inadmissible hearsay.

Defendants dispute that Mr. Dyner told Mr. Hemphill "that 'they' wanted Barber 'terminated.'" Mr. Dyner testified that he never told Mr. Hemphill that Sheriff Dart or anyone wanted David Barber terminated before the investigation began and testified that Mr. Hemphill's testimony is untruthful. *See* Dyner's Dep., attached as Ex. 76, at 69:7-70:21. Mr. Dyner also testified that he never indicated to Mr. Hemphill that he wanted the charges against David Barber sustained. *Id.* Defendants dispute that Mr. Dyner assigned OPR Investigator Hemphill to investigate David Barber. Mr. Dyner testified that he did not recall whether he assigned Mr. Hemphill to the investigation. *Id.* at 67:23-68:21. Defendants dispute that Mr. Dyner was OPR's Executive Director. Mr. Dyner was the Unit Director of OPR while Director Ways was the Executive Director. (EDSOF ¶¶ 4, 6).

41. When asked who wanted Barber fired, Hemphill answered: "[Dyner] alleged that he had had a telephone conversation with the sheriff, the undersheriff, and the chief of staff, who was Brian Towne at the time." (Hemphill 7/27/18 Dep., pp. 11-12, Ex. 32). The statement that the Sheriff wanted Barber fired occurred before the investigation even started (*Id.* p. 29). Hemphill felt pressured that he had to come up with the recommendation that Barber be terminated and

feared for his job if he did not reach that conclusion. (*Id*. p. 14). When asked why the Sheriff, the Chief of Staff and Dyner wanted Barber terminated, Hemphill answered:

> I'm not armed with any facts to that, however, I had a conversation with Edward Dyner afterwards, after probing him that, 'Hey, this doesn't make sense—it doesn't make sense. What's going—is there something else going on here?' And he made a reference or implied that David Barber had some type of racial discrimination complaint pending.

(Hemphill 7/27/18 Dep., p. 35, Ex. 32). Barber was a Sylvester Baker supporter (David Barber Declaration, ¶¶ 3-5, Ex. 51). "Investigator Hemphill's testimony is particularly relevant given that Barber was a Sylvester Baker supporter, the same as Percy Taylor." (Robert Johnson's Rule 26(a)(2) Expert Report, p. 7, Ex. 11). It is improper and unethical for someone of a higher rank to suggest a likely outcome or suggest likely discipline for a subject of the conclusion of the investigation (*Id*., p. 8). Johnson opines that there is evidence that Sheriff Dart was personally involved in Taylor's OPR investigation and sets forth the basis for the opinion (*Id*., pp. 8-9). Documents produced show that Sheriff Dart involved himself in OPR investigations and disciplinary cases (*Id*., p. 9).

**RESPONSE:** Defendants ask this Court to strike the statement regarding "evidence that Sheriff Dart was personally involved in Taylor's OPR investigation" as Plaintiff's expert relies on the declaration of John Maher to make the statement, which is barred pursuant to Judge Gilbert's September 16, 2019 order. *See* 9-16-19 Order, Docket Number 454, at 9-10. Defendants refer this Court to its objections to paragraph twenty-seven (#27) for further explanation. Defendants also ask this Court to strike the statements related to David Barber since they are barred under Federal Rule of Evidence 404(b). Judge Wood discussed this exact issue, finding that complaints against others and the merits of others' EEOC complaints are not particularly relevant to this case" and "[a]nother act that's trying to establish that the defendants acted similarly against your client . . . . [a]nd there are only very narrow ways that you could do that and why it wouldn't be unduly prejudicial." *See* June 25, 2018 Court Transcript, attached as Ex. 75, at 23:18-21; 24:14-17. This is exactly what Plaintiff is trying to do—trying to establish that Defendants acted similarly against Plaintiff. Therefore, information related to the OPR investigation of David Barber is

excludable under Federal Rule of Evidence 404(b). This paragraph also contains improper argument when claiming certain testimony is relevant or that Sheriff Dart was personally involved in violation of N.D. Ill. Local Rule 56.1(b)(3)(C). *See Boyd v. City of Chicago*, 225 F. Supp. at 716 ("The nonmovant's statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations"); *1 Tel-Lock, Inc. v. Thomson Consumer Electronics,* 2005 WL 741930, (N.D. Ill 2005) (Failure to comply with Local Rule 56.1 by stating legal conclusions rather than material facts.). Plaintiff's statement is misleading and mischaracterizes the evidence given Mr. Dyner denies such a telephone conversation occurred and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp*., 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims as events surrounding the termination of David Barber have nothing to do with this case and cannot and does not show there was political or racial discrimination in *this* case. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.). This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. Furthermore, Mr. Hemphill's testimony about an alleged conversation he had with Mr. Dyner about an alleged conversation between Mr. Dyner and Sheriff Dart is inadmissible hearsay.

Defendants dispute that a telephone call ever occurred between Sheriff Dart,

Undersheriff Whittler, Brian Towne and Edward Dyner and dispute that Sheriff Dart ever told anyone that he wanted David Barber fired before the investigation even started. Mr. Dyner testified that he never told Mr. Hemphill that Sheriff Dart wanted David Barber terminated and testified that Mr. Hemphill's testimony is untruthful and that he never indicated to Mr. Hemphill that he wanted the charges against David Barber sustained. *See* Dyner's Dep., attached as Ex. 76, at 69:7-70:21. Mr. Dyner testified that he is not aware of an instance in which Sheriff Dart was involved in an internal investigation, that he never spoke directly with Sheriff Dart regarding an specific OPR case and that Sheriff Dart never made any statements regarding any discipline to impose in an internal investigation. *Id*. at 52:22-53:3; 129:22-131:11. Defendants dispute that these statements are relevant to any of Plaintiff's claims as events surrounding the termination of David Barber have nothing to do with this case and cannot and does not show there was political discrimination in *this* case. Defendants dispute that there is evidence that Sheriff Dart was personally involved in Taylor's OPR investigation and dispute that documents were produced showing that Sheriff Dart involved himself in OPR investigations and disciplinary cases. Sheriff Dart was not involved in or responsible for any decisions as to the three investigations or resulting decisions regarding Plaintiff's employment and has no personal knowledge as to any decisions. (EDSOF ¶ 59). Mr. Johnson's reliance on Mr. Maher's barred affidavit and Mr. Hemphill's testimony about an unrelated case (David Barber) does not show otherwise. Mr. Maher's affidavit does not provide any evidentiary basis to believe that Sheriff Dart has personal knowledge of facts relevant to a claim or defense in this case—Defendants refer this court to their arguments in Sheriff's Office and Executive Defendants' Reply in Support of MSJ.

*The MB Hearing, Discharge and Court Decisions Holding the MB Hearing was Void*

42. On February 27, 2013, the MB held a hearing on Dart's complaint, Docket 1620 (MB Transcript, Ex. 19). On October 30, 2013, the MB found in favor of Dart and Percy was discharged (Ex. 52) Percy filed a complaint for administrative review in the Circuit Court of Cook County, No. 13 CH 26319 (Ex. 53). On August 19, 2014, Circuit Court Judge Neil H. Cohen granted Percy's Motion for Reconsideration of the Circuit Court's May 7, 2014 order (which had affirmed the Merit Board's October 30, 2013 decision (Ex. 54). The order states: "The Merit Board's decision of October 30, 2013 is vacated (*Id.*, p. 4). On November 25, 2014, Judge Cohen entered an order withdrawing his Memorandum and Order entered on May 7, 2014 stating: "The May 7, 2014 Memorandum and Order is of no effect." (Judge Cohen's 11/25/14 Order, Ex. 55). Judge Cohen held that the MB hearing and ruling was void (Ex. 54). Dart appealed the decision to the Illinois First District Appellate Court, which was upheld (*Taylor v. Dart,* 2016 IL App (1st) 143684). The Illinois Supreme Court denied Dart's petition for leave to appeal but remanded the case with instructions to the Appellate Court to determine if the Home Rule statute allowed Dart to change the manner of appointing members of the MB (*Taylor v. Dart*, 2017 IL App (1st) 143684-B).

**RESPONSE: This statement is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).**

**Undisputed.**

43. The Appellate Court issued a second opinion, affirming Judge Cohen's decision and answering the Supreme Court's question by stating that the Home Rule law does not allow Dart to change the manner in which MB members are appointed (*Taylor*, 2017 IL App (1st) 143684-B, ¶¶ 55-56). On September 27, 2017, the Illinois Supreme Court denied Dart's petition for leave to appeal from this second appellate court decision (89 N.E.3d 764 (Table)). Dart's case was remanded to the MB for hearing (*Taylor*, 2017 IL App (1st) 143684-B). On October 23, 2019, Judge Cohen stayed Dart's MB case pending the disposition of the appeal in *Goral v. Dart*, 132 N.E.3d 368 (Table) (Ill. 2019). (Ex. 56).

