## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

PERCY R. TAYLOR,

Plaintiffs,

v.

COOK COUNTY SHERIFF'S OFFICE, *et al.*

Defendants.

Case No. 13-cv-1856

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

This lawsuit arises from Percy Taylor's termination from his job as a police officer with the Cook County Sheriff's Office. Taylor brought this lawsuit against Defendants Cook County Sheriff's Office, Sheriff Thomas Dart, Gregory Ernst, Patrick Fitzgerald, the Estate of Patrick Murphy, Joseph Ways, and Zelda Whittler, alleging violations pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), as well as state law claims for malicious prosecution and breach of contract. Cook County is sued for purposes of indemnification only. Defendants all moved for summary judgment (Dkts. 458, 460, 462).

For the reasons stated below, the Sheriff's Office Defendants' summary judgment motion [462] is granted in part and denied in part; the OPR Defendants' motion [460] is granted in part and denied in part; and Cook County's motion [458] is denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 250 (internal quotations omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). In doing so, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id*. (citation omitted).

## BACKGROUND

### A. The Parties

*Mr. Taylor:* Percy Taylor ("Taylor"), who is African-American, began his employment with the Cook County Sheriff's Office in 1995 as a Deputy Sheriff, and

in January 2000, was promoted to Police Officer which is the position he held at the time relevant to this lawsuit. (FAC ¶4, SSOF ¶2).[1]

**OPR Defendants:** Gregory Ernst ("Ernst"), Patrick Fitzgerald ("Fitzgerald"), and the Estate of Patrick Murphy ("Murphy") (collectively, "OPR Defendants"), were Cook County Sheriff's Department employees assigned to the Sheriff's Office's Office of Professional Review ("OPR"). (OSOF ¶2). During March 2011, OPR Defendants were employed as Deputy Sheriffs—Murphy was an Assistant Director in the OPR; Ernst, a Senior Investigator; and Fitzgerald, an Investigator. *Id*. OPR investigates complaints made against Sheriff's Office employees; it conducts criminal and administrative investigations into allegations that those employees violated the law or the Sheriff's Office General Orders. (*Id*. ¶3). Ernst was the senior and lead investigator assigned to Taylor's case in March 2011. (PSOF ¶12).

**Sheriff's Office Defendants:** The Sheriff's Office Defendants are Sheriff Thomas J. Dart ("Sheriff Dart"), Undersheriff Zelda Whittler ("Whittler"), Joseph Ways ("Ways") and the Cook County Sheriff's Office ("Sheriff's Office"). Sheriff Dart is the Sheriff of Cook County, Illinois. (SSOF ¶3). Whittler was the Undersheriff of Cook County at all relevant times. (*Id*. ¶5). Ways was the Executive Director of the OPR at all relevant times; he retired from the Sheriff's Office in February 2013. (*Id*. ¶4). Dart, Whittler, and Ways are referred to as "Executive Defendants." (Dkt. 463 at 3).

---

[1] These facts, unless otherwise noted, are taken from the Sheriff's Office Defendants' Statement of Facts (Dkt. 464, "SSOF"); OPR Defendants Statement of Facts (Dkt. 461, "OSOF"), and Taylor's Statement of Additional Facts (Dkt. 472, "PSOF").

**B. Events in 2011**

On March 8, 2011, Harold Woolfolk ("Woolfolk") was working on the pickup truck of Mary Wolfe ("Wolfe") when Woolfolk accused Taylor of shooting at him with a BB gun, and Wolfe called 911, twice, reporting that someone shot at the windshield of her pickup truck. (OSOF ¶¶5, 8–10). Two Chicago Police Department (CPD) officers arrived. (*Id.* ¶11). One of the police officers, Mary McGowan ("McGowan") observed damage to Wolfe's truck which McGowan believed was caused by some type of bullet, and reported that nine shots struck the vehicle. (*Id.* ¶14). McGowan wrote an original case report. (*Id.* ¶16).[2] The same day, March 8, OPR was notified that CPD was investigating a shooting incident involving a Cook County Sheriff's Department employee, and Ernst obtained the police report authored by McGowan. (*Id.* ¶18). The next day, March 9, the OPR Defendants went to 1915 S. Avers to interview the victims and obtain photographic evidence of the vehicle that was struck. (*Id.* ¶19). The OPR Defendants spoke to Woolfolk who said he saw his neighbor shooting at him. (*Id.* ¶20). Wolfe told the OPR Defendants that she went outside and saw Woolfolk shaking and Woolfolk said he had been shot at by the neighbor and that there was damage to the truck, and Wolfe then called 911. (*Id.* ¶21). The OPR Defendants observed what appeared to be nine pellets or shots on the vehicle. (*Id.* ¶22). While speaking to the investigators, Woolfolk pointed and identified Taylor as the man he saw shooting at him the day before. (*Id.* ¶23). Woolfolk told the investigators that he wanted to press charges against Taylor. (*Id.*). At the direction

---

[2] The report classified the offense as "assault—aggravated other dang [sic] weapon" and "criminal damage—to vehicle" ("March 8th police report", OSOF Exh. 13).

of Murphy, Ernst and Fitzgerald placed Taylor into custody. (*Id.* ¶24). Murphy then spoke with the CPD officers, and CPD turned the investigation over to OPR because Taylor was a Sheriff's Office employee. (*Id.* ¶25).

The next day, March 10, OPR obtained a search warrant for the top floor of 1916 S. Hamlin (where they believed Taylor lived) and Taylor's vehicle. (*Id.* ¶28). OPR investigators Ernst, Fitzgerald and others conducted a search of Taylor's unit and vehicle. (*Id.* ¶30). Murphy was not present during these searches. (*Id.*). Taylor denied shooting at the truck and/or Woolfolk and told OPR investigators that he was at the grocery store when the alleged shooting happened. (*Id.* ¶32). OPR investigators obtained video surveillance from the grocery store, and after conducting a time study, determined that Taylor could have committed the shooting and arrived at the store when he did. (*Id.* ¶¶33–34). OPR investigators did not recover a BB gun or BB gun pellets during the search. (*Id.* ¶31). On March 16, 2011, Woolfolk and Wolfe signed criminal complaints against Taylor for aggravated assault and criminal damage to property. (*Id.* ¶36). Taylor was prosecuted by the Cook County State's Attorney's Office for criminal damage to property and aggravated assault, but his charges were ultimately dismissed. (*Id.* ¶¶38, 40).