**RESPONSE: This statement is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).**

**Undisputed.**

*Retaliation by Refusing to Provide Percy with Backpay and to Return him to the Payroll*

44. There is no basis for the Sheriff's Office not to have returned Percy to the payroll and provide him with backpay (Plaintiff's Motion for Partial Summary Judgment filed 4/19/19, Docs. 418, 419, 419-1-419-16, 443-1). Percy was working for the Sheriff's Office and receiving full pay and benefits immediately prior to the October 30, 2013 Merit Board decision that was declared *void* by the Illinois Appellate Court (Doc. 419, ¶ 24; *Taylor v. Dart*, 2017 IL App (1st) 143684-B, ¶¶ 55-56). Percy has not received any pay or benefits from the Sheriff's Office since the October 30, 2013 Merit Board decision (Doc. 419, ¶ 25). Taylor's right to backpay and to be returned to the payroll is not contingent on Percy prevailing on any of his underlying causes of action, either here, in State Court or before the Merit Board (Docs. 418, 419, 419-1-419-16, 443-1).

**RESPONSE: Defendants ask this Court to disregard this statement as it contains improper argument in violation of N.D. Ill. Local Rule 56.1(b)(3)(C).** ***See Boyd v. City of Chicago*, 225 F. Supp. at 716 ("The nonmovant's statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations");** ***1 Tel-Lock, Inc. v. Thomson Consumer Electronics*, 2005 WL 741930, (N.D. Ill 2005) (Failure to comply with Local Rule 56.1 by stating legal conclusions rather than material facts.). Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C).** ***See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.");** ***Brown v. Advocate South Suburban Hosp*., 2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants.** ***Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).**

Defendants dispute that there was no basis for the Sheriff's Office not to have returned Percy to the payroll and provide him with backpay and dispute that "Taylor's right to backpay and to be returned to the payroll is not contingent on Percy prevailing on any of his underlying causes of action, either here, in State Court or before the Merit Board." Defendants refer this Court to their arguments contained in their response to Plaintiff's partial motion for summary judgment. *See* Defendants' Response to Partial MSJ, Docket Number 430. Based on the Circuit Court and Merit Board rulings denying Plaintiff's requests for back pay and reinstatement, Sheriff's Office's attorneys did not pay Plaintiff back pay or reinstate him. (EDSOF ¶ 56). Legal made the decision because Plaintiff's ordered remedy was a remanded hearing. (EDSOF ¶ 56). The Circuit Court, the Appellate Court, and the Merit Board were very clear in the remedy to Plaintiff: that Plaintiff's case be remanded for a new Merit Board decision, including the decision of whether Plaintiff is entitled to any back pay or reinstatement. (EDSOF ¶¶ 52-56). The Circuit Court and Merit Board repetitively denied Plaintiff's motions for relief to reinstatement and award of back pay and denied Plaintiff's motion to reconsider his remand order. (EDSOF ¶¶ 52-56). It was not until August 15, 2019 that Judge Cohen in the Circuit Court of Illinois reconsidered his prior decisions denying back pay based on *Goral v. Dart*, 2019 IL App (1st) 181646, decided by the Appellate Court of Illinois on June 19, 2019. (EDSOF ¶ 57). However, Judge Cohen's decision is stayed based on the pending appeal of *Goral.* (EDSOF ¶ 57).

45. On August 15, 2019, Judge Neil Cohen granted Percy's amended renewed motion for reconsideration that it lacks jurisdiction on the issue of backpay and other relief in *Taylor v. Dart*, Circuit Court Cook County Case No. 13 CH 26319 (8/15/19 Memorandum and Order, Doc. # 443-1). The court ruled: "Therefore, regardless of whether Taylor ultimately prevails on the charges asserted against him by the Sheriff, he is entitled to compensation for the period he was unlawfully terminated and continues to be unlawfully terminated." (*Id.*, p. 3). The court ruled that under *Goral v. Dart*, 2019 IL App(1st) 181646, the Circuit Court has jurisdiction to consider Taylor's backpay claim finding that the issue was not a question of fact for the Merit Board, but a question of law

for the court (*Id*). Judge Cohen found: "The only issue is the amount of pay and benefits would have been paid to Taylor if he had remained on the Sheriff's payroll at the same rate of pay and benefits he was receiving on the date of illegal termination." (*Id*., p. 4). The court further ruled that the failure to mitigate is not available to the Sheriff as a defense (*Id*., p. 3). At the August 22, 2019 hearing on the issue of reinstatement to the payroll, Judge Cohen commented: "I do have an opinion on that … And I think one follows the other, to be quite honest. But let's wait and see. Tee it up with a specific motion, narrowly tailored on that one issue, and we'll play with that, too." (8/22/19 Transcript, Ex. 57).

**RESPONSE:** This statement is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).

**Undisputed. Judge Cohen's August 15, 2019 order is currently stayed based on the pending appeal of *Goral*. (EDSOF ¶ 57).**

46. On August 29, 2019, Percy filed a renewed motion in the Circuit Court for an order requiring the Sheriff to return him to the payroll forthwith (Ex. 58). On September 16, 2019, Percy filed a motion for leave to issue discovery for calculations on the amount of backpay and benefits (Ex. 59). These motions are pending before the Circuit Court. On September 25, 2019, the Illinois Supreme Court granted the Sheriff's petition for leave to appeal in *Goral v. Dart*, 132 N.E.3d 368 (Table) (Ill. 2019). On October 11, 2019, Judge Cohen, *sua sponte*, stayed all pending motions pending the appeal in *Goral v. Dart* (Ex. 60).

**RESPONSE:** This statement is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).

**Undisputed.**

47. According to the Sheriff's Office's own calculations, Percy's backpay as of January 19, 2019 (not including benefits and other amounts that he is entitled to) totaled $456,120.37 (Sheriff's Office Calculations, Ex. 61). The Sheriff's Office's refusal to allow Percy to work and provide backpay has caused Percy and his family extreme hardship (Percy Affidavit filed in State Court Case, ¶ 4, Ex. 62). Percy was forced to cash out his pension, his home is in foreclosure and he was required to file for bankruptcy (*Id*. ¶¶ 6-11).

**RESPONSE:** This statement is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).

Defendants dispute that the Sheriff's Office' actions caused any damages to Plaintiff—it was Plaintiff's misconduct that resulted in his termination. Defendants do not dispute that the Sheriff's Office' calculations totaled $456,120.37 but dispute he is entitled to any backpay.

*Rule 26(a)(2) Expert Report of Police Expert Lt. Col. Robert Johnson (Ret.)*

48. Attached as Exhibit 11, is Lieutenant Colonel Robert Johnson's (Ret.) Rule 26(a)(2) Expert Report with a copy of his Curriculum Vitae. Mr. Johnson is a retired Lt. Colonel with the Illinois State Police with over 45 years of law enforcement experience. *Id.* Mr. Johnson offers a number of opinions including: (1) OPR failed to conduct its investigation and recommend discipline in accord with nationally accepted law enforcement standards, practices and training; (2) the investigation was conducted in a manner that failed to document and/or find key exculpatory evidence not in accord with nationally accepted law enforcement practices and standards; (3) OPR supervisory personnel responsible for ensuring a thorough, complete, objective and impartial investigation failed to comply with accepted law enforcement practices, standards, training and the Sheriff's Office—OPR's Standard Operation Procedures ("SOP"); (4) the scheduling of Percy's *Loudermill* Board Hearing before the investigation had been completed, documented and approved was contrary to accepted law enforcement practices and standards; (5) the Command Channel Review process was flawed and it failed to result in an unbiased, fair and competent independent review of OPR's investigation; and, (6) Taylor's recommended discipline for the alleged offenses was extraordinarily severe in comparison to other sustained disciplinary violations for other Sheriff Office personnel (Exhibit 11).

**RESPONSE:** Defendants ask this Court to disregard this statement as it contains improper argument in violation of N.D. Ill. Local Rule 56.1(b)(3)(C). *See Boyd v. City of Chicago*, 225 F. Supp. at 716 ("The nonmovant's statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations"); *1 Tel-Lock, Inc. v. Thomson Consumer Electronics*, 2005 WL 741930, (N.D. Ill 2005) (Failure to comply with Local Rule 56.1 by stating legal conclusions rather than

material facts.). Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.). Lastly, Mr. Johnson's opinions should be barred under Fed. R. Civ. P. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* as he did not use a reliable reasoning or methodology and he is not offering testimony that will assist the trier of fact in understanding the evidence or determining a factual issue.

Defendants do not dispute that Exhibit 11 is Mr. Johnson's Curriculum Vitae and do not dispute that he is "a retired Lt. Colonel with the Illinois State Police with over 45 years of law enforcement experience." Defendants do not dispute that Mr. Johnson made these opinions in his report but deny the veracity of all opinions. *See* Dirden's Report, attached as Ex. 66. OPR's investigation of the incident was consistent with national practices. *Id.* at 10. There was considerable evidence to support the sustained finding and probable cause to arrest Plaintiff including documented damage to the vehicle consistent with pellet shots and a positive identification. *Id.* at 15. Director Ways considered the evidence and believed there was sufficient evidence to sustain the allegation that plaintiff fired a weapon at Harold Woolfolk damaging a vehicle owned by Mary Wolfe. *Id.* at 16. The OPR adjudication

process, used in the investigation of Plaintiff, was consistent with national standards and was subject to substantial checks and balances of a Merit Board. *Id.* Defendants refer this Court to its response to paragraph twenty seven (#27), disputing that "*Loudermill* Hearings are conducted after an OPR investigation is completed." The evidence supports that the timing of the *Loudermill* was appropriate given the public safety concern and was not injurious to plaintiff—Plaintiff's own expert Mr. Johnson agreed. *Id.* at 19. Defendants refer this Court to their response to paragraph seventy-five (#75), which discusses Mr. Johnson's unreliable opinion and explains that Plaintiff's discipline was not "extraordinarily severe." Plaintiff's own expert agrees that the discharge of a weapon unprovoked at a citizen justifies termination. *See* Johnson's Dep., attached as Ex.70, at 198:20-24. Defendants also refer this Court to their arguments in their motions for summary judgment and their corresponding reply.