In September 2011, an incident occurred at the Daley Center involving Sheriff's Deputies Timothy DeCook and David Nowacki resulting in Nowacki signing a criminal complaint against Taylor for misdemeanor battery because Nowacki alleged that Taylor grabbed his hand and twisted it. (*Id.* ¶¶42, 58). Ernst, Fitzgerald, and another OPR investigator arrested Taylor for battery against Nowacki. (*Id.*). Also in

September 2011, Cook County Services Deputy Sergeant Gilberto Guerrero filed a complaint alleging that Taylor threatened him. (*Id.* ¶64). Accordingly, in 2011, OPR conducted three separate investigations of Taylor for: (1) firing a pellet rifle at his neighbor and failing to report a conviction for a DUI ("Shooting/DUI Incident");[3] (2) battering and assaulting two deputy sheriffs ("Battery Incident"); and (3) threatening a superior officer ("Threat Incident"). (SSOF ¶7).

## C. *Loudermill* and Merit Board Proceedings

On March 22, 2011, Taylor attended a *Loudermill* hearing about the Shooting/DUI Incident. (SSOF ¶8). The *Loudermill* board voted to suspend Taylor with pay pending Merit Board action. (*Id.*).

Ernst's April 11, 2011 report of investigation was reviewed and approved by Unit Director Edward Dyner who then submitted it to Director Ways. (*Id.* ¶9). On April 18, 2011, Ways sustained the charges based on the evidence of misconduct and recommended Taylor's termination. (*Id.* ¶13). As part of the Command Channel Review ("CCR") process, Chief of the Sheriff's Police Department Dwayne Holbrook signed off on the ROI on April 20, 2011; Director Ways signed off on April 27, 2011; Undersheriff Whittler signed off on April 28, 2011. (*Id.* ¶¶36, 37; PSOF, Exh. 25). The complaint was filed with the Merit Board on October 20, 2011. (PSOF ¶33). On

---

[3] While investigating, Ernst learned that Taylor had a driving under the influence (DUI) conviction in Missouri in 1999. (PSOF ¶13). At the *Loudermill* hearing, the board asked Taylor about this DUI conviction. (OSOF ¶37). Taylor told the board that he reported the arrest to Sergeant Mpistolarides in 1999. Ernst contacted Mpistolarides who told Ernst that Taylor never reported the arrest. (*Id.*). Ernst added the violations of failure to report and making a false record in his April 11, 2011 report of investigation for Taylor about the Shooting/DUI Incident ("ROI"). (PSOF, Exh. 25, "ROI").

February 27, 2013, the Merit Board conducted an evidentiary hearing for the Shooting/DUI Incident, and on October 30, 2013, issued a decision ordering Taylor be separated from his employment effective October 30, 2013. (SSOF ¶49).

For the Battery and Threat Incidents, Ways concurred with the sustained charges and termination recommendation on October 25, 2011 and December 6, 2011 respectively. (*Id.* ¶39). Undersheriff Whittler concurred with the sustained charges and termination recommendation on October 26, 2011 and December 6, 2011, respectively. (*Id.* ¶40). Taylor had two other *Loudermill* hearings, on November 9, 2011, for the Battery Incident, and on December 5, 2014, for the Threat Incident. (*Id.* ¶¶28, 35).

The reports of investigation were submitted to the Sheriff's Office Legal Department. (*Id.* ¶41). The complaints for the Battery and Threat Incidents were filed with the Merit Board by the Legal Department, respectively, on November 14, 2011 and March 18, 2013, respectively. (*Id.* ¶43). The complaints for the Battery and Threat Incidents were later voluntarily dismissed because Taylor was terminated in October 2013 by the Merit Board based on the Shooting/DUI Incident, but the Legal Department later sought to reinstate the complaints based on proceedings in the Illinois state court. (*Id.* ¶¶44, 47).

**D. Administrative Review in the State Court**

In November 2013, Taylor filed a complaint for administrative review of the Merit Board decision to terminate him in the Illinois Circuit Court of Cook County. (*See* Cook County docket, 2013-CH-26319). The state trial court initially affirmed the

Merit Board decision but in August 2014, overturned the decision because a Board member was not properly appointed. (SSOF ¶50). The court remanded the case to the Merit Board for a new hearing. (*Id*.) In May 2017, on appeal, the Illinois appellate court held that one Merit Board member's "participation in the hearing and the decision of the Merit Board in this case requires that the Merit Board's decision be vacated and remanded for a hearing before a legally constituted Merit Board as the circuit court ordered." *Taylor v. Dart*, 2017 IL App (1st) 143684-B, ¶ 46, 414 Ill. Dec. 735, 744 (2017). On remand the circuit court initially ruled that it did not have jurisdiction to decide Taylor's rights to backpay and reinstatement. (SSOF ¶55; Dkt. 443-1). More recently, on August 15, 2019, the court held it does have jurisdiction and that Taylor is entitled to backpay. *Taylor v. Dart*, 13 CH 26319, Aug. 15, 2019 (Dkt. 443-1). On October 11, 2019, the court stayed the case pending the appeal to the Illinois Supreme Court in *Goral v. Dart*. (PSOF, Ex. 60). The Merit Board hearing was set for November of 2019 but Judge Cohen granted Taylor's motion to stay the Merit Board hearing pending the *Goral* appeal. (SSOF ¶58).

**E. Taylor's Claims in this case**

Taylor filed this lawsuit on March 8, 2013 (Dkt. 1) and served summons on the Sheriff's Office on June 10, 2013. (SSOF ¶77). His Fourth Amended Complaint (Dkt. 294, "FAC") asserts claims for: Title VII Race Discrimination against Cook County Sheriff's Office (Count I); § 1983 Civil Rights Violations Against All Defendants (Count II); § 1983 Retaliation against All Defendants (Count III); Title VII Retaliation Against the Cook County Sheriff's Office (Count IV); § 1983 Violation of Equal

Protection against All Defendants (Count V); Violation of First Amendment against All Defendants (Count VI)[4]; Conspiracy under § 1983 against All Defendants (Count VII)[5]; a state law claim for Malicious Prosecution Against Ernst, Fitzgerald and Murphy (Count VIII); Breach of Contract Against Cook County Sheriff's Office and Dart (Count IX); and Indemnification Against Cook County (Count X).

Taylor agrees that Count II, alleging multiple violations of Taylor's § 1983 civil rights, is duplicative of three other counts. (*see* SSOF ¶78; Dkt. 473, ¶78). Count II is therefore dismissed with prejudice. Taylor also agrees that Count III is a First Amendment retaliation claim for filing the present federal lawsuit and Count VI is a First Amendment retaliation claim for his support of a political opponent of Dart. (SSOF ¶78; Dkt. 473, ¶78). Finally, Taylor withdrew any *Monell* claim. (*Id.*).