49. Robert Johnson opines:

> If the testimony of Investigators Avet and/or Hemphill and/or that of Crystal Taylor is accurate, it certainly demonstrates racial, retaliatory, and political bias regarding members of the Sheriff's OPR unit and the Sheriff and/or his office. Such overt and extreme bias as depicted in Avet's, Hemphill's and Crystal Taylor's testimony, if accurate, demonstrates that OPR investigators involved displayed a racial bias, a bias towards Percy Taylor, political bias and a lack of professionalism. Such actions are contrary to accepted law enforcement practices, standards and training.

(Johnson Report, pp. 9-10, Ex. 11).

**RESPONSE:** Defendants ask this Court to disregard this statement as it contains improper argument in violation of N.D. Ill. Local Rule 56.1(b)(3)(C). *See Boyd v. City of Chicago*, 225 F. Supp. at 716 ("The nonmovant's statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations"); *1 Tel-Lock, Inc. v. Thomson Consumer Electronics,* 2005 WL 741930, (N.D. Ill

2005) (Failure to comply with Local Rule 56.1 by stating legal conclusions rather than material facts.). Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.). Lastly, Mr. Johnson's opinions should be barred under Fed. R. Civ. P. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* as he did not use a reliable reasoning or methodology and he is not offering testimony that will assist the trier of fact in understanding the evidence or determining a factual issue.

Defendants do not dispute that Mr. Johnson made these opinions in his report but dispute the veracity of the opinions. *See* Dirden's Report, attached as Ex. 66. Defendants dispute that Investigators Ernst and Fitzgerald made any discriminatory remarks. (Def's Res. to Plf's Resp. to OPR SOF ¶¶ 1-3). As argued in motion for summary judgment and reply, the bias of the investigators is insufficient to defeat summary judgment.

50. "Another very troubling area of concern regarding OPR's conducting complete investigations in a fair, unbiased, thorough, timely and professional manner is the testimony of OPR's Executive Director." (Johnson Report, p. 10, Ex. 11). Johnson found Joseph Ways' answers to simple questions "incredible." (*Id.*). Johnson notes that Ways answered **"I don't know"** to such questions as:

> *Q. We were talking about police shootings, and before charging a police officer*
> *with an illegal police shooting, and illegal use of - - of a weapon, would it be*

62

*important to determine, as far as an investigation, that the police officer actually discharged a weapon in the manner that - - in which he's being accused of doing? A. I don't know.* (Ways Dep., p. 62).

*Q. If during the course of investigating the charges against Mr. Taylor, Mr. Ernst called - -referred to Mr. Taylor as a porch monkey and referred to Mr. Taylor as a nigger, would you have removed that investigator from that case? A. I don't know.* (Ways Dep., p. 90).

*Q. If during the course of the investigation [of] Mr. Taylor, Mr. Fitzgerald referred to Mr. Taylor as a nigger, would you remove that investigator from investigating that case?" A. I don't know.* (Ways Dep., p. 90).

*Q. Do you agree that the investigation of the March 8, 2011 incident involving Mr. Taylor contained weaknesses of the evidence? A. I don't know.* (Ways Dep., p. 110).

*Q. If the investigation contained weaknesses of the evidence and it came to you for review, what would you have done? A. I don't know.* (Ways Dep., p. 110).

*Q. Would you have approved such an investigation containing weaknesses as one with which the department should proceed with termination of the employee charged? A. I don't know.* (Ways Dep., p. 110).

*Q. Do you disagree with any aspect of how the March 8, 2011 Taylor investigation was conducted? A. I don't know.* (Ways Dep., p. 135).

*Q. Do you have any criticism of any of the conclusions of the March 8, 2011 Taylor investigation? A. I don't know.* (Ways Dep., p. 135).

*Q. Did you find anything about the March 8, 2011 Taylor investigation to be improper? A. I don't know.* (Ways Dep.., p. 138).

(Johnson Report, pp., 10-11, Ex. 11).

**RESPONSE:** **Defendants ask this Court to disregard this statement as it contains improper argument in violation of N.D. Ill. Local Rule 56.1(b)(3)(C).** ***See Boyd v. City of Chicago*, 225 F. Supp. at 716 ("The nonmovant's statement of additional facts must represent**

only material facts and are not the proper province of argumentative or conclusory allegations"); *1 Tel-Lock, Inc. v. Thomson Consumer Electronics,* 2005 WL 741930, (N.D. Ill 2005) (Failure to comply with Local Rule 56.1 by stating legal conclusions rather than material facts.). Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp*., 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.). Lastly, Mr. Johnson's opinions should be barred under Fed. R. Civ. P. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* as he did not use a reliable reasoning or methodology and he is not offering testimony that will assist the trier of fact in understanding the evidence or determining a factual issue.

Defendants do not dispute that Director Ways testified as noted above, but deny that such testimony is "troubling." Mr. Johnson testified that his sole basis for stating that this is troubling is because he answered "I don't know" to the questions. *See* Johnson's Dep., attached as Ex. 70 at 157:11-21; 158:16-129:2. Mr. Johnson testified that "I don't say that it negatively impacted on this particular investigation.·" *Id.* Mr. Johnson agrees that these are hypothetical questions lacking all the facts. *Id.* at 164:4-165:19. And, that this deposition took place years after the investigation. *Id.* at 168:6-8.

51. OPR's investigation failed to meet accepted law enforcement standards and practices (Johnson Report, p. 13, Ex. 11). The investigation was not thorough, objective and impartial (*Id.*, p. 14). Had the investigators confirmed as much as possible, where and how the vehicle was parked, they "should have logically determined that the damage to the front windshield and headlights did not occur as Woolfolk told them." (*Id.*, p. 15). The investigation is "rife" with deficiencies and omissions including follow-up with initial responding department and officers; crime scene protection and processing; confirming where and how the vehicle was parked; canvassing; not investigating the likelihood of being able to identify a subject from the 3rd floor window from the position where Woolfolk claimed to have identified Percy; not conducting a search of Percy's residence at the time he consented for the search; negative results upon execution of search warrant coupled with lack of evidence to link Percy to the alleged shooting; failure to document all steps or information received/developed during the investigation; deficiencies in the interviews of Wolfe and Woolfolk; and no documentation of any inquiry regarding Woolfolk's background (*Id.*, pp. 14-19). A rudimentary and basic step in an investigation is to canvass the neighborhood (*Id.*, p. 15). Canvassing is an important component of any competent investigation and that canvassing would be a part of a thorough investigation (OPR Investigator Singletary Dep., pp., 61-62, Ex. 17).

**RESPONSE: Defendants ask this Court to disregard this statement because it presents multiple facts in a single paragraph (in excess of 11 facts) and contains improper argument in violation of N.D. Ill. Loc. R. 56.1(B)(3)(C).** *See Boyd v. City of Chicago*, **225 F. Supp. 3d 708, 716 (N.D. Ill. 2016) ("The nonmovant's response to the movant's statement of facts and statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations").**

**Defendants do not dispute that Plaintiff's expert provided the cited opinions, but deny they these contentions are supported by admissible evidence, given this statement lacks the necessary foundation required by FRE 702. Further, many of these opinions are conclusory and not supported by evidence in the record.** (D. Resp. PSOAF ¶¶ 19, 23-25, 34-36). **Further denying, OPR's investigation was consistent with national standards, and was not deficient for the reasons contended in this statement.** *See* **Dirden Rept., attached as Ex. 66, at 10-14. Undisputed that OPR investigators did not conduct a canvas of the area and that OPR Singletary views canvassing as "important," but these facts are immaterial and to do not**

support the denial of Defendants' summary judgment motions, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).

52. OPR documents produced by the Defendants show that OPR investigators were biased and trying to find anything to terminate and discredit Percy (Group Exhibit 63). OPR sought information about: (1) any public aid/food stamps the Taylors may have received; (2) any parking tickets that Taylor may have received; and (3) Currency Transaction Reports/Suspicious Activity Reports for financial transactions (*Id.*). "Such inquiries were outside the scope of the original complaint and suggest that and the investigators were overzealous and were reaching to find anything to bring charges against Taylor." (Johnson Report, p. 22, Ex. 11).

**RESPONSE:** Defendants ask this Court to disregard this statement because it contains improper argument in violation of N.D. Ill. Loc. R. 56.1(B)(3)(C). *See Boyd v. City of Chicago*, 225 F. Supp. 3d 708, 716 (N.D. Ill. 2016) ("The nonmovant's response to the movant's statement of facts and statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations").