**F. Compliance with Local Rule 56.1**

"Local Rule 56.1 statements serve to streamline the resolution of summary judgment motions by having the parties identify undisputed material facts and cite the supporting evidence." *Laborers' Pension Fund v. Innovation Landscape, Inc.*, 2019 U.S. Dist. LEXIS 211194, at *4 (N.D. Ill. Dec. 9, 2019) (citation omitted). Defendants argue that Taylor has not complied with Local Rule 56.1 in his summary judgment submission, and the Court should disregard many of his statements of fact. (Dkt. 490,

---

[4] Like Count III, this count must be brought under § 1983. *See Slovinec v. Ill. Dep't of Human Servs.*, 2005 U.S. Dist. LEXIS 44523, at *12 (N.D. Ill. Feb. 22, 2005) (the First Amendment does not independently create a private cause of action so plaintiff must proceed under 42 U.S.C. § 1983).

[5] The conspiracy count in Taylor's FAC is incorrectly labeled Count VI. The Court uses the corrected count numbering in this opinion.

(hereafter, "Joint Resp.")). The Court agrees that some of Taylor's Rule 56.1 statements of fact do not comply with Local Rule 56.1. However the Court also finds that some of Defendants' statements do not comply with Local Rule 56.1 by containing legal argument or mischaracterizing the record on which they rely. Although the Court has discretion to require strict compliance with the local rules governing summary judgment, "[i]t does not follow, however, that district courts cannot exercise their discretion in a more lenient direction: litigants have no right to demand strict enforcement of local rules by district judges." *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013). The Court relies on those facts that are relevant to resolving the instant motions and supported by the record.

## ANALYSIS

### I.     Title VII Discrimination against the Sheriff's Office (Count I)

Taylor has provided sufficient evidence to survive summary judgment on his Title VII race discrimination claim against the Sheriff's Office. Title VII's antidiscrimination provision makes it "unlawful…for an employer...to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).[6] Under *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), the Court considers Taylor's evidence "as a whole" to

---

[6] *See Robertson v. Wis. Dep't of Health Servs.*, 2020 U.S. App. LEXIS 3725, at *2 n.3 (7th Cir. Feb. 7, 2020) (Title VII authorizes suit only against the employer as an entity, not against individuals).

determine if a reasonable jury could find that his protected characteristic or activity caused an adverse employment action. *Id*. at 765.

Taylor invokes the "cat's paw" theory of liability to argue that his race discrimination claims against the Sheriff's Office should survive summary judgment. (Dkt. 476 at 10–15). The "cat's paw" theory (*see Staub v. Proctor Hosp.*, 562 U.S. 411 (2011)) means that "the ultimate decisionmaker issued an adverse employment action based on the discriminatory animus of another." *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 370 (7th Cir. 2019) (citation omitted). A plaintiff is required to show that the subordinate employee "actually harbored discriminatory animus against him" and that the subordinate employee's "input was a proximate cause" of the adverse actions against him. *Id*. (internal citations and quotations omitted). Here, Taylor argues that Ernst's racial animus and excluding relevant information from his investigatory reports led to the approval of Ernst's ROI, sustaining of the charges against Taylor, approving the termination recommendation, and filing the Merit Board complaint seeking Taylor's discharge.

### A. Racial Animus

Taylor has provided evidence of Ernst's racial animus against him. Another OPR investigator, George Avet ("Avet"), testified that Ernst used racial slurs against Taylor both during the search of Taylor's apartment and at the OPR headquarters in March 2011. (PSOF ¶¶1–2; OSOF ¶66). Avet testified that Ernst used the N-word multiple times at Taylor's residence and called him a "porch monkey", and at OPR headquarters, upset that the investigators did not find a weapon, Ernst stated "we're

[going] to get this [N-word]". (PSOF ¶¶1–2). In addition, Taylor testified that on the day of his Merit Board hearing on February 27, 2013, Ernst threatened him, telling him to quit his job using a racial slur. (*Id.* ¶3).

In response, the Sheriff's Office attempts to undermine Avet's testimony, contending that he is the only Sheriff's Office witness claiming he heard racially derogatory remarks and that other investigators testified they did not hear those remarks. (Dkt. 489 at 2). They argue that Ernst denied using this language, and also note that Avet filed his own EEOC complaints and lawsuit. (*Id.*; Joint Resp. at 3). These arguments are not convincing. On summary judgment, a court does not "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Stokes v. Bd. of Educ.*, 599 F.3d 617, 619 (7th Cir. 2010).

### B. Proximate Cause

As to causation under a cat's paw theory, the Supreme Court has explained that "if the independent investigation relies on facts provided by the biased supervisor--as is necessary in any case of cat's-paw liability--then the employer (either directly or through the ultimate decisionmaker) will have effectively delegated the factfinding portion of the investigation to the biased supervisor." *Staub*, 562 U.S. at 421. The biased employee's influence "can be exercised by supplying misinformation or failing to provide relevant information to the person making the employment decision." *Brewer v. Bd. of Trs.*, 479 F.3d 908, 917 (7th Cir. 2007). The chain of causation can be broken, however, "if the unbiased decisionmaker conducts a meaningful and

independent investigation of the information being supplied by the biased employee."

*Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 383 (7th Cir. 2011).

Here, Taylor provided evidence that Ernst's input was a proximate cause of his termination. Ernst was the senior and lead investigator assigned to Taylor's case, and was present during the investigation of Taylor in March 2011. (PSOF ¶12; OSOF ¶30). Ernst drafted and obtained the search warrant to search Taylor's residence. (OSOF ¶28, Exhs. 23–25). Ernst authored the March 11, 2011 Memorandum of Investigation (OSOF ¶30, Exh. 26) and the March 18, 2011 Memorandum of Investigation and the ROI (PSOF ¶¶13, 21, Exhs. 21, 25). He was the only witness, other than Taylor, to testify at the *Loudermill* hearing. (PSOF ¶13, Ex. 24). He also testified against Taylor at the Merit Board hearing. (*Id.*, Ex. 19). Although Defendants assert that investigators do not recommend discipline and are not involved in the level of discipline imposed (OSOF ¶4; SSOF ¶7), the ROI, drafted by Ernst, expressly stated, three times, that "it is recommended that PO Taylor be separated from the Cook County Sheriff's Office for his actions."(PSOF Exh. 25, pp. 5, 11, 12).