Defendants deny that the record cited supports the contention that any of the individual Defendants made the requests for information in this statement. Further, deny that Plaintiff's expert opinion that this suggests the investigators were "overzealous" is not supported by admissible evidence, given it lacks the foundational requirement of FRE 702 and amounts to a credibility determination of their state of mind. *Sanders,* 13 C 0221, 2016 WL 1730608, at *6 ("It is well-settled that determining the weight and credibility of witness testimony is the exclusive province of the jury and that experts are not permitted to offer opinions as to the believability or truthfulness of witness testimony"). Undisputed that non-Defendant *Thomas Kinsella* made the requests for information cited in this statement, but these facts are not material and do not support the denial of Defendants' motion for

66

summary judgment, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).

53. The OPR Summary Report does not make mention of exculpatory evidence such as no weapon found; no projectiles found, or that Mary Wolfe told officers that there may have been animosity Woolfolk had towards Percy Taylor based on Taylor reporting Woolfolk to the police for stealing cable service. (Johnson Report, p. 22, Ex. 11). The OPR file is over 300 pages with a 7-page summary report (*Id*.). Summary Reports are provided to give the reader a synopsis of the investigation (*Id*.). "While the intended audience may be provided the entire investigation, busy administrators may only read the Summary Report and make their decisions based on the Summary Report. The Summary Report needs to give a balanced account." (*Id*.). The OPR investigation did not follow all logical leads to gather and document all related information, including exculpatory information (*Id*., p. 22). The investigation "should have been returned as not sustained or at a minimum with instructions on the deficiencies to be corrected/followed up (*Id*). It is also troubling that no follow-up was conducted even after these deficiencies were reported in Chief Holbrook's memorandum to Undersheriff Whittler." (*Id*.). OPR's Standard Operation Procedures provide that final approval for the summary report is obtained by the Executive Director and no summary reports will be sent to Command Channel Review prior to obtaining Ways' final approval and signature (Johnson Report, pp. 22-23, Ex. 11). "Ways signed off on the findings and [Ways] recommended Taylor's termination in spite of a seriously flawed investigation that [he] had an obligation and responsibility to ensure was fair, unbiased, thorough and complete." (Johnson Report, p. 24, Ex. 11).

**RESPONSE:** Defendants ask this Court to disregard this statement as it contains improper argument in violation of N.D. Ill. Local Rule 56.1(b)(3)(C).  *See Boyd v. City of Chicago*, 225 F. Supp. at 716 ("The nonmovant's statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations"); *1 Tel-Lock, Inc. v. Thomson Consumer Electronics,* 2005 WL 741930, (N.D. Ill 2005) (Failure to comply with Local Rule 56.1 by stating legal conclusions rather than material facts.). Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party

to misstate the cited record."); *Brown v. Advocate South Suburban Hosp*., **2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants.** *Cady v. Sheahan*, **467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.). Lastly, Mr. Johnson's opinions should be barred under Fed. R. Civ. P. 702 and** *Daubert v. Merrell Dow Pharmaceuticals, Inc.* **as he did not use a reliable reasoning or methodology and he is not offering testimony that will assist the trier of fact in understanding the evidence or determining a factual issue.**

**Defendants dispute that the OPR Summary Report does not mention "exculpatory evidence"—no evidence exists that exonerates Plaintiff. The facts that no weapon found (EDSOF, Ex. E, Report of Investigation, at CCSO 1275-176; 1341-1350); that no projectiles were found (EDSOF, Ex. E, Report of Investigation, at CCSO 1275-176; 1341-1350), and that Mary Wolfe told officers that there may have been animosity between Plaintiff and Mr. Woolfolk are located in the OPR file (EDSOF, Ex. E, Report of Investigation, at CCSO 1269; 1337-1339). Ways testified that he knew no weapon or ammunition as found.** *See* **Ways' 10-23-18 Dep. attached as Ex. 77, at 140:7-9. Defendants do not dispute that the OPR file is over three hundred (300) pages long and the summary report is seven (7) pages long. (EDSOF ¶ 11). Defendants do not dispute that summary reports are provided to give the reader a synopsis of the investigation. Defendants dispute that Director Ways or Undersheriff Whittler based their decision only on the Summary Report. Both testified that they reviewed more than just the summary report and received the entire file.** *See* **Whittler Dep., attached**

68

as Ex. 73, at 52:14-53:3; 76:22-77:4; Ways 10-23-18 Dep., attached as Ex. 77, at 6:3-6. Defendants dispute that Summary Report was not balanced. The Summary Report includes a lengthy paragraph on Plaintiff's side of the story including that he was at Jewel Osco at the time of the incident, he denied any involvement, he denied owning a pellet gun and he reported DUI arrest and conviction to a supervisor. *See* Summary Report of Investigation File for Shooting Incident, attached as Ex. 68.  It includes an equally lengthy paragraph summarizing Plaintiff's wife's statement to investigators. *See* Summary Report of Investigation File for Shooting Incident, attached as Ex. 68. Defendants also dispute that "all logical leads were not followed;" dispute that "[t]he investigation "should have been returned as not sustained or at a minimum with instructions on the deficiencies to be corrected/followed up;" dispute that "[i]t is also troubling that no follow-up was conducted even after these deficiencies were reported in Chief Holbrook's memorandum to Undersheriff Whittler;" and dispute that "Ways signed off on the findings and [Ways] recommended Taylor's termination in spite of a seriously flawed investigation that [he] had an obligation and responsibility to ensure was fair, unbiased, thorough and complete." *See* Dirden's Report, attached as Ex. 66. The evidence of misconduct supports the sustained findings, as argued in Executive Defendants and Sheriff's Office's motion for summary judgment. Upon a review of the entire OPR investigation file for correctness, completeness and thoroughness, Director Ways sustained the charges and recommended termination based on evidence of misconduct. (EDSOF ¶ 13). Based on their own independent reviews of the entire investigation file, Chief Holbrook and Undersheriff Whittler concurred with the recommendation. (EDSOF ¶¶ 37, 40).

54. The Command Channel Review should have resulted in the investigation being classified as Unfounded or Not-Sustained or if the members had diligently reviewed the investigation for

deficiencies, sent back to OPR for further investigation (Johnson Report, p. 28, Ex. 11). Johnson details the many deficiencies with the Sheriff's Office's Command Channel Review process generally and specifically in Percy's case (*Id*., pp., 25-29).

**RESPONSE:** Defendants ask this Court to disregard this statement as it contains improper argument in violation of N.D. Ill. Local Rule 56.1(b)(3)(C). *See Boyd v. City of Chicago*, 225 F. Supp. at 716 ("The nonmovant's statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations"); *1 Tel-Lock, Inc. v. Thomson Consumer Electronics,* 2005 WL 741930, (N.D. Ill 2005) (Failure to comply with Local Rule 56.1 by stating legal conclusions rather than material facts.). Plaintiff's statement is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp*., 2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.). Lastly, Mr. Johnson's opinions should be barred under Fed. R. Civ. P. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* as he did not use a reliable reasoning or methodology and he is not offering testimony that will assist the trier of fact in understanding the evidence or determining a factual issue.

Defendants dispute that "[t]he Command Channel Review should have resulted in the investigation being classified as Unfounded or Not-Sustained or if the members had

**diligently reviewed the investigation for deficiencies, sent back to OPR for further investigation."** *See* **Dirden's Report, attached as Ex. 66. The evidence of misconduct supports the sustained findings, as argued in Defendants' motions for summary judgment. Upon a review of the entire OPR investigation file for correctness, completeness and thoroughness, Director Ways sustained the charges and recommended termination based on evidence of misconduct. (EDSOF ¶ 13). Based on their own independent reviews of the entire investigation file, Chief Holbrook and Undersheriff Whittler concurred with the recommendation. (EDSOF ¶¶ 37, 40). Defendants do not dispute Johnson vaguely nitpicks the Command Channel Review process, but disputes the veracity of his claims.** *See* **Dirden's Report, attached as Ex. 66.**

55. As the Unit Director, Edward Dyner's role was to review the investigation report to ensure that the facts supported the investigator's finding (Dyner, Dep., p. 39, Ex. 64). Dyner signed-off on Percy's investigation report and approved the report where OPR sustained the allegations (*Id.*, pp. 39-40). Dyner could not recall what facts supported the allegation that Percy shot a BB-gun (*Id.*, p. 40). He could not identify a single piece of physical evidence to support the conclusion (*Id.*, p. 41).