In terms of the missing information that Ernst failed to provide in his report, Taylor argues that the ROI failed to mention exculpatory evidence including that there was no weapon found at Taylor's residence, Woolfolk's animosity against Taylor, Woolfolk's extensive criminal record, a lack of physical evidence corroborating Woolfolk's account, as well as weaknesses in the evidence and concerns about the investigation that were noted in Chief Holbrook's April 14, 2011 memo ("Holbrook

April 2011 Memo"). (Dkt. 476 at 13–14; PSOF, Exh. 40). Holbrook's memo, addressed to Whittler, described the reasoning of the *Loudermill* Board's recommendation to suspend Taylor with pay. Those reasons included that the investigation "left too many unanswered questions and appeared incomplete" and the Sheriff's Police Department was "put off time and again in response to requests to view the investigatory file prior to the hearing" and only received "some of the evidence around 5pm the evening before" the hearing. (PSOF, Exh. 40).

Sheriff's Office Defendants respond that even if Ernst's summary report (ROI) does not contain some relevant information, Ways and Whittler received the "entire file." (Dkt. 489 at 9). They argue that Whittler and Ways did not rely solely on the ROI because both testified that they reviewed more than just the ROI and received the entire file, and the investigation involved input and evidence from a number of people. (*Id.*; Joint Resp., ¶53). However, the evidence in the record does not show that Whittler and Ways conducted a meaningful and independent investigation of the information supplied by Ernst.

Whittler testified that her recommendation would be based on "what's contained in the [OPR investigation] file." (Joint Resp., Exh. 73, p. 77). She also testified that OPR is the "investigating arm and the recommendation arm…It is their responsibility to look at consistency as [it] relates to discipline…my job…as the final signature of that, is to make sure that they've met what I believe is the standard for their investigation with sustaining a case or not sustaining." (*Id.* p. 37). As for Ways, Defendants cite to page 6 of his October 2018 deposition to support the statement

that he reviewed more than just the summary report. (*Id.* ¶53, Exh. 77, p.6). In response to the question of whether he reviewed the entire file or just the OPR summaries, he stated, "more than the summaries, but not the whole file." (Exh. 77, p.6). The next question after this response was "anything else that you reviewed in preparation for your deposition?" (*Id.*). Defendants did not attach the page before this exchange, but given the follow up question and the reference to summaries, *plural*, it can be inferred that Ways was stating what he had reviewed for his *deposition*, not what he reviewed in April 2011 for Taylor's Shooting/DUI Incident investigation. Defendants also rely on Ways' May 2018 deposition to support the statement that he reviewed the ROI "for correctness, completeness and thoroughness", but his answer was in response to general questions about what would happen when an investigation would come to him, and also was in response to a question about what he would do upon receiving an investigation report, "whether in summary fashion or with a complete investigative package." (Dkt. 465-11, p. 99–100).

In short, Ways' and Whittlers' testimonies do not support Defendants' assertion that they reviewed and considered Taylor's entire investigatory file, and moreover, do not show that they conducted an investigation independent of the information supplied by Ernst. "To avoid liability under a cat's paw theory, a decisionmaker is not required to be a paragon of independence. It is enough that the decisionmaker is not wholly dependent on a single source of information and conducts her own investigation into the facts relevant to the decision." *McDaniel*, 940 F.3d at 370 (internal citations and quotations omitted). "[W]hen a company sets up several layers

of *pro forma* review but the operative decision is that of a subordinate with an illicit motive, we impute to the company the discriminatory motive of the subordinate rather than the motive of the ignorant decisionmaker." *Byrd v. Ill. Dep't of Pub. Health*, 423 F.3d 696, 709 (7th Cir. 2005).

Taylor has provided sufficient evidence to create a jury question about whether, despite levels of review in place at the Sheriff's Office, the operative decision was really that of Ernst. Further, the existence of multiple-decision-making levels in Taylor's case does not foreclose his theory of liability. *See Greene v. Cook Cty. Sheriff's Office*, 79 F. Supp. 3d 790, 812 (N.D. Ill. 2015) (noting precedent suggests that "motivating factor causation can be established where there is a discriminatory animus driving the adverse employment action, but divided authority over final employment decisions.").[7]

Sheriff's Office Defendants cite to *Oesterlin v. Cook Cty. Sheriff's Dep't*, 781 F. App'x 517 (7th Cir. 2019) to argue that there is no evidence that the Merit Board's ultimate decision was tainted by the racial animus. (Dkt. 489 at 14). Indeed the Merit Board held a full hearing in Taylor's case in February 2013. But here, unlike in

---

[7] This applies as well to the Sheriff's Office's contention that Taylor does not identify a specific person who was influenced by the biased subordinate. (Dkt. 489, fn. 9). Taylor identifies Whittler and Ways as being influenced by Ernst, ultimately leading to his termination by the Sheriff's Office. *See Staub*, 562 U.S. at 421 (discussing situations in which the "employer (either directly or through the ultimate decisionmaker) will have effectively delegated the factfinding portion of the investigation to the biased supervisor.")); *Byrd*, 423 F.3d at 709 (court can impute "*to the company* the discriminatory motive of the subordinate") (emphasis added). *See also Hernandez v. J. Sterling Morton High Sch.*, 2019 U.S. Dist. LEXIS 196479 (N.D. Ill. Nov. 13, 2019) (allowing cat's paw theory to survive motion to dismiss where employee defendants were substantially involved in process that resulted in plaintiff's termination and Board of Education's ultimate decision plausibly tainted by discriminatory bias).

*Oesterlin,* Taylor provided evidence from which a reasonable jury could find that the Merit Board relied on Ernst's fact-finding because (1) Ernst was the senior, lead investigator in Taylor's investigation, (2) Ernst drafted the report, approved by the Sheriff's Office, that formed the basis for the Sheriff's Office's complaint filed with the Merit Board, and (3) Ernst testified against Taylor at the Merit Board hearing.

Accordingly, there is sufficient evidence creating a jury question about whether the Sheriff's Office is liable to Taylor under Title VII under a cat's paw theory in Count I.

## II.     Title VII Retaliation against the Sheriff's Office (Count IV)

Under Title VII's antiretaliation provision, an employer cannot retaliate against an employee who engages in statutorily protected activity by opposing an unlawful employment practice. 42 U.S.C. § 2000e-3(a). "To establish a *prima facie* case of retaliation under Title VII, [Taylor] must show: (1) he engaged in a statutorily protected activity, (2) his employer took a materially adverse action against him, and (3) there is a causal link between the protected activity and the adverse action." *Mollet v. City of Greenfield*, 926 F.3d 894, 896 (7th Cir. 2019). The Seventh Circuit recently reiterated that the question "is not…whether [plaintiff] complaining…was *a* but-for cause of the adverse action, rather whether the protected activity was *the* but-for cause of the adverse action." *Id.* at 897 (emphasis in original). Other factors might contribute to the adverse action, but the question is "would [plaintiff] have not been constructively discharged if he did not complain…" *Id.* Taylor's Title VII retaliation claim fails on the second and third elements (adverse action and causation).