**RESPONSE: Plaintiff's statement is misleading and mischaracterizes the testimony of Mr. Dyner and should be stricken as improper under Local Rule 56.1(b)(3)(C).** *See De v. City of Chicago*, **912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.");** *Brown v. Advocate South Suburban Hosp.*, **2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants.** *Cady v. Sheahan*, **467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).**

**Defendants dispute that Director Dyner "could not recall what facts supported the allegation that Percy shot a BB-gun" or that he "could not identify a single piece of physical evidence to support the conclusion." He testified that "I remember there was an allegation of damage, but what specifically it was, I don't remember." *See* Dyner's Dep., attached as Ex. 76, at 42:8-12. He also testified that "[g]enerally, we -- I look at the totality of the facts that are presented by the investigator to determine if there is a preponderance of evidence to support what finding that that investigator had." *Id.* at 40:9-14. And, that "there was a Chicago Police report I -- I mean, I reviewed probably the report and all the exhibits, so I would have reviewed the report and all the exhibits, so Chicago Police reports, I think there were a couple of statements made by individuals about what happened, and stuff like that. *Id.* at 40:24-41:6. Defendants do not dispute the rest of the facts contained in paragraph fifty five (#55).**

<u>*Nowacki Daley Center Incident*</u>

56. On September 16, 2011, when Percy was working on the 7th floor of the Daley Center, there was an incident in the lobby of the Daley Center involving Deputy Sheriff David Nowacki (Taylor Dep. 1/22/16, pp., 291-92, Ex. 6). Nowacki and Deputy Sheriff Timothy DeCook were working security in the lobby (DeCook Dep., pp., 34-35, Ex. 65). The metal detector went off when Percy walked through it (Taylor Dep. 1/22/16, pp., 295-96, Ex. 6). Nowacki placed his hand in Percy's right pants pocket and "fondled [his] penis." (*Id.*, p. 296). Percy clutched the outside of his pocket and told Nowacki: "You know you can't put your hands in my pockets (*Id*). After Nowacki took his hand out of Percy's pocket, Percy told Nowacki that he wanted to see a supervisor and that he was going to write him up (*Id.*, pp. 297-98).

**<u>RESPONSE:</u> Deny that Nowacki placed his hand in Plaintiff's pockets and deny that he fondled Plaintiff while working security at the Daley Center. Nowacki touched the outside and top of Plaintiff's pocket and asked Plaintiff what he had in his pocket. That is when Plaintiff grabbed Nowacki's hand and prohibited him from continuing to investigate. Undisputed as to the remaining but these facts are duplicative of Defendant OPR**

Investigators' 56.1 statement ¶ 42-43, and, therefore, do not support the denial of Defendants' motions for summary judgment, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).

57. Nowacki claimed that tips of his fingers touched the lining of Percy's pocket and felt his pants (Nowacki Dep., p. 35, Ex. 66). He stated that Percy "grabbed his hand" with one hand and "kind of twisted my hand away from him…" (*Id*., p. 36). Nowacki testified that he grabbed the top of Percy's pocket (*Id*., p. 61). Nowacki claimed he pulled Taylor's wrist away and called a sergeant (*Id*., p. 46). After the sergeant arrived, Percy went through security without beeping (*Id*., pp. 66-67).

**RESPONSE:** Undisputed, but these facts are immaterial and do not support the denial of Defendants' motions for summary judgment, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).

58. DeCook testified that he observed an interaction between Nowacki and Percy (DeCook Dep., p. 40, Ex. 65). "They were having a discussion, kind of like a subdued argument." (*Id*., p. 41). DeCook was about 10 feet away (*Id*., p. 42). DeCook did not view at any time Percy placing his hand on Nowacki's hand, wrist or arm (*Id*., p. 46), DeCook never saw Percy touch Nowacki and Percy never touched DeCook (*Id*., p. 52). Nowacki never indicated to DeCook that he needed any assistance in dealing with Percy (*Id*., p. 53). Taylor asked Nowacki for a supervisor (*Id*., pp., 53-54). In order to enter through security, Nowacki and DeCook were both needed—one to watch the monitors and the other at the metal detector (*Id*., p. 58). Taylor did not cause Nowacki to stop performing his duties or disrupt DeCook's job of watching the monitors (*Id*., pp., 58-59). Nowacki and DeCook were still able to do whatever was needed for work that day and Percy did not disrupt DeCook's work (*Id*., p. 59).

**RESPONSE:** Defendants object that this statement is misleading and mischaracterizes the record. *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp*., 2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking

portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

Defendants deny Plaintiff's contention that he did not prohibit Nowacki from completing his duties because it is not supported by the record cited. DeCook testified that Plaintiff did not interrupt Nowacki's duties *from the time Plaintiff asked for a supervisor until Sergeant Kapadia arrived*. Undisputed that DeCook testified that he did not witness Plaintiff grab and twist Nowacki's hand but deny the intended inference that DeCook was in a position that he could witness the offense. DeCook testified that his view was blocked by the X-ray machine. *See* DeCook Dep., attached as Ex. 78, at 45:5-23. Undisputed that DeCook observed a subdued argument but deny the intended inference that the entire interaction was a subdued argument. DeCook testified that he observed a subdued argument when he *first noticed Plaintiff trying to go through the metal detector*. (Plf's Ex. 65, DeCook Dep., at 41:9-17). Undisputed as to the remaining, but these facts are immaterial and do not support the denial of Defendants' motions for summary judgment, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).

59. According to DeCook, Percy "wanted to file complaints on us, so Sergeant Kapadia, he was talking to him." (4/12/12 Criminal Trial Transcript, p. 32, Ex. 67). Sergeant Kapadia arrived, walked Percy upstairs and told Percy not to "write paper." (Taylor Dep. 1/22/16, pp. 300-01, Ex. 6). Taylor was upset and wrote a To/From Memo complaining about Nowacki (*Id*., p. 302; 9/16/11 To/From Memo, Ex. 68). DeCook testified that when Percy came back to get his stuff, "he made his little comment, I'll catch you on the street." (DeCook, Dep., p. 63, Ex. 65). DeCook claims to have been about 6 feet away and testified that the little comment was not made in a loud voice. (*Id*., p. 64). DeCook could not recall reporting the alleged comment to Sergeant Kapadia (*Id*., p. 65). DeCook was not afraid of Taylor (*Id*., p. 66). In his report, DeCook makes no mention of an assault or battery and labels the incident as a "Suspicious Person." (DeCook 9/16/11 Report, Ex. 69). Nowacki wrote a report for "suspicious person" but never mentioned battery in the report (4/12/12 Transcript, p. 15, Ex. 67).

**RESPONSE:** Defendants object that this statement is misleading and mischaracterizes the record. *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp*., 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

Defendants deny that DeCook made no mention of an assault or battery in his report. DeCook's report states that while DeCook was in the process of conducing security for the building, Plaintiff stated to him in a low, soft voice, that he would catch DeCook on the street, and further states that DeCook felt threatened and intimidated. (Plf's Ex. 69, DeCook report. Deny that Nowacki's report does not mention a battery. While Nowacki did not use the term "battery" in his report, he described how Plaintiff grabbed his hand while Nowacki was attempting to complete his duties in securing the building. (OPR SOF Ex. 38, Nowacki Report). Undisputed that DeCook testified that he was not afraid of Plaintiff but deny the intended inference that Plaintiff's statement was not a threat. DeCook testified Plaintiff's statement "I will catch you on the street" was a threat, that DeCook perceived it as a threat, that DeCook felt threatened, and that DeCook believed that if he met Plaintiff on the street, he could expect some sort of physical violence from Plaintiff. (Plf's. Ex. 65, DeCook Dep., at 66:19-23; DeCook Dep., attached as Ex. 78, at 153:19-154:5. Undisputed that DeCook testified at the criminal trial that Plaintiff wanted to file complaints, but clarify that this statement is taken out of context. DeCook testified that after Plaintiff was cleared by security, he did not leave the area because he wanted to file complaints. Undisputed that Plaintiff testified Sgt. Kapadia told him not to "write paper," and undisputed as to the

remaining testimony given by DeCook, but these facts are immaterial and do not support the denial of Defendants' summary judgment motions, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).

60. More than a month later, Nowacki and DeCook signed criminal misdemeanor complaints against Taylor with Nowacki alleging "Battery." (Taylor Dep. 1/22/16, p. 306, Ex. 6; Nowacki's misdemeanor complaint dated October 21, 2011, Ex. 70). Nowacki's complaint states that Percy "intentionally caused bodily harm." (Ex.70). Nowacki could not recall any injuries (Nowacki Dep., p. 82, Ex.66). DeCook could not recall Nowacki complaining about any injuries (DeCook Dep., p. 77, Ex. 65). On October 21, 2011, Defendant Fitzgerald and one other OPR investigator met with Nowacki at the Daley Center (Nowacki Dep., pp. 69-70, Ex. 66). They asked Nowacki why he didn't arrest Taylor at the time of the incident (*Id*., pp., 74-75). Nowacki claims he could not remember if he had any intention of filing a complaint against Percy before his meeting with OPR (*Id*., pp., 75-76). One of the two OPR investigators told Nowacki that "you will have to sign a complaint." (*Id*., p., 80). OPR drafted the complaint and one of the OPR investigators handed it to Nowacki to sign (*Id*.).