The Sheriff's Office Defendants argue that Taylor fails to show there was any adverse employment action in response to his protected activity, and he fails to present evidence of causation. (Dkts. 463, 489). Taylor's response to summary judgment (Dkt. 476) does not specify what adverse actions Taylor believes occurred because of what protected activity. As the Court understands it, Taylor argues that the Sheriff's Office retaliated in response to his (1) November 18, 2011 EEOC Charge and (2) March 8, 2013 filing of this federal lawsuit.[8] As to the EEOC Charge, most of the referenced events occurred *before* Taylor filed his EEOC Charge on November 18, 2011—the search and arrest in March 2011, the disciplinary events related to Nowacki and Guerrero in September 2011, Nowacki filing his October 21, 2011 misdemeanor complaint, the filing of the October 20, 2011 (Shooting/DUI Incident) and November 14, 2011 Merit Board (Battery Incident) complaints against Taylor. The filing of the March 18, 2013 Merit Board complaint did occur after the November 2011 EEOC charge, but at 18 months after the EEOC charge, Taylor has not established that the Sheriff's Office would not have filed the Merit Board complaints if he did not file his November 18, 2011 EEOC Charge. *See Feldman v. Olin Corp.,* 692 F.3d 748, 757 (7th Cir. 2012) (eight months between protected activity and adverse action insufficient to permit a reasonable inference of retaliation); *Kidwell v. Eisenhauer,* 679 F.3d 957, 966-67 (7th Cir. 2012) (more than five weeks between

---

[8] The Court agrees with Sheriff's Office Defendants (Dkt. 489 at 4) that the magistrate judge already barred Taylor's reliance on a 2007 EEOC charge and a *Shakman* complaint that Taylor filed. *Taylor v. Cook Cty. Sheriff's Office,* 2019 U.S. Dist. LEXIS 159134, at *8–10 (N.D. Ill. Sep. 16, 2019). This Court will not consider these documents on summary judgment.

protected activity and adverse action too long to permit a reasonable inference of retaliation); *Wallscetti v. Fox*, 258 F.3d 662, 669 (7th Cir. 2001) (same for four-month interval).

The next question is whether the Sheriff's Office filing the March 18, 2013 Merit Board complaint seeking Taylor's termination in relation to the Guerrero incident (the "Threat Incident"), was retaliation for Taylor's filing the federal suit on March 8, 2013. The filing of the Guerrero complaint 10 days after Taylor filed the lawsuit does raise questions of suspicious timing. *See Gracia v. Sigmatron Int'l, Inc.*, 842 F.3d 1010, 1021 (7th Cir. 2016) (discussing circumstances where suspicious timing along with other evidence an create an inference of retaliatory motive). However, Taylor failed to demonstrate that he suffered a materially adverse employment action as a result of the March 18, 2013 Merit Board complaint. Taylor had already been suspended from his police officer duties in 2011, and his termination in October 2013 by the Merit Board was based on the October 20, 2011 Merit Board complaint related to the Shooting/DUI Incident, not the March 18, 2013 complaint. In addition, following the December 2014 *Loudermill* hearing for the Threat Incident, the *Loudermill* Board *rejected* the Sheriff's request that Taylor be suspended without pay. (PSOF ¶70). Thus Taylor has not identified any materially adverse action resulting from the March 18, 2013 Merit Board complaint. *See Robertson*, 2020 U.S. App. LEXIS 3725, at *21 (materially adverse action requires significant alteration to employee's duties).

For these reasons, Taylor's Title VII retaliation claim against the Sheriff's Office does not survive summary judgment.

## III.    § 1983 Equal Protection Violation against All Defendants (Count V)

In Count V, Taylor alleges deprivation of his equal protection right to be free from race discrimination in his employment. (FAC, p. 31). "Discrimination claims may survive summary judgment when a plaintiff presents evidence that permits a reasonable factfinder to conclude that the employer took an adverse action against the employee because of the employee's race or national origin. In deciding motions for summary judgment, courts must consider the evidence as a whole." *Silva v. Wisconsin*, 917 F.3d 546, 559 (7th Cir. 2019) (citations omitted). To hold an individual liable under § 1983, plaintiff must present evidence of personal involvement in the alleged constitutional deprivation. *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 401-02 (7th Cir. 2018). "The plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Id.* (internal citations and quotations omitted).[9]

### A. Evidence of Discrimination

Taylor's evidence considered as a whole would permit a "reasonable jury to infer that the defendants intentionally treated him differently because of his race." *Lisle v.*

---

[9] The Court understands Executive Defendants' argument that Taylor did not specifically argue his equal protection claim (Dkt. 489 at 5), though Taylor did argue the reasons why he believed the evidence showed the individual defendants' involvement in the alleged employment discrimination. (Dkt. 476 at 20–25). Given the requirement that the Court view the evidence "as a whole" for purposes of Taylor's employment discrimination claims (*Ortiz*, 834 F.3d at 765), the Court will not ignore the evidence in the record supporting Taylor's equal protection claim.

*Welborn*, 933 F.3d 705, 719 (7th Cir. 2019); *see also NES Rentals Holdings, Inc. v. Steine Cold Storage, Inc.*, 714 F.3d 449, 452 (7th Cir. 2013) ("we review the evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."). OPR Defendants focus on the fact that Taylor has not provided evidence of comparators. (Dkt. 460 at 11, Dkt. 488 at 11). That focus is too narrow. In employment discrimination cases, "[e]vidence must be considered as a whole." *Ortiz*, 834 F.3d at 765. "[T]he sole question that matters [is] [w]hether a reasonable juror could conclude that [plaintiff] would have kept his job if he had a different ethnicity [or race], and everything else had remained the same." *Id*. at 764. *See also LaRiviere v. Bd. of Trs.*, 926 F.3d 356, 359 (7th Cir. 2019) ("Unmistakable evidence of racial animus—racial epithets or explicitly race-motivated treatment— makes for simple analysis.").

The following evidence considered as a whole creates a jury question about Taylor's equal protection race discrimination claim: (1) Ernst's and other investigators' statements showing racial animus during the investigation of Taylor; (2) Ernst threatening Taylor to quit his job using a racial slur at Taylor's merit board hearing; (3) the Holbrook April 2011 Memo addressing the investigation; and (4) Taylor's expert's opinion about the investigation. (PSOF, ¶¶1–3, 28–29).