**RESPONSE:** Defendants object that this statement is misleading and mischaracterizes the record. *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp*., 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

Defendants deny the contention that one of the two OPR investigators told Nowacki that he would have to sign a complaint. While Nowacki provided that testimony in his deposition, Plaintiff's contention improperly ignores the context of the testimony. *Malin v. Hospira, Inc.*, 762 F.3d 552, 564 (7th Cir. 2014) (parties are not permitted to cherry-pick portions of testimony and ignore the testimony they do not like). Nowacki was asked who presented the typewritten complaint to him, and he answered that one of the investigators

said that he would have to sign it, but he did not see who typed it.  P. Ex. 66, Nowacki Dep., p. 69.  Further, Nowacki testified the OPR investigators offered him a choice to pursue the matter administratively, and that *Nowacki* chose to pursue criminal charges and told OPR to "do [their] job and go arrest him."  (OPR SOF Ex. 36: Nowacki Dep., at 74:1-75:13, 76:7-23; OPR SOF Ex. 2, Fitzgerald Dep., at 61:17-62:4).  Undisputed that the criminal complaint states "bodily harm," but more specifically states that Plaintiff grabbed Nowacki's hand and twisted it, preventing Nowacki from performing his official duties.  (Plf's Ex. 70, Nowacki Complaint).  Further, ASA Burnett subsequently amended the subsection charged.  (OPR SOF Ex. 43, Amended Criminal Complaint; OPR SOF Ex. 34, Burnett Dep., at  107:2-23).  Undisputed as to the remaining, but these facts are not material and do not support denial of Defendants' motions for summary judgment, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).

61. Percy was arrested on October 21, 2011 at the Daley Center (Taylor Dep. 1/22/16, p. 307-08, Ex. 6). Defendants Ernst, Fitzgerald and OPR investigator Hemphill arrested Taylor and took him from the Daley Center to Maywood where he was processed (*Id*., pp. 307-09; Ernst, Dep., p. 195, Ex. 7). Percy asked Fitzgerald: "This is political, isn't it?" (Taylor Dep. 1/22/16, pp. 308-09, Ex. 6). Fitzgerald did not respond (*Id*., p. 309). DeCook signed a criminal misdemeanor complaint against Taylor (DeCook Dep., p. 82, Ex. 65; DeCook Complaint, Ex. 71). The handwritten complaint is for "aggravated assault" stating that Taylor threatened him by whispering "I'll catch you on the street." (DeCook Complaint, Ex. 71). The complaint is not dated (*Id*.). DeCook thinks he signed it on February 26, 2012 when the complaint was brought to him in court by a States' attorney (DeCook Dep., pp., 83, 103, Ex. 65). At the criminal trial, DeCook said he "took it as kind of like a threat." (4/12/12 Transcript, p. 34, Ex. 67).

**RESPONSE: Defendants object that this statement is misleading and mischaracterizes the record.  *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.");**

*Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

Defendants do not dispute that DeCook signed a criminal complaint, but deny the intended inference of this statement that Defendant OPR investigators were involved in DeCook initiating criminal charges against Plaintiff. On January 6, 2012, ASA Katie Seiffert filed the criminal complaint against Plaintiff for aggravated assault of DeCook. *See* OPR SOF Ex. 34, Burnett Dep., at 94:2-5; 107:2-13; 121:5-123:6; State's Amended Answer to Discovery referencing "Proposed Amended Complaint" prepared by ASA Seiffert, attached as Ex. 79. Undisputed as to the remaining, but these facts are not material and do not support denial of Defendants' motions for summary judgment, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).

62. DeCook's criminal complaint against Percy is riddled with inaccuracies and errors (DeCook Complaint, Ex. 71; DeCook Dep., pp., 99-103, Ex. 65). October 21, 2011 is listed as the date of the September 16, 2011 incident (*Id*). "Nowacki," as the complainant's name is crossed-out and replaced with DeCook (*Id*.). When asked why October 21, 2011 is written, DeCook answered: "They got everything else wrong on here." (*Id*., p. 102). Two OPR investigators came to the Daley Center and interviewed DeCook (*Id*., pp., 84, 90). DeCook did not sign a complaint against Taylor until after OPR showed up and told him that Taylor had filed complaints against him and Nowacki (4/12/12 Criminal Court Transcript, pp., 35-36, Ex. 67). DeCook's handwriting does not appear on the document, only his signature, and DeCook has no idea who's handwriting is on the document (DeCook Dep., pp., 100-01, Ex. 65).

**RESPONSE:** Defendants object that this statement is misleading and mischaracterizes the record. *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking

portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely).

Defendants deny the record supports the argument that the Complaint is "riddled with inaccuracies." Further, Defendants deny the intended inference of this statement that Defendant OPR investigators were involved in DeCook initiating criminal charges against Plaintiff. ASA Katie Seiffert filed the criminal complaint against Plaintiff for aggravated assault of DeCook. *See* OPR SOF Ex. 34, Burnett Dep., at 94:2-5; 107:2-13; 121:5-123:6; State's Amended Answer to Discovery referencing "Proposed Amended Complaint" prepared by ASA Seiffert, attached as Ex. 79. Further denying, DeCook testified at the criminal trial that he could not remember when he signed the criminal complaint. (Plf's Ex. 67, at. 35:9-13). Undisputed as to the remaining, but these facts are not material and do not support denial of Defendants' motions for summary judgment, as they do not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).

63. On April 12, 2012, after a bench trial, Judge Clarence Burch found Taylor "not guilty as to both counts." (4/12/12 Criminal Court Transcript, p. 61, Ex. 67). Assistant States Attorney Maria Burnett asked for Taylor to be found guilty of battery and aggravated assault (*Id.*, p. 4).

**RESPONSE: Undisputed.**

64. Defendant Ernst was the OPR investigator assigned to OPR's investigation for the Nowacki incident and who signed OPR's Summary (Command Channel Review and OPR Documents, OPR Complaint #2011-0950, Ex. 72). Ernst and Fitzgerald are the arresting investigators (Doc. 1739, 1754, 1759, Ex. 73). Fitzgerald is listed as the "Lockup Keeper" and Taylor was searched by Fitzgerald (Doc. 1754, Ex. 73). Taylor was arrested on October 21, 2011 (Doc. 1739, Ex. 73).

**RESPONSE: Undisputed, but these facts are not material and do not support denial of Defendants' motions for summary judgment, as they do not dispute the evidence of**

misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken).

65. Defendants Ways and Whittler signed off on the Command Channel Review on October 25, 2011 and October 26, 2011; they concurred that Percy should be terminated (Doc. CCSO 1718, Ex. 72). OPR sustained the allegations and recommended that Taylor be separated for the Nowacki incident (Docs. CCSO 1721, 1724, Ex. 72). On November 14, 2011, Defendant Dart filed a Merit Board complaint against Percy asking that Percy be removed from the Sheriff's Office for the Nowacki incident (Merit Board Complaint, Docket No. 1626, Ex. 74). Defendant Whittler signed Dart's name to the Merit Board complaint (*Id*.).

**RESPONSE:** **Plaintiff's statement related to Sheriff Dart personally filing the Merit Complaint is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C).** *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp*., 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). **This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants.** *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).

**Defendants dispute that Sheriff Dart personally filed Merit Board complaint related to the battery incident (or any of the Merit Board complaints). Sheriff's Office' legal department filed the complaint on November 14, 2011. (EDSOF ¶ 43.) Defendants do not dispute the rest of the facts contained in paragraph sixty five (#65).**

*Guerrero Incident*

66. On March 18, 2013, Defendant Dart filed a Merit Board complaint (Docket No. 1704) seeking Taylor's termination (Merit Board Complaint, Docket No. 1704, Ex. 75). Defendant

Whittler signed Dart's name to the complaint (*Id.*, p. 4). The complaint alleges that on September 26, 2011, Percy, while in the civil process area of the Sheriff's Office on the 7th floor of the Daley Center, "threatened a Cook County Sheriff Deputy Sergeant, stating that he could not wait to get his 'stuff' back because when he saw the sergeant on the street he would write him tickets and 'lock him up.'" (*Id.*, pp., 1-2).

**RESPONSE: Plaintiff's statement related to Sheriff Dart personally filing the Merit Complaint is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).**

**Defendants dispute that Sheriff Dart personally filed Merit Board complaint with Docket Number 1704 (or any of the Merit Board complaints). Sheriff's Office' legal department filed the complaint on March 18, 2013. (EDSOF ¶ 43.) Defendants do not dispute the rest of the facts contained in paragraph sixty six (#66).**

67. Defendant Ernst was the Senior OPR Investigator assigned to the incident (OPR Documents for OPR #2011-1015, Ex. 76). Defendant Fitzgerald was also part of OPR's investigation and interviewed witnesses (Documents CCSO 1694, 1695, Ex. 76). Defendants Ernst and Ways signed the OPR Summary where it was recommended that Percy be separated from the Sheriff's Office (Document CCSO 1672, Ex. 76). Defendants Ways and Undersheriff Whittler signed off on the Command Channel Review and concurred that Percy should be terminated (Document CCSO 1666, Ex. 76). Percy never made a statement to Guerrero that he could not wait to get his stuff back because he would write him tickets and lock him up (Taylor State Court Dep. taken 7/13/15, p. 114, Ex. 27). Percy and Sgt. Guerrero were friends and would go to lunch together and joke (Taylor Federal Dep. 1/22/16, p. 314, Ex. 6). Percy had no issues with Guerrero prior to September 26, 2011 (*Id.*, pp. 314-15). #27 to #3

**RESPONSE:** Defendants ask this Court to disregard Plaintiff's statement that he "never made a statement to Guerrero" as it contains improper argument in violation of N.D. Ill. Local Rule 56.1(b)(3)(C). *See Boyd v. City of Chicago*, 225 F. Supp. at 716 ("The nonmovant's statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations"); *1 Tel-Lock, Inc. v. Thomson Consumer Electronics*, 2005 WL 741930, (N.D. Ill 2005) (Failure to comply with Local Rule 56.1 by stating legal conclusions rather than material facts.). This statement is also misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp*., 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).