The Court has discussed, *supra,* Taylor's evidence of the investigator's statements showing racial animus both during the investigation and at Taylor's merit board hearing. In addition, the Holbrook April 2011 Memo painted a picture of what the *Loudermill* board members believed to be an incomplete and deficient investigation

of the Shooting/DUI incident based on the testimony they heard at the hearing. Taylor's expert, Lt. Col. Robert T. Johnson, also opined about the OPR investigation. Taylor's statement of facts shows that Ernst's ROI was completed on April 11, 2011, whereas the *Loudermill* hearing occurred on March 22, 2011, before the investigation had been completed and approved, and Johnson opines that this is contrary to accepted law enforcement standards. (PSOF ¶¶ 27–28; Exh. 25, Exh. 11 "Johnson Report" p. 25–26). Specifically, Johnson's "Opinion # 4" states: "The scheduling of the *Loudermill* Board Hearing before the investigation had been completed, documented and approved was contrary to accepted law enforcement practices and standards." (Johnson Report p. 25).

Defendants' Joint Response raises a challenge under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) to Taylor's expert arguing Johnson "did not use a reliable reasoning or methodology and he is not offering testimony that will assist the trier of fact." (Joint Resp. at 42). For purposes of summary judgment, the Court relies only on Johnson's opinion about the scheduling of the *Loudermill* hearing as being contrary to accepted law enforcement practices and standards.[10] A review of Johnson's report shows that he is qualified to give his Opinion #4. Johnson has over forty-five years of law enforcement related experience with thirty-two years of active service and several years as a law enforcement consultant. He was a Lieutenant Colonel with the Illinois State Police, supervising over six hundred employees. (Johnson Report p. 2). He has conducted numerous internal investigations as a

---

[10] Johnson's report contains other opinions that the Court is not relying on to reach its decision on summary judgment, including Taylor's only evidence of comparators.

supervisor/command officer in four agencies, and reviewed hundreds of such investigations. *Id*. at 3. Johnson's Report identifies all of the materials he reviewed to reach his conclusions. He also explained the bases for his Opinion #4, including that he has been a member of a *Loudermill* Board hearing (and has never seen one conducted before the investigation has been finalized). Because the Court does not otherwise rely on any of Johnson's opinions and statements for summary judgment, it need not further evaluate Defendants' *Daubert* challenge for purposes of summary judgment, without prejudice to Defendants raising a *Daubert* challenge to Johnson pre-trial.

### B. The Sheriff's Office

Taylor's equal protection claim against the Sheriff's Office must be dismissed because there is no *respondeat superior* liability under § 1983. Absent *Monell* liability, there cannot be § 1983 liability against the Sheriff's Office. *See Barnes v. City of Centralia*, 943 F.3d 826, 832 (7th Cir. 2019) ("municipality cannot be held liable under § 1983 on a theory of respondeat superior"). Taylor argues that the Sheriff's Office "is subject to § 1983 liability if a plaintiff can show a constitutional injury caused or ratified by person with final policymaking authority." (Dkt. 476 at 21). That is a *Monell* theory, but Taylor withdrew his *Monell* claim. (Dkt. 473 at ¶78).

### C. The Individual Defendants

OPR Defendants argue that there is no evidence from which a reasonable jury could conclude that they were personally involved in the alleged wrongful conduct. (Dkt. 460 at 10). The Court agrees as to Murphy and Fitzgerald because of their

limited role. *See Silva*, 917 F.3d at 564 (for two individuals involved in investigation, plaintiff did not develop argument about their personal involvement in the decision to discharge him). However as to Ernst, as previously discussed, evidence of his personal involvement in the alleged equal protection constitutional deprivation—employment discrimination—is sufficient. He played a significant role in the decision-making process as to Taylor's employment and conveyed information to decision-makers about Taylor. *See Hatch v. Brillion Sch. Dist.,* 2018 U.S. Dist. LEXIS 113363, at *41 (E.D. Wis. July 9, 2018) ("This is not [] a situation where the court can disregard Madison's comments as isolated remarks disconnected from the termination decision"); *cf. Mack v. City of Chi.*, 788 F. App'x 396, 399 (7th Cir. 2019) ("nothing in the record suggests that this supervisor played a decision-making role in Mack's discipline or conveyed anything about her to a decision-maker.").

Executive Defendants also argue that they were not personally involved in the alleged constitutional deprivation. The Court agrees that Taylor has failed to show sufficient personal involvement as to Dart, but not as to Whittler or Ways.[11] Executive Defendants do not dispute that Whittler was the final authority for signing

---

[11] Taylor provided an affidavit from John Maher, the Assistant General Counsel of the Sheriff's Police Department in 2011 ("Maher Affidavit"). Taylor relies on the Maher Affidavit to argue that Dart was personally involved in Taylor's termination. (Dkt. 476 at 23; PSOF ¶30). First, the magistrate judge in this case excluded the Maher Affidavit because it was produced after the close of discovery. *Taylor*, 2019 U.S. Dist. LEXIS 159134, at *19-26. This Court agrees with the reasoning and conclusion of the magistrate judge and will not consider the Maher Affidavit on summary judgment. In addition, the Court also agrees with the magistrate judge's evaluation of that the affidavit "does not provide any evidentiary basis to believe that Sheriff Dart has personal knowledge of facts relevant to a claim or defense in this case. Maher does not claim in his affidavit that Sheriff Dart personally was involved in any decision involving Plaintiff or that [Dart] personally knew Plaintiff." *Id.* at *27–28.

off on an investigation. (PSOF ¶¶32, 74). Ways sustained the charges and recommended termination against Taylor. (EDSOF ¶ 13). Whittler concurred with the recommendation. (EDSOF ¶¶ 37, 40). *See Silva*, 917 F.3d at 564 (finding warden who was final decisionmaker with respect to the discipline imposed on plaintiff could be personally liable on plaintiff's equal protection claims). Taking the facts in the light most favorable to Taylor, there are questions of fact as to these Defendants' personal involvement. *See Volkman v. Randle*, 2011 U.S. Dist. LEXIS 131644, at *19 (C.D. Ill. Nov. 15, 2011) (denying summary judgment in part because of questions of fact about defendants' personal involvement).