Defendants dispute that Plaintiff never made a statement to Sgt. Guerrero that he could not wait to get his stuff back because he would write him tickets and lock him up. Sgt. Guerrero alleged that on September 26, 2011, while Plaintiff was assigned to the Daley Center, seventh floor, Plaintiff threatened to lock him up and write him tickets when he got his credentials back. (OPR SOF ¶ 62). Witnesses Joshua Thomas and Tony Lampkin both confirmed that Plaintiff told Sgt. Guerrero's account. (OPR SOF ¶ 65). Defendants dispute that Plaintiff and Sgt. Guerrero were friends and would go to lunch together and joke. Sgt.

Guerrero testified that he does not remember ever going to lunch with Plaintiff and that his relationship with Plaintiff was only that "I talked to him." *See* Sgt. Guerrero's Dep., attached as Ex. 80, at 22:8-23:8.

*Acts of Retaliation through the Reinstatement of Merit Board Cases (Docket Nos. 1626 & 1704)*

68. On November 9, 2011, a *Loudermill* hearing was conducted for OPR #2011-0950 (Nowacki incident) and the *Loudermill* Board rejected the Sheriff's request that Percy be suspended without pay finding that Percy should remain on the payroll (11/9/11 *Loudermill* Board decision, OPR #2011-0950, Ex. 77). On November 1, 2013, Sheriff Dart's complaints for Merit Board Case Nos. 1626 (Nowacki incident) and 1704 (Guerrero) were dismissed (Dart's Motions for Reinstatement, Group Ex. 78).

**RESPONSE:** This statement is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).

Undisputed. Legal filed a motion to voluntarily dismiss the Merit Board complaints for the two subsequent investigations because the relief sought (termination) in the complaints was moot since Plaintiff was terminated on October 30, 2013 for shooting a pellet rifle at his unarmed neighbor. (EDSOF ¶ 44). Sheriff Dart, Undersheriff Whittler and Director Ways were not involved in any way and Legal did not communicate with them about the decisions. (EDSOF ¶ 48).

69. On November 19, 2014, Percy, through his counsel, was notified by the Sheriff's Office Deputy General Counsel that the Sheriff's Office would conduct a *Loudermill* hearing regarding the Merit Board complaint, Docket # 1620 on November 24, 2014 (Ex. 79). Merit Board complaint #1620 involved the alleged BB-gun incident for which the *Loudermill* Board had already found in favor of Taylor on March 22, 2011 (Exs. 24, 37, 39-40). On November 24, 2014 (with notice on November 21, 2014), Percy presented an emergency motion before Judge Cohen for Rule to Show Cause against Defendant Dart and motion to enjoin Defendants Dart and the Sheriff's Office from proceeding with the November 24, 2014 *Loudermill* hearing on Merit Board Complaint 1620 (Motion for Rule, Ex. 80). The motion asserted that the Sheriff's Office's actions were taken in retaliation against Percy (*Id.*, ¶ 7). Judge Cohen denied the motion for rule based on the Sheriff's

Department's representation that it would not proceed with a *Loudermill* hearing relating to the Merit Board Case No. 1620 (Judge Cohen's November 25, 2014 order, ¶ 3, Ex. 81).

**RESPONSE: This statement is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).**

**Undisputed.**

70. On November 5, 2014, Percy, through his counsel, was notified that the Sheriff's Office would conduct a *Loudermill* hearing on November 24, 2014 regarding OPR #2011-1015 (Guerrero incident) (Ex. 82). On December 5, 2014, a *Loudermill* hearing was conducted for OPR #2011-1015 and the *Loudermill* Board rejected the Sheriff's request that Percy be suspended without pay, finding that Percy would remain on the payroll (12/5/14 *Loudermill* Board decision, OPR #2011-0950, Ex. 83).

**RESPONSE: This statement is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).**

**Undisputed.**

71. On December 31, 2014, Defendant Dart filed motions with the Merit Board to reinstate the Merit Board complaints concerning the Nowacki and Guerrero incidents (Group Ex. 84). On February 26, 2015, after Percy's counsel objected to the motions, the Sheriff moved to withdraw its motions to reinstate filed on December 31, 2014 (Group Ex. 85). On or about March 10, 2015, the Merit Board granted the Sheriff's motions to withdraw his motions to reinstate.

**RESPONSE: Plaintiff's statement related to Sheriff Dart personally filing any motions is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking**

portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).

Defendants dispute that Sheriff Dart personally filed any motions with the Merit Board. On December 31, 2014, Legal sought to reinstate the two MB complaints in an effort to protect and maintain Plaintiff's termination status when the Circuit Court overturned the Board's decision in Shooting/DUI Incident. (EDSOF ¶ 45). On February 25, 2015, Legal filed a motion to withdraw the two MB complaints for jurisdictional reasons since Plaintiff was not in front of the Merit Board given Plaintiff's pending motions asking the Circuit Court to reconsider remanding the case for a new Merit Board hearing. (EDSOF ¶ 46). Sheriff Dart, Undersheriff Whittler and Director Ways were not involved in any way and Legal did not communicate with them about the decisions. (EDSOF ¶ 48). Defendants do not dispute the rest of the facts contained in paragraph seventy one (#71)

72. On July 2, 2018, Defendant Dart filed motions with the Merit Board to reinstate the Merit Board complaints concerning the Nowacki and Guerrero incidents (Group Ex. 86). On August 7, 2018, Percy filed written objections to the two motions to reinstate Merit Board Complaint #s 1626 and 1704 (Group Ex. 87). The objections asserted that the motions to reinstate were acts of retaliation and retribution (*Id.*). The Merit Board granted Defendant Dart's motions to reinstate Merit Board Complaint #s 1626 and 1704.

**RESPONSE:** Plaintiff's statement related to Sheriff Dart personally filing any motions is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking

portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).

Defendants dispute that Sheriff Dart personally filed any motions with the Merit Board. On July 2, 2018, Legal sought to reinstate the two MB complaints when the Merit Board obtained jurisdiction on April 6, 2018 when the Circuit Court denied Plaintiff's requests to reconsider remanding the case for a new Merit Board hearing. (EDSOF ¶ 47). Sheriff Dart, Undersheriff Whittler and Director Ways were not involved in any way and Legal did not communicate with them about the decisions. (EDSOF ¶ 48). Defendants do not dispute the rest of the facts contained in paragraph seventy two (#72).

*Percy was Treated Differently than Other Similarly Situated Employees*

73. Defendant Ways, as OPR's Executive Director, is solely responsible for the recommendation of discipline (Ways 10/23/18 Dep., p. 16, Ex. 88). One of the goals for discipline is to maintain transparency and consistency in recommended discipline, and to ensure that discipline is fairly imposed throughout the Sheriff's Office (*Id*.). Ways had the ability to set policy with respect to what discipline would be imposed for certain offenses committed by Sheriff's Office employees (*Id*.). Ways testified that there is no reason to treat the type of discipline imposed for similar offenses differently for police officers as opposed to correctional officers, deputy sheriffs or supervisory employees such as sergeants, lieutenants and commanders—they should all be treated the same, fairly and consistently (*Id*., pp. 18-19.)

**RESPONSE: Plaintiff's statement related to "transparency" is misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp*., 2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the**

plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).

Defendants dispute that one of the goals for discipline is to maintain transparency. Director Ways testified to reasons why recommended discipline should be confidential including that it may promote concealment of misconduct. *See* Ways' 10-23-18 Dep., attached as Ex. 77, 129:14-130:16. Defendants do not dispute the rest of the facts contained in paragraph seventy three (73).

74. The manner in which OPR Executive Director Ways kept the disciplinary matrix, basically known only to Ways, was contrary to accepted law enforcement practices and standards, and contrary to demonstrating agency transparency or fairness; it calls into question the fairness of OPR in disciplining employees (Johnson Report, p. 12, Ex. 11). Undersheriff Whittler, who was the final authority for signing off on an investigation, was unaware of the Ways' Matrix (Johnson Report, pp., 12, 26; Whittler Dep., p. 62, Ex. 41). Edward Dyner, who reported directly to Ways, had never seen the Matrix (Johnson Report, p. 12, Ex. 11, Dyner Dep., p. 48, Ex. 64).

<u>RESPONSE:</u> Defendants ask this Court to disregard Plaintiff's statement regarding the manner in which Director Ways kept the disciplinary matrix as it contains improper argument in violation of N.D. Ill. Local Rule 56.1(b)(3)(C). *See Boyd v. City of Chicago*, 225 F. Supp. at 716 ("The nonmovant's statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations"); *1 Tel-Lock, Inc. v. Thomson Consumer Electronics*, 2005 WL 741930, (N.D. Ill 2005) (Failure to comply with Local Rule 56.1 by stating legal conclusions rather than material facts.). Plaintiff's statement is also misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C). *See De v. City of Chicago*, 912 F. Supp.