Ways' and Whittlers' statute of limitations argument that claims against them are time-barred because Taylor did not sue them until July 6, 2015 is not convincing. The date of the Merit Board decision terminating Taylor was October 30, 2013, and that is the operative date for purposes of the statute of limitations. *See Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011); *Starchvill v. Dart*, 2018 U.S. Dist. LEXIS 119689, at *23 (N.D. Ill. July 18, 2018) (finding Title VII claim not time-barred because plaintiff received unequivocal notice of her termination on April 28, 2016, the date of the Merit Board's decision terminating her).

### D. Qualified Immunity

The Court therefore considers whether qualified immunity shields Ernst, Ways, and Whittler. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal

quotations and citation omitted). "To determine whether state actors are entitled to qualified immunity, we consider (1) whether the facts, taken in the light most favorable to the plaintiffs, show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Levin v. Madigan*, 692 F.3d 607, 622 (7th Cir. 2012).

Although OPR Defendants stress that they had probable cause to arrest Taylor in March 2011, this is not a false arrest case and as Taylor argues, he alleges more than that in terms of wrongful conduct. This is an employment discrimination case. "It is well-established that terminating an employee on the basis of his protected status— including race or national origin—violates the Equal Protection Clause of the Fourteenth Amendment." *Silva*, 917 F.3d at 565. In *Silva*, the Seventh Circuit held that qualified immunity did not shield the final decisionmaker with respect to the discipline imposed on plaintiff from liability if it was imposed in a discriminatory manner. *Id*. at 565-66. Given the level of Ernst's involvement in the disciplinary proceedings, and the fact that Whittler and Ways were final decisionmakers as to discipline and the Court's finding that a reasonable juror could find that Taylor was terminated because of his race, Ernst, Ways, and Whittler are not shielded from liability.

Ernst stresses that he had probable cause to arrest Taylor in March 2011. But again, that does not fit the unconstitutional conduct he is accused of in this case. *See Moss v. Martin*, 614 F.3d 707, 712 (7th Cir. 2010) (court must "see if the violation was clear in the specific context of the case.").

Ways and Whittler argue that they are entitled to qualified immunity because there was sufficient evidence of Taylor's misconduct, so they were within their right to investigate and address it, relying on *Hernandez v. Sheahan,* 711 F.3d 816 (7th Cir. 2013) (applying qualified immunity in the face of a First Amendment retaliation challenge following a jailbreak allegedly assisted by plaintiff correctional officers) and *Wuerffel v. Cook Cty. Sheriff's Office*, 2019 U.S. Dist. LEXIS 163706 (N.D. Ill. Sep. 25, 2019) (in addition to finding that plaintiff could not state a prima facie case, finding qualified immunity where the "record … is rife with evidence of Wuerffel's time theft, which the Defendants were well within their means to investigate and address. Under the instant circumstances, the individual defendants would not reasonably believe their conduct in performing such an investigation would be unlawful."). Those cases are factually distinguishable because Taylor's termination was based on an investigation that (1) was the subject of an internal memo (the April 2011 Holbrook memo) that explained that the *Loudermill* board members believed the investigation was incomplete and deficient based on the testimony they heard at the hearing; and (2) an expert has opined is contrary to best practices. The Court finds that *Silva*, 917 F.3d 546 better fits the circumstances in this case, and in that case, the Warden could not benefit from qualified immunity on plaintiff's equal protection claim.

## IV. First Amendment Claims against All Defendants (Counts III and VI)

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett,* 139 S. Ct. 1715, 1722 (2019) (citation and internal quotations omitted). On summary judgment, Taylor is "required to marshal enough evidence for a rational jury to find that (1) he engaged in protected speech; (2) he suffered a deprivation because of [defendant's] action; and (3) his protected speech was a but-for cause of that action." *Oesterlin*, 781 F. App'x at 521. "With respect to the third factor, a plaintiff must show that a violation of his First Amendment rights was a motivating factor of the harm he's complaining of. After the plaintiff makes that showing, the burden shifts to the defendant to show that the harm would have occurred anyway." *Milliman v. Cty. of McHenry*, 893 F.3d 422, 430 (7th Cir. 2018) (internal citations and quotations omitted). As discussed, Taylor's Count III is a First Amendment retaliation claim for filing the present federal lawsuit and Count VI is a First Amendment retaliation claim for his support of a political opponent of Dart. (SSOF ¶78; Dkt. 473, ¶78).

Initially, the Court finds that Taylor has not sufficiently developed his claim of First Amendment retaliation for filing the present federal lawsuit. His argument focuses on the political association claim. (Dkt. 476 at 15–20). "It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *Rozumalski v. W.F. Baird & Assocs.*, 937 F.3d 919, 925 (7th Cir. 2019) (internal quotations and

citations omitted). Even so, he has not established that his filing this lawsuit was a motivating factor for any harm he suffered. [12]

To support his argument that there was a causal link between his protected speech and Defendants' retaliation for his political association, Taylor relies on: (1) his testimony that his support of Sheriff Dart's opponent, Sylvester Baker, was well-known; (2) his testimony that Fitzgerald knew of his support for Baker; (3) the case of David Barber (also a Baker supporter) as similar to his; and (4) Ernst responding to a statement that Taylor was the "Sylvester Baker guy" by stating, "we got to get this mother fucker." (Dkt. 476 at 17-18). At most, this evidence establishes that some of the Defendants were aware of Taylor's support for Baker. But this does not establish that Taylor's speech was a *motivating factor in his termination*. It is well-established that "mere knowledge that someone has engaged in protected speech does not permit an inference that an adverse action occurred *because* of this knowledge." *Shaw v. Litscher*, 715 F. App'x 521, 523 (7th Cir. 2017) (emphasis in original); *see also Oesterlin*, 781 F. App'x at 521 (plaintiff did not connect the fact that he engaged in protected speech to his firing). The similarities Taylor draws to Barber's case, even accepted as true, do not establish that Taylor suffered a First Amendment violation in this case because of his protected speech. *See Carmody*, 893 F.3d at 401 (inferences

---

[12] Although Taylor does not develop the argument, he states that the Sheriff's Office's decision to dismiss and then reinstate Merit Board complaints was retaliatory (Dkt. 476 at 19). However Taylor fails to provide evidence that his protected speech was a motivating factor in the Sheriff's Office litigation decisions. The same applies to the Sheriff's Office's decision to defend the Merit Board decision in court and not award Taylor backpay.

"supported by only speculation or conjecture will not defeat a summary judgment motion.") (internal quotations and citations omitted).