2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record."); *Brown v. Advocate South Suburban Hosp.*, 2011 WL 6753995, at *4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).

Defendants do not dispute that that Undersheriff Whitter did not know of the offense table and that Mr. Dyner never saw it. Defendants dispute that keeping it confidential was against "accepted law enforcement practices and standards, and contrary to demonstrating agency transparency or fairness; [and it] [] calls into question the fairness of OPR in disciplining employees." Retired full-time police officer Mr. Dirden testified that:

> Plaintiff's expert argues that use of the matrix by Ways is flawed because the matrix was not distributed. Johnson incorrectly argues that if distributed the matrix would put employees on notice of prohibited behavior and the potential consequences for such behavior. This view distorts the purpose of a matrix. The primary purpose of a disciplinary matrix is to achieve consistency in discipline recommendations. Publishing the matrix in this case would have no bearing as Ways has testified and plaintiff appears to have acknowledged Ways' role in recommending discipline. The fact that the matrix was not published suffers plaintiff no greater harm than any other person in the organization. Additionally, this view ignores the fact rules of conduct and general orders are used to guide the behavior of employees. At no point has plaintiff alleged he was not aware of the rules of conduct of the Cook County Sheriff Office.

*See* Dirden's Report, attached as Ex. 66, at 16-17. Director Ways also testified to reasons why recommended discipline should be confidential including that it may promote concealment of misconduct. *See* Ways' 10-23-18 Dep., attached as Ex. 77, at 129:14-130:16.

75. OPR's recommendation for discipline for the alleged offenses that OPR sustained against Percy were "extraordinarily severe in comparison to other sustained disciplinary violations for other CCSO personnel." (Johnson Report, p. 30, Ex. 11). Johnson in his expert report sets forth in detail other cases where similarly situated employees were treated differently than Percy (*Id*., pp. 30-36). Johnson identifies twelve (12) DUI related cases involving much more egregious conduct than Taylor's alleged conduct for failing to report the 1999 Missouri DUI where OPR did not recommend termination (*Id*., pp. 30-32). The cases involved aggravated factors such as DUIs involving accidents, accidents with injuries, misuse of employees' office to avoid arrest, and other aggravating circumstances (*Id*.).

**RESPONSE: Defendants ask this Court to disregard Plaintiff's statement as it contains improper argument in violation of N.D. Ill. Local Rule 56.1(b)(3)(C).** *See Boyd v. City of Chicago*, **225 F. Supp. at 716 ("The nonmovant's statement of additional facts must represent only material facts and are not the proper province of argumentative or conclusory allegations");** *1 Tel-Lock, Inc. v. Thomson Consumer Electronics,* **2005 WL 741930, (N.D. Ill 2005) (Failure to comply with Local Rule 56.1 by stating legal conclusions rather than material facts.). Plaintiff's statement is also misleading and mischaracterizes the evidence and should be stricken as improper under Local Rule 56.1(b)(3)(C).** *See De v. City of Chicago*, **912 F. Supp. 2d 709, 713 (N.D. Ill., 2012) ("[u]nder Local Rule 56.1, it is improper for a party to misstate the cited record.");** *Brown v. Advocate South Suburban Hosp*., **2011 WL 6753995, at \*4 (N.D. Ill. 2011) (striking portions of the plaintiffs' additional statement of facts that mischaracterize the evidence on which they purport to rely). The entire paragraph is immaterial to any of Plaintiff's claims given that Plaintiff relies only on the cat's paw theory and because comparators were not similarly situated.** *Cady v. Sheahan*, **467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.);** *Starchvill v. Dart*, **No. 16 C 5713, 2018 WL 3456525, at \*8 (N.D. Ill. July 18, 2018) ("self-serving, conclusory, and speculative statements" about comparators are "wholly deficient" and "insufficient to meet [plaintiff's] burden**

at summary judgment"). This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants.

Defendants deny that the other personnel referenced by Johnson are similarly situated with Plaintiff in terms of rank, conduct, or discipline. *See* Dirden's Report, attached as Ex. 66, at 21-25. First, the employees referenced by Johnson primarily are correctional officers and do not hold the same rank as Taylor. *Id.* Additionally, the conduct of the comparators referenced by Johnson consists primarily of a single offense, DUI or related offense where plaintiff's conduct consisted of multiple acts of misconduct including providing a false statement. *Id.* Where Johnson cites an employee of similar rank as plaintiff, he again fails to take into account the factors that separate plaintiff's cases from others and accounts for the discipline given to plaintiff: plaintiff caused injury and property damage; plaintiff was arrested for DUI and did not report it to his supervisors; plaintiff gave a false statement when he said he informed a supervisor of his DUI arrest; the supervisor testified that plaintiff did not inform him; and plaintiff was the subject of two internal investigations during the period he was de-deputized, incidents that occurred when plaintiff should have known that his conduct was under review as a result of the underlying investigation. *Id.* Finally, there is no indication that Johnson conducted a comprehensive review of all files related to employee discipline and the files and materials cited are not indicative of a pattern of discipline by the Cook County Sheriff's Office. *Id.* Defendants produced a variety of disciplinary cases of the Cook County Sheriff's office, separations that occurred before and after plaintiff's separation from employment, that shows Cook County Sheriff Office disciplines employees, including separation or termination, based on the facts and evidence of the case and not the race of the employee as plaintiff alleges. *Id.* The Cook County Sheriff's

**Office has terminated Caucasian and employees of other races for some offenses that were similarly situated and other offenses that involve a lesser degree of misconduct than plaintiff. *Id.* Further, Plaintiff testified that he was aware of no other supporter of Sylvester Baker who was terminated for supporting Baker. *Id.* In fact, multiple employees that Plaintiff testified are Baker supporters are still employed at the agency including Ashley, Barksdale, Cox, David, Norrington, Ruffin-Stanford, and Williams. *Id.***

76.     Johnson identifies sixteen (16) cases related to assaults, threats and other misconduct where OPR did not recommended termination (Johnson Report, pp. 32-36, Ex. 11).  These cases include failure to report of arrests, failure to report excessive use of force, and other incidents, threats against supervisors, initiating a fist fight with a vendor while on duty, fleeing the scene of an accident and lying and being belligerent with a superior and local police departments, aggravated domestic battery and assault, and a road rage incident where a deputy sheriff waved a gun at a fellow driver and the use of racial epithets (*Id*).

**RESPONSE: The entire paragraph is immaterial to any of Plaintiff's claims given that Plaintiff relies only on the cat's paw theory and because comparators were not similarly situated. *Cady v. Sheahan*, 467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.); *Starchvill v. Dart*, No. 16 C 5713, 2018 WL 3456525, at \*8 (N.D. Ill. July 18, 2018) ("self-serving, conclusory, and speculative statements" about comparators are "wholly deficient" and "insufficient to meet [plaintiff's] burden at summary judgment"). This statement also is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants.**

**Defendants do not dispute that Johnson identified cases but dispute that that the other personnel referenced by Johnson are similarly situated with Plaintiff in terms of rank, conduct, or discipline. *See* Dirden's Report, attached as 66, at 21-25.  Defendants refer this Court to their response to paragraph seventy-five (#75).**

77. Percy has been employed by the CCSO since April 1995 when he was hired as a Deputy Sheriff (Percy State Dep., p. 24, Ex. 27). In January 2000, Percy was promoted to Cook County Police Officer (*Id*.). At the time of the alleged Woolfolk incident in March 2001, Percy was a 16-year veteran of the CCSO (*Id*.). He had a good record and several commendations (Ex. 89).

**RESPONSE:** **This statement is immaterial to any of Plaintiff's claims as it does not dispute the evidence of misconduct against Plaintiff known to Defendants.** *Cady v. Sheahan*, **467 F. 3d 1057, 1060 (7th Cir. 2006) (Rule 56.1 statements that contain "irrelevant information, legal arguments, and conjecture" may be stricken.).**

**Defendants dispute that he had a "good record." It cannot be argued that Plaintiff, a police officer, was meeting the Sheriff's Office's expectations when he assaulted his unarmed neighbor by firing a weapon at him damaging a truck and lied about his failure to report a conviction for a DUI. Defendants admit the rest of the facts contained in paragraph seventy-seven (#77).**

Date: 1/31/2020                                             Respectfully submitted,

| DEFENDANTS COOK COUNTY SHERIFF'S OFFICE, THOMAS DART, ZELDA WHITTLER and JOSEPH WAYS | DEFENDANTS FITZGERALD, ESTATE OF PATRICK MURPHY, and GREGORY ERNST |
|---|---|
| */s/ Vincent M. Rizzo* | */s/ Catherine M. Barber* |
| James M. Lydon<br>Vincent M. Rizzo<br>HINSHAW & CULBERTSON LLP<br>151 N. Franklin St., Suite 2500<br>Chicago, IL 60606<br>jlydon@hinshawlaw.com<br>vrizzo@hinshawlaw.com | John J. Rock<br>Catherine M. Barber<br>Andrew J. Grill<br>Rock, Fusco & Connelly, LLC<br>321 N. Clark St., Suite 2200<br>Chicago, IL 60654<br>jrock@rfclaw.com<br>cbarber@rfclaw.com<br>agrill@rfclaw.com |