As to Ernst's statement, Taylor does not point to any evidence linking Ernst's alleged political animus towards Taylor to the termination decision. He does not cite to any evidence of Ernst communicating about his alleged political animus to any of the other defendants. In one sentence, Taylor argues that "[t]he 'cat's paw' theory of causation applies to the issue of causation against the CCSO over Percy's protected speech." (Dkt. 476 at 16). However, Taylor cannot assert his §1983 claim against the Sheriff's Office because as discussed absent *Monell* liability, there cannot be § 1983 liability against the Sheriff's Office. To the extent Taylor seeks to use the cat's paw theory to connect Ernst's statement to any of the other defendants, he does not develop this argument and it is waived. *See Rozumalski*, 937 F.3d at 925 (nonmoving party must make a specific argument to oppose summary judgment).

Therefore Taylor's First Amendment claims do not survive summary judgment.

## V.      § 1983 Conspiracy against All Defendants (Count VII)

"Conspiracy is not an independent basis of liability in § 1983 actions. An actual denial of a civil right is necessary before a [conspiracy] cause of action arises." *Ulmer v. Avila*, 2016 U.S. Dist. LEXIS 89257, at *36-37 (N.D. Ill. July 11, 2016) (internal citations and quotations omitted). In his response brief (Dkt. 476 at 28), Taylor argues that there are issues of fact about the underlying constitutional claims but makes no argument and points to no evidence, circumstantial or otherwise, of a conspiracy in this case. *See Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013) ("vague and

conclusory allegations of the existence of a conspiracy are not enough to sustain a plaintiff's burden at summary judgment.") (citations and quotations omitted); *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (a party waives an argument if it is "underdeveloped, conclusory, or unsupported by law"). For the only § 1983 constitutional claim surviving summary judgment, race discrimination, there is no evidence of a conspiracy to discriminate against Taylor based on his race.

## VI. Malicious Prosecution against OPR Defendants (Count VIII)

Taylor also claims OPR Defendants maliciously prosecuted him. Under Illinois law, a malicious prosecution claim requires: "(1) the commencement or continuation of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011) (quoting *Swick v. Liautaud*, 662 N.E.2d 1238, 1242, 169 Ill. 2d 504 (1996)). *See also Barnes*, 943 F.3d at 833 (noting that Illinois courts generally do not favor suits for malicious prosecution).

Taylor's response to summary judgment does not specifically identify which proceeding is the basis for his malicious prosecution claim. He refers to the finding of "not guilty" and his complaint refers to the September 16, 2011 incident (FAC, p. 35), so the Court understands the only basis of this claim to be the Nowacki Battery Incident.[13] Taylor argues that he will prove, among other things, that Ernst and

[13] Even if Taylor intended to include the Shooting/DUI Incident, by way of his reference to the "restitution", (Dkt. 476 at 36, n. 4) his argument is unsupported and underdeveloped

Fitzgerald acted without probable cause and with malice. (Dkt. 476 at 36). However, stating that he will prove elements of the claim at trial does not meet his burden to provide sufficient evidence to survive summary judgment. "[A] party opposing a summary judgment motion must inform the district court of the reasons why summary judgment should not be entered." *Riley v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018) (citation omitted). *See also Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). Accordingly, summary judgment is warranted for OPR Defendants on the malicious prosecution claim.

## VII.    Breach of Contract against the Sheriff's Office and Dart (Count IX)

Taylor alleged that the Sheriff's Office and Dart breached the Sheriff's Office Employment Plan by failing to prevent unlawful political discrimination (FAC, pp. 36–37). Sheriff's Office Defendants argue that without any political discrimination, there was no breach. (Dkt. 463 at 15). Taylor responds that Sheriff's Office Defendants did not meet their burden to support their summary judgment motion with evidence demonstrating the absence of any genuine issue of material fact for this claim. (Dkt. 476 at 28). However, Sheriff's Office Defendants did argue, and the Court agreed, that there is no genuine issue of material fact about whether they violated Taylor's First Amendment rights. The provision Taylor relies on to allege

---

and does not provide a basis to deny summary judgment on the malicious prosecution claim. *See Riley*, 909 F.3d at 190; *Schaefer*, 839 F.3d at 607.

breach of contract is about political discrimination, and Taylor has not provided evidence of political discrimination. Taylor has not met his burden to provide the reasons why summary judgment should not be granted on the breach of contract count. *See Rozumalski*, 937 F.3d at 925.

## VIII.  Cook County's Summary Judgment Motion (Count X)

Cook County moves for summary judgment on the only claim against it, indemnification (Count X). As Cook County argues, Taylor could only have a claim for indemnity in the event judgment is entered against the Sheriff's Office, the Executive Defendants, and the Investigator Defendants. (Dkt. 459 at 3). Because there are two pending claims (Counts I and V), Cook County's motion is denied.

## IX.    Taylor's Motions to Strike

Taylor filed a motion to strike the OPR Defendants' Answer and Affirmative Defenses to his FAC [325] and a motion to strike the Sheriff's Office Defendants' Answer and Affirmative Defenses [323]. Taylor argues the Defendants improperly answered allegations with the phrase "on information and belief" and otherwise provide evasive or immaterial answers. Taylor also seeks to strike Defendants' qualified immunity affirmative defenses. The Court does not agree that Defendants' responses warrant striking their answers or affirmative defenses. Taylor was on notice of Defendants' qualified immunity defense, litigated the issue during the most recent motion to dismiss practice (*see Taylor v. Cook Cty. Sheriff's Office*, 2018 U.S. Dist. LEXIS 168573, at *14 n.6 (N.D. Ill. Sep. 30, 2018)) and litigated the issue on summary judgment. *See Not Dead Yet Mfg. v. Pride Sols., LLC*, 2018 U.S. Dist. LEXIS

17246, at *28-29 (N.D. Ill. Feb. 2, 2018) ("the fact that the parties fully briefed this issue at the summary judgment stage effectively renders moot any debate about the sufficiency of Defendants' pleading."). Taylor's motions to strike [323 and 325] are denied.

## CONCLUSION

For the stated reasons, the Sheriff's Office Defendants' summary judgment motion [462] is granted in part and denied in part; the OPR Defendants' motion [460] is granted in part and denied in part; and Cook County's motion [458] is denied. Summary judgment is entered in favor of Defendants on the following counts: Counts II, III, IV, VI, VII, VIII, and IX. Sheriff Thomas Dart, Patrick Fitzgerald, and the Estate of Patrick Murphy are dismissed from the case. The remaining claims in the case are: the Title VII discrimination claim against the Cook County Sheriff's Office (Count I), § 1983 violation of equal protection claim against Ernst, Ways, and Whittler (Count V), and indemnification against Cook County (Count X).

E N T E R:

Dated: March 4, 2020

MARY M. ROWLAND
United States District Judge

34